# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLACKWELL PUBLISHING, INC.; ) <br> ELSEVIER, INC. ) <br> MASSACHUSETTS MEDICAL SOCIETY, ) <br> and ) <br> WILEY-LISS, INC., ) <br> ) <br>     Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> VIA MARKETING & PROMOTION, S.A. ) <br> d/b/a ACTAMED SERVICES and ) <br> ROBERT TH. GMELIG MEYLING, ) <br> ) <br>     Defendants. ) | Civil Action No.: <br> 05cv10697 WGY |

## DEFENDANT ACTAMED'S MOTION TO DISMISS ALL COUNTS OF THE COMPLAINT UNDER THE DOCTRINE OF *FORUM NON CONVENIENS,* AND TO DISMISS COUNT 9 FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM

Pursuant to Fed. R. Civ. P. 12(b)(1), (3), and (6) and the common law doctrine of *forum non conveniens*, defendant VIA Marketing & Promotion, S.A. d/b/a ActaMed Services ("ActaMed") moves to dismiss all counts of Plaintiffs' Complaint under the doctrine of *forum non conveniens*, and moves to dismiss Count 9 for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  In support of this Motion, ActaMed relies on the Memorandum being filed in Support of this Motion, and the Declaration of Robert Th. Gmelig Meyling and Manco A. Rizzi, L.L.M. with Exhibits 1 - 10, all of which are being filed with this Motion.

This Motion and Memorandum shall not constitute an unconditional appearance of any Defendant, and is made without waiver of any of Defendants' rights, including but not limited to their rights to challenge this Court's jurisdiction in this Court or any other court or judicial or administrative authority.  Defendants specifically reserve their right to challenge the Court's jurisdiction and the enforceability of the Court's judgment in Switzerland pursuant to Article 111 Section 1 of the Swiss Federal Act on International Private Law of December 18, 1987. According to this provision, Swiss authorities do not recognize and enforce a foreign court's judgment in matters concerning intellectual property rights, if such foreign judgment was rendered against a defendant with domicile in Switzerland. Defendants herewith explicitly declare that they will make use of any and all rights and remedies available to object to the Court's jurisdiction and to the enforceability of the Court's judgment in Switzerland, where Defendants are domiciled. See Exhibit 38 to Rizzi Declaration at ¶ 8.

Respectfully submitted,

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES,

By its attorneys,

Dated: June 14, 2005        _s/John J. Cotter_____
                            John J. Cotter, Esq., BBO# 554524
                            David J. Byer, Esq. BBO# 544411
                            KIRKPATRICK & LOCKHART NICHOLSON
                            GRAHAM LLP
                            75 State Street
                            Boston, MA 02109-1808
                            617.261.3100
                            617.261.3175 (fax)

868824

CERTIFICATE OF SERVICE

    I hereby certify that on June 14, 2005, I caused a copy of the foregoing document to be served by electronic filing and by first class United States mail, postage prepaid upon the following:

William S. Strong, Esq.
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114

                     __s/Penny S. Lennox____
                     Penny S. Lennox

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
MASSACHUSETTS MEDICAL SOCIETY and
WILEY-LISS, INC.,

     Plaintiffs,

v.

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES and
ROBERT TH. GMELIG MEYLING,

     Defendants.

Civil Action No.:
1:05-cv-10697 WGY

**DEFENDANTS ACTAMED AND ROBERT MEYLING'S**
**MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS UNDER**
**THE DOCTRINE OF *FORUM NON CONVENIENS* AND FOR FAILURE**
**TO STATE A CLAIM AND LACK OF SUBJECT MATTER JURISDICTION**

## TABLE OF CONTENTS

I. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER THE DOCTRINE
OF FORUM NON CONVENIENS ....................................... 2

    A. The Balance Of Private Interests In This Case Weighs
    Heavily In Favor Of Dismissal ......................... 5

        1. Switzerland is a more convenient and cost effective
        forum ............................................. 5

        2. Both parties will have better access to witnesses
        and evidence in Switzerland. ...................... 7

        3. Plaintiffs may have difficulty enforcing a U.S.
        Judgment in Switzerland........................... 10

    B. The Balance Of Public Interests In This Case Weighs
    Heavily In Favor Of Dismissal ......................... 10

        1. This Court should not expend its limited resources
        on this case. ..................................... 11

        2. Swiss Courts have an interest in adjudicating
        disputes involving its intellectual property laws and
        the actions of a quasi-governmental agency. ....... 11

        3. This case should be adjudicated in a forum that is
        familiar with the applicable laws. ................ 12

II. COUNT 9 OF PLAINTIFFS' COMPLAINT MUST BE DISMISSED FOR
FAILURE TO STATE A CLAIM. ................................. 13

    A. The Legal Standard For Dismissal For Failure To State A
    Claim ................................................. 14

    B. Count 9 of Plaintiffs' Complaint Is Vague and
    Speculative. .........................................15

III. COUNT 9 OF PLAINTIFFS' COMPLAINT MUST BE DISMISSED FOR LACK
OF SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1332 ....... 16

IV. COUNT 9 OF PLAINTIFFS' COMPLAINT MUST BE DISMISSED FOR LACK
OF SUBJECT MATTER JURISDICTION OVER FOREIGN COPYRIGHT CLAIMS .16

CONCLUSION ................................................ 20

This case is an attempt by major United States publishers to obtain discovery from and a judgment against a relatively small Swiss company and its CEO, based on foreign law and on facts primarily occurring overseas.  In fact, all of Defendant ActaMed's work is done in Europe, and well over ninety-nine percent of document pages supplied by it are provided in Europe. Because most if not all of these Plaintiffs are currently pursuing criminal and civil remedies in Switzerland for many of the acts they complain of here, because the U.S.-related "facts" were manufactured by the Plaintiffs' own activities, and because there are other fora more suitable for this European-based dispute, this case does not belong in a U.S. court.

Defendants VIA Marketing & Promotion, S.A. d/b/a ActaMed Services ("ActaMed") and Robert Th. Gmelig Meyling ("Meyling")[1] therefore move to dismiss all counts of the Complaint by Plaintiffs Blackwell Publishing, Inc. ("Blackwell"), Elsevier, Inc. ("Elsevier"), Massachusetts Medical Society ("MMS") and Wiley-Liss, Inc. ("Wiley-Liss") (collectively the "Plaintiffs"), pursuant to the common law doctrine of *forum non conveniens*, and

---

[1] Defendant Meyling simultaneously is filing a motion to dismiss the Complaint against him for lack of personal jurisdiction over him.

under Rules 12(b)(2), (3), and (6) for lack of subject matter

jurisdiction and failure to state a claim.[2]

The balance of public and private factors in this case

favor outright dismissal in favor of proceedings in Switzerland,

where the bulk of these witnesses and documents are located, and

where Plaintiffs are already pursuing remedies.  In addition,

Count 9 should be dismissed for failure to state a claim upon

which relief can be granted and for a lack of jurisdiction over

the subject matter as Count 9 relates entirely to foreign law

and does not meet the diversity amount in controversy.  For

these reasons and others reasons discussed below, Plaintiffs'

Complaint should be dismissed.

## I.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

Under the common law doctrine of *forum non conveniens*

federal courts can dismiss actions when an adequate alternate

forum is available in another nation that is both "fair to the

parties and substantially more convenient for them or the

---

[2] This Motion and Memorandum shall not constitute an unconditional appearance of any Defendant, and are made without waiver of any of Defendants' rights, including but not limited to their rights to challenge this Court's jurisdiction in this Court or any other court or judicial or administrative authority.  Defendants specifically reserve their rights pursuant to Article 111 of the Swiss Act on International Private Law.  See Declaration of Marco Rizzi (submitted with this Motion) at ¶8 and Exhibits 7 and 8.

courts." Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1349 (1st Cir. 1992), cert denied, 508 U.S. 912 (1993); Howe v. Goldcorp Inv., Ltd., 946 F.2d 944 (1st Cir. 1991) see also Murray v. British Broad. Corp., 906 F.Supp. 858 (S.D.N.Y. 1995) (copyright claims under British law dismissed under the doctrine of *forum non conveniens*). *Forum non conveniens* is a "flexible, practical" doctrine not subject to ritualistic application. Mercier, 981 F.2d at 1354 (internal citations omitted). The Supreme Court has, however, identified several factors that are critical to a *forum non conveniens* analysis. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947).

Before applying these factors, the court must determine whether an adequate alternative forum is available. Mercier, 981 F.2d at 1354. A forum will generally be considered available if the defendant is subject to service of process there. Id., at 1349. In this case, ActaMed, a Swiss company with offices in Switzerland, and Mr. Meyling, a Swiss resident, are presumably subject to process in Switzerland.

Likewise, a forum generally will be considered adequate if it provides any remedy at all.[3] <u>Mercier</u>, 981 F.2d at 1350; <u>Howe</u>, 946 F.2d at 952; <u>Murray</u>, 81 F.3d at 292. Plaintiffs can not claim that Switzerland does not offer a remedy, as they have raised Swiss law as grounds for action against ActaMed. In fact, Plaintiffs already have instituted preliminary legal actions in Switzerland by filing criminal complaints and requests for debt enforcement against ActaMed. <u>See</u> Rizzi Decl. at ¶7.

The test for dismissal under *forum non conveniens* calls upon the court to balance public and private interests. <u>Mercier</u>, 981 F.2d at 1335; <u>Howe</u>, 946 F.2d at 951 <u>citing</u> <u>Gulf Oil</u>, 330 U.S. at 508-09. In <u>Gulf Oil</u>, the Court outlined the private and public interest factors to be considered. <u>Gulf Oil</u>, 330 U.S. at 508-509. The private interest factors are (1) the convenience of and comparative costs to the parties; (2) access to evidence and witnesses and location of operative events; and (3) any difficulty the plaintiff may have in enforcing a

---

[3] Fora have been found inadequate in distinguishable cases. For example, where the forum did not allow litigation of the subject matter at issue, or where a plaintiff was prevented from accessing the courts for political reasons. See <u>Mercier</u> 981 F.2d at 1350, <u>citing</u> <u>Menendez Rodriguez v. Pan Am Life Ins. Co.</u>, 311 F.2d 429 (5th Cir. 1962) (Castro's Cuban courts unavailable to Cuban political refugees), <u>vacated on other grounds</u>, 376 U.S. 779 (1964); <u>Rasoulzadeh v. Associated Press</u>, 574 F.Supp. 854 (S.D.N.Y. 1983) (plaintiff would be executed were he to attempt to litigate in Iran), <u>aff'd without opinion</u>, 767 F.2d 908 (2d Cir. 1985).

judgment in the alternate forum.  Gulf Oil, 330 U.S. at 508;
Mercier, 981 F.2d at 1354; Howe, 946 F.2d at 950-951.  Public
interests include (1) court congestion; (2) the local interest
in having controversies resolved where they arise; and (3) the
appropriateness of having a case tried in a forum familiar with
applicable laws.  Gulf Oil, 330 U.S. at 508-509.  These factors
are weighed in light of deference to a plaintiff's choice of
forum.  Mercier, 981 F.2d at 1354.

### A.  The Balance Of Private Interests In This Case Weighs Heavily In Favor Of Dismissal.

Individually, each of the factors discussed below is a
valid reason to dismiss this case under the doctrine of *forum
non conveniens*.  When viewed as a whole, dismissal is not only
proper but is advisable.

### 1.  Switzerland is a more convenient and cost effective forum.

Dismissal of this case in favor of a Swiss forum is not
only more convenient for the Defendants, it also is more cost-
effective for the Plaintiffs.  With the exception of the alleged
deliveries of documents to Plaintiffs' agent in Massachusetts,
all of the actions relevant to this dispute took place in
Switzerland.  Specifically, ActaMed's offices and most of its
employees are in Switzerland.  Decl. of Robert Thomas Meyling at
¶¶3, 6 (filed with this Motion).  ActaMed's records and computer

servers are located in Switzerland, and virtually all of its
business is directed to European customers.  Meyling Decl. at
¶¶6, 7, 8.  Critical third party witnesses from Swiss copyright
society ProLitteris and Swiss copyright user society DUN all are
located in Switzerland.  See Meyling Decl. at ¶¶8, 9. In short,
the bulk of discovery would occur in Switzerland or Europe.
ActaMed is a relatively small company, with one office and
approximately forty (40) employees.  The cost to ActaMed of
having its U.S. lawyers travel regularly to Switzerland to
review documents and to proceed pursuant to the Hague Convention
(see 28 U.S.C. § 1781) would be exorbitant.  Plaintiffs, on the
other hand, are large corporations with substantial resources.
Although Plaintiffs are U.S. Corporations, Elsevier, Blackwell
and Wiley have extensive international operations, either
directly or through affiliated companies.  Elsevier is "part of
the Reed Elsevier Group plc, a leading international publisher
and information provider." See Exhibit 11.[4]  Blackwell is part
of Blackwell Ltd. headquartered in the U.K. and has "over 900
staff members in offices in the US, UK, Australia, China,
Denmark, Germany, and Japan." See Exhibit 12.  Wiley, an
affiliate of John Wiley & Sons Publishing, has "about 3,500
employees worldwide," and has "operations in the United States,

---

[4] Exhibit 11-13 are attached to the Declaration of Penny S.
Lennox.

