**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BLACKWELL PUBLISHING, INC.; ) | |
| ELSEVIER, INC. ) | |
| MASSACHUSETTS MEDICAL SOCIETY, ) | |
| and ) | |
| WILEY-LISS, INC., ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | Civil Action No.: |
|     v. ) | 05cv10697 WGY |
| ) | |
| VIA MARKETING & PROMOTION, S.A. ) | |
| d/b/a ACTAMED SERVICES and ) | |
| ROBERT TH. GMELIG MEYLING, ) | |
| ) | |
|     Defendants. ) | |

**DEFENDANT ROBERT TH. GMELIG MEYLING'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AGAINST HIM (1) FOR LACK OF PERSONAL JURISDICTION (2) UNDER THE DOCTRINE OF *FORUM NON CONVENIENS, AND* TO DISMISS COUNT 9 OF THE COMPLAINT (3) FOR LACK OF SUBJECT MATTER JURISIDICTION AND (4) FOR FAILURE TO STATE A CLAIM**

Pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3), and (6) and the common law doctrine of *forum non conveniens*, defendant Robert Th. Gmelig Meyling ("Meyling") moves to dismiss Plaintiffs' Complaint against him (i) for lack of personal jurisdiction (all counts); (ii) under the doctrine of forum non conveniens (all counts); (iii) for lack of subject matter jurisdiction (Count 9); and (iv) for failure to state a claim upon which relief can be granted (Count 9).

In support of basis (i) this Motion, Mr. Meyling relies on his Memorandum in Support of Motion to Dismiss for Lack of

Personal Jurisdiction, and the Declarations of Robert Th. Gmelig Meyling and Marco A. Rizzi, L.L.M., with Exhibits 1 - 10, all of which are being filed with this Motion.

In support of bases (ii), (iii) and (iv) of this Motion, Mr. Meyling relies on Defendants' Memorandum in Support of Motion to Dismiss Under This Doctrine of *Forum Non Conveniens*, For Lack of Subject Matter Jurisdiction, and For Failure to State A Claim, along with the Meyling and Rizzi Declarations and their Exhibits.

This Motion and Memorandum shall not constitute an unconditional appearance of any Defendant, and is made without waiver of any of Defendants' rights, including but not limited to their rights to challenge this Court's jurisdiction in this Court or any other court or judicial or administrative authority.  Defendants specifically reserve their right to challenge the Court's jurisdiction and the enforceability of the Court's judgment in Switzerland pursuant to Article 111 Section 1 of the Swiss Federal Act on International Private Law of December 18, 1987. According to this provision, Swiss authorities do not recognize and enforce a foreign court's judgment in matters concerning intellectual property rights, if such foreign judgment was rendered against a defendant with domicile in Switzerland. Defendants herewith explicitly declare that they will make use of any and all rights and

remedies available to object to the Court's jurisdiction and to

the enforceability of the Court's judgment in Switzerland, where

Defendants are domiciled. <u>See</u> Exhibit 38 to Rizzi Declaration at

¶ 8.


                              Respectfully submitted,

                              ROBERT TH. GMELIG MEYLING,

                              By his attorneys,



Dated: June 14, 2005          s/John J. Cotter
                              John J. Cotter, Esq., BBO# 554524
                              David J. Byer, Esq. BBO# 544411
                              KIRKPATRICK & LOCKHART NICHOLSON
                              GRAHAM LLP
                              75 State Street
                              Boston, MA 02109-1808
                              617.261.3100
                              617.261.3175 (fax)

CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2005, I caused a copy of the foregoing document to be served by electronic filing and by first class United States mail, postage prepaid upon the following:

William S. Strong, Esq.
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114

S/Penny S. Lennox
Penny S. Lennox

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
MASSACHUSETTS MEDICAL SOCIETY and
WILEY-LISS, INC.,

     Plaintiffs,

v.

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES and
ROBERT TH. GMELIG MEYLING,

     Defendants.

Civil Action No.:
1:05-cv-10697 WGY

## DECLARATION OF ROBERT TH. GMELIG MEYLING

    I, Robert Th. Gmelig Meyling, declare:

    1.    I am President, CEO, and one of the stockholders of VIA Marketing & Promotion, S.A. d/b/a ActaMed Services ("ActaMed"). This declaration and the motions it supports shall not constitute an unconditional appearance of any Defendant, and are made without waiver of any of Defendants' rights, including but not limited to their rights to challenge this Court's jurisdiction in this Court or any other court or judicial or administrative authority. Defendants specifically reserve their right to challenge the Court's jurisdiction and the enforceability of the Court's judgment in Switzerland pursuant to Article 111 Section 1 of the Swiss Federal Act on

International Private Law of December 18, 1987. I understand
that according to this provision, Swiss authorities do not
recognize and enforce a foreign court's judgment in matters
concerning intellectual property rights, if such foreign
judgment was rendered against a defendant with domicile in
Switzerland.  Defendants herewith explicitly declare that we
will make use of any and all rights and remedies available to
object to the Court's jurisdiction and to the enforceability of
the Court's judgment in Switzerland, where Defendants are
domiciled. See Declaration of Marco Rizzi at paragraph 8 and
Exhibits 7 and 8

2.    I make this declaration in connection with and in
support of (1) ActaMed's and Robert Th. Gmelig Meyling's Motion
to Dismiss for forum non conveniens, failure to state a claim
upon which relief can be granted, and lack of subject matter
jurisdiction; and (2) Robert Th. Gmelig Meyling's Motion to
Dismiss Plaintiffs' Complaint Against Him for Lack of Personal
Jurisdiction.  I have personal knowledge, and if called as a
witness would testify competently, about the following facts.

3.    I am a citizen of the Netherlands and resident of
Switzerland.  My residential address is Via Pastura 74, 6983
Magliaso Switzerland.  My business address is at ActaMed's
business address, Via Chiosso 15, 6943 Porza TI, Switzerland.

- 2 -

4.    I have never visited the United States on business for ActaMed.  My last visit to the U.S. on business was to Massachusetts in the late 1970's for my former employer, which was in a business unrelated to ActaMed's and which was owned by others.

5.    In the past twenty years, I can recall making only two visits to the United States, both of which were for vacations: once in 1986-1987, and once in December 1998 to January 1999 to Vero Beach, Florida.

6.    ActaMed was founded in 1985.  Since its founding, ActaMed has operated primarily from Switzerland and solely from Europe.  All but three of its approximately forty employees, and its records, files, and server computers, are and have been located in Switzerland since ActaMed's founding.  The other three employees are sales persons who work from their homes in Italy, the Netherlands, and Spain.  ActaMed does not have affiliates, parents, or subsidiaries.

7.    ActaMed's web sites can be found at www.actamed.ch and also at www.actamed/services.com.  Although the web sites could be accessed worldwide, ActaMed's advertising and marketing has been focused in Europe.  I am not aware of any circumstance in which ActaMed provided marketing handouts in the U.S. or advertised in periodicals based in the U.S. or directed to the U.S. market.

- 3 -

8.    For its entire twenty year operation, ActaMed has focused its business on European offices of pharmaceutical companies.  I estimate based on ActaMed's data that during the past three years, well over ninety-nine percent of pages supplied by ActaMed were provided to European customers/recipients.

9.    In my role as President and CEO of ActaMed, I have corresponded and met with representatives from ProLitteris. ProLitteris is the Swiss copyright society for literature and visual art, acting under the authorization and supervision of the Swiss Federal Institute of Intellectual Property.  For many years, ActaMed has paid ProLitteris copyright royalties for articles provided by ActaMed, and has followed the guidance of ProLitteris on the amounts of royalties to be paid.  Since no later than 2001, ProLitteris has been involved in copyright related discussions between ActaMed and various companies including Elsevier, Blackwell, and Massachusetts Medical Society.

10.    In my role as President and CEO of ActaMed, I have corresponded and met with representatives from DUN. DUN is the Swiss association of users of copyrights of which ActaMed is a member.  Starting in 2003, I received from DUN DUN's written assessment of copyright matters regarding ActaMed, and delivered

- 4 -

that assessment to customers and several publishers including Elsevier.

11.  In my role as President and CEO of ActaMed, I have corresponded with representatives from Elsevier, Blackwell and the Massachusetts Medical Society between 2001 and the time of the U.S. Complaint.  That correspondence included inquiries from U.S. publishers regarding ActaMed's activities.

12.  At all times relevant to these proceedings I was acting solely in my capacity as an employee, representative and agent of ActaMed.  At no time in my dealings with Plaintiffs and Plaintiffs' attorneys, did I act outside of the scope of my employment with ActaMed.

13.  I do not, and have not, solicited business in Massachusetts on behalf of ActaMed or personally, and do not to my knowledge benefit from the laws or regulations of Massachusetts.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11 day of June, 2005.

Robert Th. Gmelig Meyling

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
MASSACHUSETTS MEDICAL SOCIETY and
WILEY-LISS, INC.,

        Plaintiffs,

v.

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES and
ROBERT TH. GMELIG MEYLING,

        Defendants.

Civil Action No.:
1:05-cv-10697 WGY

## DECLARATION OF MARCO A. RIZZI, L.L.M

I, Marco A. Rizzi, L.L.M, declare:

1.    I am an attorney at law and member of the bar of Switzerland since 1997. I am a partner in the Zurich law firm of SvH Schaufelberger & van Hoboken Rechtstanwalt, where my address is Seestrasse 17 Postfach CH-8702, Zurich-Zollikon, Switzerland. I graduated from the Law School of the University of Berne, Switzerland and received my L.L.M. from King's College in London, U.K. I am a member of the Zurich and Swiss Bar Associations. I have represented defendants VIA Marketing & Promotion, S.A. d/b/a ActaMed Services ("ActaMed") since March 2005. I am fluent in written and spoken German, Italian, and English. This declaration and the Motions it supports shall not

constitute an unconditional appearance of any Defendant, and are made without waiver of any of Defendants' rights, including but not limited to their rights to challenge this Court's jurisdiction in this Court or any other court or judicial or administrative authority. Defendants specifically reserve their right to challenge the Court's jurisdiction and the enforceability of the Court's judgment in Switzerland pursuant to Article 111 Section 1 of the Swiss Federal Act on International Private Law of December 18, 1987. According to this provision, Swiss authorities do not recognize and enforce a foreign court's judgment in matters concerning intellectual property rights, if such foreign judgment was rendered against a defendant with domicile in Switzerland. Defendants herewith explicitly declare that they will make use of any and all rights and remedies available to object to the Court's jurisdiction and to the enforceability of the Court's judgment in Switzerland, where Defendants are domiciled.

2.   I make this declaration in connection with (1) ActaMed's and Mr. Meyling's Motion to Dismiss for forum non conveniens, failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction; and (2) Mr. Meyling's Motion to Dismiss for lack of personal jurisdiction.  I have personal knowledge and if called as a witness would testify competently about the following facts.

3.    According to February 18, 2005 and May 19, 2005
letters from Swiss counsel for several Plaintiffs and others,
Plaintiffs Elsevier and Blackwell and others have demanded that
ActaMed cease and desist from activities which Plaintiffs claim
violate the copyright and unfair competition laws of Switzerland
and of European Union member countries, along with the U.S.
laws.  True and accurate copies of publisher's counsel Dr. Peter
Mosimann's February 18, 2005 letter to ActaMed's outside counsel
Dr. Giovanna Bonafede, and Dr. Mosimann's May 19, 2005 letter to
me, are attached as Exhibits 1 and 2 respectively.

