UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

BLACKWELL PUBLISHING, INC., )
ELSEVIER, INC., )
MASSACHUSETTS MEDICAL SOCIETY, )
and )
WILEY-LISS, INC., )
 )
    Plaintiffs, )
 )
v. )   Civil Action No.:
 )   1:05-CV-10697 WGY
 )
VIA MARKETING & PROMOTION, S.A. )
d/b/a ACTAMED SERVICES and )
ROBERT TH. GMELIG MEYLING, )
 )
    Defendants. )

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
ON GROUNDS OF *FORUM NON CONVENIENS*, FAILURE TO STATE A
CLAIM, AND LACK OF SUBJECT MATTER JURISDICTION**

Plaintiffs Blackwell Publishing, Inc., Elsevier, Inc., Massachusetts Medical Society, and Wiley-Liss, Inc., hereby oppose the motion of defendants VIA Marketing & Promotion, S.A. ("ActaMed") and Robert Th. Gmelig Meyling ("Meyling"[1]) to dismiss the Complaint on grounds of *forum non conveniens*, failure to state a claim upon which relief may be granted, and lack of subject matter jurisdiction.[2]

---

[1] Plaintiffs believe that the individual defendant's proper last name is the compound name "Gmelig Meyling," but note that he is referred to (perhaps for simplicity) in his own briefs herein as simply "Meyling." That style will be adopted here to avoid confusion.

[2] Meyling's motion to dismiss for lack of personal jurisdiction was filed separately and plaintiffs' opposition to that motion is set forth in a separate brief filed herewith.

1

Defendants' motivation is certainly understandable. From their base in Switzerland, defendants conduct an international business of document delivery, sending unauthorized copies of plaintiffs' journal articles into many countries around the world. Naturally they do not wish to be subject to legal action anywhere but in their own home country of Switzerland. But they are and must be.

One of the plaintiffs, Massachusetts Medical Society, is a non-profit organization located (as its name implies) in Massachusetts. Of the three corporate plaintiffs, two – Blackwell Publishing, Inc., and Elsevier, Inc.– are headquartered in Massachusetts. Plaintiffs have sued defendants for infringement of their copyrights in the United States, in violation of U.S. law; the infringements of which they have evidence to date all occurred here in Massachusetts. Plaintiffs have also sued defendants for infringements occurring elsewhere, believing that defendants' delivery of unauthorized copies of journal articles constitutes infringement under the laws of every country into which those deliveries have been made.

Ignoring the heavy connection of this case with Massachusetts, the violation of a federal statute, and ignoring even the global nature of their own business, defendants now assert that the only proper place for them to be sued is in their home country of Switzerland, notwithstanding that plaintiffs do not sue them for any conduct occurring in Switzerland or for violation of Swiss law. Defendants also assert that this Court lacks jurisdiction over plaintiffs' claims, notwithstanding both precedent and scholarly commentary to the contrary. In every respect, defendants' motion is without foundation and must be denied.

I.  **Defendants Have Failed To Meet Their Burden Of Showing That This Court Is Not The Proper Forum For Plaintiffs' Claims.**

Defendants in their moving papers never come to grips with the fact that the foundation of this case is violation of U.S. copyrights occurring within the United States. The infringement consists of (i) unauthorized importation of copies into the United States and/or (ii) unauthorized distribution of copies within the United States and/or (iii) the causing of unauthorized copies to be created within the United States. Plaintiffs are unaware of any case – and defendants have certainly cited no case – in which an American plaintiff has been cast out of an American court with a claim involving infringement of its copyright *within the United States* – or indeed involving the commission of any tort of any kind[3] within the United States. The suggestion that this Court even has the discretion to dismiss on *forum non conveniens* grounds – in effect to send overseas – a case arising under a federal statute is an astonishing one and wrong on its face. Defendants cite no precedent for the proposition, and seem not even to appreciate the enormity of their demand.

The error in defendants' motion seems so plain that plaintiffs are tempted to end the discussion here and continue to the next topic. However, as a precaution, plaintiffs will show that even could defendants' argument be entertained it is still fatally flawed.

Defendants attempt to paint the doctrine of *forum non conveniens* as a simple balancing act, with the more convenient forum prevailing. In fact, Switzerland is not a more convenient forum, for reasons that will be discussed *infra*, but the entire premise of defendants' argument is flawed. The Supreme Court decision in *Gulf Oil Corporation v.*

---

[3] Copyright infringement is a species of tort. *Leo Feist, Inc. v. Young*, 138 F.2d 972, 975 (7th Cir. 1943).

