UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

BLACKWELL PUBLISHING, INC., )
ELSEVIER, INC., )
MASSACHUSETTS MEDICAL SOCIETY, )
and )
WILEY-LISS, INC., )
　　　　　　　　　　　　　　　　)
　　　Plaintiffs, )
　　　　　　　　　　　　　　　　)
　　v. )　　　Civil Action No.:
　　　　　　　　　　　　　　　　)　　　1:05-CV-10697 WGY
　　　　　　　　　　　　　　　　)
VIA MARKETING & PROMOTION, S.A. )
d/b/a ACTAMED SERVICES and )
ROBERT TH. GMELIG MEYLING, )
　　　　　　　　　　　　　　　　)
　　　Defendants. )

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT ROBERT TH. GMELIG MEYLING'S MOTION TO DISMISS**

　　　Plaintiffs Blackwell Publishing, Inc., Elsevier, Inc., Massachusetts Medical Society, and Wiley-Liss, Inc. submit this memorandum in opposition to the motion of defendant Robert Th. Gmelig Meyling ("Meyling") to dismiss this action, as against himself, for lack of personal jurisdiction. The motion must be dismissed because Meyling has sufficient contacts with Massachusetts to be subject to the long arm jurisdiction of this Court.

### Introductory Statement

　　　This action for copyright infringement goes to the core of defendants' business (referred to here by its trade name "ActaMed") because defendants' entire business model, as described in plaintiffs' Complaint, is based on copyright infringement. ActaMed copies articles from scholarly journals and sells those copies to third parties. That is its raison d'etre. In its "Company overview" on its website, ActaMed calls itself "The Global Medical Information and

Document Provider" and says, "our full-featured search engine delivers rapid results and full text articles copies may be retrieved immediately." See <u>Exhibit A</u> hereto. Plaintiffs have alleged specific instances of infringement, identified in the Complaint, carried out to test ActaMed's copyright compliance. But these specific instances are only a small part of a much larger pattern of infringement.

Defendant Meyling is by his own admission the founder and CEO of the corporate defendant VIA Marketing & Promotion, S.A., which does business as ActaMed. *See* Declaration of Robert Th. Gmelig Meyling ("Meyling Decl.") ¶¶ 1, 6.[1] As founder and CEO, Meyling is the architect of the business, and it is on his say-so that ActaMed reproduces and sells copies of plaintiffs' materials without permission. He also admits to being "a stockholder" in ActaMed. Meyling Declaration, ¶ 1. Plaintiffs believe him to be in fact the controlling shareholder, but even if he is not, as a shareholder of any kind he has an interest in the profits generated by this business he has established.

In furtherance of Meyling's business plan, under Meyling's supervision, and on Meyling's instructions as CEO, ActaMed has committed torts within the Commonwealth of Massachusetts by delivery of unauthorized copies of plaintiffs' documents into Massachusetts. Meyling has received repeated protests against this infringing conduct and brushed them off, allowing his company to continue as before. *See* Exhibits A-D to the Affidavit of Joseph Appel, submitted herewith. Yet Meyling himself, according to his view of the case, is not subject to the jurisdiction of this court. This assertion is not valid as a matter of law and must under no circumstances be countenanced.

---

[1] Although Meyling does not state in his Declaration that he was the founder of ActaMed, his memorandum (at p.1, lines 2-3) styles him "CEO and founder."

2

**Argument**

This Court has jurisdiction over Meyling because he is the guiding force behind the infringements described in the Complaint, and is both vicariously and contributorily liable for such infringements. Meyling's opposition, based on his lack of personal visits to and dealings with Massachusetts, misses the point. Even if Meyling had never set foot in the United States, he has contributed to the commission of multiple torts within these borders. Even if Meyling never actually pushed the computer buttons that caused copies to be made and delivered into Massachusetts, he masterminded and directed the entire unlawful scheme that caused the infringement of copyrights here, and for this he must be subject to this Court's jurisdiction.