Europe (England, Germany and Russia), Canada, Asia, and Australia." See Exhibit 13. Moreover, Plaintiffs publish their journals throughout the world. Compl. at ¶¶11-14. Accordingly, Plaintiffs have reason to expect to litigate their copyrights in foreign jurisdictions and have the resources to do so. Litigation in Switzerland will not be burdensome for such sophisticated international companies. By contrast, ActaMed's business is directed almost exclusively at European offices of pharmaceutical companies; in fact, over ninety-nine percent of ActaMed's work is done for European customers or recipients. Meyling Decl. at ¶8. ActaMed had no reason to expect that it would be sued in a U.S. court and by comparison has substantially less resources available to adequately defend itself in such a forum. Accordingly, not only will the case be less costly for all parties if it is pursued in Switzerland, but the comparative convenience of the parties strongly weighs in favor of dismissal.

### 2. Both parties will have better access to witnesses and evidence in Switzerland.

ActaMed has its offices in Switzerland where it also maintains its computer servers and records. Meyling Decl. at ¶¶3, 6. With the exception of the Plaintiffs' arranged acquisition of documents by U.S. based NewJen (Compl. ¶¶27, 28, 30, 31), all of the alleged actions noted in the complaint

occurred in or emanated from Switzerland.  In addition, not only are Meyling, ActaMed and thirty-seven of ActaMed's approximately forty employees located in Switzerland, but several important third-party witnesses (e.g. ProLitteris, DUN, and ActaMed customers) are located there as well.

The First Circuit in Howe relied heavily on this factor in upholding a dismissal for *forum non conveniens*.  946 F.2d at 951-52.  In that case, the plaintiff sued a Canadian corporation and its officers, investment advisors and lawyers alleging U.S. securities violations, breach of fiduciary duty and related claims.  Id.  The District Court dismissed the case against all defendants on the basis of *forum non conveniens*.  Id.  The First Circuit affirmed, because "the balance of conveniences seem[ed] to favor, with unusual strength, the Canadian defendants."  Id. at 951.  Although the plaintiff alleged that the defendants delivered materials containing misrepresentations into the U.S., the court noted that the defendants acted in Canada, had meetings in Canada, made decisions in Canada and presumably had the relevant documents printed in Canada. Id. at 951.  Moreover, the court pointed out that the background facts occurred in Canada.  Id.

Similarly, in Murray the Second Circuit noted that, with the exception of the original of the work at issue, all of the

physical evidence and third party witnesses were in England.
906 F.Supp. at 863.

The present case is similar to Howe and Murray, with even
fewer ties to the U.S.  Here Plaintiffs allege that ActaMed made
copies of protected materials outside the U.S. and distributed
them into the U.S. and unspecified non-U.S. jurisdictions.  With
the exception of any receipt of copies, all relevant actions
would have occurred in Switzerland where ActaMed maintains its
office, employees, and servers.  Access to the majority of this
evidence is more convenient for all parties in Switzerland.  In
addition, taking of evidence in Switzerland for an action in
this Court would require Plaintiffs to comply with the detailed
steps of the Hague Convention on the Taking of Evidence in Civil
or Commercial Matters (reprinted after 28 U.S.C.A. (West)
§ 1781), which could prolong any action here.

The location of the witnesses can be critical.  The Howe
court noted that the only relevant U.S. witness was Howe
himself.  Id.  946 F.2d at 951.  "That evidence of the breach
and major witnesses will most likely come from a foreign country
weighs heavily in favor of declining jurisdiction on *forum non
conveniens* grounds."  Id. at 952 (internal citations omitted).
Likewise, the court in Murray relied on the presence of third
party witnesses in England.  906 F.Supp. at 864.

Similarly here, not only are Meyling, ActaMed and most ActaMed employees located in Switzerland, key third parties, such as ProLitteris and DUN also are in Switzerland.  In fact, aside from Plaintiffs' agent, NewJen, none of the potential witnesses to any alleged infringement are U.S. based.  The Swiss location of these witnesses and evidence strongly supports dismissal.

### 3.    Plaintiffs may have difficulty enforcing a U.S. Judgment in Switzerland.

Perhaps the most significant factor in favor of dismissal of this case in favor of a Swiss forum is the difficulty a U.S. plaintiff will have in enforcing any judgment it receives against a Swiss corporation or citizen under Article 111 of the Swiss Act on International and Private Law.  See Rizzi Decl. at ¶8.  Accordingly, it is in Plaintiffs' best interest to adjudicate its rights as to these Defendants in Switzerland, which weighs in favor of dismissal.

### B.    The Balance Of Public Interests In This Case Weighs Heavily In Favor Of Dismissal.

The doctrine of *forum non conveniens* is primarily one of convenience, addressing the practicalities of litigation in an effort to increase the efficient resolution of disputes.  Howe, 946 F.2d at 950.  There are, however, public policy factors that should be considered in the analysis.

### 1. This Court should not expend its limited resources on this case.

The Court's resources are valuable and limited and should not be wasted. Plaintiffs have filed a criminal complaint against ActaMed in Switzerland. <u>See</u> Rizzi Decl. at ¶9. In addition, Plaintiffs Elsevier and Blackwell and others have filed requests for debt enforcement in Switzerland against ActaMed, which requests in part may toll the statute of limitations on Swiss civil actions. <u>See</u> Rizzi Decl. at ¶7. These co-pending activities could result in conflicting rulings or duplicative relief from the Swiss and U.S. courts. Moreover, given the uncertainty of enforcement of any judgment the Plaintiffs may win under Swiss Article 111, any judgment entered by this court ultimately may be futile. Rendering a futile judgment surely is a waste of the Court's limited resources. For these reasons, this factor strongly weighs in favor of dismissal.

### 2. Swiss Courts have an interest in adjudicating disputes involving its intellectual property laws and the actions of a quasi-governmental agency.

This factor requires the court to balance the interest of the court in providing a forum for adjudicating plaintiffs' claims and the general deference provided to a plaintiff's choice of forum with the interests the alternate forum may have in hearing claims arising under its own laws. <u>Mercier</u>, 981 F.2d

at 1355. In <u>Howe</u> the First Circuit reasoned that, aside from the presence of a U.S. plaintiff, the Court had little interest in hearing a case involving foreign securities and foreign law based on actions that primarily occurred in Canada. 946 F.2d at 953. Similarly here, U.S. courts do not have a compelling interest in adjudicating a case involving a Swiss defendant, Swiss and European laws, and actions that primarily took place in Switzerland. This is especially true when, as here, the Plaintiffs are international companies that already have begun pursuing legal recourse in the alternate forum.

### 3.   This case should be adjudicated in a forum that is familiar with the applicable laws.

The difficulty of interpreting and applying foreign law, although not dispositive, weighs in favor of dismissal. <u>Mercier</u>, 981 F.2d at 1357. ActaMed's actions relevant to Plaintiffs leading up to the this case have been intertwined with and informed by its statutory and contractual relationship with ProLitteris. <u>See</u> Rizzi Decl. at ¶9. Should the case proceed here, the Court would be called upon to assess foreign copyright laws as well as the laws governing ProLitteris. In addition, this Court may need to analyze and act within the constraints of the Swiss Act Article 111 regarding enforceability of foreign judgments (Rizzi Decl. at ¶8), and

would need to deal with Hague Convention rules.  The Swiss court

is therefore the appropriate forum.

## II.    COUNT 9 OF PLAINTIFFS' COMPLAINT
##        MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

Alternatively, if the Court decides not to dismiss the

entire case, it should dismiss Count 9 pursuant to Rule 12(b)(6)

for failure to state a claim upon which relief can be granted.

Dismissal under Rule 12(b)(6) is proper if the complaint lacks

an allegation regarding an element necessary to obtain relief.

Count 9 of Plaintiffs' Complaint lacks such an element. Count 9

reads in relevant part as follows:

> "Based on the evidence stated above, plaintiffs
> are informed and believe that defendants are
> engaged in reproduction, distribution, issuing to
> the public, importation, communication to the
> public, and/or making available to the public, of
> works or copies of works the identity of which is
> not yet known to plaintiffs, in and to countries
> other than the United States, without permission
> and in violation of plaintiffs' rights under the
> laws of those several countries." Compl. at ¶45.

> "The identification of the works infringed and
> the countries where plaintiffs' rights have been
> violated will be determined in the course of
> discovery." Compl. at ¶47.

In other words, Plaintiffs allege that the Defendants have

violated Plaintiffs' rights to unspecified works in unspecified

countries under unspecified laws.  Aside from these vague

statements, Plaintiffs do not allege any facts to support their

theory that their Count 9 rights have been violated.  Moreover,

Plaintiffs do not identify the jurisdictions and laws to which these facts, if pled, would apply.

### A.   The Legal Standard For Dismissal For Failure To State A Claim.

The Federal Rules require that plaintiffs plead sufficient factual allegations in a complaint to support the claims they present.  The purpose of that requirement is two-fold: out of fairness to defendants, to give them notice of the claims they must defend; and out of fairness to the process, to require that plaintiffs bring claims only when they have a sufficient factual basis to support those claims.

Count 9 of the Complaint filed by Plaintiffs in this case is neither fair to defendants nor fair to the process.  By presenting vague allegations of violations of unspecified laws in unspecified jurisdictions, Plaintiffs have not given the Defendants fair notice of their claims.  Instead, Plaintiffs intend to employ the discovery process to determine whether a claim of any kind exists.  Count 9 of the Complaint is little more than a thinly veiled fishing expedition.

In ruling on this Rule 12(b)(6) motion, this Court can assume that all of the factual allegations set forth in the four corners of the Complaint are true.  See, e.g., United States v. Gaubert, 499 U.S. 315, 327 (1991). This generous assumption should not, however, be afforded to conclusory statements, bald

- 14 -

assertions and conjecture contained in the Complaint.  See
Resolution Trust Corp. v. Driscoll, 985 F.2d 44 (1st Cir. 1993).

> **B.    Count 9 of Plaintiffs'**
> **Complaint Is Vague and Speculative.**

A Rule 12(b)(6) motion tests the legal sufficiency of the
claims asserted in the complaint.  Rule 12(b)(6) must be read in
conjunction with Rule 8(a) which requires a short and plain
statement of the claim showing that the pleader is entitled to
relief. See generally, Charles Alan Wright & Arthur R. Miller,
Federal Practice And Procedure § 1356 (2004).  It follows that,
in order to satisfy the Federal Rules, a complaint must, at a
minimum, provide the Defendant with notice of the laws that it
has allegedly violated. The allegations in Count 9 (Compl. at
¶45) not only fail to state any non-speculative factual elements
necessary to a copyright infringement claim, but also fail to
identify the relevant law under which the claim is purportedly
being brought.

These omissions deprive ActaMed of fair notice of the
claims asserted, and substantially hinder its ability to prepare
a defense.  The absence of allegations identifying the works at
issue strips defendant of any ability to reply to the allegation
or to prepare a defense.  Moreover, the lack of a stated
jurisdiction or relevant law, in addition to an undefined body
of allegedly infringed works, creates a limitless landscape for

discovery during which Plaintiffs no doubt hope to discover the basis of a claim.

### III. COUNT 9 OF PLAINTIFFS' COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1332

Count 9 of Plaintiffs' Complaint apparently is based on "general principles of federal alienage jurisdiction embodied in 28 U.S.C. § 1332" (Compl. at ¶9), a component of diversity jurisdiction. See generally Moore's Federal Practice, Vol. 15 §102.10 and 102.70 (3d Ed. 1997). Based on the plain language of the statute, in order for a federal court to assert jurisdiction under 28 U.S.C. § 1332 the plaintiff must plead both diversity of citizenship and an amount in controversy greater than $75,000.