4.    According to an April 14, 2005 letter from
Dr. Mosimann to me, Plaintiffs Elsevier, Blackwell,
Massachusetts Medical Society and Wiley-Liss and other
publishers have recently filed a criminal complaint in Lugano,
Switzerland against ActaMed for alleged violations relating to
ActaMed's services. A true and accurate copy of Dr. Mosimann's
letter to me dated April 14, 2005 regarding this criminal
complaint is attached as Exhibit 3.

5.    According to Minutes of the Cantonal Police in Ticino
Regarding House Search and Confiscation with ActaMed, the Swiss
police seized and hold under seal numerous documents and files
of ActaMed that may be relevant to this U.S. case.  Many of
those seized records are sealed and subject to the criminal
complaint, and therefore are not accessible.  Attached as

Exhibits 4 and 5 respectively are true and accurate copies of the Minutes of the Cantonal Police Ticino regarding House Search and Confiscation with ActaMed, dated April 12, 2005 (Exhibit 4), and my tentative partial English translation of those Minutes (Exhibit 5).

6.    As of the filing date of this Declaration, I am unaware of the Swiss prosecutor having instituted official criminal proceedings (i.e. no criminal action has been brought in court) against ActaMed, and understand that the Swiss authorities having initiated initial investigations continue to hold seized records and files under seal.

7.    According to a June 2, 2005 letter from Dr. Mosimann to me, Plaintiffs Elsevier and Blackwell and others have filed in Switzerland requests for debt enforcement against ActaMed, which requests in part may toll the statute of limitations on civil actions.  A true and accurate copy of Dr. Mosimann's letter to me dated June 2, 2005 (without enclosures) is attached as Exhibit 6.

8.    Under Swiss principles of recognition of foreign court decisions on intellectual property matters, I believe that any judgment rendered in the U.S. court may not be enforceable against either Defendant, because they are both domiciled in Switzerland and because they have not made appearances without reservation in this Court.  Attached as Exhibits 7 and 8

- 4 -

respectively are copies of Articles 25, 26, and 111 section 1 of the Swiss Federal Act on International Private Law (Exhibit 7), which concerns recognition in Switzerland of foreign decisions, and my translation of those Articles (Exhibit 8).

9.    Attached as Exhibit 9 is a true and accurate copy of a web page from www.prolitteris.ch, which describes ProLitteris, the Swiss copyright society for literature and visual art. ProLitteris acts under the authorization and supervision of the Swiss Federal Institute of Intellectual Property, and ProLitteris has the exclusive authority in Switzerland to collect and distribute royalties for activities falling under the statutory license of the Swiss Copyright Act.

10.    Attached as Exhibit 10 is a true and accurate copy of selected web page in German from www.dun.ch, which describes DUN, the Swiss association of users of copyrights. DUN comprises private and public user organizations and institutions from Switzerland and Liechtenstein. The tasks of DUN (according to its articles of association) are, among others, to sensitize its members for the different users' rights and to represent the common interests of users vis-à-vis those of the Confederation (i.e. the Swiss State), the copyright societies (i.e. ProLitteris) and the public.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 14 day of June, 2005.

Marco A. Rizzi, L.L.M.

BOS-870832 v1 0524235-0901
6/14/2005

# WENGER PLATTNER

B A S E L · Z Ü R I C H · B E R N

ADVOCATES AND NOTARIES
ATTORNEYS AT LAW
AND PUBLIC NOTARIES

CH-4010 BASEL
AESCHENVORSTADT 55
TELEFON +41 (0)61 279 70 00
TELEFAX +41 (0)61 279 70 01
BASEL@WENGER-PLATTNER.CH
WWW.WENGER-PLATTNER.CH

DR. WERNER WENGER*
DR. JÜRG PLATTNER
DR. PETER MOSIMANN
STEPHAN CUENI*
PROF. DR. GERHARD SCHMID
DR. JÜRG RIEBEN
DR. MARKUS METZ
DR. DIETER GRÄNICHER*
KARL WÜTHRICH
YVES MAILI
BEPPO TH. BECK, M.C.J.
DR. FRITZ ROTHENBÜHLER
DR. STEPHAN NETZLE, LL.M.
DR. BERNHARD HEUSLER
DR. ALEXANDER GUTMANS, LL.M.*
BEA SANER*
DR. THOMAS WETZEL
DR. MARC S. NATER, LL.M.
SUZANNE ECKERT
DOMINIQUE PORTMANN
DR. FELIX UHLMANN, LL.M.
PROF. DR. MARKUS MÜLLER-CHEN
ROLAND MATHYS, LL.M.
THOMAS REBSAMEN
DR. ASTRID BOOS-HERSBERGER, LL.M.
MARTIN SOHM
RETO ASCHENBERGER, LL.M.
BRIGITTE UMBACH-SPAHN, LL.M.
GUDRUN OSTERREICHER SPANIOL
DR. MARKUS SCHOTT, LL.M.
JAMES KOCH
DR. CHRISTOPH MÜLLER, LL.M.
DR. SIMONE BRAUCHBAR BIRKHAUSER, LL.M.
AYESHA CURMALLY
CLAUDIUS GELZER
MARIE-CHRISTINE MÜLLER-GERSTER
CORNELIA WEISSKOPF GANZ
OLIVER AEBERLI
DR. CHRISTOPH ZIMMERLI, LL.M.
DR. REGULA HINDERLING*
RENÉ SCHURINGS
DR. STEPHAN KESSELBACH
MORGANA JAMMERTHAL
CHRISTIAN ROTHEN
EDUARD RODRIGUEZ
DR. PETER PLETZ

BASEL ZÜRICH BERN
KONSULENTEN

OF COUNSEL AND MEMBERS
+ MEMBER ZURICH BAR ASSOCIATION
ALL ALSO REGISTERED UNDER ZURICH LEVEL

BASEL ZÜRICH
CH-8700 KÜSNACHT-ZÜRICH
GOLDBACH-CENTER
SEESTRASSE 39
TELEFON +41 (0)44 222 08 00
TELEFAX +41 (0)44 222 08 01
ZUERICH@WENGER-PLATTNER.CH

BERN BERN CH-3006 BERN
WEIHERGUTSTRASSE 4
TELEFON +41 (0)31 320 60 60
TELEFAX +41 (0)31 320 60 61
BERN@WENGER-PLATTNER.CH

**By fax and mail:**
**091 923 79 73**
**(5 pages)**

Item e Associati
Dr. Giovanna Bonafede
Via Peri 9a
6900 Lugano

Basel, February 18, 2005  MoP/frn/hud

**ActaMed (Via Marketing & Promotion SA)**
**Elsevier B.V., Netherlands and  Elsevier Inc., USA**
**Blackwell Publishing Ltd, UK, and  affiliated companies of Blackwell**
**Publishing Ltd**

Dear Colleague

Holger Gehring and the undersigned herewith refer to the meeting of January 25, 2005, with you, Mr. Robert Gmelig-Meyling of ActaMed as well as Ms Franziska Eberhard of ProLitteris and Dr. Magda Streuli-Youssef, attorney of ProLitteris.

As you know, Mr. Gehring and I are the attorneys of Elsevier B.V., Radarweg 29, 1043 NX Amsterdam, The Netherlands; Elsevier Inc., 360 Park Avenue South, New York, New York 10010, United States of America and Blackwell Publishing Ltd., 9600 Garsington Road, Oxford OX4 2DQ, UK; Blackwell Publishing Inc., Blackwell Publishing Asia, Blackwell Verlag, Blackwell Munksgaard, Blackwell Professional. Our clients are renowned scientific publishers and are not only active in the US but also in Europe including Switzerland. They publish recognized scientific journals well-known to the scientific community. Elsevier BV for instance publishes such journals as *Tetrahedron*, *The Lancet*, *Fungal Genetics and Biology* and *Behaviour Research and Therapy.* Blackwell Publishing publishes, among others, journals such as *Haemophilia*, *Seminars in Dialysis* and *J Viral Hepatitis*.

The journals of my clients and the contributions regularly published by them are protected by copyright laws; this not only in Switzerland in the sense of art. 2 or 4 Swiss Federal Copyright Act (URG) but also in the European Union member countries. The same applies to the US where many of the works in question originate. And the same also applies to the rest of the world.

1.  ActaMed is presently operating three different businesses :

    (i)   the *literature service* which consists of printing newsletters, designed specifically for the respective specialization of medical doctors and health practitioners. The newsletters list the most important and recent articles in the field concerned and show short abstracts of articles which could then be ordered in full text from ActaMed, either online by searching the database of ActaMed's website or as print version. This service, including the ordering of the articles, is entirely free for the medical doctors and health practitioners, and, as confirmed by Mr. Gmelig-Meyling in the above meeting, sponsored by the pharmaceutical industry;

    (ii)  the *library service* by which ActaMed operates online document delivery (docdel) services to anyone; this service is made possible by the ActaMed own database in which the articles of our clients are stored by electronic means;

    (iii) the *copy service* by which ActaMed delivers what in the publishing industry are known as "reprints", i.e. multiple copies of single articles, starting in the case of ActaMed's own indication from volume of 250 copies up to 5'000 and more copies. As indicated by Mr. Gmelig-Meyling, the main client for these orders is the pharmaceutical industry which delivers these copies either to customers at conferences, or directly to health practitioners by mail.

2.  The ActaMed services as described above infringe the rights of our clients, both with respect to copyright held by our clients in the individual articles, in the selection and arrangement of journals and protected under foreign copyright law and according to art. 61 et seq. Swiss Copyright Act (URG), and with respect to unfair competition law, notably art. 5 c / art. 9 of the Swiss Unfair Competition Act. In addition, these services are in clear and persistent material breach of our clients licensing terms and conditions as set out in licences granted to ActaMed for online or print subscriptions. Finally, to the extent that journal titles including

WENGER PLATTNER

trade marks, trading styles and get-up are reproduced, the conduct of ActaMed violates these rights of our clients.

3. ActaMed argued that their services were legitimate under the legal license of art. 19 URG. We have, however, explained that all three services of ActaMed are illegal, and this for several reasons. First, the delivery of copyright protected articles to customers could only be within the law if they are permitted by the law applicable in the country where the user is domiciled. Swiss law is not applicable to customers/users having their domicile outside Switzerland. Second, as far as Swiss law would be applicable, art. 19 clause 1c URG certainly does not allow electronic document delivery (docdel) services (BÜHLER, Schweizerisches und Internationales Urheberrecht im Internet, 1999, p. 260-262). Furthermore, the reprint, or multiple copying service, and the online docdel service of ActaMed respond to requests of pharmaceutical companies. As confirmed by Mr. Gmelig-Meyling, these copies are delivered in order to be distributed or sent to customers of the pharmaceutical companies. The distribution of copies to third parties, such as customers (doctors, hospitals etc.), is obviously not covered by art. 19 clause 1c URG, a point of view which was shared in the meeting by the attorney of ProLitteris. This provision allows, to a certain extent, internal use of copyright protected works, but not a commercial service of the pharmaceutical companies in favour of their customers.

4. ActaMed also violates art. 5 c of the Swiss Federal Act on Unfair Competition. ActaMed's services are positioning itself in direct competition with our clients and with their licensed customers. First, the delivery services compete with the subscriptions of journals that our clients have agreed upon with their subscribers. The subscribers of our clients are offered by ActaMed to order individual articles of our clients from ActaMed at a lower price, and would therefore no longer need to subscribe to the journals published by our clients. A respective downtrend in respect of subscriptions has already been marked and felt. Second, ActaMed hinders our clients to grow their own existing electronic document delivery service of single articles and the reprint business), both by running these services themselves, or by licensing third parties, whether entities specialising exclusively in the business of document delivery, or libraries diversifying in to this business.