*Gilbert*, 330 U.S. 501 (1947), which laid the groundwork for federal *forum non conveniens* doctrine, made clear that only in "exceptional circumstances" should a U.S. court decline to exercise jurisdiction where it has jurisdiction. *Id.* at 504. *Gulf Oil* instructed trial courts to weigh the inconvenience to the plaintiff of having to sue elsewhere against the inconvenience to the defendant in being sued in the plaintiff's chosen forum, but with the following caveat: that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 508; *see also Mercier v. Sheraton International, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991) ("*Mercier II*"); *Mercier v. Sheraton International, Inc.*, 981 F.2d 1345, 1354, *cert. denied*, 508 U.S. 912 (1993) ("*Mercier III*")[4]. Defendants' brief ignores that caveat.

Cases decided since *Gulf Oil* instruct that the first, threshold step in a *forum non conveniens* analysis is to determine if a reasonable alternative forum even exists. *Mercier I*, 935 F.2d at 424; *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 491 (2d Cir. 1998). Defendants bear the burden of showing that such a forum exists, *Mercier II*, 935 F.2d at 423, and this they have entirely failed to do.

Plaintiffs do not doubt that defendants are amenable to service of process in Switzerland. But that is not the only factor this Court must consider in determining whether a satisfactory alternative forum exists. This Court must also find that the alternative forum is willing and able to adjudicate the claims brought in this case. *Id.* at 424. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 fn.22 (1981) ("[D]ismissal would not be appropriate where the alternative forum does not permit litigation of the

---

[4] The use of "II" and "III" here conforms to that in *Mercier III* itself. *Mercier I* was the trial court's original opinion, not cited in this brief.

4

subject matter of the dispute"). Defendants have not suggested which court in Switzerland, if any, would take jurisdiction over a copyright claim involving violations of the laws of numerous other nations including the United States. Ironically, while asserting that *this* Court has no jurisdiction over claims arising under the copyright laws of other nations, they ask it to assume that the courts in Switzerland will happily take jurisdiction over such claims. As plaintiffs will show, *this* Court does have such jurisdiction, but defendants' assumption that it does not may well betray a different mind-set in Switzerland.[5]

Nor do defendants establish that a Swiss court would recognize plaintiffs' claims against Meyling personally. Meyling's personal liability for vicarious and/or contributory infringement is discussed in depth in plaintiffs' opposition to Meyling's separate motion to dismiss for lack of personal jurisdiction.

Even assuming a Swiss court could and would take jurisdiction over the claims in this case, there is no basis under *Gulf Oil v. Gilbert* for denying plaintiffs their choice of forum. *Gulf Oil* requires that the trial court, as the second step in a *forum non conveniens* analysis, consider factors which have been described as "private interest" and "public interest" factors. *Mercier II*, 935 F.2d at 424; *Boosey & Hawkes*, 145 F.3d at 491. Because the plaintiff's forum choice "should rarely be disturbed," *Gulf Oil*, 330 U.S. at 508, "'the moving defendant ... must establish that the private and public interests weigh heavily on the side of trial in the foreign forum.'" *Mercier II*, 935 F.2d at 424, quoting *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1164 (5th Cir. 1987) and citing

---

[5] Conversely, of course, if the Swiss courts can decide such issues, so presumably can the courts of the United States – as will be discussed *infra*.

*Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991). The deference accorded the plaintiff's choice of forum is "enhanced …when the plaintiff is an American citizen who has selected an available American forum." *Mercier III*, 981 F.2d at 1354. Courts should "require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion to deny a citizen access to the courts of this country." *Burt v. Isthmus Development Co.*, 218 F.2d 353, 357 (5th Cir.), *cert. denied*, 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955); *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 645-646 (2d Cir. 1956). Moreover, "When the plaintiff has chosen [its] home forum, it is reasonable to assume that the choice is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. at 236.

The relevant private interest factors stated in *Gulf Oil* include "access to proof, availability of witnesses and 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Boosey & Hawkes*, 145 F.3d at 491, quoting *Gulf Oil*, 330 U.S. at 508; *see also Mercier II*, 935 F.2d at 424.