Dismissal here would be proper only if plaintiffs had failed to make out a prima facie showing of jurisdiction. In making such a showing, specific facts affirmatively alleged by plaintiffs must be taken as true and "construe[d] ... in the light most congenial to the plaintiff's jurisdiction claim." *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998) citing *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994). In this case, the same facts that form the basis of Meyling's liability are also the facts that support this Court's personal jurisdiction over him. *See Walker v. University Books, Inc.*, 382 F. Supp. 126, 131 (N.D. Cal. 1974) (facts to prove personal jurisdiction identical to facts proving right to relief on the merits; plaintiff's allegations were specific enough to suffice as proof of jurisdiction as an initial matter.)

Plaintiffs will accordingly show, on a *prima facie* basis:

(1) that the tort of copyright infringement was committed multiple times within Massachusetts by ActaMed;

(2) that Meyling was a vicarious and contributory infringer with respect to such infringements.

On the basis of these facts, Meyling is subject to jurisdiction under the Massachusetts "Long-Arm Statute," M.G.L.c.223A because he is responsible for "tortious injury by an act or omission in this commonwealth," M.G.L.c.223A §3(c).

    **1.**    **Multiple Infringements Occurred in Massachusetts, as Described In Plaintiffs' Complaint.**

In their Complaint, plaintiffs have identified four specific instances of infringement, consisting of delivery of unauthorized copies of their copyrighted publications to Newjen Corporation in Fitchburg, Massachusetts. Complaint, ¶¶ 26-31. *See also* Affidavit of William Jennings, submitted herewith. Defendant ActaMed has admitted delivering those copies; see ¶¶28 and 31 of its Answer to the Complaint. Such delivery was never authorized by plaintiffs. Complaint ¶¶ 28, 31; see also Affidavit of Joseph Appel at ¶¶ 9, 10.[2] As a matter of law, these unauthorized deliveries violated (i) plaintiffs' exclusive right of distribution under 17 U.S.C. §106(3), and (ii) plaintiffs' right to control the importation of copies under 17 U.S.C. §602.

These infringements of the rights of distribution and importation occurred in Massachusetts. The unauthorized importation occurred when the copies entered the United States, and the unauthorized distribution occurred when they were delivered to Newjen Corporation.[3] Thus, the tort of copyright infringement occurred here in Massachusetts where the

---

[2] Although ActaMed appears to deny in its Answer that the deliveries were unauthorized, the lack of authorization must be assumed for purposes of the pending motion.

[3] This is so even if the making and shipping of those copies also violated the laws of Switzerland, because each nation's copyright laws are exclusive within its boundaries, and do not extend beyond those boundaries. *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1090 (9th Cir. 1994).

delivery was made, even though the delivery may have originated outside the United States. *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp. 62, 64 (S.D.N.Y. 1993) ("Offering one copy of an infringing work for sale in New York, even if there is no actual sale, constitutes commission of a tortious act within the state sufficient to imbue this Court with personal jurisdiction over the infringers."); *Business Trends Analysts v. Freedonia Group, Inc.*, 650 F.Supp. 1452, 1455-1456 (S.D.N.Y. 1987) (shipment of a single copy of an infringing work into the forum state sufficient for personal jurisdiction). *See also, e.g., Ealing Corp. v. Harrods, Ltd.*, 790 F.2d 978, 982 (1st Cir.1986) (telex sent to Massachusetts caused a misrepresentation upon receipt within Massachusetts and provided the basis for M.G.L.c.223A §3(c) jurisdiction); *Digital Equipment Corp. v. AltaVista Technology, Inc.*, 960 F. Supp. 456 (D.Mass.1997) (trademark infringement on non-Massachusetts website was deemed to occur within Massachusetts when accessed by Massachusetts residents).[4]

### 2. **Meyling Was a Contributory and Vicarious Infringer With Respect To Such Infringements.**

Plaintiffs have sued Meyling not because he personally pushed the button on the photocopying machine or computer that was used to infringe Plaintiffs' copyrights, but because he is personally liable for the torts committed by his company, under well-established copyright principles. A discussion of that liability is in order here, especially as it derives from doctrines