Not only have Plaintiffs failed to plead any damages amount, but given that they are unable to plead any specifics as to alleged infringement of their copyrights in foreign jurisdictions, any such pleading would be speculative as best. Accordingly Count 9 of Plaintiffs' Complaint lacks an essential element for diversity jurisdiction and accordingly must be dismissed for lack of subject matter jurisdiction.

### IV. COUNT 9 OF PLAINTIFFS' COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION OVER FOREIGN COPYRIGHT CLAIMS

Count 9 stretches outside U.S. law or facts in an overreaching attempt to provide Plaintiffs with unbridled U.S.

- 16 -

style discovery over non-U.S. claims.  Plaintiffs seek to have
this court exercise jurisdiction over claims involving alleged
acts in foreign countries which allegedly violate unspecified
copyright laws of unspecified countries. U.S. courts only rarely
have exercised jurisdiction over foreign copyright laws and it
is far from settled that doing so is within the courts' reach.
The question of subject matter jurisdiction over such a claim
appears to be a matter of first impression for this district and
the First Circuit.  In this case the Court should not claim
subject matter jurisdiction.

Some academic treatises hypothesize that United States
courts properly have subject matter jurisdiction over claims
arising under foreign copyright laws.  See 4 Melvin B. Nimmer &
David Nimmer, Nimmer on Copyright § 17.03 (2005); Paul
Goldstein, Copyright § 16.2 (2d Ed. 2000-2005).  The theories
are based on the concept that copyright infringement is a
transitory cause of action and, accordingly, the copyright owner
may sue an infringer in a U.S. court if it can secure personal
jurisdiction.

Few courts have followed this expansive theory.  See, e.g.,
London Films Prods. Ltd. v. Intercontinental Communications,
Inc., 580 F.Supp. 47 (S.D.N.Y. 1984).  The Eastern District of
California, for example, was unpersuaded by the theory and
declined to exercise jurisdiction over the plaintiff's claims

under Mexican copyright laws.  *ITSI T.V. Prods., Inc. v.
California Authority of Racing Fairs*, 785 F.Supp. 854 (E.D. Cal.
1992).  Notwithstanding *London Films*, the ITSI court could
"discern no clear authority" to exercise jurisdiction.  *ITSI*,
785 F.Supp. at 866, discussing *London Films*, 580 F.Supp. 47.
The court stated that even if it could exercise subject matter
jurisdiction over plaintiff's claims it would dismiss the claim
on *forum non conveniens* grounds.  *Id.*  ("American courts should
be reluctant to enter the bramble bush of ascertaining and
applying foreign law without an urgent need to do so.").
Finally, the court found the theory to be incomplete in that it
failed to accommodate situations in which foreign copyright
cases involved administrative acts by foreign agencies.  *Id.* at
866, n. 19.

   In *London Films*, a British corporation brought suit in New
York against a New York corporation for alleged copyright
infringement in Chile, Venezuela, Peru, Ecuador, Costa Rica and
Panama.  The defendant moved for dismissal on jurisdictional and
*forum non conveniens* grounds.  580 F.Supp. 47.  The court based
its decision to hear the case in large part on the absence of an
alternate forum and the theory that "copyright infringement
constitutes a transitory cause of action."  *Id.* at 48, 49.

   The present case is distinguishable from *London Films* in
two important respects.  First, there is an alternate forum, as

is demonstrated by the Swiss criminal complaints and requests for debt enforcement that they have filed there. Second, as anticipated by ITSI, the adjudication of this case will involve a determination as to the actions of ProLitteris. See Rizzi Decl. at ¶9.

The London Films court, and courts that followed, justified exercising jurisdiction over the foreign copyright claims in those cases on the premise that copyright infringement is a transitory cause of action. 785 F.Supp. at 866; see also, Armstrong v. Virgin Records, Ltd., 91 F.Supp.2d 628, 637-38 (S.D.N.Y. 2000) (the court denied almost cross motions for dismissal and summary judgment pending discovery, stating that the defendants retained the right to question subject matter jurisdiction over foreign copyright claims following discovery when plaintiff will be required to allege specific applicable laws). Even if exercising jurisdiction over foreign copyright claims were proper in a situation such as in London Films, it is not proper here. The involvement of ProLitteris means that a U.S. court presiding over Count 9 of this case may be called upon to ascertain that agency's responsibilities under Swiss law and in light of that determination, the legality of its actions and those of ActaMed. This case is therefore more similar to the scenario envisioned in ITSI than to the facts in London

<u>Films</u>.  Accordingly, Count 9 of Plaintiffs' Complaint should be dismissed.

<u>**CONCLUSION**</u>

For the foregoing reasons, all counts of the Complaint should be dismissed in favor of a Swiss forum, and Count 9 alternately should be dismissed for lack of subject matter jurisdiction and for failure to state a claim.

Respectfully submitted,

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES,

By its attorneys,


Dated: June 14, 2005          _s/John J. Cotter_____
                              John J. Cotter, Esq., BBO# 554524
                              David J. Byer, Esq. BBO# 544411
                              KIRKPATRICK & LOCKHART NICHOLSON
                              GRAHAM LLP
                              75 State Street
                              Boston, MA 02109-1808
                              617.261.3100
                              617.261.3175 (fax)

CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2005, I caused a copy of the foregoing document to be served by electronic filing and by first class United States mail, postage prepaid upon the following:

William S. Strong, Esq.
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114


                              __s/Penny S. Lennox _____
                              Penny S. Lennox

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
MASSACHUSETTS MEDICAL SOCIETY and
WILEY-LISS, INC.,

        Plaintiffs,

v.

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES and
ROBERT TH. GMELIG MEYLING,

        Defendants.

Civil Action No.:
1:05-cv-10697 WGY

## DECLARATION OF MARCO A. RIZZI, L.L.M

I, Marco A. Rizzi, L.L.M, declare:

1.    I am an attorney at law and member of the bar of
Switzerland since 1997.  I am a partner in the Zurich law firm
of SvH Schaufelberger & van Hoboken Rechtstanwalt, where my
address is Seestrasse 17 Postfach CH-8702, Zurich-Zollikon,
Switzerland.  I graduated from the Law School of the University
of Berne, Switzerland and received my L.L.M. from King's College
in London, U.K.  I am a member of the Zurich and Swiss Bar
Associations.  I have represented defendants VIA Marketing &
Promotion, S.A. d/b/a ActaMed Services ("ActaMed") since March
2005.  I am fluent in written and spoken German, Italian, and
English.  This declaration and the Motions it supports shall not

constitute an unconditional appearance of any Defendant, and are made without waiver of any of Defendants' rights, including but not limited to their rights to challenge this Court's jurisdiction in this Court or any other court or judicial or administrative authority. Defendants specifically reserve their right to challenge the Court's jurisdiction and the enforceability of the Court's judgment in Switzerland pursuant to Article 111 Section 1 of the Swiss Federal Act on International Private Law of December 18, 1987. According to this provision, Swiss authorities do not recognize and enforce a foreign court's judgment in matters concerning intellectual property rights, if such foreign judgment was rendered against a defendant with domicile in Switzerland. Defendants herewith explicitly declare that they will make use of any and all rights and remedies available to object to the Court's jurisdiction and to the enforceability of the Court's judgment in Switzerland, where Defendants are domiciled.

2.    I make this declaration in connection with (1) ActaMed's and Mr. Meyling's Motion to Dismiss for forum non conveniens, failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction; and (2) Mr. Meyling's Motion to Dismiss for lack of personal jurisdiction. I have personal knowledge and if called as a witness would testify competently about the following facts.

3.    According to February 18, 2005 and May 19, 2005 letters from Swiss counsel for several Plaintiffs and others, Plaintiffs Elsevier and Blackwell and others have demanded that ActaMed cease and desist from activities which Plaintiffs claim violate the copyright and unfair competition laws of Switzerland and of European Union member countries, along with the U.S. laws.  True and accurate copies of publisher's counsel Dr. Peter Mosimann's February 18, 2005 letter to ActaMed's outside counsel Dr. Giovanna Bonafede, and Dr. Mosimann's May 19, 2005 letter to me, are attached as Exhibits 1 and 2 respectively.

4.    According to an April 14, 2005 letter from Dr. Mosimann to me, Plaintiffs Elsevier, Blackwell, Massachusetts Medical Society and Wiley-Liss and other publishers have recently filed a criminal complaint in Lugano, Switzerland against ActaMed for alleged violations relating to ActaMed's services. A true and accurate copy of Dr. Mosimann's letter to me dated April 14, 2005 regarding this criminal complaint is attached as Exhibit 3.

5.    According to Minutes of the Cantonal Police in Ticino Regarding House Search and Confiscation with ActaMed, the Swiss police seized and hold under seal numerous documents and files of ActaMed that may be relevant to this U.S. case.  Many of those seized records are sealed and subject to the criminal complaint, and therefore are not accessible.  Attached as

- 3 -

Exhibits 4 and 5 respectively are true and accurate copies of the Minutes of the Cantonal Police Ticino regarding House Search and Confiscation with ActaMed, dated April 12, 2005 (Exhibit 4), and my tentative partial English translation of those Minutes (Exhibit 5).

6.    As of the filing date of this Declaration, I am unaware of the Swiss prosecutor having instituted official criminal proceedings (i.e. no criminal action has been brought in court) against ActaMed, and understand that the Swiss authorities having initiated initial investigations continue to hold seized records and files under seal.

7.    According to a June 2, 2005 letter from Dr. Mosimann to me, Plaintiffs Elsevier and Blackwell and others have filed in Switzerland requests for debt enforcement against ActaMed, which requests in part may toll the statute of limitations on civil actions.  A true and accurate copy of Dr. Mosimann's letter to me dated June 2, 2005 (without enclosures) is attached as Exhibit 6.

8.    Under Swiss principles of recognition of foreign court decisions on intellectual property matters, I believe that any judgment rendered in the U.S. court may not be enforceable against either Defendant, because they are both domiciled in Switzerland and because they have not made appearances without reservation in this Court.  Attached as Exhibits 7 and 8

respectively are copies of Articles 25, 26, and 111 section 1 of
the Swiss Federal Act on International Private Law (Exhibit 7),
which concerns recognition in Switzerland of foreign decisions,
and my translation of those Articles (Exhibit 8).

9.    Attached as Exhibit 9 is a true and accurate copy of a
web page from www.prolitteris.ch, which describes ProLitteris,
the Swiss copyright society for literature and visual art.
ProLitteris acts under the authorization and supervision of the
Swiss Federal Institute of Intellectual Property, and
ProLitteris has the exclusive authority in Switzerland to
collect and distribute royalties for activities falling under
the statutory license of the Swiss Copyright Act.

10.    Attached as Exhibit 10 is a true and accurate copy of
selected web page in German from www.dun.ch, which describes
DUN, the Swiss association of users of copyrights. DUN comprises
private and public user organizations and institutions from
Switzerland and Liechtenstein. The tasks of DUN (according to
its articles of association) are, among others, to sensitize its
members for the different users' rights and to represent the
common interests of users vis-à-vis those of the Confederation
(i.e. the Swiss State), the copyright societies (i.e.
ProLitteris) and the public.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 14 day of June, 2005.

Marco A. Rizzi, L.L.M.