In view of the continuing development of technology and commercial practice, ActaMed is establishing its delivery service in direct competition

with our clients; with the big difference, though, that ActaMed does not have to deal with the substantial expenditure of originating material, of maintenance and development of the editing, of organising peer-review and publishing business. Considering that electronic distribution increasingly replaces the traditional primary use, the sale of print subscription of journals, it becomes obvious that such a use may only take place upon prior agreement with the holder of the respective rights. Therefore, the services ActaMed provides are also violating the rules of fair trading. According to these rules, ActaMed is not allowed to use services offered by our clients or to use work results that are ready to be marketed of our clients in a competitive manner without any appropriate expenditure of its own, by means of a technical process of re-production (art. 5 c of the Swiss Federal Act on Unfair Competition).

5.  Based on the above considerations, we demand from ActaMed to comply with the following conditions and confirm same with letter to the undersigned by no later than March 3, 2005:

   (i)  ActaMed

   •  ceases and desists immediately to offer, produce and deliver multiples hard copies (reprints) (offered by ActaMed as "copy-service"), of any copyright protected article of our clients to any third party, including any re-print business such as new editions of a specific article of our clients, or translation into other languages;

   •  ceases and desists immediately to offer and deliver copies on-line (offered by ActaMed as "online library service") of any copyright protected article of our clients to any third party;

   •  ceases and desists immediately to scan and/or store the copy-right protected articles of our clients for the above services, to operate a database with copyright protected articles of my clients fixed in any medium by electronic means; and shall erase and delete from its databases any scanned and stored copy produced by ActaMed in the past of copyright protected articles of our clients.

   (ii)  ActaMed reveals all relevant business information about the literature service, library service and reprint, ie multiple copy service, for the years 2002 to 2004. The business information should at

4

WENGER PLATTNER

least identify the individual publisher concerned (Elsevier, Black-well), the articles and the number of copies ordered/supplied con-cerned and the ordering party, recipients, sponsors and beneficiar-ies.

(iii)    ActaMed shall make an offer to compensate publishers for losses incurred, by at least a rate of 20 % of ActaMed's turnover of the years 2002 to 2004.

If ActaMed does not comply with the above-mentioned demands within the above deadline and does not confirm same in writing on or before such time, our clients may initiate legal proceedings in Switzerland and/or abroad without further notice. We reserve all our clients rights and remedies at this stage, including without limitation any rights based on the law of contract, tort, unlawful acts and/or enrichment, copyright, intellectual property, unlawful competition, as well as any remedy any-where in the world, whether civil, administrative or criminal, and to take any legal or other steps to safeguard our client's interests.

We hope that such measures will not prove necessary.

If ActaMed complies with the above conditions, our clients are prepared to consider, upon ActaMed's offer, potential licensing arrangements and agreements regarding some or all of the three types of services de-scribed above. Please notify us, equally latest by the date mentioned above, whether you are ready and willing to enter into such license agreements.

Yours sincerely

Dr. Peter Mosimann

cc:    - Ms Dr. Magda Streuli-Youssef, Rechtsanwältin, Walder Wyss & Partner,
         Münstergasse 2, Postfach 2990, 8022 Zürich
         (by fax and mail: 01 265 75 50)
       - Mr. Carlo Scollo Lavizzari (by e-mail: csl@datacomm.ch)
       - Mr. Holger Gehring (by e-mail: holgergehring@tiscali.ch)

ADVOKATUR UND NOTARIAT
ATTORNEYS AT LAW
AND PUBLIC NOTARIES

CH 4010 BASEL
AESCHENVORSTADT 55
TELEFON +41 (0)61 279 70 00
TELEFAX +41 (0)61 279 70 01
BASEL@WENGER-PLATTNER.CH
WWW.WENGER-PLATTNER.CH

DR. WERNER WENGER*
DR. JÜRG PLATTNER
DR. PETER MOSIMANN
STEPHAN CUENI*
PROF. DR. GERHARD SCHMID
DR. JÜRG RIEBEN
DR. MARKUS METZ
DR. DIETER GRÄNICHER*
KARL WÜTHRICH
YVES MEILI
FÜRSPRECH M. BRECK (M.C.J.)
DR. FRITZ ROTHENBÜHLER
DR. STEPHAN NETZLE, LL.M.
DR. BERNHARD HEUSLER
DR. ALEXANDER GUTMANS, LL.M.*
PETER SAILE**
DR. THOMAS WETZEL
DR. MARCO S. NATER, LL.M.
SUZANNE ECKERT
DR. DOMINIQUE PORTMANN
DR. FELIX UHLMANN, LL.M.
PROF. DR. MARKUS MÜLLER-CHEN
ROLAND MATHYS, LL.M.
DR. ASTRID BOOS-HERSBERGER, LL.M.
MARTIN SCHÜM
RETO ASCHENBERGER, LL.M.
BRIGITTE UMBACH-SPAHN, LL.M.
GUDRUN ÖSTERREICHER BRANDO
DR. MARKUS SCHOTT, LL.M.
DR. CHRISTOPH MÜLLER, LL.M.
DR. SIMONE BRAUCHBAR BIRKHÄUSER, LL.M.
AYESHA CURMALLY*
CLAUDIUS SPITZER, LL.M.
MARIE-CHRISTINE MÜLLER-KÜSTER
CORNELIA WEISSKOPF-FRANZ
OLIVER ALBRECHT
DR. CHRISTOPH ZIMMERLI, LL.M.
DR. FELICIA SCHNIDRIG
DR. STEPHAN KESSELBACH
MATHIAS GRAMMER
CHRISTIAN RÜTTEN
PATRICIA RODRIGUEZ
DR. HEIKE BAHR
DR. ADRIAN RAPP
DR. BEN HÖHENER, LL.M.
MARTINA DÖTTER
ISADORA VON GUNTEN DE GALLACHE
DANIEL CHRIGER*

ANDREAS MAITRE
* OHNE AMT

* AUCH NOTAR IN BASEL
** IN AMBRA NUR IM RECHTSANWALT
ALL IN ANWAELTE MIT JURISTEN

BÜRO ZÜRICH
CH-8700 KÜSNACHT ZÜRICH
GOLDBACH CENTER
SEESTRASSE 39
TELEFON +41 (0)43 222 38 00
TELEFAX +41 (0)43 222 38 01
ZÜRICH@WENGER-PLATTNER.CH

BÜRO BERN CH-3000 BERN 6
THUNSTRASSE 9
TELEFON +41 (0)31 357 00 00
TELEFAX +41 (0)31 357 00 01
BERN@WENGER-PLATTNER.CH

**WENGER PLATTNER**
BASEL · ZÜRICH · BERN

Advanced copy by fax (2 pages)
044 396 21 11

Schaufelberger & van Hoboken
Mr. Marco A. Rizzi, LL.M.
Seestrasse 17
P.O. Box
8702 Zürich-Zollikon 2

Basel, May 19, 2005  MoP/ruc

**Blackwell Publishing Ltd., Blackwell Publishing Asia, Blackwell Munksgaard, Blackwell Verlag, Blackwell Professional, Springer Science and Business Media GmbH & Co. KG, Birkhäuser Verlag AG, Elsevier BV**

**Via Marketing and Promotion SA ("ActaMed")**

Dear Colleague

In this matter reference is made to your letter of May 10, 2005. I have discussed your proposal with my clients. I have also informed my clients that we had a telephone conversation on May 11, 2005. I had put the question whether ActaMed be prepared to liquidate the damages suffered by my clients before May 10, 2005; you have instructed me that the publishers must look entirely to ProLitteris to get any form of damage liquidation for past activities of ActaMed and that ActaMed would like to avoid a double payment.

1. My clients have taken notice that ActaMed as a "unilateral action" has suspended its "On-line Library Service" and its "Copy Service" and there is no "Library Service" by that name offered at the ActaMed website. It is my understanding that ActaMed has ceased any service by which a user can order a copy of a journal article from ActaMed including but not limited to the so-called "ImiCard" and "Literature Service". We understand that ActaMed's cessation applies to both on-line and print delivery.

WENGER PLATTNER

2.  My clients reject the unilateral action of your client based on your "with-out prejudice" offer. My clients still request full compliance with the conditions of the cease and desist letters as submitted to you on February 18, 2005 and April 28, 2005. They still strictly hold ActaMed liable for past infringements irrespective of any arrangements that ActaMed purports to have had with ProLitteris. The amount of reprints made by ActaMed is very important and is certainly not covered by the GT 8 of ProLitteris. Mr. Gmelig Meyling had for instance disclosed during our meeting of January 25, 2005 an amount of 500'000 pages reprinted in 2004 of publications of Blackwell Publishing. The levies, if any, paid by ActaMed to ProLitteris can certainly not be a liquidation of the damage suffered by this publisher. Only in case of full compliance and full liquidation of the damages occurred would each of my clients be in a position to assess the possibility of licensing some or all of ActaMed's past and current activities.

3.  Let me clearly point out that the offer of your client to disclose to my clients the information on any copy made of articles published by the clients during the period 2002 to 2004, identifying, for each single article (i) number of hard copies made or of copies supplied electronically, including downloads (all together the "copies"), (ii) payments received for making the Copies and (iii) copyright fees paid for the Copies only in case my clients are prepared to negotiate the licence agreement, and this, only for future deliveries or other services, is entirely unacceptable. ActaMed owes these informations to my clients in any event pursuant to Swiss copyright law and the foreign copyright laws applicable in each case.

4.  My clients furthermore do not accept that the offer of ActaMed can be revoked only by ActaMed and that therefore the proceeding offered by ActaMed is only at the discretion of ActaMed.

Yours sincerely

Dr. Peter Mosimann

cc:  Frau Dr. Magda Streuli-Youssef, Walder Wyss & Partners Münstergasse 2, Postfach 2990, 8022 Zürich (pre-sent by fax: 01 265 75 50)

2

ADVOKATUR UND NOTARIAT
ATTORNEYS AT LAW
AND PUBLIC NOTARIES

# WENGER PLATTNER

B A S E L · Z Ü R I C H · B E R N

CH-4010 BASEL
AESCHENVORSTADT 55
TELEFON +41 (0)61 279 70 00
TELEFAX +41 (0)61 279 70 01
BASEL@WENGER-PLATTNER.CH
WWW.WENGER-PLATTNER.CH

DR. WERNER WENGER *
DR. JÜRG PLATTNER
DR. PETER MOSIMANN
STEPHAN CUENI *
PROF. DR. GERHARD SCHMID
DR. JÜRG RIEBEN
DR. MARKUS METZ
DR. DIETER GRÄNICHER *
KARL WÜTHRICH
YVES MEILI
FILIPPO TH. BECK, M.C.J.
DR. FRITZ ROTHENBÜHLER
DR. STEPHAN NETZLE, LL.M.
DR. BERNHARD HEUSLER
DR. ALEXANDER GUTMANS, LL.M. *
PETER SAHLI * *
DR. THOMAS WETZEL
DR. MARK S. NATER, LL.M.
SUZANNE ECKERT
DOMINIQUE PORTMANN
DR. FELIX UHLMANN, LL.M
PROF. DR. MARKUS MÜLLER-CHEN
ROLAND MATHYS, LL.M
THOMAS RESSAMEN
DR. ASTRID BOOS-HERSBERGER, LL.M.
MARTIN SOHM
RETO ASCHENBERGER, LL.M.
BRIGITTE UMBACH-SPAHN, LL.M
GUDRUN ÖSTERREICHER SFANIOL
DR. MARKUS SCHOTT, LL.M
JAMES KOCH
DR. CHRISTOPH MÜLLER, LL.M
DR. SIMONE BRAUCHBAR BIRKHAUSER, LL.M
AYESHA CURMALLY
CLAUDIUS GELZER
MARIE-CHRISTINE MÜLLER-GERSTER
CORNELIA WEISSKOPF-GANZ
STEVEN ALBRECHT
DR. CHRISTOPH ZIMMERLI, LL.M.
DR. REGULA HINDERLING
IRENE DERUNGS
DR. STEPHAN KESSELBACH
MADELAINA GAMMETER
CHRISTIAN ROHNER
RODRIGO RODRIGUEZ
DR. PETER PLETZ

ANDREAS MARFSCHI
KONSULENT

* AUCH NOTARE IN BASEL
** DRIMÄRE ZÜRCHER NOTARIAT(EN)
   ALS RECHTSANWALT NICHT ZUGELASSEN

**Present by fax (37 pages)**
**044 396 21 11**

Schaufelberger & van Hoboken
Mr. Marco A. Rizzi, LL.M.
Seestrasse 17
P.O. Box
8702 Zürich-Zollikon 2

Basel, April 14, 2005  MoP/dod/ruc

**Via Marketing and Promotion S.A.**
**Elsevier B.V. and Affiliated Companies; Blackwell Publishing Ltd. and**
**Affiliated Companies**

Dear Colleague,

Thank you for your letter of Tuesday, April 12, 2005. I have taken notice that you have been mandated by Via Marketing & Promotion S.A.