In the present case, the relevant evidence consists of (i) plaintiff's copyright documents, including registrations and assignments from the authors of the relevant works, (ii) documents establishing plaintiffs' damages, and (iii) defendants' records showing what documents it has delivered copies of, to whom it has delivered those copies, and what profits it has made in so doing. The rest of the case is essentially a legal question: were those deliveries unlawful, as plaintiffs believe, or not?

There is no reason to think that shipping copies of ActaMed's records to the U.S. will be especially burdensome, let alone substantially *more* burdensome than shipping copies of plaintiffs' copyright documents to Switzerland. In a recent case in which a

defendant argued it would be onerous to ship its documents from Canada to the United States for trial, the Second Circuit rejected the argument and noted how high the bar is for all such allegations:

> [P]laintiffs should not have been deprived of their choice of forum except upon defendants' clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience. [citing *Koster v. (American) Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524 (1947).] The defendants have failed to explain how transporting the documents or copies of them would be "oppressive" or "vexatious[]" .... *Cf. Itoba Ltd. v. LEP Group PLC*, 930 F. Supp. 36, 44 (D.Conn.1996) ("To the extent documents exist in England, advances in transportation and communication accord this issue less weight.").

*DiRienzo v. Philip Services Corp.*, 294 F.3d 21, 30 (2d Cir. 2002). Needless to say, defendants here have failed completely to make a showing that meets this standard.

So too with witnesses. The only witnesses needed in this case are the parties' respective officers or employees. Defendants refer in their memorandum to "critical third party witnesses from Swiss copyright society ProLitteris and Swiss copyright user society DUN." However, defendants nowhere explain (i) what these witnesses could testify to, (ii) how these organizations relate in any way to this case, or (iii) whether their testimony would be voluntary or involuntary. Nor do defendants make any showing that deposition testimony from these witnesses would be insufficient, especially given that the issues in this case are fundamentally legal rather than factual in nature. This case thus stands in stark contrast to *Mercier III*, 981 F.2d at 1356, where the court noted that a key fact witness to the parties' negotiations was in Turkey, beyond the subpoena power of the court, and it would be "pivotal" for the trial court to "evaluate [the witness's] credibility on the basis of in-person testimony." *See also Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944, 952 (1st Cir. 1991) ("fraud and subjective intent are elements of the claim,

7

making the live testimony of witnesses for the purposes of presenting demeanor evidence essential to a fair trial").

Defendants attempt to paint themselves as David being sued by a "sophisticated international" Goliath, alleging that plaintiffs can better afford to litigate away from home than they can. They claim that plaintiffs all have overseas affiliates – forgetting, apparently, that one of the plaintiffs is the non-profit Massachusetts Medical Society. From this they leap to the assertion that plaintiffs are somehow more able to bear the cost of foreign litigation. Even if this were true it would be irrelevant. Alleged disparities in wealth are not a permissible factor in a *forum non conveniens* analysis.[6] Equally unavailing is defendants' unsubstantiated claim that the cost of having its U.S. lawyers travel "regularly" to Switzerland to review documents, etc., would be "exorbitant." (Nor do defendants explain why "regular" visits, whatever that means, would be necessary.) Shifting this case to Switzerland would merely shift the burden of travel expense from defendants to plaintiffs.

Defendants also make much of the alleged possible unenforceability of a U.S. judgment in Switzerland. (One wonders why, if this court's judgment is sure to be unenforceable, defendants do not simply default here.) However, plaintiffs wish to establish beyond peradventure that the conduct of ActaMed violates the laws of the United States, and as U.S. copyright owners they are entitled to have a United States

---

[6] In some cases plaintiffs who are truly indigent and require contingency fee counsel have been able to argue that a foreign forum which outlaws such arrangements is not an available forum. *See, e.g., Fiorenza v. U.S. Steel Intern., Ltd.*, 311 F. Supp. 117 (S.D.N.Y.1969). Plaintiffs are unaware of any case in which a court has found that financial inability of a party to defend itself in the United States required dismissal of a case on *forum non conveniens* grounds, but in any event, the 40-employee corporate defendant here and its owner-president are clearly far from indigent.