---

[4] Meyling's claim that over ninety-nine percent of the pages ActaMed has delivered have been to European customers (Meyling Decl., ¶6) is irrelevant to jurisdiction. Even if these deliveries into Massachusetts were part of a larger publication, they would still justify jurisdiction here. *See J. Racenstein & Co., Inc. v. Wallace,* 1997 WL 605107, *2 (S.D.N.Y. 1997); *Blue Ribbon Pet Products, Inc. v. Rolf C. Hagen (USA) Corp.*, 66 F.Supp.2d 454, 460 (E.D.N.Y. 1999). But in fact, each delivery is a unique transaction between ActaMed and its customer, and the resulting tort has no locus other than Massachusetts.

that are in some sense unique to copyright. *Polygram International Publishing, Inc. v. Nevada/TIG, Inc.*, 855 F. Supp. 1314, 1324-1328 (D. Mass. 1994).

The rule in this District is that a corporate officer is liable for copyright infringements committed by his corporation if:

> (1) the officer personally participated in the actual infringement; or (2) the officer derived financial benefit from the infringing activities either as a major shareholder in the corporation…, or through some other means such as receiving a percentage of the revenues from the activity giving rise to the infringement…; or (3) the officer used the corporation as an instrument to carry out a deliberate infringement of copyright…; or (4) the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement; or (5) on the basis of some combination of the above criteria. [citations omitted]

*Famous Music Corp. v. Bay State Harness Racing & Breeding Assn., Inc.*, 423 F. Supp. 341, 344 (D.Mass. 1976), *aff'd* 554 F.2d 1213 (1st Cir. 1977); *Marvin Music Company v. BHC Limited Partnership*, 830 F. Supp. 651, 652-655 (D. Mass. 1993). This formulation includes examples of both contributory and vicarious infringement, as those terms are commonly understood.

"[O]ne who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin Publishing Corporation v. Columbia Artists Management, Inc.* 443 F.2d 1159, 1162 (2d Cir. 1971). And one who has the "right and ability to supervise the infringing activity" carried out by a corporation and also has "a direct financial interest in such activities," is vicariously liable for the infringement. *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963). How zealous the law is to protect copyrights is clear from the fact that vicarious liability attaches even where the infringement is carried out *in violation of express orders* from the person with supervisory power. *Polygram International Publishing*, 855 F.

Supp. at 1329. Indeed, as explained by Judge Keeton in *Polygram*, the law on vicarious liability has gone beyond *Shapiro, Bernstein*:

> For a defendant to be held vicariously liable as an infringer under the House Report standard, the defendant
>> must either actively operate or supervise the operation of the place wherein the performances occur, or control the content of the infringing program, and expect commercial gain from the operation and either direct or indirect benefit from the infringing performance.
>
> House Report [of the Judiciary Committee, No. 94-1476], 159-60. Unlike the *Shapiro, Bernstein* standard, this standard defines two types of control--either supervision over the operation as a whole, or control over the specific infringing performance--and allows for vicarious liability on a showing of *either* direct or indirect financial benefit.

*Id.* at 1326.

Based on the knowledge available at this stage of these proceedings, Meyling is clearly liable for infringement under this formulation. As a shareholder in ActaMed, Meyling has derived financial benefit from the infringing activity. Presumably, also, his income from ActaMed is at least indirectly affected by the profits from its infringements. As President and CEO, he had the right and ability to control the infringement committed by ActaMed. He is thus liable as a vicarious infringer in the classic sense.

But Meyling's involvement in ActaMed's infringements has been more than merely the passive beneficiary of his employees' wrongful acts. As founder and CEO of ActaMed, he has shaped the entire business plan and policies of the company, which are based on reproduction and delivery of documents without authorization of the copyright owners. In the words of *Famous Music*, he was "the dominant influence in the corporation, and determined the policies which resulted in the infringement." *See also Warner Bros., Inc. v. O'Keefe*, 468 F.Supp. 16, 20 (D.C. Iowa 1977) (business owner is liable because he "is in a position to exercise supervision and control", "expects a financial benefit" from the infringing activity, and "establishes the

7

policies which have resulted in the infringement.") Worse, Meyling was put on notice of the infringing nature of his business and took no action to prevent it. (*See* Appel Affidavit.) Meyling is therefore liable for ActaMed's infringement.