BOS-870832 v1 0524235-0901
6/14/2005

# WENGER PLATTNER

B A S E L · Z Ü R I C H · B E R N

ADVOKATUR UND NOTARIAT
ATTORNEYS AT LAW
AND PUBLIC NOTARIES

CH-4010 BASEL
AESCHENVORSTADT 55
TELEFON +41 (0)61 279 70 00
TELEFAX +41 (0)61 279 70 01
BASEL@WENGER-PLATTNER.CH
WWW.WENGER-PLATTNER.CH

DR. WERNER WENGER*
DR. JÜRG PLATTNER
DR. PETER MOSIMANN
STEPHAN CUENI*
PROF. DR. GERHARD SCHMID
DR. JÜRG RIEBEN
DR. MARKUS METZ
DR. DIETER GRÄNICHER*
KARL WÜTHRICH
YVES MAUI
HEPPO TH. BECK, M.C.J.
DR. FRITZ ROTHENBÜHLER
DR. STEPHAN NETZLE, LL.M.
DR. BERNHARD HEUSLER
DR. ALEXANDER GUTMANS, LL.M.*
PETER SAHLI*
DR. THOMAS WETZEL
DR. MARC S. NATER, LL.M.
SUZANNE ECKERT
DOMINIQUE PORTMANN
DR. FELIX UHLMANN, LL.M.
PROF. DR. MARKUS MÜLLER-CHEN
ROLAND MATHYS, LL.M.
THOMAS REBSAMEN
DR. ASTRID BOOS-HERSBERGER, LL.M.
MARTIN SOHM
BEDA ASCHENBRENNER, LL.M.
BRIGITTE UMBACH-SPAHN, LL.M.
GURPUR OSTERBECHER SPAHROL
DR. MARKUS SCHOTT, LL.M.
JAMES KOCH
DR. CHRISTOPH MÜLLER, LL.M.
DR. SIMONE BRAUCHBAR BIRKHÄUSER, LL.M.
AYESHA CURMALLY
CLAUDIUS GELZER
MARIE-CHRISTINE MÜLLER-GERSTER
CORNELIA WEISSKOPF GANZ
OLIVER ALBRECHT
DR. CHRISTOPH ZIMMERLI, LL.M.
DR. REGULA HINDERLING*
HANS DÉLURIGS
DR. STEFHAN KESSELBACH
MICHAELA JAMMUTER
CHRISTIAN ROMANN
RODERICH RODORFF?
DR. ESTER PLETZ

REFERALS ANALYSIS
KLARATADTLE

* AUCH VOR DEM UND GERICHT
** IN ANDER ZÜRICH, ODER KULTUR, UNE
AUF DAS RECHTSANWALT SREGISTER EINGETRAGEN

BASEL·ZÜRICH
CH-8700 KÜSNACHT-ZÜRICH
GOLDBACH-CENTER
SEESTRASSE 39
TELEFON +41 (0)44 552 58 90
TELEFAX +41 (0)44 552 58 91
ZUERICH@WENGER-PLATTNER.CH

BÜRO BERN  CH-3000 BERN 6
WAISENHAUSPLATZ 14
TELEFON +41 (0)31 552 16 15
TELEFAX +41 (0)31 552 16 11
BERN@WENGER-PLATTNER.CH

**By fax and mail:**
**091 923 79 73**
**(5 pages)**

Item e Associati
Dr. Giovanna Bonafede
Via Peri 9a
6900 Lugano

Basel, February 18, 2005  MoP/frn/hud

**ActaMed (Via Marketing & Promotion SA)**
**Elsevier B.V., Netherlands and  Elsevier Inc., USA**
**Blackwell Publishing Ltd, UK, and  affiliated companies of Blackwell**
**Publishing Ltd**

Dear Colleague

Holger Gehring and the undersigned herewith refer to the meeting of January 25, 2005, with you, Mr. Robert Gmelig-Meyling of ActaMed as well as Ms Franziska Eberhard of ProLitteris and Dr. Magda Streuli-Youssef, attorney of ProLitteris.

As you know, Mr. Gehring and I are the attorneys of Elsevier B.V., Radarweg 29, 1043 NX Amsterdam, The Netherlands; Elsevier Inc., 360 Park Avenue South, New York, New York 10010, United States of America and Blackwell Publishing Ltd., 9600 Garsington Road, Oxford OX4 2DQ, UK; Blackwell Publishing Inc., Blackwell Publishing Asia, Blackwell Verlag, Blackwell Munksgaard, Blackwell Professional. Our clients are renowned scientific publishers and are not only active in the US but also in Europe including Switzerland. They publish recognized scientific journals well-known to the scientific community. Elsevier BV for instance publishes such journals as *Tetrahedron*, *The Lancet*, *Fungal Genetics and Biology* and *Behaviour Research and Therapy.* Blackwell Publishing publishes, among others, journals such as *Haemophilia*, *Seminars in Dialysis* and *J Viral Hepatitis.*

The journals of my clients and the contributions regularly published by them are protected by copyright laws; this not only in Switzerland in the sense of art. 2 or 4 Swiss Federal Copyright Act (URG) but also in the European Union member countries. The same applies to the US where many of the works in question originate. And the same also applies to the rest of the world.

1.  ActaMed is presently operating three different businesses :

    (i)   the *literature service* which consists of printing newsletters, designed specifically for the respective specialization of medical doctors and health practitioners. The newsletters list the most important and recent articles in the field concerned and show short abstracts of articles which could then be ordered in full text from ActaMed, either online by searching the database of ActaMed's website or as print version. This service, including the ordering of the articles, is entirely free for the medical doctors and health practitioners, and, as confirmed by Mr. Gmelig-Meyling in the above meeting, sponsored by the pharmaceutical industry;

    (ii)  the *library service* by which ActaMed operates online document delivery (docdel) services to anyone; this service is made possible by the ActaMed own database in which the articles of our clients are stored by electronic means;

    (iii) the *copy service* by which ActaMed delivers what in the publishing industry are known as "reprints", i.e. multiple copies of single articles, starting in the case of ActaMed's own indication from volume of 250 copies up to 5'000 and more copies. As indicated by Mr. Gmelig-Meyling, the main client for these orders is the pharmaceutical industry which delivers these copies either to customers at conferences, or directly to health practitioners by mail.

2.  The ActaMed services as described above infringe the rights of our clients, both with respect to copyright held by our clients in the individual articles, in the selection and arrangement of journals and protected under foreign copyright law and according to art. 61 et seq. Swiss Copyright Act (URG), and with respect to unfair competition law, notably art. 5 c / art. 9 of the Swiss Unfair Competition Act. In addition, these services are in clear and persistent material breach of our clients licensing terms and conditions as set out in licences granted to ActaMed for online or print subscriptions. Finally, to the extent that journal titles including

2

trade marks, trading styles and get-up are reproduced, the conduct of ActaMed violates these rights of our clients.

3.  ActaMed argued that their services were legitimate under the legal license of art. 19 URG. We have, however, explained that all three services of ActaMed are illegal, and this for several reasons. First, the delivery of copyright protected articles to customers could only be within the law if they are permitted by the law applicable in the country where the user is domiciled. Swiss law is not applicable to customers/users having their domicile outside Switzerland. Second, as far as Swiss law would be applicable, art. 19 clause 1c URG certainly does not allow electronic document delivery (docdel) services (BÜHLER, Schweizerisches und Internationales Urheberrecht im Internet, 1999, p. 260-262). Furthermore, the reprint, or multiple copying service, and the online docdel service of ActaMed respond to requests of pharmaceutical companies. As confirmed by Mr. Gmelig-Meyling, these copies are delivered in order to be distributed or sent to customers of the pharmaceutical companies. The distribution of copies to third parties, such as customers (doctors, hospitals etc.), is obviously not covered by art. 19 clause 1c URG, a point of view which was shared in the meeting by the attorney of ProLitteris. This provision allows, to a certain extent, internal use of copyright protected works, but not a commercial service of the pharmaceutical companies in favour of their customers.

4.  ActaMed also violates art. 5 c of the Swiss Federal Act on Unfair Competition. ActaMed's services are positioning itself in direct competition with our clients and with their licensed customers. First, the delivery services compete with the subscriptions of journals that our clients have agreed upon with their subscribers. The subscribers of our clients are offered by ActaMed to order individual articles of our clients from ActaMed at a lower price, and would therefore no longer need to subscribe to the journals published by our clients. A respective downtrend in respect of subscriptions has already been marked and felt. Second, ActaMed hinders our clients to grow their own existing electronic document delivery service of single articles and the reprint business), both by running these services themselves, or by licensing third parties, whether entities specialising exclusively in the business of document delivery, or libraries diversifying in to this business.

In view of the continuing development of technology and commercial practice, ActaMed is establishing its delivery service in direct competition

with our clients; with the big difference, though, that ActaMed does not have to deal with the substantial expenditure of originating material, of maintenance and development of the editing, of organising peer-review and publishing business. Considering that electronic distribution increasingly replaces the traditional primary use, the sale of print subscription of journals, it becomes obvious that such a use may only take place upon prior agreement with the holder of the respective rights. Therefore, the services ActaMed provides are also violating the rules of fair trading. According to these rules, ActaMed is not allowed to use services offered by our clients or to use work results that are ready to be marketed of our clients in a competitive manner without any appropriate expenditure of its own, by means of a technical process of re-production (art. 5 c of the Swiss Federal Act on Unfair Competition).

5.  Based on the above considerations, we demand from ActaMed to comply with the following conditions and confirm same with letter to the undersigned by no later than March 3, 2005:

    (i)   ActaMed

          •   ceases and desists immediately to offer, produce and deliver multiples hard copies (reprints) (offered by ActaMed as "copy-service"), of any copyright protected article of our clients to any third party, including any re-print business such as new editions of a specific article of our clients, or translation into other languages;

          •   ceases and desists immediately to offer and deliver copies online (offered by ActaMed as "online library service") of any copyright protected article of our clients to any third party;

          •   ceases and desists immediately to scan and/or store the copyright protected articles of our clients for the above services, to operate a database with copyright protected articles of my clients fixed in any medium by electronic means; and shall erase and delete from its databases any scanned and stored copy produced by ActaMed in the past of copyright protected articles of our clients.

    (ii)  ActaMed reveals all relevant business information about the literature service, library service and reprint, ie multiple copy service, for the years 2002 to 2004. The business information should at

4

least identify the individual publisher concerned (Elsevier, Blackwell), the articles and the number of copies ordered/supplied concerned and the ordering party, recipients, sponsors and beneficiaries.

(iii)  ActaMed shall make an offer to compensate publishers for losses incurred, by at least a rate of 20 % of ActaMed's turnover of the years 2002 to 2004.

If ActaMed does not comply with the above-mentioned demands within the above deadline and does not confirm same in writing on or before such time, our clients may initiate legal proceedings in Switzerland and/or abroad without further notice. We reserve all our clients rights and remedies at this stage, including without limitation any rights based on the law of contract, tort, unlawful acts and/or enrichment, copyright, intellectual property, unlawful competition, as well as any remedy anywhere in the world, whether civil, administrative or criminal, and to take any legal or other steps to safeguard our client's interests.

We hope that such measures will not prove necessary.

If ActaMed complies with the above conditions, our clients are prepared to consider, upon ActaMed's offer, potential licensing arrangements and agreements regarding some or all of the three types of services described above. Please notify us, equally latest by the date mentioned above, whether you are ready and willing to enter into such license agreements.

Yours sincerely

Dr. Peter Mosimann

cc:    - Ms Dr. Magda Streuli-Youssef, Rechtsanwältin, Walder Wyss & Partner,
         Münstergasse 2, Postfach 2990, 8022 Zürich
         (by fax and mail: 01 265 75 50)
       - Mr. Carlo Scollo Lavizzari (by e-mail: csl@datacomm.ch)
       - Mr. Holger Gehring (by e-mail: holgergehring@tiscali.ch)

# WENGER PLATTNER

B A S E L · Z Ü R I C H · B E R N

ADVOKATUR UND NOTARIAT

ATTORNEYS AT LAW

AND PUBLIC NOTARIES

CH-4010 BASEL
AESCHENVORSTADT 55
TELEFON +41 (0)61 279 70 00
TELEFAX +41 (0)61 279 70 01
BASEL@WENGER-PLATTNER.CH
WWW.WENGER-PLATTNER.CH

DR. WERNER WENGER*
DR. JÜRG PLATTNER
DR. PETER MOSIMANN
STEPHAN CUENI *
PROF. DR. GERHARD SCHMID
DR. JÜRG RIEBEN
DR. MARKUS METZ
DR. DIETER GRÄNICHER*
KARL WÜTHRICH
YVES MEILI
FÜRPRECHER BEELI (M.C.J.)
DR. FRITZ ROTHENBÜHLER
DR. STEPHAN NETZLE, LL.M.
DR. BERNHARD HEUSLER
DR. ALEXANDER GUTMANS, LL.M *
PETER SAILE **
DR. THOMAS WETZEL
DR. MARCO S. NATER, LL.M.
SUZANNE ECKERT
DR. DOMINIQUE PORTMANN
DR. FELIX UHLMANN, LL.M.
PROF. DR. MARKUS MÜLLER-CHEN
ROLAND MATHYS, LL.M.
DR. ASTRID BOOS-HERSBERGER, LL.M.
MARTIN SCHÜB
RETO ASCHENBERGER, LL.M.
BRIGITTE UMBACH-SPAHN, LL.M.
GUDRUN ÖSTERREICHER SPANIOL
DR. MARKUS SCHOTT, LL.M.
DR. CHRISTOPH MÜLLER, LL.M.
DR. SIMONE BRAUCHBAR BIRKHÄUSER, LL.M.
AYESHA CURMALLY *
CLAUDIUS SIEBER, LL.M.
MARIE-CHRISTINE MÜLLER-FÖRSTER
CORNELIA WEISSKÖPF-FRANZ
OLIVER ALBRECHT
DR. CHRISTOPH ZIMMERLI, LL.M.
DR. MELISSA GRUNDERING
DR. STEPHAN KESSELBACH
MALEARNA GRAMIGNA
CHRISTIAN ROTHEN
REIMTRAUD ALDER-CRUZ
DR. ULRIKE BLASY
DR. ADRIAN RAPP
DR. MEINRAD VETTER, LL.M
MARKUS SCHÄFER
ALEXANDRA HAUSAMMANN
CLAUDIA HADORN