I can confirm that Elsevier, Inc., Blackwell Publishing Ltd., British Medical Journal Publishing Group Ltd., Elsevier B.V., Massachusetts Medical Society, John Wiley & Sons, Inc., Wiley Periodicals, Inc., Wiley-Liss, Inc. and Springer Science & Business Media GmbH & Co. KG have filed a criminal complaint in Lugano. With this letter I also inform you that Blackwell Publishing, Inc., Elsevier, Inc., Massachusetts Medical Society and Wiley-Liss, Inc. have filed a civil claim against Via Marketing & Promotion S.A., d/b/a, ActaMed Services and Robert Th. Gmelig/Meyling with the United States District Court for the District of Massachusetts on April 7, 2005. Mr. William S. Strong, Esq., attorney of the plaintiffs, will send also copy of this claim directly to the defendants. For reasons of convenience you already receive a copy.

After our phone conference of April 6, 2005 I have contacted my clients. They insist on receiving from your client an approval of the cease and desist letters as submitted on February 18, 2005. Each of my clients may then consider

BÜRO ZÜRICH
CH-8700 KÜSNACHT ZÜRICH
GOLDBACH-CENTER
SEESTRASSE 39
TELEFON +41 (0)43 222 38 00
TELEFAX +41 (0)43 222 38 01
ZUERICH@WENGER-PLATTNER.CH

BÜRO BERN  CH-3000 BERN 6
JUNGFRAUSTRASSE 1
TELEFON +41 (0)31 357 00 00
TELEFAX +41 (0)31 357 00 01
BERN@WENGER-PLATTNER.CH

ALLE ANWÄLTE SIND AN IHREM JEWEILIGEN STANDORT
IM ANWALTSREGISTER EINGETRAGEN

**WENGER PLATTNER**

licensing ActaMed's activity for the future for some aspects of that activity. ActaMed should, however, be aware of the fact that further publishers have mandated the undersigned to send cease and desist letters to your client.

Yours sincerely,

Dr. Peter Mosimann

cc:   Mrs. Magda Streuli-Youssef, Walder Wyss & Partners, Münstergasse 2, Post-
fach 2990, 8022 Zürich (present by fax with enclosure: 01 265 75 50)

Repubblica e Cantone
Ticino

**ti** 

**Polizia cantonale**
www.polizia.ti.ch

## Verbale di perquisizione
## e di sequestro

*Al MP*
*Sost. PP Marisa ALFIER*
*6300 Lugano*

In esecuzione del Suo/Vostro ordine del _11.04.2005_ si attesta che è stata effettuata il _12.04.2005_

alle ore _10.00_ a _Porza_ ubicazione esatta: _c/o ACTA Med,_

_Via Chiasso 15_

con l'assistenza di sindaco/municipale _____

previa apertura con la forza operata da _____

la perquisizione domiciliare presso _ACTA Med_

alla presenza di _GMELIG MEYLING Mark, avv. Bonafede Giovanna,_
_avv. ITEM Ettore, GMELIG MEYLING Robert_

| Locale e collocazione | Oggetti sequestrati | X |
|---|---|---|
| | - mappetta corrispondenza avv. Mosimann | ☐ |
| | c/o Studio Scollo-Lavizzari (mappetta A) | ☐ |
| | - mappetta corrispondenza con PROLITTERIS | ☐ |
| | (mappetta B) | ☐ |
| | - mappetta contenente autorizzazioni alla | ☐ |
| | riproduzione da parte di autori (mappetta C) | ☐ |
| | - CD con lista dei servizi offerti (mappetta D) | ☐ |
| | (in 2 copie di cui una sigillata) | ☐ |
| | - CD contenente tutti gli altri dati | ☐ |
| Materiale sotto | (contratti + liste clienti, ecc.---) | ☐ |
| suggello e | in 2 copie di cui una sigillata | ☐ |
| soggetto a | - Busta contenente bilanci + conto | ☐ |
| reclamo | economico VMP S.A. anni 1997/2004 | ☐ |
| | (2004 - bozza) | ☐ |

Gli oggetti sequestrati vengono presi in consegna dalla polizia; quelli contrassegnati con la lettera X sono affidati in custodia a _M.P. Lugano_ con diffida a non disporre senza autorizzazione scritta delle autorità penali o di polizia.

Osservazioni: _____

Il presente verbale viene steso su _2_ pagina/e in _3_ esemplari, di cui _1_ per le autorità inquirenti, 1 per il detentore dei locali perquisiti o degli oggetti sequestrati e 1 per il custode degli oggetti sequestrati.

Letto, approvato e sottoscritto a _Porza_ il _12.04.2005_ alle ore _12.30_

Gli agenti di polizia:

Isp. FIENI Angelo

Il detentore dei locali e/o oggetti:

Il custode degli oggetti:

Collaboratori e testimoni:

Repubblica e Cantone
Ticino

**ti**

**Polizia cantonale**

## Verbale di perquisizione e di sequestro

foglio n. 2

| Locale e collocazione | Oggetti sequestrati | X |
|---|---|---|
| Materiale depositato c/o ACTA Med Porza. | Vari classificatori contenenti autorizzazioni alla riproduzione da parte di autori (NB. Questi classificatori sono depositati in un armadio, ufficio di riserva al 3° piano, con apposto sigilli) | |

Questo foglio aggiuntivo è parte integrante del verbale di perquisizione e sequestro concernente:

ACTA Med  Via Chiasso 15

Letto, approvato e sottoscritto a  Porza , il 12.04.2005 , alle ore 12.30

Gli agenti di polizia:            Il detentore dei locali        Il custode degli oggetti:        Collaboratori e testimoni:
                                 e/o oggetti

**Tentative English Translation**

of

**Minutes of the Cantonal Police Ticino regarding House Search and Confiscation with ACTA Med, Dated April 12, 2005**

---

On April 12, 2005, from 10.00 a.m. until 12.30 a.m a house search took place at the offices of ACTA Med, Via Chiosso 15, Porza.

The following persons were present at the house search: Mark Gmelig Meyling, Giovanna Bonafede (attorney at law), Ettore Item (attorney at law) and Robert Gmelig Meyling.

The police sized the following objects:

- File of correspondence of Mr. Mosimann, attorney at law, c/o lawyers office Scollo-Lavizzari (file A)

- File of correspondence with PROLITTERIS (file B)

- File containing authorizations of authors regarding the reproduction (file C)

- CD with list of offered services (file D) (in two copies, on of them is sealed)

- CD containing all the other data (contracts, list of clients, etc.), in two copies, one of them is sealed (*this material is sealed and subject to complaint*)

- Envelope containing balances and accounts of VMP S.A., June 1997/2004 (2004 - draft) (*this material is sealed and subject to complaint*)

- Various folders containing authorizations regarding reproductions on the part of authors (said folders are deposited with ACTA Med, Porza, in an armoire, in a reserve office on the third floor, under seal)

(...)

ADVOKATUR UND NOTARI

ATTORNEYS AT LAW

AND PUBLIC NOTARIES

# WENGER PLATTNER

B A S E L · Z Ü R I C H · B E R N

CH-4010 BASEL

AESCHENVORSTADT 55

TELEFON +41 (0)61 279 70 00

TELEFAX +41 (0)61 279 70 01

BASEL@WENGER-PLATTNER.CH

WWW.WENGER-PLATTNER.CH

Schaufelberger & van Hoboken
Mr. Marco A. Rizzi, LL.M.
Seestrasse 17
P.O. Box
8702 Zürich-Zollikon 2

DR WERNER WENGER *

DR JÜRG PLATTNER

DR PETER MOSIMANN

STEPHAN OVEN *

PROF DR GERHARD SCHMID

DR JÜRG RIEBEN

DR MARKUS METZ

DR DIETER GRANICHER *

KARL WÜTHRICH

YVES MEILI

FILIPPO TH BECK, M C J.

DR FRITZ ROTHENBÜHLER

DR STEPHAN NETZLE, LL M

DR BERNHARD HEUSLER

DR ALEXANDER GUTMANS, LL M *

PETER SAHLI *

DR THOMAS WETZEL

DR MARC S MATER, LL M

SUZANNE ECKERT

DR DOMINIQUE PORTMANN

DR FELIX UHLMANN, LL M

PROF DR MARKUS MÜLLER CHEN

ROLAND MATHYS, LL M

DR ASTRID BOOS-HERSBERGER, LL M

MARTIN SOHM

RETO ASCHENBERGER, LL M

BRIGITTE UMBACH-SPAHN, LL M

GUDRUN OSTERREICHER SPANIOL

DR MARKUS SCHOTT, LL M

DR CHRISTOPH MÜLLER, LL M

DR SIMONE BRAUCHBAR BIRKHÄUSER, LL M

AYESHA CURMALLY *

CLAUDIUS GELZER, LL M

MARIE-CHRISTINE MÜLLER GERSTER

CORNELIA WEISSKOPF GANZ

OLIVER ALBRECHT

DR CHRISTOPH ZIMMERLI, LL M

DR REGULA HINDERLING

DR STEPHAN KESSELBACH

MAGDALENA GARAMFELI

CHRISTIAN ROTHLIN

RODRIGO RODRIGUEZ

DR PETER RELLLY

DR ADRIAN RAPP

DR RETO VONZUN, LL M

MARTINA STAHLER

CRISTINA STROZZI DE ZANDIZAR

DANIEL TOURER * *

ANDREAS MAESCHI

* ÖFFENT

* AUCH NOTARE IN BASEL

* * NUR ÜBER UNS NOTARIELLEN

IN DER RECHTSANWALT NICHT ZUGELASSEN

Basel, June 2, 2005  RaA/rem

**Via Marketing and Promotion S.A.**

**Elsevier B.V. and Affiliated Companies;**

**Blackwell Publishing Ltd. and Affiliated Companies**

Dear Colleague

This letter is to inform you that our clients filed the requests for debt en-
forcement against your client in order to interrupt the running of the statute
of limitations.