8

court make that determination. They want to establish beyond peradventure that ActaMed's conduct also violates the laws of whatever European countries are home to ActaMed's customers. They wish to place ActaMed's customers – many of which, they believe, are U.S. companies or the European subsidiaries of U.S companies – on notice of such finding, because these customers are potentially liable for contributory infringement. As was said in *London Film Productions Ltd. v. Intercontinental Communications, Inc.*, 580 F. Supp. 47, 49 (S.D.N.Y.1984), "The Court has an obvious interest in securing compliance with this nation's laws by citizens of foreign nations who have dealings within this jurisdiction." *Accord, Crosfield Hastech, Inc. v. Harris Corp.*, 672 F. Supp. 580, 587 (D.N.H. 1987) ("[I]t cannot be seriously questioned that the state has a strong interest in protecting trade secrets and intellectual property which have been developed in New Hampshire by dint of a New Hampshire company's efforts.") And even if a Swiss court refused to enforce the judgment of this Court in so many words, it is inconceivable that it would not give substantial deference to that judgment in terms of establishing the facts and applicable law. Apart from Switzerland, other European countries where ActaMed is doing business may be quite willing to enforce an injunction issued by this Court against ActaMed's sales force. Finally, there may be other countries where defendants have significant receivables or other assets that would honor a damage award by this Court. In short, plaintiffs utterly reject the idea that a judgment of this Court is without value; it has substantial value to plaintiffs and substantial importance in the greater scheme of things.

Finally, defendants claim that (i) the Swiss courts have an interest in "adjudicating disputes involving [Switzerland's] intellectual property laws and the

actions of a quasi-governmental agency," and (ii) U.S. courts do not have a compelling interest in adjudicating a case involving "Swiss and European laws" and "actions that primarily took place in Switzerland." (Defendants' brief at pp. 11-12.)  What "actions of a quasi-governmental agency" defendants have in mind is a mystery.  The rest of the argument is simply wrong.  This case does not involve Swiss intellectual property laws. It involves the intellectual property laws of the United States and of those other countries into which ActaMed delivered unauthorized copies, for it is the rights of plaintiffs within those counties that were violated by the delivery.[7]  Nor does this case focus primarily on defendants' actions in Switzerland; it focuses on the entry of unauthorized documents into countries *other than* Switzerland.[8]  Granted, each act of distribution began in Switzerland, but the violation of United States law (for example) occurred when the document entered the United States.  *Business Trends Analysts v. Freedonia Group, Inc.*, 650 F. Supp. 1452 (S.D.N.Y.1987).  Defendants' failure to grasp this critical distinction lies at the root of much of its error here.

To the extent this case involves the laws of countries in addition to the United States, this Court is in at least as good a position to determine such laws as the courts of Switzerland.  Meyling claims in his affidavit that most of ActaMed's customers are in Europe, but that in no way favors Switzerland as a forum.  Switzerland, though in Europe, is not a member of the European Union, and thus has no special ability to

---

[7] ActaMed's violations of Swiss law are the subject of pending criminal proceedings in Switzerland, a fact to which defendants allude in their papers.

[8] The cases relied on by defendants, *Howe v. Goldcorp Investments, Ltd.*, and *Murray v. British Broadcasting Corp.*, 906 F. Supp. 858 (S.D.N.Y. 1995), are not relevant here. Each involved claims arising principally under the law of the defendant's home jurisdiction. *See also Stewart v. Adidas A.G.*, 1997 WL 218431, *6 (S.D.N.Y. 1997).

understand the laws of (say) Great Britain. Indeed, the known ability of this Court to determine the application of foreign laws favors it as a forum for this case. *See Boosey & Hawkes*, 145 F.3d at 492 (U.S. court could and should retain jurisdiction of suit involving the copyright laws of eighteen different countries).

II.     **Defendants' Rule 12(B)(6) Motion Is Without Merit**

Defendants claim that Count 9 of the Complaint alleges violation of rights in "unspecified works in unspecified countries under unspecified laws." (Defendants' Memorandum at p.13.) The last of these – "unspecified laws" – is incorrect on its face. The paragraphs of the Complaint cited by defendants - ¶¶45 and 47 – are in Count 9, and the heading of Count 9 is, "Copyright Infringement Within Countries Other Than the United States." Plaintiffs are at a loss as to how they could more clearly have signaled that it is the copyright laws of other nations that defendants have violated.