### 3. Meyling's Liability Is the Basis for This Court's Jurisdiction.

Vicarious or contributory liability under the copyright law makes an individual such as Meyling jointly and severally liable with the party having direct liability. *Marvin Music*, 830 F. Supp. at 654-655. Liability in turn leads to personal jurisdiction. Thus, in *Stewart v. Adidas A.G.*, 1997 WL 218431, *6 (S.D.N.Y. 1997) a foreign corporation did not itself offer for sale infringing goods in New York, but was vicariously and contributorily liable for the actions of a subsidiary that did. The court said, "Insofar as adidas A.G. is vicariously or contributorily responsible for those sales, it is subject to personal jurisdiction…" Similarly, in *Blue Ribbon Pet Products, Inc. v. Rolf C. Hagen (USA) Corp.*, 66 F. Supp. 2d 454, 460 (E.D.N.Y. 1999) the court found a foreign corporate parent subject to personal jurisdiction in this country because it was contributorily liable for its subsidiary's infringements within the forum. *See also Walker v. University Books, Inc.*, 382 F. Supp. 126 (N.D.Cal.1974), in which an individual New York defendant was subject to suit in California based on actions in New York that contributed to an infringement in California.

As defendants concede, the "fiduciary shield" doctrine does not apply in Massachusetts. *Trans National Travel, Inc. v. Sun Pacific Intern. Inc.*, 10 F. Supp. 2d 79, 83 (D.Mass.1998) and *Yankee Group, Inc. v. Yamashita*, 678 F. Supp. 20, 22 (D.Mass.1988). Even if it were to be adopted, it would not shield Meyling, because "activities in a corporate capacity which are sufficient to create liability against an individual [are] sufficient to confer personal jurisdiction"

over that individual. *Donner v. Tams-Witmark Music Library, Inc.* 480 F. Supp. 1229, 1233 (E.D. Pa. 1979).[5]

### 4. Subjecting Meyling To Suit Here Comports with Due Process.

Finally, plaintiffs will show that Meyling has sufficient "minimum contacts" with the forum that subjecting him to the Court's jurisdiction comports with "traditional notions of fair play and equal justice." *Venture Tape Corp. v. McGills Glass Warehouse*, 292 F.Supp.2d 230, 232 (D.Mass. 2003).

Such contacts are satisfied if the three factors of relatedness, purposeful availment and reasonableness are fulfilled. *Id.*, citing *Digital Equipment Corp. v. AltaVista Technology, Inc.*, 960 F.Supp. 456, 467 (D.Mass. 1997). First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's forum-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the so-called "gestalt" factors, be reasonable. *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 712-713 (1st Cir. 1996)(internal citations omitted). The Complaint as directed to Meyling meets all three criteria.

### A. Plaintiffs' Claims are Specifically Related to Meyling's Contact with Massachusetts.

Relatedness focuses on the nexus between defendant's contacts with the forum and

---

[5] This rule is in keeping with other types of cases where liability is imposed derivatively on individuals who may have had no direct role in the tortious activity that is the subject of suit, and no personal presence in the forum state. For example, owners of automobiles are subjected to personal jurisdiction in states where the drivers of those automobiles cause injury, on a purely

plaintiffs' cause of action. *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994).

In this case, Meyling's contact with Massachusetts specifically gives rise to the claims at issue. The infringements that are the basis of the cause of action occurred in Massachusetts when the copies entered the United States and when copies were delivered to Newjen Corporation. But for Meyling's delivery through the Internet of copies, importation and shipment of copies into Massachusetts, plaintiffs' cause of action under U.S. copyright law would not have arisen. *See Northern Light Technology v. Northern Lights Club*, 97 F.Supp.2d 96 (D.Mass.2000) (defendants' potentially tortious acts all arose from their publishing of a web site in Massachusetts, thus, satisfying the element of relatedness.)