ANDREAS MÄUSLI
· CONSULTANT

* ALSO ENGLISH SOLICITOR
** ALSO NEW ZEALAND BARRISTER AND
   SOLICITOR AND AUSTRALIAN LEGAL PRACTITIONER

BÜRO ZÜRICH
CH-8700 KÜSNACHT ZÜRICH
GOLDBACH CENTER
SEESTRASSE 39
TELEFON +41 (0)43 222 38 00
TELEFAX +41 (0)43 222 38 01
ZUERICH@WENGER-PLATTNER.CH

BÜRO BERN CH-3000 BERN 7
ZINGGSTRASSE 1
TELEFON +41 (0)31 357 40 00
TELEFAX +41 (0)31 357 40 01
BERN@WENGER-PLATTNER.CH

Advanced copy by fax (2 pages)
044 396 21 11

Schaufelberger & van Hoboken
Mr. Marco A. Rizzi, LL.M.
Seestrasse 17
P.O. Box
8702 Zürich-Zollikon 2

Basel, May 19, 2005  MoP/ruc

**Blackwell Publishing Ltd., Blackwell Publishing Asia, Blackwell Munksgaard, Blackwell Verlag, Blackwell Professional, Springer Science and Business Media GmbH & Co. KG, Birkhäuser Verlag AG, Elsevier BV**

**Via Marketing and Promotion SA ("ActaMed")**

Dear Colleague

In this matter reference is made to your letter of May 10, 2005. I have discussed your proposal with my clients. I have also informed my clients that we had a telephone conversation on May 11, 2005. I had put the question whether ActaMed be prepared to liquidate the damages suffered by my clients before May 10, 2005; you have instructed me that the publishers must look entirely to ProLitteris to get any form of damage liquidation for past activities of ActaMed and that ActaMed would like to avoid a double payment.

1.  My clients have taken notice that ActaMed as a "unilateral action" has suspended its "On-line Library Service" and its "Copy Service" and there is no "Library Service" by that name offered at the ActaMed website. It is my understanding that ActaMed has ceased any service by which a user can order a copy of a journal article from ActaMed including but not limited to the so-called "ImiCard" and "Literature Service". We understand that ActaMed's cessation applies to both on-line and print delivery.

**WENGER PLATTNER**

2.   My clients reject the unilateral action of your client based on your "without prejudice" offer. My clients still request full compliance with the conditions of the cease and desist letters as submitted to you on February 18, 2005 and April 28, 2005. They still strictly hold ActaMed liable for past infringements irrespective of any arrangements that ActaMed purports to have had with ProLitteris. The amount of reprints made by ActaMed is very important and is certainly not covered by the GT 8 of ProLitteris. Mr. Gmelig Meyling had for instance disclosed during our meeting of January 25, 2005 an amount of 500'000 pages reprinted in 2004 of publications of Blackwell Publishing. The levies, if any, paid by ActaMed to ProLitteris can certainly not be a liquidation of the damage suffered by this publisher. Only in case of full compliance and full liquidation of the damages occurred would each of my clients be in a position to assess the possibility of licensing some or all of ActaMed's past and current activities.

3.   Let me clearly point out that the offer of your client to disclose to my clients the information on any copy made of articles published by the clients during the period 2002 to 2004, identifying, for each single article (i) number of hard copies made or of copies supplied electronically, including downloads (all together the "copies"), (ii) payments received for making the Copies and (iii) copyright fees paid for the Copies only in case my clients are prepared to negotiate the licence agreement, and this, only for future deliveries or other services, is entirely unacceptable. ActaMed owes these informations to my clients in any event pursuant to Swiss copyright law and the foreign copyright laws applicable in each case.

4.   My clients furthermore do not accept that the offer of ActaMed can be revoked only by ActaMed and that therefore the proceeding offered by ActaMed is only at the discretion of ActaMed.

Yours sincerely

Dr. Peter Mosimann

cc:   Frau Dr. Magda Streuli-Youssef, Walder Wyss & Partners Münstergasse 2, Postfach 2990, 8022 Zürich (present by fax: 01 265 75 50)

2

## WENGER PLATTNER

BASEL · ZÜRICH · BERN

ADVOKATUR UND NOTARIAT
ATTORNEYS AT LAW
AND PUBLIC NOTARIES

CH-4010 BASEL
AESCHENVORSTADT 55
TELEFON +41 (0)61 279 70 00
TELEFAX +41 (0)61 279 70 01
BASEL@WENGER-PLATTNER.CH
WWW.WENGER-PLATTNER.CH

DR. WERNER WENGER*
DR. JÜRG PLATTNER
DR. PETER MOSIMANN
STEPHAN CUENI *
PROF. DR. GERHARD SCHMID
DR. JÜRG RIEBEN
DR. MARKUS METZ
DR. DIETER GRÄNICHER*
KARL WÜTHRICH
YVES MEILI
FILIPPO TH. BECK, M.C.J.
DR. FRITZ ROTHENBÜHLER
DR. STEPHAN NETZLE, LL.M.
DR. BERNHARD HEUSLER
DR. ALEXANDER GUTMANS, LL.M.*
PETER SAHLI**
DR. THOMAS WETZEL
DR. MARK S. NATER, LL.M.
SUZANNE ECKERT
DOMINIQUE PORTMANN
DR. FELIX UHLMANN, LL.M.
PROF. DR. MARKUS MÜLLER-CHEN
ROLAND MATHYS, LL.M.
THOMAS REBSAMEN
DR. ASTRID BOOS-HERSBERGER, LL.M.
MARTIN SOHM
RETO ASCHENBERGER, LL.M.
BRIGITTE UMBACH-SPAHN, LL.M.
GUDRUN ÖSTERREICHER SFANIOL
DR. MARKUS SCHOTT, LL.M.
JAMES KOCH
DR. CHRISTOPH MÜLLER, LL.M.
DR. SIMONE BRAUCHBAR-BIRKHAUSER, LL.M.
AYESHA CURMALLY
CLAUDIUS GELZER
MARIE-CHRISTINE MÜLLER-GERSTER
CORNELIA WEISSKOPF-GANZ
STEVEN ALBRECHT
DR. CHRISTOPH ZIMMERLI, LL.M.
DR. REGULA HINDERLING
IRENE DERUNGS
DR. STEPHAN KESSELBACH
MADLAINA GAMMETER
CHRISTIAN ROTHEN
RODRIGO RODRIGUEZ
DR. PETER PLETZ

ANDREAS MARSCHI
KONSULENT

* AUCH NOTARE IN BASEL
** ZÜRCHER ZÜRCHER NOTARIATEN
ALS RECHTSANWALT NICHT ZUGELASSEN

**Present by fax (37 pages)**
**044 396 21 11**

Schaufelberger & van Hoboken
Mr. Marco A. Rizzi, LL.M.
Seestrasse 17
P.O. Box
8702 Zürich-Zollikon 2

Basel, April 14, 2005  MoP/dod/ruc

**Via Marketing and Promotion S.A.**
**Elsevier B.V. and Affiliated Companies; Blackwell Publishing Ltd. and**
**Affiliated Companies**

Dear Colleague,

Thank you for your letter of Tuesday, April 12, 2005. I have taken notice that you have been mandated by Via Marketing & Promotion S.A.

I can confirm that Elsevier, Inc., Blackwell Publishing Ltd., British Medical Journal Publishing Group Ltd., Elsevier B.V., Massachusetts Medical Society, John Wiley & Sons, Inc., Wiley Periodicals, Inc., Wiley-Liss, Inc. and Springer Science & Business Media GmbH & Co. KG have filed a criminal complaint in Lugano. With this letter I also inform you that Blackwell Publishing, Inc., Elsevier, Inc., Massachusetts Medical Society and Wiley-Liss, Inc. have filed a civil claim against Via Marketing & Promotion S.A., d/b/a, ActaMed Services and Robert Th. Gmelig/Meyling with the United States District Court for the District of Massachusetts on April 7, 2005. Mr. William S. Strong, Esq., attorney of the plaintiffs, will send also copy of this claim directly to the defendants. For reasons of convenience you already receive a copy.

After our phone conference of April 6, 2005 I have contacted my clients. They insist on receiving from your client an approval of the cease and desist letters as submitted on February 18, 2005. Each of my clients may then consider

BÜRO ZÜRICH
CH-8700 KÜSNACHT ZÜRICH
GOLDBACH-CENTER
SEESTRASSE 39
TELEFON +41 (0)43 222 38 00
TELEFAX +41 (0)43 222 38 01
ZUERICH@WENGER-PLATTNER.CH

BÜRO BERN  CH-3000 BERN 6
JUNGFRAUSTRASSE 1
TELEFON +41 (0)31 357 00 00
TELEFAX +41 (0)31 357 00 01
BERN@WENGER-PLATTNER.CH

ALLE ANWÄLTE SIND AN IHREM JEWEILIGEN STANDORT
IM ANWALTSREGISTER EINGETRAGEN

**WENGER PLATTNER**

licensing ActaMed's activity for the future for some aspects of that activity. ActaMed should, however, be aware of the fact that further publishers have mandated the undersigned to send cease and desist letters to your client.

Yours sincerely,

Dr. Peter Mosimann

Repubblica e Cantone
Ticino

**ti**

**Polizia cantonale**
www.polizia.ti.ch

# Verbale di perquisizione
# e di sequestro

Al MP
Sost. PP Marisa ALFIER
6300 Lugano

In esecuzione del Suo/Vostro ordine del _11.04.2005_ si attesta che è stata effettuata il _12.04.2005_

alle ore _10.00_ a _Porza_ ubicazione esatta: _c/o ACTA Med,_
_Via Chiasso 15_

con l'assistenza di sindaco/municipale ____

previa apertura con la forza operata da ____

la perquisizione domiciliare presso _ACTA Med_

alla presenza di _GMELIG MEYLING Mark, avv. Bonafede Giovanna,_
_avv. ITEM Ettore, GMELIG MEYLING Robert_

| Locale e collocazione | Oggetti sequestrati | X |
|---|---|---|
| | - mappetta corrispondenza avv. Mosimann | ☐ |
| | c/o Studio Scollo-Lavizzari (mappetta A) | ☐ |
| | - mappetta corrispondenza con PROLITTERIS | ☐ |
| | (mappetta B) | ☐ |
| | - mappetta contenente autorizzazioni alla | ☐ |
| | riproduzione da parte di autori (mappetta C) | ☐ |
| | - CD con lista dei servizi offerti (mappetta D) | ☐ |
| | (in 2 copie di cui una sigillata) | ☐ |
| | - CD contenente tutti gli altri dati | ☐ |
| Materiale sotto | (contratti + liste clienti, ecc....) | ☐ |
| suggello e | in 2 copie di cui una sigillata | ☐ |
| soggetto a | - Busta contenente bilanci + conto | ☐ |
| reclamo | economico VMP S.A. anni 1997/2004 | ☐ |
| | (2004 - bozza) | ☐ |

Gli oggetti sequestrati vengono presi in consegna dalla polizia; quelli contrassegnati con la lettera X sono affidati in custodia a _M.P. Lugano_ con diffida a non disporre senza autorizzazione scritta delle autorità penali o di polizia.

Osservazioni: ____

Il presente verbale viene steso su _2_ pagina/e in _3_ esemplari, di cui _1_ per le autorità inquirenti, 1 per il detentore dei locali perquisiti o degli oggetti sequestrati e 1 per il custode degli oggetti sequestrati.