Please find enclosed copies of the requests for debt enforcement mentioned
above.

Yours sincerely

Dr. Peter Mosimann

BÜRO ZÜRICH

CH-8700 KÜSNACHT ZÜRICH

GULDBACH CENTER

SEESTRASSE 39

TELEFON +41 (0)43 222 38 00

TELEFAX +41 (0)43 222 38 01

ZÜRICH@WENGER-PLATTNER.CH

BÜRO BERN  CH-3000 BERN 6

JUNGFRAUSTRASSE 1

TELEFON +41 (0)31 357 00 00

TELEFAX +41 (0)31 357 00 01

BERN@WENGER-PLATTNER.CH

<u>Enclosures</u>

<u>cc.:</u>  Mr. Carlo Scollo Lavizzari (by e-mail <u>csl@datacomm.ch</u>)
Mr. Holger Gehring (by e-mail <u>holgergehring@tiscali.ch</u>)

ALLE ANWÄLTE SIND AN IHREM JEWEILIGEN STANDORT
IM ANWALTSREGISTER EINGETRAGEN



Homepage
Mail
Suche

français
italiano

Systematische Sammlung des Bundesrechts
Inhaltsverzeichnis des Landesrechts
Deckblatt | SR 291 Bundesgesetz über das Internationale Privatrecht
1. Kapitel: Gemeinsame Bestimmungen
5. Abschnitt: Anerkennung und Vollstreckung ausländischer Entscheidungen
◀ Art. 24 V. Staatenlose und Flüchtlinge
▶ Art. 26 I. Anerkennung / 2. Zuständigkeit ausländischer Behörden

## Art. 25

I. Anerkennung

1. Grundsatz

Eine ausländische Entscheidung wird in der Schweiz anerkannt:

a.
    wenn die Zuständigkeit der Gerichte oder Behörden des Staates, in dem die Entscheidung ergangen ist, begründet war;

b.
    wenn gegen die Entscheidung kein ordentliches Rechtsmittel mehr geltend gemacht werden kann oder wenn sie endgültig ist, und

c.
    wenn kein Verweigerungsgrund im Sinne von Artikel 27 vorliegt.

*Stand am 3. Mai 2005*



Homepage
Mail
Suche

français
italiano

Systematische Sammlung des Bundesrechts
Inhaltsverzeichnis des Landesrechts
Deckblatt | SR 291 Bundesgesetz über das Internationale Privatrecht
1. Kapitel: Gemeinsame Bestimmungen
5. Abschnitt: Anerkennung und Vollstreckung ausländischer Entscheidungen
◄ Art. 25 I. Anerkennung / 1. Grundsatz
► Art. 27 I. Anerkennung / 3. Verweigerungsgründe

## Art. 26

2. Zuständigkeit ausländischer Behörden

Die Zuständigkeit ausländischer Behörden ist begründet:

a.
wenn eine Bestimmung dieses Gesetzes sie vorsieht oder, falls eine solche fehlt, wenn der Beklagte seinen Wohnsitz im Urteilsstaat hatte;

b.
wenn in vermögensrechtlichen Streitigkeiten die Parteien sich durch eine nach diesem Gesetz gültige Vereinbarung der Zuständigkeit der Behörde unterworfen haben, welche die Entscheidung getroffen hat;

c.
wenn sich der Beklagte in einer vermögensrechtlichen Streitigkeit vorbehaltlos auf den Rechtsstreit eingelassen hat;

d.
wenn im Falle einer Widerklage die Behörde, die die Entscheidung getroffen hat, für die Hauptklage zuständig war und zwischen Haupt- und Widerklage ein sachlicher Zusammenhang besteht.

*Stand am 3. Mai 2005*



Homepage
Mail
Suche

français
italiano

Systematische Sammlung des Bundesrechts
Inhaltsverzeichnis des Landesrechts
Deckblatt | SR 291 Bundesgesetz über das Internationale Privatrecht
8. Kapitel: Immaterialgüterrecht
◀ **Art. 110** II. Anwendbares Recht
▶ **Art. 112** I. Zuständigkeit / 1. Grundsatz

## Art. 111

**III. Ausländische Entscheidungen**

[1] Ausländische Entscheidungen betreffend Immaterialgüterrechte werden in der Schweiz anerkannt:

a.
   wenn sie im Staat ergangen sind, in dem der Beklagte seinen Wohnsitz hatte, oder
b.
   wenn sie im Staat ergangen sind, für den der Schutz der Immaterialgüter beansprucht wird, und der Beklagte keinen Wohnsitz in der Schweiz hat.

[2] Ausländische Entscheidungen betreffend Gültigkeit oder Eintragung von Immaterialgüterrechten werden nur anerkannt, wenn sie im Staat ergangen sind, für den der Schutz beansprucht wird, oder wenn sie dort anerkannt werden.

*Stand am 3. Mai 2005*

Article 25 IPL states the principle of recognition of foreign decisions in Switzerland as follows:
"*A foreign decision shall be recognized in Switzerland:*
**a. if the jurisdiction of the courts or authorities of the state in which the decision was rendered was established;**
*b. if no ordinary appeal is available against the decision or if it is final, and*
*c. if no ground for refusal pursuant to Article 27 exist*"

Pursuant to Article 26 IPL "*the jurisdiction of foreign authorities shall be established:*
*a. if a provision of this Act so provides, or, in the absence of such provision, if the defendant had his domicile in the state in which the decision was rendered;*
*b. if in a monetary dispute the parties subjected themselves by way of an agreement valid under this Act to the jurisdiction of the authority which rendered the decision;*
**c. if the defendant in a monetary dispute made an appearance without reservation;**
*d. (…)*".

Article 111 section 1 IPL states that:
"**Foreign decisions concerning intellectual property rights shall be recognised in Switzerland:**
**a. if they were rendered in the state in which the defendant had his domicile, or**
**b. if they were rendered in the state with respect to which the protection of intellectual property is requested and if the defendant has no domicile in Switzerland.**"

All the above are tentative translations from the German wording of Swiss laws.

ProLitteris | Joining | Members | Users | SMCC | New

- Profile
- History
- Copyright
- Membership
- Welfare Foundation
- Gazzetta
- Information material
- Links
- Contact details
- Feedback
- Imprint

**Profile**
ProLitteris is the Swiss copyright society for literature and art. It was founded in 1974. Since 1 July 2000 it has also been licensed to operate in the principality of Liechtenstein.

It negotiates levies with user organisations for the use of the protected works (e.g. books, newspaper articles, pictures, photographs) of its members. These levies determine the fees to be paid to ProLitteris for the use of a work. This revenue is transferred to eligible members on the basis of its distribution rules after the share for the Welfare Foundation and the administration costs have been deducted.

ProLitteris grants users the right to broadcast the protected works on a radio or television channel and over cable networks, to receive radio and television programmes in public places such as restaurants and department stores, to print and publish photographs and art works, to produce photocopies of books and press articles, to record film and sound works on blank cassettes, to rent books, sound carriers and sound-image carriers in libraries and to use works in schools.

ProLitteris members include writers, authors of dramatic and scientific works, journalists, artists, photographers, book, newspaper and magazine publishing houses, publishing houses for art, stage and music and legal successors in all categories.

ProLitteris has formed reciprocal agreements with a number of foreign sister societies. Thus, ProLitteris protects the rights of foreign creators in Switzerland, while, in return, the contracting societies protect the interests of ProLitteris members in their country.

The Swiss Institute for Intellectual Property (Eidgenössische Institut für Geistiges Eigentum (IGE)), in its regulatory capacity, ensures that the activities of the copyright societies in Switzerland are conducted in the proper manner. It is responsible for approving their statutes, distribution rules and financial reports.

More than 6,300 creators and around 700 publishing houses are currently members of ProLitteris (as at June 2003).

Back
Contact
Home
Sitemap

# DACHVERBAND DER URHEBER- UND NACHBARRECHTSNUTZER

## Zielsetzungen und Aktivitäten

## 1. Zielsetzungen

a) Der DUN ist der Dachverband der schweizerischen Urheber- und Nachbarrechtsnutzer. Er vereinigt private und öffentliche Nutzerorganisationen und Institutionen aus der ganzen Schweiz und dem Fürstentum Liechtenstein.

b) Der DUN setzt sich für die Interessen der Nutzer von Urheber- und Nachbarrechten ein. Er sensibilisiert die Mitglieder für die verschiedenen Nutzungsrechte.

c) Der DUN befasst sich vorausschauend mit ordnungspolitischen, rechtlichen, wirtschaftlichen und ethischen Grundsatzfragen der Urheber- und Nachbarrechtsnutzung.

d) Der DUN vertritt die gemeinsamen Interessen der Nutzer gegenüber dem Bund, den Verwertungsgesellschaften, anderen Marktpartnern und der Öffentlichkeit. Er ist Anhörungs- und Mitwirkungspartner gegenüber den zuständigen Behörden im Bereich von Gesetzgebung, Verordnung und Gesetzesvollzug.

e) Der DUN schafft und pflegt Beziehungen zu den Verwertungsgesellschaften und den Behörden.

f) Der DUN schafft und pflegt Beziehungen und Allianzen zu anderen in- und ausländischen Verbänden und Organisationen, mit welchen gemeinsame oder ähnliche Interessen bestehen. Er berücksichtigt insbesondere die Entwicklung, Regelung und Praxis im europäischen Raum.

g) Der DUN leistet Informations- und Öffentlichkeitsarbeit zwecks Pflege und Förderung des Ansehens der Nutzer und ihrer Dienstleistungen.

h) Der DUN koordiniert die Vertretung seiner Mitglieder in wichtigen Gremien, wie in der Eidgenössischen Schiedskommission für die Verwertung von Urheberrechten und verwandten Schutzrechten.

-2-

## 2. Aktivitäten

a) Der DUN pflegt die Kontakte zu den Verbandsmitgliedern. Er betreibt aktive Mitgliederwerbung. Er bereitet Informationen auf und gibt sie an seine Mitglieder weiter.

b) Der DUN beteiligt sich aktiv an der Schaffung der rechtlichen Rahmenordnung. Er erarbeitet Vernehmlassungen.

c) Der DUN nimmt Anhörungs- und Vernehmlassungsrechte wahr, die im Zusammenhang mit der Schaffung neuer Verwertungsgesellschaften und dem allfälligen Neuaufteilen des von den verschiedenen Verwertungsgesellschaften betrauten Repertoires stehen.

d) Der DUN verfolgt die Geschäftstätigkeit und Tarifpolitik der Verwertungsgesellschaften und unterhält regelmässigen Kontakt zu diesen.

e) Der DUN koordiniert oder führt im Auftrag von Mitgliedern oder Dritten Tarifverhandlungen mit den Verwertungsgesellschaften.

f) Der DUN koordiniert die von der Nutzerseite gestellten Mitglieder der Schiedskommission sowie die Stellung von Schiedskommissionsmitgliedern für Branchen und Bereiche, die sich nicht anderweitig organisiert haben.

g) Der DUN schafft den Zugang zu Informationen von Behörden über nationale und internationale Bestrebungen.

h) Der DUN erarbeitet eine Datenbank über:

 • bestehende Tarife
 • vergleichende Daten innerhalb der Tarife

i) Der DUN unterhält eine Informations-, Beratungs- und Dokumentationsstelle über alle wesentlichen Belange der Urheberrechtsnutzung. Er erarbeitet Musterverträge. Der DUN vermittelt Rechtsbeistand für die Mitglieder. Er unterstützt wissenschaftliche Arbeiten. Er erhebt die Bedürfnisse der Mitglieder und passt seine Dienstleistungen entsprechend an.