It is of course correct that plaintiffs have not specified the works infringed, nor the countries in which they have been infringed. There is a good and obvious reason for that. ActaMed is not the classic sort of infringer, publicly releasing a work that unlawfully copies someone else's. On the contrary, every one of defendants' infringements is a private transaction between ActaMed and its customer, to which plaintiffs cannot be privy. The only information that will permit plaintiffs to specify which works have been infringed, and in which countries the infringements occurred, lies in the business records of defendants, and can only be determined by plaintiffs through discovery. But while plaintiffs can proceed only on information and belief at this point, defendants have full knowledge of what countries they have delivered unauthorized documents into. They therefore have full notice of which countries' laws plaintiffs claim

11

they have infringed. The protest that they do not know how to "prepare a defense" or "reply to the allegation" is disingenuous at best.

Defendants' suggestion that this is a "fishing expedition" is predictable but equally unsustainable. Plaintiffs have demonstrated good cause to believe that their copyrights are being infringed in those countries where ActaMed has customers. Indeed, we know now that those countries at least include countries in Europe, since Meyling in his declaration admits that ActaMed has delivered documents within Europe. The only thing plaintiffs lack is the detail to specify which copyrights and in which countries. Defendants' attempt to deny plaintiffs access to that detail is unconscionable.

Quite apart from the morality of the defense, on a procedural level it has been raised and disposed of before. In *Armstrong v. Virgin Records, Ltd.*, 91 F. Supp.2d 628 (S.D.N.Y. 2000), a music copyright owner sued a record company for infringement in violation of unspecified foreign laws. Defendants moved to dismiss on the grounds of lack of specificity under F.R.C.P. 44.1 – in practice no different from the grounds alleged by defendants here. The court denied the motion in the following words:

> [While] it is true that Armstrong has not identified the specific countries whose copyright laws he seeks to avail himself of, this alone would not be grounds for summary judgment at the present stage in the litigation. Obviously, at some point Armstrong will need to provide the defendants with reasonable notice concerning the foreign laws upon which he seeks to rely. ... The rapidity with which that day arrives will no doubt be dependant upon the pace of discovery in this action. After all, it is through discovery that Armstrong will presumably learn about the defendants' distribution and licensing activities abroad.

*Id.* at 638.[9] This is the obvious response to defendants here. Defendants' Rule 12(b)(6) motion must be denied.

### III. This Court Has Clear Jurisdiction Over Claims Of Infringement Abroad.

Defendants' final assault on the Complaint is to assert that this Court cannot hear cases of infringement arising under the laws of other countries. This assault too must fail.

Before reaching the substantive issue of jurisdiction, a word must be said about defendants' argument under 28 U.S.C. § 1332. Plaintiffs admit that they did not plead the jurisdictional amount in their Complaint. This was an oversight, and if the Court should require it, plaintiffs will promptly file an amended Complaint to supply the deficiency. *Local 179, United Textile Workers of America, AFL-CIO v. Federal Paper Stock Co.*, 461 F.2d 849, 851 (8th Cir. 1972) ("When necessary to establish jurisdiction leave to amend should be freely granted under Fed.R.Civ.Pro. 15(a)."); *accord, Doyle v. Household Credit Services, Inc.*, 844 F. Supp. 13, 16 (D.Me. 1994). It seems clear enough that the amount in controversy under plaintiffs' foreign law claims far exceeds the jurisdictional amount.[10]

However, there is a separate basis for jurisdiction here that was not pled but that has become clear upon examination of the case law discussed below. *Ayala Serrano v. Lebron Gonzalez,* 909 F.2d 8, 15 (1st Cir. 1990) (federal subject matter jurisdiction may

---

[9] *See also Russ Berrie and Company, Inc. v. Ganz and Ganz Inc.*, 45 Fed. R. Serv. 3d 618 (D.N.J. 1999) (plaintiff with a credible claim of copyright infringement could take discovery to ascertain other infringements of its product line).

[10] Given that defendants' sales of unauthorized documents are sufficient to support a staff of 40 persons (Meyling Declaration at ¶6), it requires no great leap of faith to assume that over the past 3-4 years defendants' activities have cost plaintiffs many times the jurisdictional amount. This evidence is certainly enough to support a good faith allegation, and a good faith allegation cannot be dismissed unless it appears as a legal certainty that the amount could not be recovered on the facts alleged. *Cumberland v. Household Research Corp. of America*, 145 F. Supp. 782, 783 (D. Mass. 1956).

be established from the context of the complaint). The separate basis for jurisdiction is "ancillary" or "pendent" jurisdiction, for which no jurisdictional amount is required. *See Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 637 (S.D.N.Y. 2000) (given existence of claims under U.S. copyright law, court could exercise pendent jurisdiction over claims of foreign infringement). *See also Ortiz v. U.S. Government*, 595 F.2d 65, 72 (1st Cir. 1979) (pendent jurisdiction promotes judicial economy by avoiding the conduct of a parallel action in state court, where there is a claim over which this Court has exclusive jurisdiction – in the case at bar, the U.S. infringement claims). If the Court wishes that this be pled specifically rather than inferred from the Complaint, Plaintiffs will amend their Complaint to allege pendent jurisdiction as well as the jurisdictional amount under 28 U.S.C. § 1332.