### B. Meyling Has Purposefully Availed Himself of the Privilege of Conducting Business in Massachusetts and It Was Foreseeable That He Would Be Haled Into Court Here

One who contributes to infringements that occur within a foreign jurisdiction has no basis for claiming it is not foreseeable that he be haled into court in that jurisdiction. Indirectly, Meyling has "availed himself" of the commercial channels of Massachusetts by organizing his business in such a way that (i) its website communicated interactively with Massachusetts residents such as Newjen Corporation, and (ii) it delivered electronic documents and reprints into Massachusetts for pay. Meyling certainly could foresee that his actions would harm plaintiffs in Massachusetts, witness his communications with the Massachusetts Medical Society. *See, e.g., Walker v. University Books, Inc.* (California court has personal jurisdiction over a New York individual defendant who could reasonably have foreseen that his acts in New York might result

---

derivative basis and with no finding of involvement in the actual tort. *See, e.g., Davis v. St. Paul-Mercury Indemnity Co.*, 294 F.2d 641 (4th Cir. 1961).

10

in copyright infringement in California). *See also Venture Tape Corp. v. McGills Glass Warehouse*, 292 F.Supp.2d 230, 232 (D.Mass.2003) ("while the mere existence of an interactive website might not be enough to establish personal jurisdiction over McGills in a randomly chosen East Coast state, McGills' alleged misuse of trademarks belonging to a Massachusetts company is enough to constitute minimum contacts for the purposes of establishing personal jurisdiction"). S*ee also Digital Equipment Corp.*, 960 F. Supp. at 466-467.

Meyling should have anticipated being haled into court in Massachusetts. He laid the groundwork for, was in charge of, and could have prevented the unlawful copying, distribution and importation into Massachusetts of materials that infringed Plaintiffs' copyrights, and he has received financial benefit from it. He should be treated no differently from his company that is directly liable.

### C. Subjecting Melying To Suit In Massachusetts Is Consistent With Fair Play and Substantial Justice

Finally, compelling Meyling to appear here in Massachusetts would not in any way offend "traditional notions of 'fair play' and substantial justice,'" and thus comports with due process. *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 717 (1st Cir. 1996).

The factors relevant to such analysis – the so-called "gestalt factors" – are:

> "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*United Elec., Radio and Mach. Workers of America v. 163 Pleasant St. Corp.*, 960 F. 2d 1080, 1088, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

These factors militate in favor of subjecting Meyling to suit here. The first factor – the burden to the defendant – is of no help to Meyling. As the First Circuit has said,

11

> [I]t is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction. [citing *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994)]. Thus for this particular gestalt factor to have any significance, the defendant must demonstrate that "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." Id. [A party must demonstrate something] special or unusual about its situation beyond the ordinary cost and inconvenience of defending an action so far from its place of business.

*Nowak,* 94 F.3d at 718. Meyling has demonstrated no such "special or unusual" hardship here. Indeed, the burden on him is lighter than on many non-resident defendants. Because his liability is based upon his company's liability, he will not need separate counsel. The primary inconvenience to him will be an appearance at trial, and a trial of any great length is unlikely in this case given that most if not all of the issues here are legal, not factual, in nature.[6]

The second factor is no more helpful to Meyling than the first. The First Circuit has stated that "a forum state has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders," and that Massachusetts also "has an interest in providing its citizens with a convenient forum in which to assert their claims." *Nowak,* 94 F.3d at 718, citing *Burger King*, 471 U.S. at 473. This factor, too, weighs heavily against Meyling.

Whatever inconvenience Meyling might suffer weighs little when balanced against the substantial inconvenience to Plaintiffs, and the waste of judicial resources, that would result from dismissal as to Meyling. Plaintiffs have an obvious interest in maintaining this suit in Massachusetts, and the teaching of *Nowak* and all other cases in this area is that courts must "accord deference to the [plaintiff's] choice of a Massachusetts forum." *Nowak,* 94 F.3d at 718. Furthermore, courts have an interest in preventing piecemeal litigation. *Pritzker*, 42 F.3d at 64. Dismissal would force Plaintiffs, including the Massachusetts Medical Society which is a local

non-profit organization, to initiate new proceedings and start all over again, or more probably, to go forward here against the corporate defendant and later sue Meyling personally in another forum.[7] Either course would be wastefully duplicative, and there is no justification for such a result.