Letto, approvato e sottoscritto a _Porza_ il _12.04.2005_ alle ore _12.30_

Gli agenti di polizia:

Isp. FIENI Angelo

Il detentore dei locali e/o oggetti:

Il custode degli oggetti:

Collaboratori e testimoni:

No presente

Repubblica e Cantone
Ticino

**ti**

**Polizia cantonale**

## Verbale di perquisizione e di sequestro

foglio n. 2

| Locale e collocazione | Oggetti sequestrati | X |
|---|---|---|
| Materiale depositato c/o ACTA Med Porza. | Vari classificatori contenenti autorizzazioni alla riproduzione da parte di autori ( NB. Questi classificatori sono depositati in un armadio, ufficio di riserva al 3° piano, con apposto sigilli) | |

Questo foglio aggiuntivo è parte integrante del verbale di perquisizione e sequestro concernente:

ACTA Med   Via Chiasso 15

Letto, approvato e sottoscritto a _____Porza_____, il _12.04.2005_, alle ore _12.30_.

Gli agenti di polizia:          Il detentore dei locali e/o oggetti:          Il custode degli oggetti:          Collaboratori e testimoni:

# Tentative English Translation

## of

## Minutes of the Cantonal Police Ticino regarding House Search and Confiscation with ACTA Med, Dated April 12, 2005

On April 12, 2005, from 10.00 a.m. until 12.30 a.m a house search took place at the offices of ACTA Med, Via Chiosso 15, Porza.

The following persons were present at the house search: Mark Gmelig Meyling, Giovanna Bonafede (attorney at law), Ettore Item (attorney at law) and Robert Gmelig Meyling.

The police sized the following objects:

- File of correspondence of Mr. Mosimann, attorney at law, c/o lawyers office Scollo-Lavizzari (file A)

- File of correspondence with PROLITTERIS (file B)

- File containing authorizations of authors regarding the reproduction (file C)

- CD with list of offered services (file D) (in two copies, on of them is sealed)

- CD containing all the other data (contracts, list of clients, etc.), in two copies, one of them is sealed (*this material is sealed and subject to complaint*)

- Envelope containing balances and accounts of VMP S.A., June 1997/2004 (2004 - draft) (*this material is sealed and subject to complaint*)

- Various folders containing authorizations regarding reproductions on the part of authors (said folders are deposited with ACTA Med, Porza, in an armoire, in a reserve office on the third floor, under seal)

(…)

ADVOKATUR UND NOTARI

ATTORNEYS AT LAW

AND PUBLIC NOTARIES

## WENGER PLATTNER

B A S E L · Z Ü R I C H · B E R N

CH-4010 BASEL

AESCHENVORSTADT 55

TELEFON +41 (0)61 279 70 00

TELEFAX +41 (0)61 279 70 01

BASEL@WENGER-PLATTNER.CH

WWW.WENGER-PLATTNER.CH

Schaufelberger & van Hoboken
Mr. Marco A. Rizzi, LL.M.
Seestrasse 17
P.O. Box
8702 Zürich-Zollikon 2

DR. WERNER WENGER *
DR. JÜRG PLATTNER
DR. PETER MOSIMANN
STEPHAN OVEN *
PROF. DR. GERHARD SCHMID
DR. JÜRG RIEBEN
DR. MARKUS METZ
DR. DIETER GRANICHER *
KARL WÜTHRICH
YVES MEILI
FILIPPO TH BECK, M.C.J.
DR. FRITZ ROTHENBÜHLER
DR. STEPHAN NETZLE, LL.M.
DR. BERNHARD HEUSLER
DR. ALEXANDER GUTMANS, LL.M.*
PETER SAHLI *
DR. THOMAS WETZEL
DR. MARC S. NATER, LL.M.
SUZANNE ECKERT
DR. DOMINIQUE PORTMANN
DR. FELIX UHLMANN, LL.M.
PROF. DR. MARKUS MÜLLER CHEN
ROLAND MATHYS, LL.M.
DR. ASTRID KOOS-HERSBERGER, LL.M.
MARTIN SOHM
RETO ASCHENBERGER, LL.M.
BRIGITTE UMBACH-SPAHN, LL.M.
GUDRUN ÖSTERREICHER SPANIOL
DR. MARKUS SCHOTT, LL.M.
DR. CHRISTOPH MÜLLER, LL.M.
DR. SIMONE BRAUCHBAR BIRKHÄUSER, LL.M.
AYESHA CURMALLY *
CLAUDIUS GELZER, LL.M.
MARIE-CHRISTINE MÜLLER GERSTER
CORNELIA WEISSKOPF GANZ
OLIVER ALBRECHT
DR. CHRISTOPH ZIMMERLI, LL.M.
DR. REGULA HINDERLING
DR. STEPHAN KESSELBACH
MAGDALENA GARAMVÖLGYI
CHRISTIAN ROTHLIN
RODRIGO RODRIGUEZ
DR. PETER REETZ
DR. ADRIAN RAPP
DR. RETO VONZUN, LL.M.
MARTINA STAHLER
CRISTINA STICCI DE ZANZIBAR
DANIEL TOBLER **

ANDREAS MAERKLI
* KONSULENT

* AUCH NOTARE IN BASEL

** IN FESER ZUM FÜR NOTARIELLEN
AUS-UND NISSENWALT NICHT ZUGELASSEN

Basel, June 2, 2005  RaA/rem

**Via Marketing and Promotion S.A.**

**Elsevier B.V. and Affiliated Companies;**

**Blackwell Publishing Ltd. and Affiliated Companies**

Dear Colleague

This letter is to inform you that our clients filed the requests for debt enforcement against your client in order to interrupt the running of the statute of limitations.

Please find enclosed copies of the requests for debt enforcement mentioned above.

Yours sincerely

Dr. Peter Mosimann

BÜRO ZÜRICH
CH-8700 KÜSNACHT ZÜRICH
GOLDBACH CENTER
SEESTRASSE 39
TELEFON +41 (0)43 222 38 00
TELEFAX +41 (0)43 222 38 01
ZÜRICH@WENGER-PLATTNER.CH

BÜRO BERN  CH-3000 BERN A
JUNGFRAUSTRASSE 1
TELEFON +41 (0)31 357 00 00
TELEFAX +41 (0)31 357 00 01
BERN@WENGER-PLATTNER.CH

<u>Enclosures</u>

<u>cc.:</u>  Mr. Carlo Scollo Lavizzari (by e-mail csl@datacomm.ch)
Mr. Holger Gehring (by e-mail holgergehring@tiscali.ch)



**CONFOEDERATIO HELVETICA**
Die Bundesbehörden der Schweizerischen Eidgenossenschaft

Homepage
Mail
Suche

français
italiano

Systematische Sammlung des Bundesrechts
Inhaltsverzeichnis des Landesrechts
Deckblatt | SR 291 Bundesgesetz über das Internationale Privatrecht
1. Kapitel: Gemeinsame Bestimmungen
5. Abschnitt: Anerkennung und Vollstreckung ausländischer Entscheidungen
◄ Art. 24 V. Staatenlose und Flüchtlinge
► Art. 26 I. Anerkennung / 2. Zuständigkeit ausländischer Behörden

## Art. 25

I. Anerkennung

1. Grundsatz

Eine ausländische Entscheidung wird in der Schweiz anerkannt:

a.

> wenn die Zuständigkeit der Gerichte oder Behörden des Staates, in dem die Entscheidung ergangen ist, begründet war;

b.

> wenn gegen die Entscheidung kein ordentliches Rechtsmittel mehr geltend gemacht werden kann oder wenn sie endgültig ist, und

c.

> wenn kein Verweigerungsgrund im Sinne von Artikel 27 vorliegt.

---

*Stand am 3. Mai 2005*



Homepage
Mail
Suche

français
italiano

Systematische Sammlung des Bundesrechts
Inhaltsverzeichnis des Landesrechts
Deckblatt | SR 291 Bundesgesetz über das Internationale Privatrecht
1. Kapitel: Gemeinsame Bestimmungen
5. Abschnitt: Anerkennung und Vollstreckung ausländischer Entscheidungen
◀ Art. 25 I. Anerkennung / 1. Grundsatz
▶ Art. 27 I. Anerkennung / 3. Verweigerungsgründe

## Art. 26

2. Zuständigkeit ausländischer Behörden

Die Zuständigkeit ausländischer Behörden ist begründet:

a.
   wenn eine Bestimmung dieses Gesetzes sie vorsieht oder, falls eine solche fehlt, wenn der Beklagte seinen Wohnsitz im Urteilsstaat hatte;

b.
   wenn in vermögensrechtlichen Streitigkeiten die Parteien sich durch eine nach diesem Gesetz gültige Vereinbarung der Zuständigkeit der Behörde unterworfen haben, welche die Entscheidung getroffen hat;

c.
   wenn sich der Beklagte in einer vermögensrechtlichen Streitigkeit vorbehaltlos auf den Rechtsstreit eingelassen hat;

d.
   wenn im Falle einer Widerklage die Behörde, die die Entscheidung getroffen hat, für die Hauptklage zuständig war und zwischen Haupt- und Widerklage ein sachlicher Zusammenhang besteht.

*Stand am 3. Mai 2005*



Homepage
Mail
Suche

français
italiano

Systematische Sammlung des Bundesrechts
Inhaltsverzeichnis des Landesrechts
Deckblatt | SR 291 Bundesgesetz über das Internationale Privatrecht
8. Kapitel: Immaterialgüterrecht
◀ **Art. 110** II. Anwendbares Recht
▶ **Art. 112** I. Zuständigkeit / 1. Grundsatz

## Art. 111

**III. Ausländische Entscheidungen**

[1] Ausländische Entscheidungen betreffend Immaterialgüterrechte werden in der Schweiz anerkannt:

a.
     wenn sie im Staat ergangen sind, in dem der Beklagte seinen Wohnsitz hatte, oder
b.
     wenn sie im Staat ergangen sind, für den der Schutz der Immaterialgüter beansprucht wird, und der Beklagte keinen Wohnsitz in der Schweiz hat.

[2] Ausländische Entscheidungen betreffend Gültigkeit oder Eintragung von Immaterialgüterrechten werden nur anerkannt, wenn sie im Staat ergangen sind, für den der Schutz beansprucht wird, oder wenn sie dort anerkannt werden.

*Stand am 3. Mai 2005*

Article 25 IPL states the principle of recognition of foreign decisions in Switzerland as follows:
"*A foreign decision shall be recognized in Switzerland:*
**a. if the jurisdiction of the courts or authorities of the state in which the decision was rendered was established;**
*b. if no ordinary appeal is available against the decision or if it is final, and*
*c. if no ground for refusal pursuant to Article 27 exist*"

Pursuant to Article 26 IPL "*the jurisdiction of foreign authorities shall be established:*
*a. if a provision of this Act so provides, or, in the absence of such provision, if the defendant had his domicile in the state in which the decision was rendered;*
*b. if in a monetary dispute the parties subjected themselves by way of an agreement valid under this Act to the jurisdiction of the authority which rendered the decision;*
**c. if the defendant in a monetary dispute made an appearance without reservation;**
*d. (…)*".

Article 111 section 1 IPL states that:
"**Foreign decisions concerning intellectual property rights shall be recognised in Switzerland:**
**a. if they were rendered in the state in which the defendant had his domicile, or**
**b. if they were rendered in the state with respect to which the protection of intellectual property is requested and if the defendant has no domicile in Switzerland.**"

All the above are tentative translations from the German wording of Swiss laws.

**ProLitteris**   Joining   Members   Users   SMCC   New

Profile
History
Copyright
Membership
Welfare Foundation
Gazzetta
Information material
Links
Contact details
Feedback
Imprint

**Profile**

ProLitteris is the Swiss copyright society for literature and art. It was founded in 1974. Since 1 July 2000 it has also been licensed to operate in the principality of Liechtenstein.

It negotiates levies with user organisations for the use of the protected works (e.g. books, newspaper articles, pictures, photographs) of its members. These levies determine the fees to be paid to ProLitteris for the use of a work. This revenue is transferred to eligible members on the basis of its distribution rules after the share for the Welfare Foundation and the administration costs have been deducted.

ProLitteris grants users the right to broadcast the protected works on a radio or television channel and over cable networks, to receive radio and television programmes in public places such as restaurants and department stores, to print and publish photographs and art works, to produce photocopies of books and press articles, to record film and sound works on blank cassettes, to rent books, sound carriers and sound-image carriers in libraries and to use works in schools.

ProLitteris members include writers, authors of dramatic and scientific works, journalists, artists, photographers, book, newspaper and magazine publishing houses, publishing houses for art, stage and music and legal successors in all categories.

ProLitteris has formed reciprocal agreements with a number of foreign sister societies. Thus, ProLitteris protects the rights of foreign creators in Switzerland, while, in return, the contracting societies protect the interests of ProLitteris members in their country.