# DACHVERBAND DER URHEBER- UND NACHBARRECHTSNUTZER

## S T A T U T E N

### I. Name und Sitz

#### Art. 1

Unter dem Namen "Dachverband der Urheber- und Nachbarrechtsnutzer" (Schweizerischer Verband der an der Nutzung von Urheber- und verwandten Schutzrechten interessierten Organisationen / Fédération Suisse des Utilisateurs de Droits d'Auteurs et Voisins), nachfolgend DUN genannt, besteht ein Verband im Sinne von Art. 60 ff. ZGB mit Sitz in Bern.

### II. Zweck und Aufgaben

#### Art. 2

Der DUN bezweckt die Förderung und Wahrung der Interessen seiner Mitglieder. Seine Tätigkeit hat keine eigenen Gewinnzwecke zum Ziel. Der Vorstand ist berechtigt, den Verband als Verein im Handelsregister einzutragen.

#### Art. 3

Aufgaben des Verbandes:

a)   Der DUN ist der Dachverband der schweizerischen Nutzer von Urheberrechten und verwandten Schutzrechten. Er vereinigt private und öffentliche Nutzerorganisationen und Institutionen aus der ganzen Schweiz und dem Fürstentum Liechtenstein.

b)   Der DUN setzt sich für die Interessen der Nutzer von Urheberrechten und Nachbarrechten ein. Er sensibilisiert die Mitglieder für die verschiedenen Nutzungsrechte.

c)   Der DUN befasst sich vorausschauend mit ordnungspolitischen, rechtlichen, wirtschaftlichen und ethischen Grundsatzfragen der Urheberrechts- und Nachbarrechtsnutzung.

d)   Der DUN vertritt die gemeinsamen Interessen der Nutzer gegenüber dem Bund, den Verwertungsgesellschaften, anderen Marktpartnern und der Öffentlichkeit. Er ist Anhörungs- und Mitwirkungspartner gegenüber den zuständigen Behörden im Bereich von Gesetzgebung, Verordnung und Gesetzesvollzug.

e)   Der DUN schafft und pflegt Beziehungen zu den Verwertungsgesellschaften und Behörden.

-2-

f)   Der DUN schafft und pflegt Beziehungen und Allianzen zu anderen in- und ausländischen Verbänden und Organisationen, mit welchen gemeinsame oder ähnliche Interessen bestehen. Er berücksichtigt insbesondere die Entwicklung, Regelung und Praxis im europäischen Raum.

g)   Der DUN leistet Informations- und Öffentlichkeitsarbeit zwecks Pflege und Förderung des Ansehens der Nutzer und ihrer Dienstleistungen.

h)   Der DUN koordiniert die Vertretung seiner Mitglieder in wichtigen Gremien, wie in der Eidgenössischen Schiedskommission für die Verwertung von Urheberrechten und verwandten Schutzrechten.

i)   Der DUN führt Prozesse oder Verfahren in Fragen von grundsätzlicher Bedeutung für seine Mitglieder.

k)   Zur Verbandstätigkeit gehören alle im allgemeinen Interesse der Mitglieder liegenden Sachgeschäfte. Spezifische Interessen, die ein einzelnes Mitglied bzw. Dritte betreffen, sind von der Verbandstätigkeit zu trennen.

### III. Mitgliedschaft

### Art. 4

Mitglieder des Verbandes können Verbände und Behörden sowie juristische und natürliche Personen aus der Schweiz und dem Fürstentum Liechtenstein werden, die an den Verbandszwecken interessiert sind und seine Zielsetzungen unterstützen.

Für die Verbindlichkeiten haftet ausschliesslich das Vereinsvermögen.

### Art. 5

Juristische Personen gelten als ein Mitglied und üben das Stimmrecht durch einen bevollmächtigten Vertreter aus.

Die Vereinsbeschlüsse werden mit Mehrheit der Stimmen der anwesenden Mitglieder gefasst.

Bei Stimmengleichheit entscheidet bei Beschlüssen der Verbandspräsident, bei Wahlen das Los.

Änderungen der Statuten, Auflösung des Verbandes oder Zusammenschlüsse mit anderen Vereinen erfordern ein qualifiziertes Mehr von zwei Dritteln der anwesenden Mitglieder.

### Art. 6

Die Mitglieder werden nach Gruppen eingeteilt. Die Einteilung erfolgt nach den Interessen des Mitgliedes an den Zielsetzungen des Verbandes und nach dessen wirtschaftlichen Leistungsstärke. Die Einteilung ist massgebend für die Berechnung der Mitgliederbeiträge und für das Stimmrecht.

-3-

<u>Art. 7</u>

Der Austritt ist auf das Ende eines Rechnungsjahres möglich. Das Rechnungsjahr entspricht der Zeit vom 1. Juli bis 30. Juni der jeweiligen Jahre. Die Austrittserklärung muss bis 31. Dezember erfolgen.

Wenn ein Mitglied den Zielsetzungen des Verbandes entgegenwirkt oder dem Ansehen des Verbandes abträgliche Aktivitäten entfaltet, kann es vom Vorstand ausgeschlossen werden.

## IV. Organisation

<u>Art. 8</u>

Die Organe des Verbandes sind:

a)    die Mitgliederversammlung
b)    der Vorstand
c)    der Präsident
d)    die Rechnungsrevisoren
e)    die Geschäftsführung

<u>Art. 9</u>

Die Mitgliederversammlung setzt sich aus den Verbandsmitgliedern zusammen, welche an der Versammlung tatsächlich teilnehmen. Sie ist jedes Rechnungsjahr mindestens einmal einzuberufen. Die Einladungen sind spätestens 20 Tage vorher zu versenden.

Das Stimmrecht des einzelnen Mitgliedes ist wie folgt geregelt:

| | |
|---|---|
| Mitglieder Gruppe 1: | jedes Mitglied hat eine Stimme |
| Mitglieder Gruppe 2: | jedes Mitglied hat zwei Stimmen |
| Mitglieder Gruppe 3: | jedes Mitglied hat drei Stimmen |

Die Mitgliederversammlung hat folgende Kompetenzen:

a)    Wahl des Präsidenten, der Vorstandsmitglieder und zweier Rechnungsrevisoren für je drei Rechnungsjahre
b)    Abnahme des Jahresberichtes und der Rechnung
c)    Entlastung des Vorstandes
d)    Genehmigung des Voranschlages
e)    Festsetzung der Mitgliederbeiträge
f)    Statutenänderungen
g)    Beschlüsse über Anträge des Vorstandes und von Mitgliedern
h)    Beschlussfassung über Ausgaben, welche nicht im ordentlichen Budget enthalten sind
j)    Rekurse gegen Vorstandsbeschlüsse, sofern sie binnen 20 Tagen seit Kenntnisgabe ergriffen werden

-4-

## Art. 10

Der Vorstand besteht aus dem Präsidenten, zwei Vizepräsidenten und mindestens zwei Beisitzern. Im Vorstand ist mindestens ein Mitglied aus jeder Gruppe vertreten. Er konstituiert sich selbst.

Der Vorstand ist für alle Angelegenheiten zuständig, die nicht durch die Statuten oder den Beschluss der Mitgliederversammlung einem anderen Verbandsorgan übertragen sind.

Der Vorstand entscheidet bei der Aufnahme neuer Mitglieder über die Gruppenzuteilung.

Die laufenden Geschäfte und die Rechnungsführung besorgt der/die vom Vorstand ernannte Geschäftsführer/in des Verbandes.

## Art. 11

Die Rechnung wird durch die Rechnungsrevisoren geprüft. Sie erstatten der ordentlichen Mitgliederversammlung für jedes Rechnungsjahr einen schriftlichen Bericht.

## V. Finanzielles

## Art.12

Die Einnahmen setzen sich zusammen aus:

a) dem Mitgliederbeitrag, dessen Höhe jährlich von der Mitgliederversammlung festgesetzt wird.

b) Verrechnungen von erbrachten Dienstleistungen.

Bern, 10. Juni 2003                          Der Präsident:
(Gegründet am 16. Juni 1952)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
MASSACHUSETTS MEDICAL SOCIETY and
WILEY-LISS, INC.,

     Plaintiffs,

v.

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES and
ROBERT TH. GMELIG MEYLING,

     Defendants.

Civil Action No.:
1:05-cv-10697 WGY

**DEFENDANT ROBERT TH. GMELIG MEYLING'S**
**MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS'**
**COMPLAINT AGAINST HIM(1) FOR LACK OF PERSONAL JURISDICTION**
**(2) UNDER THE DOCTRINE OF *FORUM NON CONVENIENS, AND* TO DISMISS**
**COUNT 9 OF THE COMPLAINT (3) FOR LACK OF SUBJECT**
**MATTER JURISIDICTION AND (4) FOR FAILURE TO STATE A CLAIM**

Plaintiffs named an individual, Robert Th. Gmelig Meyling[1] as Defendant in this corporate dispute simply because he is CEO and founder of Defendant VIA Marketing & Promotion, S.A. d/b/a ActaMed Services ("ActaMed").  Plaintiffs do not allege that Mr. Meyling has any specific or general contacts with Massachusetts, and in fact his Massachusetts contacts are few, old, or unrelated to this dispute. In addition, there is no evidence that the alleged specific contacts of his company, ActaMed were directed by Mr. Meyling, and in any case they amount to at most a statistically insignificant portion of ActaMed's relatively small business.

Mr. Meyling therefore submits this memorandum in support of his Rule 12(b)(2) Motion to dismiss the Complaint of plaintiffs

---

[1] This Motion and Memorandum shall not constitute an unconditional appearance of any Defendant, and are made without waiver of any of Defendants' rights, including but not limited to their rights to challenge this Court's jurisdiction in this Court or any other court or judicial or administrative authority.  Defendants specifically reserve their right to challenge the Court's jurisdiction and the enforceability of the Court's judgment in Switzerland pursuant to Article 111 Section 1 of the Swiss Federal Act on International Private Law of December 18, 1987.  According to this provision, Swiss authorities do not recognize and enforce a foreign court's judgment in matters concerning intellectual property rights, if such foreign judgment was rendered against a defendant with domicile in Switzerland. Defendants  herewith explicitly declare that they will make use of any and all rights and remedies available to object to the Court's jurisdiction and to the enforceability of the Court's judgment in Switzerland, where Defendants are domiciled. See Exhibit 7 and 8 attached to Declaration of Marco A, Rizzi, L.L.M. dated June 14, 2005 (filed with this Motion).

- 1 -

Blackwell Publishing, Inc. ("Blackwell"), Elsevier, Inc.
("Elsevier"), Massachusetts Medical Society ("MMS") and Wiley-
Liss, Inc. ("Wiley-Liss") (collectively the "Plaintiffs"), in
its entirety for lack of personal jurisdiction.

As detailed below, Mr. Meyling lacks minimum contacts with
Massachusetts such that the exercise of personal jurisdiction
over him would comport with traditional notions of fair play and
substantial justice.  Therefore, Mr. Meyling respectfully
requests that this Court dismiss Plaintiffs' Complaint against
him.