Plaintiffs turn now to defendants' final argument, the alleged lack of subject matter jurisdiction over claims of foreign infringement. As will be shown, the argument is without merit.

Deciding cases under foreign law is "'a chore federal courts must often perform.'" *Mercier III*, 981 F.2d at 1357, quoting *Manu International, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 68 (2d Cir. 1981). This is true both in contract and in tort cases, *Mercier III* being an example of the former and *Tramontana v. S. A. Empresa De Viacao Aerea Rio Grandense,* 350 F.2d 468 (D.C.Cir. 1965), of the latter. There is nothing in copyright law, logic, or the laws and principles of jurisdiction, to support treating copyright infringement differently from any other tort committed outside the boundaries of the United States.

---

Defendants' suggestion that an amended pleading would be "speculative" is thus neither

Both Nimmer and Nimmer, *Nimmer on Copyright* § 17.03 (2005), and Goldstein, *Copyright* § 16.2 (2d ed. 2000-2005) state categorically that U.S. courts have subject matter jurisdiction over claims arising under foreign copyright laws, because copyright infringement is a transitory cause of action. Other scholarly opinion is to the same effect; *see* Bradley, *Territorial Intellectual Property Rights in an Age of Globalism*, 37 Va. Jrnl of Int'l Law 505, 576-579 (1997); Ginsburg, *Extraterritoriality and Multiterritoriality in Copyright Infringement*, 37 Va. Jrnl of Int'l Law 587, 601-602 (1997).

Defendants assert, however, that "[f]ew courts have followed this expansive theory." (Defendants' brief at p.17.) This is an interesting way of putting things. Only four courts have actually addressed the issue at all; of these, three have asserted subject matter jurisdiction and only one took the side espoused by defendants. A brief history of these cases is in order.

The first of the four, *London Film Productions Ltd.*, expressly found that it had subject matter jurisdiction. 580 F. Supp. at 48-50. In the second, *ITSI T.V. Productions, Inc. v. California Authority of Racing Fairs,* 785 F. Supp. 854, 866 (E.D.Cal. 1992), the court brushed aside this holding and the views of Professors Goldstein and Nimmer, saying that it could "discern no clear authority for exercising such jurisdiction" (citing a law review note that took issue with Professor Nimmer), and added that "American courts should be reluctant to enter the bramble bush of ascertaining and applying foreign law without an urgent reason to do so." But in a more recent case, *Frink America, Inc. v. Champion Road Machinery Ltd.,* 961 F. Supp. 398 (N.D.N.Y. 1997), the court distinguished *ITSI* in such a way as to reduce its relevance to the most narrow of

---

relevant nor correct.

situations – those involving countries where copyright protection depends on compliance with a regulatory scheme.[11]

Most recently, the court in *Armstrong v. Virgin Records, Ltd.* repudiated *ITSI* even more thoroughly:

> While certain courts have, at times, demonstrated their reluctance to "enter the bramble bush of ascertaining and applying foreign law without an urgent reason to do so," see *ITSI T.V. Prods.*, 785 F. Supp. at 866, there is no principled reason to bar, in absolute fashion, copyright claims brought under foreign law for lack of subject matter jurisdiction. Not only is this Court called upon to enter bramble bushes, briar patches, and other thorny legal thickets on a routine basis, see, e.g., *Briarpatch Ltd. v. Pate*, 81 F. Supp. 2d 509, 511 (S.D.N.Y.2000), but a number of persuasive authorities and commentators have also indicated that the exercise of

---

[11] To parse this as briefly as possible: Professor Nimmer, in reaching his conclusion that U.S courts can hear cases of foreign infringement, distinguished *Vanity Fair Mills, Inc. v. T. Eaton, Ltd.*, 234 F.2d 633 (2d Cir. 1956). In *Vanity Fair,* the Second Circuit found it lacked jurisdiction over certain claims arising under foreign trademark law. It based its holding on reluctance to invade the regulatory regime of a foreign country:
> [W]e do not think it the province of United States district courts to determine the validity of trade-marks which officials of foreign countries have seen fit to grant. To do so would be to welcome conflicts with the administrative and judicial officers of the Dominion of Canada.