Consideration of social policy also favors exercising jurisdiction over Meyling. In *Digital Equipment Corp. v. AltaVista Technology, Inc.*, the court examined this factor in the context of conducting business over the Internet. In weighing the potential costs of defending against litigation in every state with the proposition of allowing those who conduct business on the Web to insulate themselves against jurisdiction except where they are physically located, the court determined this factor weighed in favor of asserting jurisdiction because Massachusetts had an interest in protecting its corporations from trademark infringement. Here, not only does Massachusetts have an interest in protecting its citizens and providing a forum for their claims, the United States has an interest in enforcing its federal copyright statute and should not allow Meyling to shield himself from the jurisdiction of this Court where it was foreseeable that his commercial activities could subject him to suit in a foreign jurisdiction.

In sum, the gestalt factors which this court must consider in assessing due process weigh in favor of the Plaintiffs.

---

[6] The limited burden that would be imposed upon Meyling is further discussed in plaintiff's opposition to defendants' motion to dismiss on the grounds of *forum non conveniens*, etc., submitted herewith.

[7] Defendants allude to the fact that ActaMed's violations of Swiss law are the subject of pending criminal proceedings in Switzerland. However, plaintiffs in this action are not directly involved in such proceedings, nor do those proceedings address the civil claims of copyright infringement under U.S. law, and the laws of other countries, that are at issue in this case.

## CONCLUSION

The facts as alleged in plaintiffs' Complaint, many of them uncontested, and all applicable legal precedent, establish that Meyling is subject to the long-arm jurisdiction of this Court, because he is vicariously and contributorily liable for acts of infringement committed here by ActaMed. In addition, more general considerations of due process favor Plaintiffs in their desire to maintain suit here, and disfavor Meyling's attempt to shield himself from the jurisdiction of this court.

Respectfully submitted,

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
MASSACHUSETTS MEDICAL SOCIETY, and
WILEY-LISS, INC.,
Plaintiffs,

By their attorneys,

/s/ William S. Strong
/s/ Amy C. Mainelli

Dated: July 19, 2005

William S. Strong, Esq., BBO #483520
Amy C. Mainelli, Esq., BBO# 657201
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114
(617) 227-7031
(617) 367-2988 (fax)

## CERTIFICATE OF SERVICE

    I, Amy C. Mainelli, certify that I have this day served the foregoing document by email upon counsel for the defendants in this action.


<u>July 19, 2005</u>                                                                      <u>/s/ Amy C. Mainelli</u>
Date

WSS/Elsevier/ActaMed/opp to meyling motion



- **Home**
- ▼ **Company profile**
  - Company overview
  - Legal Statement
  - Copyright
  - Intellectual property
  - Privacy policy
- **Service profile**
- **My Account**
- **Basket**
- **Links**
- **Contact**

# The Global Medical Information and Document Provider

VIA Marketing & Promotion, the organization behind ActaMed® Services, has been serving Health Care Professionals for over 20 years, with instruments to supply the latest medical and scientific information published in major international medical journals.

Our full-featured search engine delivers rapid results and full text articles copies may be retrieved immediately.

ActaMed® Services' strength derives from the following factors:

- High quality of information
- Precise selection of information
- Fast & Efficient

ActaMed® Services' medical-scientific information is continuously put up to date from the latest, most authoritative and world-wide resources. The information is sampled, organized and selected, so as to supply Health Care Professionals with a fast means of consultation.

ActaMed® Services are structured in such a way that they supply utmost flexibility and are able to respond to individual requirements of the Health Care Professionals.

VIA Marketing & Promotion has proven to be sensitive to technical and political developments, as well as to market changes, which over the past 20 years have

led to the company's innovative leadership and efficiency in its field of activity.

ActaMed® Services are the most authoritative, useful, precious and serious instruments through which Health Care Professionals can establish a direct and continuous link to keep updated in an easy and fast way.
The daily search for excellence by VIA Marketing & Promotion is exactly because of the important role and the market expectations from our Services.

Robert Th. Gmelig Meyling
President & CEO

VIA Marketing & Promotion SA | Copyright Information | Legal statement |
info@actamed.ch