The Swiss Institute for Intellectual Property (Eidgenössische Institut für Geistiges Eigentum (IGE)), in its regulatory capacity, ensures that the activities of the copyright societies in Switzerland are conducted in the proper manner. It is responsible for approving their statutes, distribution rules and financial reports.

More than 6,300 creators and around 700 publishing houses are currently members of ProLitteris (as at June 2003).

Back
Contact
Home
Sitemap

# DACHVERBAND DER URHEBER- UND NACHBARRECHTSNUTZER

## Zielsetzungen und Aktivitäten

## 1. Zielsetzungen

a) Der DUN ist der Dachverband der schweizerischen Urheber- und Nachbarrechtsnutzer. Er vereinigt private und öffentliche Nutzerorganisationen und Institutionen aus der ganzen Schweiz und dem Fürstentum Liechtenstein.

b) Der DUN setzt sich für die Interessen der Nutzer von Urheber- und Nachbarrechten ein. Er sensibilisiert die Mitglieder für die verschiedenen Nutzungsrechte.

c) Der DUN befasst sich vorausschauend mit ordnungspolitischen, rechtlichen, wirtschaftlichen und ethischen Grundsatzfragen der Urheber- und Nachbarrechtsnutzung.

d) Der DUN vertritt die gemeinsamen Interessen der Nutzer gegenüber dem Bund, den Verwertungsgesellschaften, anderen Marktpartnern und der Öffentlichkeit. Er ist Anhörungs- und Mitwirkungspartner gegenüber den zuständigen Behörden im Bereich von Gesetzgebung, Verordnung und Gesetzesvollzug.

e) Der DUN schafft und pflegt Beziehungen zu den Verwertungsgesellschaften und den Behörden.

f) Der DUN schafft und pflegt Beziehungen und Allianzen zu anderen in- und ausländischen Verbänden und Organisationen, mit welchen gemeinsame oder ähnliche Interessen bestehen. Er berücksichtigt insbesondere die Entwicklung, Regelung und Praxis im europäischen Raum.

g) Der DUN leistet Informations- und Öffentlichkeitsarbeit zwecks Pflege und Förderung des Ansehens der Nutzer und ihrer Dienstleistungen.

h) Der DUN koordiniert die Vertretung seiner Mitglieder in wichtigen Gremien, wie in der Eidgenössischen Schiedskommission für die Verwertung von Urheberrechten und verwandten Schutzrechten.

-2-

2. <u>Aktivitäten</u>

    a) Der DUN pflegt die Kontakte zu den Verbandsmitgliedern. Er betreibt aktive Mitgliederwerbung. Er bereitet Informationen auf und gibt sie an seine Mitglieder weiter.

    b) Der DUN beteiligt sich aktiv an der Schaffung der rechtlichen Rahmenordnung. Er erarbeitet Vernehmlassungen.

    c) Der DUN nimmt Anhörungs- und Vernehmlassungsrechte wahr, die im Zusammenhang mit der Schaffung neuer Verwertungsgesellschaften und dem allfälligen Neuaufteilen des von den verschiedenen Verwertungsgesellschaften betrauten Repertoires stehen.

    d) Der DUN verfolgt die Geschäftstätigkeit und Tarifpolitik der Verwertungsgesellschaften und unterhält regelmässigen Kontakt zu diesen.

    e) Der DUN koordiniert oder führt im Auftrag von Mitgliedern oder Dritten Tarifverhandlungen mit den Verwertungsgesellschaften.

    f) Der DUN koordiniert die von der Nutzerseite gestellten Mitglieder der Schiedskommission sowie die Stellung von Schiedskommissionsmitgliedern für Branchen und Bereiche, die sich nicht anderweitig organisiert haben.

    g) Der DUN schafft den Zugang zu Informationen von Behörden über nationale und internationale Bestrebungen.

    h) Der DUN erarbeitet eine Datenbank über:

        • bestehende Tarife
        • vergleichende Daten innerhalb der Tarife

    i) Der DUN unterhält eine Informations-, Beratungs- und Dokumentationsstelle über alle wesentlichen Belange der Urheberrechtsnutzung. Er erarbeitet Musterverträge. Der DUN vermittelt Rechtsbeistand für die Mitglieder. Er unterstützt wissenschaftliche Arbeiten. Er erhebt die Bedürfnisse der Mitglieder und passt seine Dienstleistungen entsprechend an.

# DACHVERBAND DER URHEBER- UND NACHBARRECHTSNUTZER

## S T A T U T E N

### I. Name und Sitz

#### Art. 1

Unter dem Namen "Dachverband der Urheber- und Nachbarrechtsnutzer" (Schweizerischer Verband der an der Nutzung von Urheber- und verwandten Schutzrechten interessierten Organisationen / Fédération Suisse des Utilisateurs de Droits d'Auteurs et Voisins), nachfolgend DUN genannt, besteht ein Verband im Sinne von Art. 60 ff. ZGB mit Sitz in Bern.

### II. Zweck und Aufgaben

#### Art. 2

Der DUN bezweckt die Förderung und Wahrung der Interessen seiner Mitglieder. Seine Tätigkeit hat keine eigenen Gewinnzwecke zum Ziel. Der Vorstand ist berechtigt, den Verband als Verein im Handelsregister einzutragen.

#### Art. 3

Aufgaben des Verbandes:

a) Der DUN ist der Dachverband der schweizerischen Nutzer von Urheberrechten und verwandten Schutzrechten. Er vereinigt private und öffentliche Nutzerorganisationen und Institutionen aus der ganzen Schweiz und dem Fürstentum Liechtenstein.

b) Der DUN setzt sich für die Interessen der Nutzer von Urheberrechten und Nachbarrechten ein. Er sensibilisiert die Mitglieder für die verschiedenen Nutzungsrechte.

c) Der DUN befasst sich vorausschauend mit ordnungspolitischen, rechtlichen, wirtschaftlichen und ethischen Grundsatzfragen der Urheberrechts- und Nachbarrechtsnutzung.

d) Der DUN vertritt die gemeinsamen Interessen der Nutzer gegenüber dem Bund, den Verwertungsgesellschaften, anderen Marktpartnern und der Öffentlichkeit. Er ist Anhörungs- und Mitwirkungspartner gegenüber den zuständigen Behörden im Bereich von Gesetzgebung, Verordnung und Gesetzesvollzug.

e) Der DUN schafft und pflegt Beziehungen zu den Verwertungsgesellschaften und Behörden.

-2-

f)  Der DUN schafft und pflegt Beziehungen und Allianzen zu anderen in- und ausländischen Verbänden und Organisationen, mit welchen gemeinsame oder ähnliche Interessen bestehen. Er berücksichtigt insbesondere die Entwicklung, Regelung und Praxis im europäischen Raum.

g)  Der DUN leistet Informations- und Öffentlichkeitsarbeit zwecks Pflege und Förderung des Ansehens der Nutzer und ihrer Dienstleistungen.

h)  Der DUN koordiniert die Vertretung seiner Mitglieder in wichtigen Gremien, wie in der Eidgenössischen Schiedskommission für die Verwertung von Urheberrechten und verwandten Schutzrechten.

i)  Der DUN führt Prozesse oder Verfahren in Fragen von grundsätzlicher Bedeutung für seine Mitglieder.

k)  Zur Verbandstätigkeit gehören alle im allgemeinen Interesse der Mitglieder liegenden Sachgeschäfte. Spezifische Interessen, die ein einzelnes Mitglied bzw. Dritte betreffen, sind von der Verbandstätigkeit zu trennen.

### III. Mitgliedschaft

#### Art. 4

Mitglieder des Verbandes können Verbände und Behörden sowie juristische und natürliche Personen aus der Schweiz und dem Fürstentum Liechtenstein werden, die an den Verbandszwecken interessiert sind und seine Zielsetzungen unterstützen.

Für die Verbindlichkeiten haftet ausschliesslich das Vereinsvermögen.

#### Art. 5

Juristische Personen gelten als ein Mitglied und üben das Stimmrecht durch einen bevollmächtigten Vertreter aus.

Die Vereinsbeschlüsse werden mit Mehrheit der Stimmen der anwesenden Mitglieder gefasst.

Bei Stimmengleichheit entscheidet bei Beschlüssen der Verbandspräsident, bei Wahlen das Los.

Änderungen der Statuten, Auflösung des Verbandes oder Zusammenschlüsse mit anderen Vereinen erfordern ein qualifiziertes Mehr von zwei Dritteln der anwesenden Mitglieder.

#### Art. 6

Die Mitglieder werden nach Gruppen eingeteilt. Die Einteilung erfolgt nach den Interessen des Mitgliedes an den Zielsetzungen des Verbandes und nach dessen wirtschaftlichen Leistungsstärke. Die Einteilung ist massgebend für die Berechnung der Mitgliederbeiträge und für das Stimmrecht.

-3-

### Art. 7

Der Austritt ist auf das Ende eines Rechnungsjahres möglich. Das Rechnungsjahr entspricht der Zeit vom 1. Juli bis 30. Juni der jeweiligen Jahre. Die Austrittserklärung muss bis 31. Dezember erfolgen.

Wenn ein Mitglied den Zielsetzungen des Verbandes entgegenwirkt oder dem Ansehen des Verbandes abträgliche Aktivitäten entfaltet, kann es vom Vorstand ausgeschlossen werden.

## IV. Organisation

### Art. 8

Die Organe des Verbandes sind:

a)   die Mitgliederversammlung
b)   der Vorstand
c)   der Präsident
d)   die Rechnungsrevisoren
e)   die Geschäftsführung

### Art. 9

Die Mitgliederversammlung setzt sich aus den Verbandsmitgliedern zusammen, welche an der Versammlung tatsächlich teilnehmen. Sie ist jedes Rechnungsjahr mindestens einmal einzuberufen. Die Einladungen sind spätestens 20 Tage vorher zu versenden.

Das Stimmrecht des einzelnen Mitgliedes ist wie folgt geregelt:

| | |
|---|---|
| Mitglieder Gruppe 1: | jedes Mitglied hat eine Stimme |
| Mitglieder Gruppe 2: | jedes Mitglied hat zwei Stimmen |
| Mitglieder Gruppe 3: | jedes Mitglied hat drei Stimmen |

Die Mitgliederversammlung hat folgende Kompetenzen:

a)   Wahl des Präsidenten, der Vorstandsmitglieder und zweier Rechnungsrevisoren für je drei Rechnungsjahre
b)   Abnahme des Jahresberichtes und der Rechnung
c)   Entlastung des Vorstandes
d)   Genehmigung des Voranschlages
e)   Festsetzung der Mitgliederbeiträge
f)   Statutenänderungen
g)   Beschlüsse über Anträge des Vorstandes und von Mitgliedern
h)   Beschlussfassung über Ausgaben, welche nicht im ordentlichen Budget enthalten sind
j)   Rekurse gegen Vorstandsbeschlüsse, sofern sie binnen 20 Tagen seit Kenntnisgabe ergriffen werden

-4-

## Art. 10

Der Vorstand besteht aus dem Präsidenten, zwei Vizepräsidenten und mindestens zwei Beisitzern. Im Vorstand ist mindestens ein Mitglied aus jeder Gruppe vertreten. Er konstituiert sich selbst.

Der Vorstand ist für alle Angelegenheiten zuständig, die nicht durch die Statuten oder den Beschluss der Mitgliederversammlung einem anderen Verbandsorgan übertragen sind.

Der Vorstand entscheidet bei der Aufnahme neuer Mitglieder über die Gruppenzuteilung.

Die laufenden Geschäfte und die Rechnungsführung besorgt der/die vom Vorstand ernannte Geschäftsführer/in des Verbandes.

## Art. 11

Die Rechnung wird durch die Rechnungsrevisoren geprüft. Sie erstatten der ordentlichen Mitgliederversammlung für jedes Rechnungsjahr einen schriftlichen Bericht.

## V. Finanzielles

## Art.12

Die Einnahmen setzen sich zusammen aus:

a)  dem Mitgliederbeitrag, dessen Höhe jährlich von der Mitgliederversammlung festgesetzt wird.

b)  Verrechnungen von erbrachten Dienstleistungen.

Bern, 10. Juni 2003                              Der Präsident:
(Gegründet am 16. Juni 1952)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
MASSACHUSETTS MEDICAL SOCIETY and
WILEY-LISS, INC.,

      Plaintiffs,

v.

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES and
ROBERT TH. GMELIG MEYLING,

      Defendants.