### FACTS

Mr. Meyling is a citizen of the Netherlands and resident of
Switzerland.  Declaration of Robert Th. Gmelig Meyling at ¶3
(filed with this Motion).  He is President, CEO and a
stockholder of Defendant ActaMed, with a business address at
ActaMed in Switzerland. Id. at ¶¶1, 3.  Mr. Meyling has not
visited Massachusetts since a late 1970s visit for his former
employer.  Id. at ¶4.  He has not visited the U.S. since then on
business and has never come here for ActaMed. Id.  His last
personal visit to the U.S. (not to Massachusetts) was a vacation
over six years ago.  As CEO and President of ActaMed, which
provides document delivery services, Mr. Meyling has on occasion
corresponded with Plaintiffs' representatives regarding
inquiries as to ActaMed's activities.  Id. at ¶11.  At all

relevant times, Meyling has acted in his role as an employee,
representative and agent of ActaMed, and not on his own behalf.
Id. at ¶12.  Additionally, Meyling has not solicited business in
Massachusetts on behalf of himself or ActaMed, nor does he
benefit from its laws.  Id. at ¶13.  Moreover, ActaMed focuses
its efforts on Europe, and does not advertise in or direct its
business to Massachusetts or the United States. Id. at ¶¶7, 8.
In fact, well over ninety-nine percent of the document pages
ActaMed has delivered have been delivered to European customers,
and one hundred percent of its deliveries emanated from
Switzerland.  Id. at ¶¶6, 8.

Plaintiffs allege that ActaMed delivered copies of
Plaintiffs' copyright protected materials in the U.S. and
elsewhere (Compl. at ¶¶ 26, 28, 31, 33-34), but never allege
that ActaMed or Mr. Meyling set foot in the U.S.  They also
allege that Meyling "has the right, power and authority to
direct the activities of defendant ActaMed and has a direct
financial interest in the copyright infringement described in
[the] Complaint" (Compl. at ¶6), that he "directed and is
responsible for, the unlawful activities described [in the
Complaint], and derives direct financial benefit from such
copying" (Compl. at ¶9). They allege jurisdiction through the
Defendants' alleged "contact and business transactions within

the state, including without limitation the delivery into Massachusetts of the documents identified in this action." Compl. at ¶8.

Plaintiffs, however, do not allege that Mr. Meyling personally copied or distributed any of the relevant materials, or that he actually directed any of the alleged U.S. infringement. In short, Mr. Meyling's contact and alleged customers are insufficient to justify personal jurisdiction over him.

## ARGUMENT

### I.    TEST FOR PERSONAL JURISDICTION

As an alien defendant, Meyling may be summonsed into Court only if he could be subjected to the personal jurisdiction of that court. See generally 28 U.S.C. §1332(a)(2). To obtain personal jurisdiction, the Plaintiffs must show, first that he has transacted business in Massachusetts as defined by the Massachusetts long-arm statute, M.G.L. c. 223A §3, and that such assertion of jurisdiction does not exceed the Due Process Clause under the Fourteenth Amendment. Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996); LaVallee v. Parrot-Ice Drink Prods. of Am., Inc., 193 F. Supp.2d 296, 299-300 (D. Mass. 2002).

In order to maintain personal jurisdiction, the plaintiff bears the burden of proof with respect to the relevant

jurisdictional facts.  <u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 290 F.3d 42, 50 (1st Cir. 2002), <u>citing</u> <u>Foster-Miller, Inc. v. Babcock & Wilcox Canada</u>, 46 F.3d 138, 145 (1st Cir. 1995); <u>Moldflow Corp. v. Simcon, Inc.</u>, 296 F. Supp.2d 34, 39 (D. Mass 2003).

Plaintiffs have not alleged facts that, if true, would support an assertion of personal jurisdiction by this court over Meyling.  Moreover, given Meyling's few contacts in the Commonwealth of Massachusetts, such facts do not exist.

## II.  DEFENDANT MEYLING IS NOT SUBJECT TO JURISDICTION UNDER THE MASSACHUSETTS LONG-ARM STATUE

The Massachusetts long-arm statute provides that a Massachusetts court may exercise personal jurisdiction

> over a person, who acts directly or by an agent, as to a cause of action in law of equity arising from the person's
> (a)    transacting any business in this commonwealth;
> ...
> (d)    causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

M.G.L. c. 223A §3. Personal jurisdiction over Meyling may not be established by demonstrating that his employer, ActaMed, is subject to jurisdiction under the Massachusetts long-arm statute.  See <u>LaVallee</u>, 193 F. Supp.2d at 300, <u>citing</u> <u>Johnson Creative Arts, Inc. v. Wool Masters, Inc.</u>, 573 F. Supp. 1106,

1111 (D. Mass. 1983).  Plaintiff must establish that there is an

independent basis for jurisdiction over Meyling personally,

separate from jurisdiction over ActaMed.  Id.

### A.    In Massachusetts, Meyling Has Not Transacted Business On His Own Behalf.

Transacting business under the long-arm statute is

construed broadly, but is not limitless.  The test under

section 3(a) is designed to identify deliberate, as

distinguished from arbitrary contacts with Massachusetts by a

nonresident. See Lyle Richards Int'l, Ltd. v. Ashworth, Inc.,

132 F.3d 111, 112 (1st Cir. 1997).  The analysis can hinge on

whether the nonresident initiated or solicited business in

Massachusetts.  Id.  For example, in Nowak, the First Circuit

upheld the finding that soliciting business through

advertisements constituted transacting business. 94 F.3d at 712.

In this case, even ActaMed has not advertised in Massachusetts.

Meyling Decl. at ¶7.

In Lavallee, the plaintiffs sued Parrot-Ice Drink Products

of America ("Parrot-Ice"), a Texas corporation, and Zaya Malik,

its Senior Business Coordinator for International Business.  In

support of their contention that the Massachusetts long-arm

statute should apply to Malik, plaintiffs alleged that Malik

engaged in correspondence and "extensive telephone discussions"

with them in Massachusetts regarding the alleged formation of a

- 6 -

joint venture, violation of the terms of which formed the basis for the complaint.  193 F. Supp. 2d at 299.  The Court analyzed Malik's actions against the requirements of the Massachusetts long-arm statute and in light of agency principles and the fiduciary shield doctrine and found that there was no personal jurisdiction over Malik.  Id. at 302.[2]  The court declined to exercise jurisdiction because, although Malik was directly involved with the actions from which the claim arose, he acted solely within the scope of his employment and did not personally benefit from his Massachusetts contacts.  Id.

In the present case, Meyling has not transacted any business in Massachusetts on his own behalf.  As stated above, Meyling rarely has visited Massachusetts, and never in the last two decades.  Moreover, even in his role as President and CEO of ActaMed, Meyling has not purposely directed any of ActaMed's business toward Massachusetts through advertising or solicitation of business.  Meyling Decl. at ¶¶7, 8, 13. Meyling's correspondence with Plaintiffs has been entirely responsive to Plaintiffs' inquiries of ActaMed and in his role as an employee of ActaMed.  Id. at ¶¶ 11-12.

_____

[2] Although Massachusetts courts have not formally recognized the fiduciary shield doctrine as a constraint on the long-arm statute, Lavallee used the doctrine to "illuminate" its analysis, stating that it "gilds the lily" to exercise jurisdiction over the employee acting solely on behalf of his employer when the court is exercising jurisdiction over the corporation.  193 F. Supp.2d at 302 n. 2.

Even assuming that Meyling's 1970s visits to Massachusetts for his former employer or his correspondence with Plaintiffs for ActaMed could be construed as "transacting business" under the long-arm statute, Plaintiffs still are required to show that such actions are sufficiently related to the instant cause of action. "To satisfy the requirements of the long-arm statute, Section 3(a), the defendant must have transacted business in Massachusetts and the plaintiffs' claim must have arisen from the transaction of business by the defendant." Nowak, 94 F.3d at 712, citing Tatro v. Manor Care, Inc., 625 N.E.2d 549, 551 (1994). Here, Meyling's 1970s trips to Massachusetts were entirely unrelated to Plaintiffs, and his more recent communications to Massachusetts were responsive to Plaintiffs' inquiries regarding ActaMed's activities.

In light of Meyling's negligible activities here, and the unrelatedness of those activities to Plaintiffs' claims, jurisdiction under long-arm section 3(a) is not proper.

   **B.   Regardless Of Whether Or Not Meyling Has Caused
         Tortious Injury To Plaintiffs Massachusetts,
         Meyling Has Not Regularly Solicited Business,
         Or Engaged In Any Other Persistent Course
         Of Conduct, Or Derived Substantial Revenue
         From Goods Used Or Consumed Or Services Rendered Here**

Even if Plaintiffs could establish that ActaMed has caused a tortious injury in Massachusetts, they still would be unable to justify jurisdiction under long-arm section 3(d) because

neither Defendant is engaged in any regular course of conduct
that falls within this section.

Meyling on his own behalf has not transacted any business
in Massachusetts. Likewise, it has been years since he visited
Massachusetts for business. Accordingly, Plaintiffs cannot show
that he has engaged in a "persistent course of conduct" here.

Plaintiffs likewise cannot show that Meyling derives
substantial financial revenue from goods used in the
Commonwealth. Even though "substantial revenue" is neither an
absolute amount nor an absolute percentage of total sales" Am.
Home Assurance Co. v. Sport Maska, Inc., 808 F. Supp. 67 (D.
Mass. 1992)(internal citations omitted), jurisdiction over
Meyling is not proper under this section of the long-arm
statute.  Plaintiffs allege that Meyling has a "direct financial
interest in the copyright infringement described in [the]
Complaint," Compl. at ¶6, and that he "derives financial benefit
from such copying." Id. at ¶40. As an employee of and
stockholder in ActaMed, Meyling does have a financial interest
in the company's general activities.  It does not follow,
however, that Meyling derives substantial revenue from the
alleged activities in this case.  Based on number of pages
delivered, ActaMed's U.S. activities over the past three years
necessarily comprise substantially less than one percent of its
total worldwide business.  Meyling Decl. at ¶8.  Meyling's

income as a result of that small amount is presumably some percentage less than the miniscule total. Even under the most liberal reading of the statute, to premise jurisdiction on such a small percentage of business would be unfair. Accordingly, Meyling is not subject to jurisdiction under long-arm section 3(d).

## III. EXERCISING PERSONAL JURISDICTION OVER MEYLING WOULD VIOLATE THE DUE PROCESS CLAUSE UNDER THE MINIMUM CONTACTS ANALYSIS

The Due Process Clause of the Fourteenth Amendment requires that there be sufficient minimum contacts between the defendant and the forum such that the exercise of personal jurisdiction over a defendant comports with traditional notions of fair play and substantial justice. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The Court may exercise either general or specific jurisdiction. Id. General jurisdiction is founded on forum-based contacts that do not relate directly to the cause of action, but nevertheless reveal systematic activity by the defendant in Massachusetts. Id. In the absence of general jurisdiction, the court may exercise specific jurisdiction when the defendant has contacts in and with the state that form a demonstrable nexus with the plaintiff's claim. Id.

### A.   Meyling Does Not Have Sufficient Contacts With The Commonwealth of Massachusetts to Justify General Jurisdiction

In order to exercise general jurisdiction, the Court must find that Mr. Meyling has "continuous and systematic general business contacts" with Massachusetts.  <u>Moldflow,</u> 296 F. Supp.2d at 40, <u>quoting</u> <u>Helicopteros Nacionales de Colombia S.A. v. Hall</u>, 466 U.S. 408, 416 (1984). In other words, although the contacts necessary to support general jurisdiction need not be those from which the cause of action arises, the plaintiff still must show a strong connection between the defendant and the forum state.