*Id.* at 647.

Nimmer noted that this construct does not apply to copyright claims, which in general do not depend on statutory formalities. The *ITSI* court, however, seized on the possibility that there might be exceptions:
> Assuming that Professor Nimmer is right, that generalization does not answer the question whether in any given case the particular foreign law does have administrative formalities which must be satisfied.

785 F. Supp. at 866 n. 19.

Subsequently, in *Frink America,* the defendant argued lack of subject matter jurisdiction over a claim under Canadian copyright law, citing this very language from *ITSI*. The court made short shrift of the argument:
> [T]his objection need not detain us, since "administrative formalities are barred in all nations that adhere to the Berne Convention," 3 Nimmer on Copyright, § 17.03 (1996), a convention to which Canada has been a signatory since 1928.

961 F. Supp. at 404.

In other words, *Frink America* essentially limited *ITSI*'s validity to cases involving claims under legal systems that require formalities as a prerequisite for copyright protection. Given that all countries of Europe, and the United States, are members of the Berne Convention, *ITSI* is unlikely to be relevant to the present case.

> subject matter jurisdiction is appropriate in cases of transnational copyright infringement.

91 F. Supp. 2d at 637.[12]

Thus it seems clear that, while the case law on this issue has not been extensive, it weighs heavily in favor of U.S. courts having subject matter jurisdiction over claims under non-U.S. copyright law. And that is to speak only of cases expressly addressing the issue. Other cases, including one recently decided by Judge Pierre Leval of the Second Circuit, one of the country's most distinguished copyright jurists, *assume* that subject matter jurisdiction exists. In *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.,* Judge Leval for a unanimous panel ordered the District Court to adjudicate claims arising under the copyright laws of eighteen other nations, even though the plaintiff's copyright in the United States had expired. The opinion was addressed to a defense of *forum non conveniens,* but it seems safe to say that the Second Circuit would not have ruled as it did had it entertained the slightest doubt as to the district court's jurisdiction to adjudicate such claims. *See Armstrong v. Virgin Records, Ltd.,* 91 F. Supp.2d at 637 n.2 ("…it is worth asking whether … courts would have tarried with forum non conveniens analysis if they did not possess subject matter jurisdiction in the first instance).

There is thus no plausible basis in precedent or logic for denying that this Court has subject matter jurisdiction over ActaMed's infringements carried out in foreign countries. This Court has and should exercise such jurisdiction.

---

[12] The other odd jurisdictional holding of *ITSI*, that U.S. copyright law applies to extraterritorial acts if those acts were "authorized" within the U.S., has been summarily overruled. *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1090 (9th Cir. 1994). It seems that *ITSI* deserves at this point no more than a decent burial.

## Conclusion

Defendants have sought on every conceivable grounds to avoid having to defend themselves in this Court. But they have failed to carry the heavy burden of showing that these United States plaintiffs should be dismissed from the court of their own home jurisdiction on the grounds of inconvenience, especially given the foundation of this case in a claim under U.S. copyright law. Defendants' argument that plaintiffs have failed to plead foreign infringement with adequate specificity is contrary to precedent, and contrary to good faith considering that they themselves are in sole possession of the facts they suggest plaintiffs must plead. Finally, their attack on this Court's subject matter jurisdiction flies in the face of the great weigh of precedent and overwhelming scholarly opinion.

Defendants' motion must therefore be denied, and this case should proceed to discovery.

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
MASSACHUSETTS MEDICAL
SOCIETY, and
WILEY-LISS, INC.,
Plaintiffs,

By their attorneys,

Dated: July 19, 2005

/s/ William S. Strong
/s/ Amy C. Mainelli
William S. Strong, Esq., BBO #483520
Amy C. Mainelli, Esq., BBO# 657201
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114
(617) 227-7031
(617) 367-2988 (fax)

## CERTIFICATE OF SERVICE

    I, Amy C. Mainelli certify that I have this day served the foregoing document by e-mail upon counsel for the defendants in this action.

July 19, 2005                                                   /s/ Amy C. Mainelli
Date

WSS/elsevier/actamed/opp*