Civil Action No.:
1:05-cv-10697 WGY

## DECLARATION OF ROBERT TH. GMELIG MEYLING

    I, Robert Th. Gmelig Meyling, declare:

    1.    I am President, CEO, and one of the stockholders of VIA Marketing & Promotion, S.A. d/b/a ActaMed Services ("ActaMed"). This declaration and the motions it supports shall not constitute an unconditional appearance of any Defendant, and are made without waiver of any of Defendants' rights, including but not limited to their rights to challenge this Court's jurisdiction in this Court or any other court or judicial or administrative authority. Defendants specifically reserve their right to challenge the Court's jurisdiction and the enforceability of the Court's judgment in Switzerland pursuant to Article 111 Section 1 of the Swiss Federal Act on

International Private Law of December 18, 1987. I understand
that according to this provision, Swiss authorities do not
recognize and enforce a foreign court's judgment in matters
concerning intellectual property rights, if such foreign
judgment was rendered against a defendant with domicile in
Switzerland.  Defendants herewith explicitly declare that we
will make use of any and all rights and remedies available to
object to the Court's jurisdiction and to the enforceability of
the Court's judgment in Switzerland, where Defendants are
domiciled. See Declaration of Marco Rizzi at paragraph 8 and
Exhibits 7 and 8

     2.   I make this declaration in connection with and in
support of (1) ActaMed's and Robert Th. Gmelig Meyling's Motion
to Dismiss for forum non conveniens, failure to state a claim
upon which relief can be granted, and lack of subject matter
jurisdiction; and (2) Robert Th. Gmelig Meyling's Motion to
Dismiss Plaintiffs' Complaint Against Him for Lack of Personal
Jurisdiction.  I have personal knowledge, and if called as a
witness would testify competently, about the following facts.

     3.   I am a citizen of the Netherlands and resident of
Switzerland.  My residential address is Via Pastura 74, 6983
Magliaso Switzerland.  My business address is at ActaMed's
business address, Via Chiosso 15, 6943 Porza TI, Switzerland.

- 2 -

4.    I have never visited the United States on business for ActaMed.  My last visit to the U.S. on business was to Massachusetts in the late 1970's for my former employer, which was in a business unrelated to ActaMed's and which was owned by others.

5.    In the past twenty years, I can recall making only two visits to the United States, both of which were for vacations: once in 1986-1987, and once in December 1998 to January 1999 to Vero Beach, Florida.

6.    ActaMed was founded in 1985.  Since its founding, ActaMed has operated primarily from Switzerland and solely from Europe.  All but three of its approximately forty employees, and its records, files, and server computers, are and have been located in Switzerland since ActaMed's founding.  The other three employees are sales persons who work from their homes in Italy, the Netherlands, and Spain.  ActaMed does not have affiliates, parents, or subsidiaries.

7.    ActaMed's web sites can be found at www.actamed.ch and also at www.actamed/services.com.  Although the web sites could be accessed worldwide, ActaMed's advertising and marketing has been focused in Europe.  I am not aware of any circumstance in which ActaMed provided marketing handouts in the U.S. or advertised in periodicals based in the U.S. or directed to the U.S. market.

- 3 -

8.    For its entire twenty year operation, ActaMed has focused its business on European offices of pharmaceutical companies.  I estimate based on ActaMed's data that during the past three years, well over ninety-nine percent of pages supplied by ActaMed were provided to European customers/recipients.

9.    In my role as President and CEO of ActaMed, I have corresponded and met with representatives from ProLitteris. ProLitteris is the Swiss copyright society for literature and visual art, acting under the authorization and supervision of the Swiss Federal Institute of Intellectual Property.  For many years, ActaMed has paid ProLitteris copyright royalties for articles provided by ActaMed, and has followed the guidance of ProLitteris on the amounts of royalties to be paid.  Since no later than 2001, ProLitteris has been involved in copyright related discussions between ActaMed and various companies including Elsevier, Blackwell, and Massachusetts Medical Society.

10.    In my role as President and CEO of ActaMed, I have corresponded and met with representatives from DUN. DUN is the Swiss association of users of copyrights of which ActaMed is a member.  Starting in 2003, I received from DUN DUN's written assessment of copyright matters regarding ActaMed, and delivered

- 4 -

that assessment to customers and several publishers including Elsevier.

11.   In my role as President and CEO of ActaMed, I have corresponded with representatives from Elsevier, Blackwell and the Massachusetts Medical Society between 2001 and the time of the U.S. Complaint.   That correspondence included inquiries from U.S. publishers regarding ActaMed's activities.

12.   At all times relevant to these proceedings I was acting solely in my capacity as an employee, representative and agent of ActaMed.   At no time in my dealings with Plaintiffs and Plaintiffs' attorneys, did I act outside of the scope of my employment with ActaMed.

13.   I do not, and have not, solicited business in Massachusetts on behalf of ActaMed or personally, and do not to my knowledge benefit from the laws or regulations of Massachusetts.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this //// day of June, 2005.

Robert Th. Gmelig Meyling

- 5 -

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

---

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
MASSACHUSETTS MEDICAL SOCIETY and
WILEY-LISS, INC.,

     Plaintiffs,

v.

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES and
ROBERT TH. GMELIG MEYLING,

     Defendants.

Civil Action No.:
1:05-cv-10697 WGY

---

## DECLARATION OF PENNY S. LENNOX

I, PENNY S. LENNOX, declare:

1.   I am a member in good standing of the bar of the State of Massachusetts, associated with the firm of Kirkpatrick & Lockhart Nicholson Graham LLP, and counsel for Defendants VIA Marketing & Promotion, S.A. d/b/a ActaMed Services ("ActaMed") and Robert Th. Gmelig Meyling ("Meyling") (collectively the "Defendants").  I make this declaration in support of Defendants' Motion to Dismiss Plaintiffs' Complaint Under the Doctrine of *Forum Non Conveniens* ("Motion").  These exhibits are cited in that Motion.  I have personal knowledge and, if called

as a witness, would testify competently about the following
facts.

## EXHIBITS

2.    Attached as Exhibit 11 to the Motion is a true and
accurate copy of a page from Plaintiff Elsevier Inc.'s web site
located at www.elsevier.com.

3.    Attached as Exhibit 12 to the Motion are true and
accurate copies of pages from Plaintiff Blackwell Publishing
Inc.'s web site located at www.blackwellpublishing.com.

4.    Attached as Exhibit 13 to the Motion is a true and
accurate copy of a page from Wiley's web site located at
www.wiley.com.

I declare under penalty of perjury that the foregoing
statements are true and correct.

| | |
|---|---|
| June 14, 2005 | s/Penny S. Lennox |
| Date | Penny S. Lennox |

BOS-871281 v1

- 2 -



**ELSEVIER**

*Building Insights.*
*Breaking Boundaries*

Home | Site map

| Products |
| --- |

| Support & contact |
| --- |

| About Elsevier |
| --- |

**Company Information**
 Welcome to Elsevier
 Company overview
 Mission & values
 Subject areas
 Premier products
 Commitment to the
 community
 425-125 Anniversary
 Heritage
 Nobel Laureates
**Newsroom**
 News archive
 Media contacts
**Related Elsevier web
 sites**
 Regional sites
 Business sites

| Select your view |
| --- |

# WELCOME TO ELSEVIER

**Elsevier is . . .**

**WHO**
A world leading, multiple-media publisher of scientific, technical and
health information products and services, with 7,000 employees in 73
locations around the globe.

**WHAT**
Publisher of more than 20,000 products and services, including
journals, books, electronic products, services, databases and portals
serving the global scientific, technical and medical (STM) communities.

**FOR**
Authors, editors, scientists, researchers, faculty, students,
professionals, practitioners and librarians.

**WHERE**
Around the world:  North America, Europe, Middle East, Asia, Australia,
Africa and Latin America.

**WHY**
To fuel a continuous cycle of exploration and discovery and inspire
meaningful action.

Elsevier is part of the ⊞➧  Reed Elsevier Group plc, a leading
international publisher and information provider. Reed Elsevier shares
are listed on the Amsterdam and London Stock Exchanges.

RELATED

Nobel Prize
publish with

 Printer-friendly version

Home | Site map | Privacy policy | Terms and Conditions | Feedback |
A Reed Elsevier company

Copyright © 2005 Elsevier B.V. All rights reserved.



BLACKWELL HOME  |  HELP  |  CONTACT  |  PRIVACY  |  VIEW BOOKS CART

 Keywords ▾  [          ]  GO  Advanced Search

Books Home
Journals Home
List of Journals
Advanced Search
Websites
E-mail Alerts
Site Index
Subject Index
For Librarians
Press Room

Press Room

Press Room Home
About Blackwell
Events Calendar
Media Contacts
News Archive
Other Resources
Press Releases

Subject Sites

- Allergy and Immunology
- Anatomy, Physiology & Development
- Aquaculture, Fisheries and Fish Biology
- Cardiology
- Dentistry
- Dermatology
- Ecology
- Endocrinology
- Gastroenterology
- Hematology
- Medicine
- Microbiology
- Neurology & Neuroscience
- Nursing
- Plant Science
- Transplantation
- Veterinary Medicine



# About Blackwell

Blackwell Publishing is the world's leading society publisher, partnering with more than 600 academic and professional societies. Blackwell publishes over 750 journals and 600 text and reference books annually, across a wide range of academic, medical, and professional subjects. The company remains independent with over 900 staff members in offices in the US, UK, Australia, China, Denmark, Germany, and Japan. Blackwell's mission as an expert publisher is to create long-term partnerships with our clients that enhance learning, disseminate research, and improve the quality of professional practice. For more information on Blackwell Publishing, please visit www.blackwellpublishing.com or www.blackwell-synergy.com.

- Company History
- Company Profile
- Company Timeline
- Executive Biographies
- Mission Statement
- Global Offices
- Blackwell Logos
- Blackwell Publishing's position on Open Access

Top 

**EVENTS CALENDAR JUNE 2005**

| M | T | W | T | F | S | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |   |   |   |



**Location: United States**  | change location

 Shopping Cart  My Account  Help  Contact Us

Home | Browse Titles | Offers | About Wiley

Product Search [ ] By Keyword ▼ Go

Wiley > **About Wiley**

**About Wiley**

Core Businesses
History
Locations
Directors and Officers
Investor Relations
Corporate News
The Wiley Foundation
Jobs
Permissions
Author Events
Calendar of Conferences
Logos and Graphic Identity
Affiliate Program
Corporate Giving
Corporate Governance

## Company Profile

| | |
|---|---|
| History | The company was founded in 1807, during the Jefferson presidency. In the early years, Wiley was best known for the works of Washington Irving, Edgar Allan Poe, Herman Melville, and other 19th century American literary giants. By the turn of the century, Wiley was established as a leading publisher of scientific and technical information. (A more detailed history is available.) |
| President and CEO | William J. Pesce, Wiley's tenth President and CEO, was appointed in May 1998. Will joined the company in 1989 and previously served as Chief Operating Officer; Executive Vice President, Educational and International Group; Senior Vice President, Educational and International Group; and Senior Vice President, Educational Publishing. Before joining Wiley, he was President of W.B. Saunders, one of the world's leading medical publishers, in addition to other management and planning positions at CBS when they were a publishing business. He has a MBA in Finance from NYU's Stern School of Business. |
| Stock Exchange/ Ticker Symbols | New York Stock Exchange: JWa and JWb. The company went public in 1962 and was listed on the NYSE in 1995. |
| Operations | Wiley is a global publisher of print and electronic products, specializing in scientific, technical, and medical books and journals; professional and consumer books and subscription services; and textbooks and other educational materials for undergraduate and graduate students as well as lifelong learners. Wiley publishes in a variety of formats. |
| | The company provides "must-have" content to targeted communities of interest. Wiley's deep reservoir of quality content, constantly replenished, offers a tremendous source of competitive advantage. Technology is making this content more accessible to customers worldwide and is adding value for them by delivering it in interactive and/or fully searchable formats. Approximately 25% of global revenue is currently Web-enabled; we expect to increase that figure to about 40% within the next three years. |
| Global Enterprise | With about 3,500 employees worldwide, Wiley has operations in the United States, Europe (England, Germany and Russia), Canada, Asia, and Australia. The Company has U.S. publishing, marketing, and distribution centers in New Jersey, California, Virginia, Illinois, Indiana, and Ohio. Wiley's worldwide headquarters are located in Hoboken, New Jersey, just across the river from Manhattan. |
| | Wiley content travels well. Approximately 40% of the company's revenue is generated outside the United States. |

Copyright © 2000-2005 by John Wiley & Sons, Inc. or related companies. All rights reserved. Please read our Privacy Policy