As discussed above, Meyling has had few contacts with the Commonwealth of Massachusetts.  It follows that his few contacts will not satisfy the requirement for a strong connection sufficient to exercise general jurisdiction.

### B.  Meyling's Few Contacts With The Commonwealth Of Massachusetts Do Not Meet The Test For Specific Jurisdiction

The First Circuit employs a three-part analysis to determine if sufficient minimum contacts exist to exercise specific jurisdiction over a party.  <u>LaVallee</u>, 193 F.Supp.2d at 303, <u>citing</u> <u>Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n</u>, 142 F.3d 26, 35 (1st Cir. 1998), <u>see also</u>, <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1389 (1st Cir. 1995); <u>Phillips Exeter Academy v. Howard Phillips Fund, Inc.</u>, 196 F.3d 284, 288 (1st Cir. 1999). First, the claim must directly rise out of, or relate to, the defendant's in-forum activity.  <u>LaVallee</u>, 193 F.Supp.2d at 303. Second, the defendant's in-state contacts must represent a

purposeful availment of the privileges of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Id. at 303-04.  Third, the exercise of jurisdiction must, in light of certain "gestalt" factors, be reasonable. Id. at 304.  All three tests must be applied to determine whether sufficient contacts exist.

Application of that three-part test to the facts presented here conclusively demonstrates that Plaintiffs cannot establish sufficient minimum contacts between Meyling and Massachusetts to satisfy due process requirements.

Plaintiffs allege that this Court has personal jurisdiction over both of the Defendants "through their contact and business transactions within the state, including without limitation the delivery into Massachusetts of the documents identified in this action." Compl. ¶8. Specifically, Plaintiffs allege that Meyling's employer, ActaMed, delivered electronic copies and hard copies of copyright protected documents to Plaintiffs' agent, Newjen Corporation (id. at ¶¶26-31), and that "[a]s President and CEO of ActaMed, defendant Gmelig Meyling has authorized and directed, and is responsible for the unlawful activities described herein, and derives direct financial benefit from such copying." Id. at ¶40.

Even if alleged document deliveries were sufficient for this Court to exercise personal jurisdiction over ActaMed, that alone is not a sufficient basis for jurisdiction over Mr. Meyling.  There must be an independent basis for exercising jurisdiction over him. See LaVallee, 193 F. Supp.2d at 300; Johnson Creative Arts, 573 F. Supp. at 1111; Interface Group-Massachusetts, LLC v. Rosen, 256 F.Supp.2d 103, 105 (D. Mass. 2003). Although "this requirement for an independent jurisdictional basis may be satisfied when a corporate officer transacts in-forum business either in his personal capacity or solely on behalf of the corporation," id., the facts of this case do not warrant the court doing so.

1.  **Plaintiffs' Claims Against Meyling Are Not Related To Any Activity By Meyling In Massachusetts**.

The First Circuit has read the relatedness part of the due process analysis in conjunction with long-arm section 3(a).  See Cambridge Literary v. W. Goebel Porzellanfabrik, 295 F.3d 59 (1st Cir. 2002)(finding personal jurisdiction proper over German partnership, but not individual limited partners). The Lavallee court stated that to satisfy the relatedness requirement, "the action must directly arise out of the specific contacts between defendant and the forum state."  193 F. Supp.2d at 303 (internal citations omitted).  The defendant's in-state conduct must form an important or material element of proof in the plaintiff's

- 13 -

case.  Phillips Exeter, 196 F.3d at 289 (internal citations
omitted).  Further, there must be a causal nexus between the
defendant's Massachusetts contacts and the plaintiff's claim or
cause of action.  LaVallee, 193 F. Supp.2d at 303. "The
relatedness requirement is not met merely because a plaintiff's
cause of action arose out of a general relationship between the
parties, rather the action must arise out of the specific
contacts between the defendant and the forum state."  Interface
Group-Massachusetts, 256 F. Supp.2d at 107, quoting Sawtelle, 70
F.3d at 1389.  Contacts that do not relate to Plaintiffs' claims
do not help Plaintiffs satisfy their burden to prove the
relatedness element of the jurisdictional inquiry.  Id.

Here, Mr. Meyling's few contacts with Massachusetts have no
causal nexus to the alleged injury and conduct that form the
basis of Plaintiffs' claims.  As discussed in Section II.A.
above, those few contacts are unrelated or at best tenuously
related to Plaintiffs' claims.

In Johnson Creative Arts, the plaintiff filed suit for
unfair competition, trademark violations and breach of contract
against Wool Masters, Inc., a New York corporation, and its two
shareholders, Keyes and Guerrero.  In addition to being the sole
shareholders, the defendants were officers of the corporation:
Keyes was president, vice president and treasurer and Guerrero
was secretary. 573 F. Supp. at 1109. The plaintiffs made no

showing that, aside from his general role with regard to the corporation, Guerrero had any contacts with Massachusetts that would constitute "transacting business," nor did they show that Guerrero was involved in the actions from which the cause of action arose. Id. Although jurisdiction was maintained with regard to Keyes, the court dismissed the action with regard to Guerrero for lack of personal jurisdiction, stating that "[p]laintiff's conclusory allegation that the individual defendants own and control the corporate defendant is insufficient to show that they transacted business in Massachusetts." Id.

In Interface Group-Massachusetts, the plaintiff sued Rosen, the chairman and CEO of Key3Media Events, Inc. ("Key3"), for tortious interference with contract. 256 F. Supp.2d 103. In support of its assertion that the federal court had personal jurisdiction over Rosen, the plaintiff alleged that Rosen, in his role as CEO and Chairman, caused Key3 to breach its contract with plaintiff. Id. The court stated that it may be proper to base jurisdiction on defendant's in-forum activities in either a personal or business capacity. Id. at 105. In that case the plaintiffs alleged that Rosen visited Massachusetts and the building that was the subject matter of the dispute several times, and that he engaged in several telephone conversations with the plaintiffs. Id. at 106. The court analyzed these

contacts and held that, although these allegations included in-forum activities by the defendant, they could not be shown to be the "but for" or proximate cause of plaintiff's alleged injuries. Id. at 107-108. The court pointed out that even if harm suffered by the plaintiff was caused by Rosen in his role as CEO and chairman, that harm was an in-forum effect of an extra-forum action. Id. at 108-109. "Such in-forum effects of extra-forum activities are not sufficient to satisfy the constitutional requirement of minimum contacts." Id. citing Mass. Sch. of Law, 142 F.3d at 36 ("[w]e have wrestled before with this issue of whether the in-forum effects of extra-forum activities suffice to constitute minimum contacts and have found in the negative.").

Similarly here, Plaintiffs seek to assert jurisdiction over Meyling because he is President and CEO of ActaMed. Compl. at ¶¶ 6, 40. Meyling's position as an officer and employee of ActaMed simply is not sufficient to justify this court exercising jurisdiction over him. As in Johnson Creative Arts and Interface Group-Massachusetts, Plaintiffs have not shown that Meyling's actions were either the "but for" or proximate cause of their alleged injuries. On the contrary, they attempt to base jurisdiction over Meyling on his corporate title and not on any specific actions on his part, let alone actions in this

forum.  For the court to exercise jurisdiction based on those facts would violate constitutional due process.

### 2. Meyling Did Not Purposefully Avail Himself Of The Privileges Of Conducting Business In Massachusetts And Thus It Was Not Foreseeable That He Would Be Haled Into Court There

The function of the purposeful availment requirement is to ensure that personal jurisdiction is not premised solely upon the defendant's "random, isolated, or fortuitous" contacts with the forum state.  Sawtelle, 70 F.3d at 1391.  The purposeful availment analysis focuses on two concepts: voluntariness and foreseeability.  LaVallee, 193 F. Supp.2d at 303. Meyling's relationship with Massachusetts, through his 1970s visits and more recent responses to Plaintiffs' letters is far too attenuated to warrant a conclusion that it was foreseeable that he might face suit in Massachusetts.  Moreover, those few contacts were not voluntary on his part: the prior visits were in the scope of his previous employment and the latter letters were responses to Plaintiffs' inquiries, also in the scope of his employment.  As Meyling's alleged contacts with Massachusetts were hardly a voluntary acceptance of the benefits and protections of Massachusetts law, nor the kind of activity that made being haled into the Massachusetts courts reasonably foreseeable, the "purposeful availment" requirement of due process cannot be met.

- 17 -

3.    **The Massachusetts Court's Exercise**
      **Of Jurisdiction Over Meyling**
      **Would Be Unfair And Unreasonable**

With respect to the third requirement, the Court must determine whether the exercise of personal jurisdiction over Meyling would "offend traditional notions of fair play and substantial justice."  Courts look to "gestalt factors" to aid this determination: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the Plaintiffs' interest in obtaining convenient relief; and (4) the judicial system's interest in obtaining the most effective resolution of the controversy. See LaVallee, 193 F. Supp.2d at 304.

In conducting minimum contacts analysis, courts consider this "panoply of other factors which bear upon the fairness of subjecting a nonresident to the authority of a foreign tribunal."  United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). The "gestalt" factors are not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice. Id. Under each of the factors above, asserting jurisdiction over Meyling is unreasonable and unjust. Taken together, it is evident that Plaintiffs' Complaint against Meyling should be dismissed.

Meyling is a citizen of the Netherlands and a resident of Switzerland.  Requiring him to defend himself in Massachusetts

would necessitate enormous expense in travel and transportation
of evidence and witnesses from Switzerland.  In addition, he may
be unable to adequately defend himself in a forum where his
access to Swiss third party witnesses and evidence via the Hague
Convention may be limited. This fist factor therefore weighs
against an assertion of jurisdiction. The second and fourth
factors address judicial economy and general principles of just
and efficient resolution of disputes. Given the locus of
operative events, evidence and witnesses and Plaintiffs'
intention to assert claims under foreign laws, this jurisdiction
does not have as compelling an interest in adjudicating this
dispute as it would if the cause of action were local, nor can
it guarantee access to all of the operative facts involved in
such an adjudication. The third factor, Plaintiffs' interests in
convenience also weighs in favor of dismissal.  Due to the
possible impediments under the Hague Convention to accessing
relevant witnesses and evidence, Plaintiffs, as well as the
Defendants, may be better able to resolve this dispute in
Switzerland.

    Plaintiffs cannot satisfy the "minimum contacts" test under
any of the three parts of the analysis.  In addition to failing
to satisfy the tests under the Massachusetts long-arm statute,
the record shows that Meyling lacks an adequate connection with
Massachusetts to support the exercise of jurisdiction over him

under the U.S. Constitution.  As such, requiring Meyling to litigate in Massachusetts would violate notions of fair play and substantial justice.  The Court should therefore dismiss the Complaint for lack of personal jurisdiction.

<u>**CONCLUSION**</u>

For the reasons stated above, Mr. Meyling respectfully requests that this Court dismiss Plaintiffs' Complaint against him pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

Respectfully submitted,

ROBERT TH. GMELIG MEYLING,
By his attorneys,


Dated: June 14, 2005              \_\_\_s/John J. Cotter_____
                                  John J. Cotter, Esq., BBO# 554524
                                  David J. Byer, Esq. BBO# 544411
                                  KIRKPATRICK & LOCKHART NICHOLSON
                                  GRAHAM LLP
                                  75 State Street
                                  Boston, MA 02109-1808
                                  617.261.3100
                                  617.261.3175 (fax)

CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2005, I caused a copy of the foregoing document to be served by electronic filing and by first class United States mail, postage prepaid upon the following:

William S. Strong, Esq.
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114


                                    s/Penny S. Lennox
                                    Penny S. Lennox