**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
MASSACHUSETTS MEDICAL SOCIETY and
WILEY-LISS, INC.,

     Plaintiffs,

v.

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES and
ROBERT TH. GMELIG MEYLING,

     Defendants.

Civil Action No.:
1:05-cv-10697 WGY

**ASSENTED TO MOTION OF DEFENDANT ROBERT MEYLING**
**FOR LEAVE TO FILE A REPLY IN SUPPORT OF HIS MOTION**
**TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant Robert Th. Gmelig Meyling ("Meyling"), pursuant to Local Rule 7.1(B)(3), respectfully moves for leave to file a reply in support of his Motion to Dismiss Plaintiffs' Complaint Against Him For Lack of Personal Jurisdiction dated June 14, 2005 ("Meyling's Motion"). The reply is attached as Exhibit A. The issues raised in Plaintiffs' Opposition to Meyling's Motion are complex and are of great significance to Meyling. Furthermore, a reply memorandum will assist the Court in reaching a fair resolution of the issues raised by Meyling's Motion.

Pursuant to Local Rule 7.1, counsel for Meyling has conferred with counsel for Plaintiffs in an attempt to resolve in good faith the issues presented by this motion, and counsel for Plaintiffs has assented to the motion.

WHEREFORE, Robert Th. Gmelig Meyling, respectfully requests that the Court grant his Motion for Leave to File a Reply in Support of his Motion to Dismiss Plaintiffs' Complaint Against Him For Lack of Personal Jurisdiction.[1]

Respectfully submitted,

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES and
ROBERT TH. GMELIG MEYLING,

By their attorneys,


Dated: July 29, 2005          s/John J. Cotter          _
                              John J. Cotter, Esq., BBO# 554524
                              David J. Byer, Esq. BBO# 544411
                              KIRKPATRICK & LOCKHART NICHOLSON
                              GRAHAM LLP
                              75 State Street
                              Boston, MA 02109-1808
                              617.261.3100
                              617.261.3175 (fax)

---

[1] This Motion and the Declarations in support of it shall not constitute an unconditional appearance, and are made without waiver of any of his rights. In particular, Mr. Meyling reserves the right to object to the Court's jurisdiction and to the enforceability of the Court's judgment in Switzerland pursuant to Article 111 Section 1 of the Swiss Federal Act on International Private Law of December 18, 1987, as amended.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 29, 2005, I caused a copy of the foregoing document to be served by electronic filing and by first class United States mail, postage prepaid upon the following:

William S. Strong, Esq.
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114

<u>s/Penny S. Lennox</u>
Penny S. Lennox

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
MASSACHUSETTS MEDICAL SOCIETY and
WILEY-LISS, INC.,

    Plaintiffs,

v.

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES and
ROBERT TH. GMELIG MEYLING,

    Defendants.

Civil Action No.:
1:05-cv-10697 WGY

**DEFENDANT ROBERT TH. GMELIG MEYLING'S REPLY MEMORANDUM
IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS'
COMPLAINT AGAINST HIM FOR LACK OF PERSONAL JURISDICTION**

Defendant Robert Th. Gmelig Meyling ("Meyling")
respectfully submits this Reply Memorandum in support of his
Motion to Dismiss Plaintiffs' Complaint Against Him for Lack of
Personal Jurisdiction ("Meyling's Motion").[1] Plaintiffs'
Opposition conflates vicarious and contributory liability with
personal jurisdiction, stretching cases beyond their true

---

[1] This Motion and the Declarations in support of it shall not
constitute an unconditional appearance, and are made without
waiver of any of his rights. In particular, Mr. Meyling reserves
the right to object to the Court's jurisdiction and to the
enforceability of the Court's judgment in Switzerland pursuant
to Article 111 Section 1 of the Swiss Federal Act on
International Private Law of December 18, 1987, as amended.

holdings and ignoring the special circumstances of those cases which do not apply here.  Plaintiffs also ignore the (at most) limited contact of Mr. Meyling personally with the U.S., let alone Massachusetts.

For the reasons set forth below, in Meyling's Motion and his Memorandum in Support of that Motion ("Meyling's Mem."), the Court should dismiss the Complaint against Meyling.

**I.   PLAINTIFFS IMPROPERLY CONFLATE ALLEGATIONS OF VICARIOUS LIABILITY AND CONTRIBUTORY INFRINGEMENT WITH THEIR BURDEN TO PROVE THE FACTS NEEDED TO SHOW PERSONAL JURISDICTION**

Plaintiffs' argue that this court can exercise personal jurisdiction over a defendant based upon the same facts and theory that Plaintiffs seek to use to assert their substantive claim of vicarious or contributory copyright infringement liability.  Opposition at 3 and 8.  This premise is faulty. Plaintiffs' discussion of the legal standard for vicarious or contributory liability in copyright cases is beside the point. Even assuming that Plaintiffs' allegations are true and that they meet the test for liability under a vicarious or contributory theory, the question of personal jurisdiction still must be answered as an independent and separate matter.

**A.   Plaintiffs' Cases Do Not Establish That Indirect Infringement Equals Personal Jurisdiction**

Plaintiffs state "[l]iability in turn leads to personal jurisdiction." Opposition at 8.  They do not, however, cite any case law or statutory support for that statement. They rely on

isolated New York, California and Pennsylvania cases that address personal jurisdiction and vicarious liability, but do not provide clear authority, let alone First Circuit authority, to support the conflation of the liability and jurisdiction inquiries. Furthermore, the cases Plaintiffs cite are factually dissimilar to the present case.

Plaintiffs' interpretation of <u>Stewart v. Adidas A.G.</u>, 1997 WL 218431, *3 (S.D.N.Y. 1997)(unpublished) is questionable at best. That case does not hold that the defendant's alleged vicarious or contributory liability was sufficient to establish personal jurisdiction, but rather only that personal jurisdiction existed to the extent that there was vicarious or contributory liability. <u>Stewart</u>, 1997 WL 218431 at *6. In other words, the plaintiff's allegations that related to vicarious and contributory liability **also** were sufficient to support an assertion of jurisdiction. <u>Stewart</u>, 1997 WL 218431 at *6. The court does not say that the test for vicarious or contributory liability is the same as that for personal jurisdiction or that a finding of vicarious or contributory liability necessarily means that personal jurisdiction exists. In <u>Stewart</u> there were numerous contacts between the defendant and New York related to the dispute, including negotiation and execution of an agreement with the plaintiff and payment related to same. <u>Stewart</u>, 1997 WL 218431 at *4. Such a direct

connection between the defendant and the forum state does not exist in this case.  In addition, unlike Meyling in this case, the defendant in Stewart did not challenge the constitutionality of an exercise of personal jurisdiction.  Stewart, 1997 WL 218431 at *6, n.5.  Finally, the defendant in Stewart was the parent company of a wholly-owned subsidiary and not an individual shareholder and employee as in this case.  Stewart, 1997 WL 218431, *3.[2]

Blue Ribbon Pet Products, Inc., v. Hagen (USA) Corp. similarly involves the assertion of jurisdiction over a parent corporation, as well its U.S. subsidiary.  66 F. Supp.2d 454 at 461 (E.D.N.Y. 1999).  The facts in Blue Ribbon bear almost no resemblance to the facts in this case.  First, the Canadian defendant had significant contacts with the plaintiff and the forum state directly related to the dispute due to its prior business relationship with the plaintiff.  Blue Ribbon, 66 F.Supp.2d at 457-458.  Moreover, the parent was directly involved in the alleged infringement: it ordered manufacture of

---

[2] In addition, Stewart supports Meyling's and ActaMed's co-pending Motion to dismiss for *forum non conveniens*, because the plaintiff's claims under German copyright law were dismissed under the doctrine of *forum non conveniens*.  Stewart, 1997 WL 218431 at *7-8.  The court focused on the necessity of applying German copyright law and German choice of law rules, the low interest New York has in adjudicating German claims and on the questionable enforceability of a U.S. verdict in Germany.  Id. at *7.

the infringing articles, produced materials for U.S. marketing and sent the articles and marketing materials to its U.S. subsidiary for distribution in the U.S. <u>Blue Ribbon</u>, 66 F.Supp.2d at 460. The court also focused on the fact that the parent and subsidiary corporations shared key personnel, including the CEO and his brother who was responsible for purchasing and new product selection for both corporations, making assertion of jurisdiction fair and just. <u>Blue Ribbon</u>, 66 F.Supp.2d at 461. In the present case, Meyling's direct contacts with the Plaintiffs and the Commonwealth of Massachusetts are few and far between.  Meyling's limited contacts, furthermore, always have been on behalf of ActaMed, not himself. By contrast, the Canadian corporation in <u>Blue Ribbon</u> was acting on its own behalf when it negotiated an agreement with the plaintiff and when it ordered the infringing articles from the manufacturer. <u>Blue Ribbon</u>, 66 F. Supp.2d 454.  <u>Blue Ribbon</u> does not contemplate asserting jurisdiction over an individual employee or shareholder of either the Canadian or U.S. corporation, and is therefore inapplicable here.  Although the <u>Blue Ribbon</u> court discussed the facts of contributory infringement, it does not equate that test with its analysis of personal jurisdiction. The theory that the contributory liability and personal jurisdiction analyses can be conflated was not addressed.

Likewise, <u>Walker v. Univ. Books, Inc.</u>, 382 F. Supp 126

(N.D. Cal. 1974) is not applicable here.  As in <u>Stewart</u>, the court in <u>Walker</u> found that personal jurisdiction was proper on the basis of the same facts that were relevant to the plaintiff's claims on the merits; however, at no point did the court hold that allegations sufficient to meet a theory of liability are equal to allegations sufficient to meet the test for proper exercise of personal jurisdiction.  <u>Walker</u>, 382 F. Supp at 130-131.  The defendant in <u>Walker</u> had direct contact with the plaintiff, which contact was the subject matter of the suit.  <u>Walker</u>, 382 F. Supp at 127-128.  Moreover, the <u>Walker</u> plaintiff alleged ***direct*** copyright infringement, fraud and unfair competition, not a claim of vicarious or contributory copyright infringement.  <u>Walker</u>, 382 F. Supp at 127.

### B.    **Plaintiffs Misconstrue The Fiduciary Shield Doctrine**

Plaintiffs apparently misunderstand the doctrine of fiduciary shield and the discussion of that doctrine in Meyling's Memorandum. Opposition at 8.  Although the courts in Massachusetts have not adopted the fiduciary shield doctrine, it has been discussed and its principles applied.  <u>See</u> Meyling's Mem. at 7 n.2, <u>citing</u> <u>LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.</u>, 193 F. Supp.2d 296, 299-300 (D. Mass. 2002). Plaintiffs further claim that a corporate officer's acts in his corporate capacity can be used as grounds for jurisdiction over the officer.  Opposition at 8, <u>citing</u> <u>Donner v. Tams-Witmark</u>

Music Library, Inc., 480 F.Supp. 1229 (E.D. Pa. 1979).  Donnor's facts are distinct from those in this case.  The individual defendant in that case was involved personally in the negotiation and execution of the copyright license that was the subject of the dispute.  Donner, 480 F. Supp. at 1231. Moreover, as in Stewart, Blue Ribbon and Walker, Donner does not hold that satisfaction of the test for a theory of liability is the same as satisfaction of the personal jurisdiction analysis. Donner, 480 F.Supp. at 1234.  Rather, Donner holds that it is proper for the court to consider the facts presented to show liability and to make logical inferences from those facts in its personal jurisdiction analysis. Donner, 480 F.Supp. at 1234.

## II.  EXERCISING PERSONAL JURISDICTION OVER MEYLING DOES NOT COMPORT WITH DUE PROCESS

Plaintiffs still have not met the test for assertion of jurisdiction under constitutional due process, which places on them the burden of proving a three part test (relatedness, purposeful availment and reasonableness).  See, e.g., LaVallee, 193 F.Supp.2d at 303; see also Meyling's Mem. at 11-20. Plaintiffs fail to meet this test.  Also, by repeatedly seeking to use alleged actions of *ActaMed* as grounds for jurisdiction over *Meyling*, they ignore the great weight of case law on personal jurisdiction in Massachusetts.

- 7 -

Plaintiffs must establish a basis of jurisdiction over Meyling separate from that over ActaMed, and that may not be established by demonstrating that his employer, ActaMed, is subject to jurisdiction under the Massachusetts long-arm statute. See, e.g., LaVallee, 193 F. Supp.2d at 300; see also Meyling's Mem. At 5-6. For example, Plaintiffs point to the transactions between ActaMed and Plaintiffs' agent, Newjen, as Meyling's "related" contacts to fulfill the first part of the test. Opposition at 10. Plaintiffs do not offer any evidence of **Meyling's** contacts with the forum, let alone any that are related to the dispute.[3] As CEO, Meyling's role in ActaMed is one of general supervision, not direct involvement in the activities related to this dispute. He had no specific knowledge of the orders placed by Plaintiffs' agent (see Second Declaration of Robert Gmelig Meyling ("Second Meyling Decl.") at

---

[3] To the extent Plaintiffs mention Mr. Meyling's activities, as opposed to ActaMed's, Plaintiffs attempt to damage Mr. Meyling's credibility by claiming that he "brushed them off" in 2001 and 2002. Opposition at 2. In fact, Mr. Meyling responded to Plaintiff Massachusetts Medical Society's inquiries by pointing out that that the Swiss copyright society ProLitteris would address Massachusetts Medical Society's inquiry in more detail (see Affidavit of Joseph Appel at ¶ 14 and attached Exhibits C and D), and in fact ProLitteris did so in each case. See Second Declaration of Marco A. Rizzi, L.L.M. ("Second Rizzi Decl.") at ¶ ¶ 10-12 and attached Exhibits 24-28. (Defendants' Exhibits 1-13 were submitted with the opening papers on these Motions. Defendants' Exhibits 14-28 are submitted with the Second Rizzi Declaration, being field with this Reply.)

¶ 3), and therefore there can be no relatedness between his actions and this dispute.

With regard to the second prong of the test, Plaintiffs apparently assert that Meyling purposefully availed himself of the privilege of conducting business in Massachusetts by virtue of **ActaMed's** online presence, though they concede that this supposed availment is indirect. Opposition at 10. This again ignores the rule that plaintiffs may not establish jurisdiction over Meyling by demonstrating that ActaMed is subject to jurisdiction. Furthermore, Plaintiffs overlook the purpose behind the purposeful availment test which is to prevent the assertion of jurisdiction over a defendant whose contacts with the forum are merely fortuitous. Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997). This has been interpreted to deny jurisdiction in cases in which the defendant did not initiate the contact. Lyle Richards Int'l, Ltd., 132 F.3d at 114. Here, the *Plaintiffs* took the first step in initiating contact with ActaMed in Switzerland. Indeed, ActaMed would not have engaged in these transactions in Massachusetts but for Plaintiffs' agent placing its orders. See Second Meyling Decl. at ¶ 3.

Predictably, and consistent with their Opposition to Defendants' Motion To Dismiss On Grounds Of *Forum Non Conveniens*, Failure To State A Claim, And Lack Of Subject Matter

Jurisdiction, Plaintiffs rely heavily on the principle of deference to the plaintiff's choice of forum.  Opposition at 12-13.  This principle is not absolute.  Plaintiffs' rights must be balanced against, among others, the needs of the courts, policy considerations and fairness to the defendant.  In this case, Plaintiffs suggest a theory of jurisdiction that has nearly limitless consequences.  Following their logic, every corporate officer, director, or shareholder of a company, whether U.S. or foreign, is subject to jurisdiction in any state where the company is subject to jurisdiction, simply by virtue of their title and corporate role.  The relatedness and purposeful availment parts of the constitutional due process analysis, as well as the rule that jurisdiction over an individual can not be based on actions of the corporation, are designed to prevent such an unbridled exercise of jurisdiction.

Exercising jurisdiction over Meyling would thus violate traditional notions of fair play and substantial justice.  As such, the Complaint against Meyling should be dismissed.

### CONCLUSION

For the foregoing reasons, and the reasons set forth in Meyling's Motion and Opening Memorandum, Robert Th. Gmelig Meyling respectfully requests that the Court grant his Motion to Dismiss for lack of personal jurisdiction.

- 10 -

Respectfully submitted,

ROBERT TH. GMELIG MEYLING,

By his attorneys,


Dated: July 29, 2005                s/John J. Cotter
                                    John J. Cotter, Esq., BBO# 554524
                                    David J. Byer, Esq. BBO# 544411
                                    KIRKPATRICK & LOCKHART NICHOLSON
                                    GRAHAM LLP
                                    75 State Street
                                    Boston, MA 02109-1808
                                    617.261.3100
                                    617.261.3175 (fax)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 29, 2005, I caused a copy of the foregoing document to be served by electronic filing and by first class United States mail, postage prepaid upon the following:

William S. Strong, Esq.
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114

<u>s/Penny S. Lennox</u>
Penny S. Lennox

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
MASSACHUSETTS MEDICAL SOCIETY and
WILEY-LISS, INC.,

     Plaintiffs,

v.

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES and
ROBERT TH. GMELIG MEYLING,

     Defendants.

Civil Action No.:
1:05-cv-10697 WGY

## SECOND DECLARATION OF ROBERT GMELIG MEYLING

I, Robert Gmelig Meyling, declare:

1.   My qualifications are summarized accurately in paragraphs 1 through 3 of the Declaration of Robert Gmelig Meyling dated June 14, 2005, and I incorporate by reference the entirety of those paragraphs in this Declaration, including the reservation of rights.

2.   I make this declaration in connection with and in support of Robert Th. Gmelig Meyling's Motion to Dismiss Plaintiffs' Complaint Against Him for Lack of Personal

Jurisdiction.  I have personal knowledge, and if called as a witness would testify competently, about the following facts.

3.    Since ActaMed began taking on-line orders from registered users, such orders, including those of the type allegedly placed by Newjen, have been received and filled automatically.  I had no involvement in or knowledge of the alleged Newjen orders when they were placed, accepted, or filled.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 29th day of July, 2005.

Robert Gmelig Meyling

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| BLACKWELL PUBLISHING, INC., ELSEVIER, INC., MASSACHUSETTS MEDICAL SOCIETY and WILEY-LISS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> VIA MARKETING & PROMOTION, S.A. d/b/a ACTAMED SERVICES and ROBERT TH. GMELIG MEYLING, <br><br> Defendants. | Civil Action No.: 1:05-cv-10697 WGY |

## SECOND DECLARATION OF MARCO A. RIZZI, L.L.M.

I, Marco A. Rizzi, L.L.M., declare:

1.    My qualifications and personal details are summarized accurately in paragraph 1 of my June 14, 2005 Declaration, and I incorporate the entirety of that paragraph by reference in this Declaration, including the reservation of rights.

2.    I make this second declaration in connection with (1) ActaMed's and Mr. Meyling's Motion to Dismiss for *forum non conveniens*, failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction; and (2) Mr. Meyling's Motion to Dismiss for lack of personal jurisdiction.  I have personal knowledge and if called as a

witness would testify competently about the following facts and Swiss law.

## Swiss Law

3.    Absent a bilateral or multilateral treaty, the Swiss Federal Act on International Private Law (IPL) regulates in an international context, among others, the jurisdiction of Swiss courts or authorities, the governing law, and the prerequisites for the recognition and enforcement of foreign decisions.  The sections of that law that are directly relevant to this case are IPL Article 109 Section 1 phrase 1 and IPL Article 110 section 1.  I expect that if the Plaintiffs were to sue the Defendants in Switzerland for payment of damages in connection with alleged (worldwide) infringements of their copyrights, because there is currently no bilateral or multilateral treaty in force between Switzerland and the U.S. on jurisdiction and applicable law on civil matters, Swiss courts would apply the IPL to determine their jurisdiction and the law governing the dispute.  Attached as Exhibits 14 and 15, respectively, are true and accurate copies of Article 109 Section 1 phrase 1 and IPL Article 110 section 1 (Exhibit 14) and the translation of those Articles by the Swiss-American Chamber of Commerce (Exhibit 15).

4.    IPL Article 109 Section 1 phrase 1 states that Swiss courts at the defendant's domicile shall have jurisdiction over actions concerning intellectual property rights.

5.    IPL Article 110 section 1 states that Intellectual property rights shall be subject to the law of the state with respect to which protection of intellectual property is requested.

6.    Attached as Exhibits 16 and 17, respectively, are true and accurate copies of excerpts from Dr. Frank Vischer's commentary on Article 109 IPL, in the Zurich Commentary on IPL, p. 1143, No. 7, published by Schulthess (2004) (Exhibit 16), and my tentative translation from German to English of relevant portions of those excerpts (Exhibit 17).  According to IPL 109 Sec. 1, the jurisdiction for claims related to the violation of intellectual property rights (such as copyrights) is primarily linked to the Swiss domicile of the defendant.  The consequence of the domicile-linked jurisdiction for claims related to the violation of intellectual property rights is that the Swiss judge at the place of domicile of the defendant may rule on all claims, independently on whether they concern violations of Swiss or foreign intellectual property rights and on whether the violations took place in Switzerland or abroad.

## Swiss Legal Actions Involving the Publishers and ActaMed

7.   In addition to the filings by certain publishers of requests for debt enforcement as reported in paragraph 7 of my June 14, 2005 Declaration, there has been other activity in Swiss courts.  First, on July 11, 2005 ActaMed filed a Petition in the Court of Appeal of the Canton of Ticino (Switzerland) ("Ticino Supreme Court"), against some of the publishers who had filed requests for debt enforcement, including Elsevier B.V. (the Netherlands), Blackwell Publishing Ltd. (United Kingdom), Blackwell Verlag (Germany) and Blackwell Munksgaard (Denmark), among others.  Next, on July 12, 2005 ActaMed filed a similar Petition in that court against Elsevier Properties SA (Switzerland), which more recently had filed a request for debt enforcement in Switzerland.  True and accurate copies of the July 11 and 12, 2005 Petitions are attached as Exhibits 18 and 19, respectively.  Each Petition bears the stamp of the Ticino Supreme Court on the first page as evidence that the Petition was filed and received by that court.

8.   I understand that the Ticino Supreme Court served the relevant Petition upon each of the named publishers by registered mail dated July 14, 2005 to Dr. Peter Mosimann, legal counsel for the named publishers, together with a Court Order setting a deadline of 30 days in which to file responses. Attached as Exhibits 20, 21, 22, and 23, respectively, are true

- 4 -

and accurate copies of the July 14, 2004 Court Orders (Exhibits 20 and 21) and my tentative Italian to English translations of the Orders (Exhibits 22 and 23).  The Orders do not bear the names of the parties because the Orders were served with the July 11 and 12, 2005 Petitions, which bear the parties' names.

9.    The Petitions ActaMed filed on July 11 and 12, 2005 ask in particular the Swiss court to determine that (1) ActaMed is authorized to distribute reproductions (photocopies and electronic copies) of journal articles of the named publishers to users in Switzerland and abroad; (2) ActaMed is authorized to create and keep a database of those articles; (3) ActaMed has not violated Swiss laws on unfair competition; (4) with respect to delivery outside of Switzerland, ActaMed has not violated British, Dutch, Belgian, German, Italian, French, Austrian, Danish or Spanish laws on copyrights and unfair competition; and therefore (5) the publishers may not seek damages for infringement of Swiss, British, Dutch, Belgian, German, Italian, French, Austrian, Danish and Spanish copyright laws.

### Responses to Massachusetts Medical Society's 2001 and 2002 Inquiries

10.    According to email correspondence dated July 1, 2001, from Mrs. Franziska Eberhard of ProLitteris to Mr. Mark A. Fischer, legal counsel for Massachusetts Medical Society, Mrs. Eberhard corresponded with Mr. Fischer regarding ProLitteris's

delegated authority, its relationship to ActaMed and its policies and practices.  A true and accurate copy of a print-out of that email correspondence is attached as Exhibit 24.

11.  According to a March 11, 2002 letter, Mrs. Eberhard corresponded with Dr. Felix H. Thomann, legal counsel for Massachusetts Medical Society, regarding ProLitteris's delegated authority, its relationship to ActaMed and its policies and practices.  In addition, according to that letter, Mrs. Eberhard and Dr. Thomann spoke on the telephone.  A true and accurate copy of that letter is attached as Exhibit 25.  Attached as Exhibit 26 is my tentative translation of that letter from German to English.

12.  According to March 15, 2002 and March 25, 2002 email correspondence between Dr. Thomann and Mrs. Eberhard, following a telephone conversation between Dr. Thomann and Mrs. Eberhard, Mrs. Eberhard responded to a proposal by Dr. Thomann.  A true and accurate copy of a print-out of that email correspondence is attached as Exhibit 27.  Attached as Exhibit 28 is my tentative translation of those emails from German to English.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 29th day of July, 2005.

Marco A. Rizzi, L.L.M.

### Art. 108

III. Ausländische Entscheidungen

[1] Ausländische Entscheidungen über dingliche Rechte an Grundstücken werden in der Schweiz anerkannt, wenn sie im Staat, in dem sie liegen, ergangen sind oder wenn sie dort anerkannt werden.

[2] Ausländische Entscheidungen über dingliche Rechte an beweglichen Sachen werden in der Schweiz anerkannt:

    a.   wenn sie im Staat ergangen sind, in dem der Beklagte seinen Wohnsitz hat;

    b.   wenn sie im Staat, in dem die Sache liegt, ergangen sind, sofern der Beklagte dort seinen gewöhnlichen Aufenthalt hatte, oder

    c.   wenn sie im Staat ergangen sind, in dem sich der vereinbarte Gerichtsstand befindet.

## 8. Kapitel: Immaterialgüterrecht

### Art. 109

I. Zuständigkeit

[1] Für Klagen betreffend Immaterialgüterrechte sind die schweizerischen Gerichte am Wohnsitz des Beklagten zuständig. Fehlt ein solcher, so sind die schweizerischen Gerichte am Ort zuständig, wo der Schutz beansprucht wird. Ausgenommen sind Klagen betreffend die Gültigkeit oder die Eintragung von Immaterialgüterrechten im Ausland.

[2] Können mehrere Beklagte in der Schweiz belangt werden und stützen sich die Ansprüche im wesentlichen auf die gleichen Tatsachen und Rechtsgründe, so kann bei jedem zuständigen Richter gegen alle geklagt werden; der zuerst angerufene Richter ist ausschliesslich zuständig.

[3] Hat der Beklagte keinen Wohnsitz in der Schweiz, so sind für Klagen betreffend die Gültigkeit oder die Eintragung von Immaterialgüterrechten in der Schweiz die schweizerischen Gerichte am Geschäftssitz des im Register eingetragenen Vertreters oder, wenn ein solcher fehlt, diejenigen am Sitz der schweizerischen Registerbehörde zuständig.

### Art. 110

II. Anwendbares Recht

[1] Immaterialgüterrechte unterstehen dem Recht des Staates, für den der Schutz der Immaterialgüter beansprucht wird.

[2] Für Ansprüche aus Verletzung von Immaterialgüterrechten können die Parteien nach Eintritt des schädigenden Ereignisses stets vereinbaren, dass das Recht am Gerichtsort anzuwenden ist.

[3] Verträge über Immaterialgüterrechte unterstehen den Bestimmungen dieses Gesetzes über das auf obligationenrechtliche Verträge anzuwendende Recht (Art. 122).

**Art. 111**

III. Ausländische Entscheidungen

[1] Ausländische Entscheidungen betreffend Immaterialgüterrechte werden in der Schweiz anerkannt:

    a.    wenn sie im Staat ergangen sind, in dem der Beklagte seinen Wohnsitz hatte, oder

    b.    wenn sie im Staat ergangen sind, für den der Schutz der Immaterialgüter beansprucht wird, und der Beklagte keinen Wohnsitz in der Schweiz hat.

[2] Ausländische Entscheidungen betreffend Gültigkeit oder Eintragung von Immaterialgüterrechten werden nur anerkannt, wenn sie im Staat ergangen sind, für den der Schutz beansprucht wird, oder wenn sie dort anerkannt werden.

**9. Kapitel: Obligationenrecht**

**1. Abschnitt: Verträge**

**Art. 112**

I. Zuständigkeit
1. Grundsatz

[1] Für Klagen aus Vertrag sind die schweizerischen Gerichte am Wohnsitz des Beklagten oder, wenn ein solcher fehlt, diejenigen an seinem gewöhnlichen Aufenthalt zuständig.

[2] Für Klagen aufgrund der Tätigkeit einer Niederlassung in der Schweiz sind überdies die Gerichte am Ort der Niederlassung zuständig.

**Art. 113**

2. Erfüllungsort

Hat der Beklagte weder Wohnsitz oder gewöhnlichen Aufenthalt, noch eine Niederlassung in der Schweiz, ist aber die Leistung in der Schweiz zu erbringen, so kann beim schweizerischen Gericht am Erfüllungsort geklagt werden.

**Art. 114**

3. Verträge mit Konsumenten

[1] Für die Klagen eines Konsumenten aus einem Vertrag, der den Voraussetzungen von Artikel 120 Absatz 1 entspricht, sind nach Wahl des Konsumenten die schweizerischen Gerichte zuständig:

    a.    am Wohnsitz oder am gewöhnlichen Aufenthalt des Konsumenten, oder

# Swiss-American Chamber of Commerce

# Swiss Federal Act
# on
# International Private Law

## of December 18, 1987

## English Translation of Official Text

Dr. iur. Felix H. Thomann
Dr. iur. Bernhard F. Meyer-Hauser, LL.M.
Dr. iur. Alfred E. Reber
Gordon E. Insley, J.D., M.Comp. L.

Swiss-American Chamber of Commerce
Talacker 41, 8001 Zurich
Telephone 01/211 24 54, Telefax 01/211 95 72

*Federal Act on International Private Law*

If a document represents the goods, the rights in rem to the document and to the goods shall be subject to the law governing the documents of title in their quality as movable property.

[3] If several parties assert rights in rem to the goods, the ones directly and the others on the basis of a document of title, the law applicable to the goods themselves shall determine the priority.

### Art. 107

c. Means of Transport

The provisions of other Acts regarding rights in rem to ships, aircraft and other means of transport are not affected.

### Art. 108

III. Foreign Decisions

[1] Foreign decisions concerning rights in rem to real property shall be recognized in Switzerland if they were rendered in the state where the real property is located or if they are recognized there.

[2] Foreign decisions concerning rights in rem to movable property shall be recognized in Switzerland:

    a.  if they were rendered in the state in which the defendant has his domicile;

    b.  if they were rendered in the state in which the real property is located provided the defendant had his ordinary residence there, or

    c.  if they were rendered in the state of the agreed upon jurisdiction.

### Chapter 8:   Intellectual Property Law

### Art. 109

I. Jurisdiction

[1] The Swiss courts at the defendant's domicile shall have jurisdiction over actions concerning intellectual property rights. In the absence of such domicile, the Swiss courts at the place where the protection is requested shall have jurisdiction. This shall not apply to actions concerning the validity or registration of intellectual property rights abroad.

30

[2] Where several defendants can be sued in Switzerland, and where the claims are essentially based on the same facts and legal grounds, an action against all defendants may be brought before any judge having jurisdiction; the judge first invoked shall have exclusive jurisdiction.

[3] If the defendant has no domicile in Switzerland, the Swiss courts at the business seat of the representative recorded in the register or, in the absence of such representative, those at the seat of the Swiss registration authority shall have jurisdiction over actions concerning the validity or registration of intellectual property rights in Switzerland.

### Art. 110

II. Governing Law

[1] Intellectual property rights shall be subject to the law of the state with respect to which protection of intellectual property is requested.

[2] For claims based on infringement of intellectual property rights, the parties are, at any time after the occurrence of the damaging event, free to agree that the law of the place of the court invoked shall govern.

[3] Contracts concerning intellectual property rights shall be subject to the provisions of this Act concerning the law governing contracts under the law of obligations (Art. 122).

### Art. 111

III. Foreign Decisions

[1] Foreign decisions concerning intellectual property rights shall be recognized in Switzerland:

    a.  if they were rendered in the state in which the defendant had his domicile, or

    b.  if they were rendered in the state with respect to which the protection of intellectual property is requested and if the defendant has no domicile in Switzerland.

[2] Foreign decisions concerning the validity or registration of intellectual property rights shall be recognized only if they were rendered in the state with respect to which the protection is requested or if they are recognized there.

# Zürcher Kommentar zum IPRG

Kommentar zum Bundesgesetz über das Internationale
Privatrecht (IPRG) vom 18. Dezember 1987

Herausgegeben und kommentiert von

Prof. Dr. Daniel Girsberger
Prof. Dr. Anton Heini
Prof. Dr. Max Keller[†]
Prof. Dr. Jolanta Kren Kostkiewicz
Prof. Dr. Kurt Siehr
Prof. Dr. Frank Vischer
Prof. Dr. Paul Volken

2., ergänzte und verbesserte Auflage

Schulthess § 2004

## A.  Geltungsbereich der Zuständigkeitsbestimmung

1  Das Kapitel 8 behandelt nur die Zuständigkeit bei grenzüberschreitenden, internationalen Tatbeständen. Die Zuständigkeitsregelung für innerschweizerische Sachverhalte bleibt Sache der Spezialgesetze und des Gerichtsstandsgesetzes. Die Frage, wann ein internationaler Tatbestand vorliegt, wird im Gesetz nicht definiert; alle abschliessenden Definitionsversuche haben sich auch mehr oder weniger als untauglich erwiesen (vgl. Botschaft, Nr. 211 ff.). Es ist von folgender Richtlinie auszugehen: Als international gilt ein Sachverhalt, wenn sich die Frage des anwendbaren Rechts und der internationalen Zuständigkeit stellt, etwa weil die beteiligten Personen in verschiedenen Staaten Wohnsitz haben, das Streitobjekt sich im Ausland befindet oder weil die rechtlich relevante Handlung im Ausland ausgeführt wird (KELLER/SIEHR, S. 254 ff.). Als relevante Auslandbeziehung betrachtete das Zürcher Handelsgericht das Abgeben eines Prospektes an einer Fachmesse, in dem eine patentverletzende Anlage gezeigt wurde, und den Bericht über die streitige Anlage in einer internationalen Monatszeitschrift (Urteil vom 22.10.1991, SJZ 1992, S. 35/36; vgl. auch Urteil des Obergerichts Zürich vom 15. Oktober 1990, ZR 89 (1990), S. 267 f.; vgl. auch BÄR, S. 98 ff.). Im Anwendungsbereich des Lugano Übereinkommens gehen die dort vorgesehenen Zuständigkeiten für Bestandes- und Verletzungsklage vor (s. unten N 5).

## B.  Die Unterscheidung zwischen Verletzungs- und Bestandesklage

2  Das Gesetz unterscheidet in Kapitel 8 bei der Zuständigkeit durchgehend zwischen Klagen aus Verletzung von Immaterialgüterrechten einerseits und sog. Bestandesklagen (Gültigkeits- und Eintragungsklagen) andererseits.

3  Verletzungsklagen betreffen alle vermögensrechtlichen Ansprüche (vgl. BGE 108 II 78, E. 1a.; BGE 117 II 598 ff.) gegen den Verletzer wegen Beeinträchtigung eines Immaterialgüterrechtes, insbesondere Feststellung der Widerrechtlichkeit, Schadenersatz, Genugtuung und Gewinnherausgabe, die Unterlassungsklage und das Begehren auf Beseitigung der rechtswidrigen Störung.

4  Gültigkeits- und Eintragungsklagen haben die Frage nach dem Bestand des Immaterialgüterrechtes und nach dessen Rechtsträger zum Inhalt. Dazu gehören insbesondere auch registerrechtliche Ansprüche auf Löschung oder Berichtigung des Eintrages. In diesem Fall ist der eingetragene Inhaber des Immaterialgüterrechtes der Beklagte.

5  Die Unterscheidung zwischen Verletzungs- und Bestandesklagen ist international anerkannt. Ihr folgt auch das Lugano-Übereinkommen (vgl. unten N 22 ff.). Die Unterscheidung ist in der Praxis nicht immer einfach durchzuhalten. Insbesondere stellt sich die Gültigkeits- oder Bestandesfrage oft als Vorfrage des Verletzungsanspruchs,

1142

wenn der Beklagte die Gültigkeit des Immaterialgüterrechtes oder die Berechtigung des Klägers bestreitet (vgl. unten N 12). Erhebt der Kläger im Rahmen eines Verletzungsprozesses subsidiär Klage auf Feststellung der Gültigkeit des Patentes oder eines anderen Immaterialgutes, so gilt die Zuständigkeit für Verletzungsklagen. Die positive Feststellungsklage dient dem gleichen Zweck wie die Verletzungsklage, nämlich der Verteidigung des klagenden Berechtigten gegenüber dem Verletzer, und muss am gleichen Ort angebracht werden können. Die Rechtskraft eines Feststellungsurteils im Rahmen eines Verletzungsprozesses entsteht allerdings nur unter den Parteien (BAR S. 146). Damit bleibt im Bereich der Feststellungsklage der Gerichtsstand von Art. 109 Abs. 3 auf die negative Feststellungsklage beschränkt (BGE 117 II 598 ff., 601).

## C.    Die Zuständigkeit bei Verletzungsklagen (Abs. 1)

### I.    Wohnsitzzuständigkeit (Abs. 1 Satz 1)

Die Zuständigkeit bei Verletzungsklagen stellt primär auf den schweizerischen Wohnsitz des Beklagten ab. Nur bei Fehlen eines Wohnsitzes des Beklagten in der Schweiz kann die Klage beim schweizerischen Richter am Ort erhoben werden, «wo der Schutz beansprucht wird» (Art. 109 Abs. 1 Satz 2).                                                               6

Der Wohnsitzgerichtsstand für Verletzungsklagen hat zur Folge, dass der schweizerische Wohnsitzrichter alle Ansprüche beurteilen darf, gleichgültig, ob es sich um die Verletzung eines schweizerischen oder ausländischen Immaterialgüterrechtes handelt und ob die Verletzung in der Schweiz oder im Ausland stattfand. Die umfassende Zuständigkeit des Wohnsitzrichters wurde in der Lehre schon lange gefordert (TROLLER, Immaterialgüterrecht, S. 1027; TROLLER, IPR, S. 268 f.; SPOENDLIN, S. 32), in der Praxis allerdings nur vereinzelt anerkannt (Zwischenbeschluss des Handelsgerichts Zürich vom 9.1.1984, in: Schweizerische Mitteilungen über gewerblichen Rechtsschutz und Urheberrecht 1985, S. 42 ff.; in diesem Fall wurde die Verletzung schweizerischer wie ausländischer Immaterialgüterrechte geltend gemacht. A.M.: Genfer Cour de Justice, Urteil vom 24.6.1985, in: GRUR Int. 1961, S. 144 ff.). Der Wohnsitzgerichtsstand ermöglicht insbesondere die Konzentration von Verletzungsprozessen an einem Ort: Statt in jedem Land, in dem das jeweilige Immaterialgüterrecht verletzt wurde, einen Prozess führen zu müssen, können alle Klagen am Wohnsitz des Beklagten zusammengefasst werden. In der Anerkennung der Wohnsitzzuständigkeit, ohne Rücksicht auf den Verletzungsort, liegt die bedeutsamste Entscheidung des IPRG im Bereich des Immaterialgüterrechts. Im Unterschied zur schweizerischen Regelung sieht das Lugano-Übereinkommen eine alternative Zuständigkeit vor (Art. 2 Abs. 1 und Art. 5 Nr. 3 LugÜ).                                                                    7

Die Subsidiarität der Verletzungsortszuständigkeit im IPRG ist beinflusst durch Art. 59 aBV. Allerdings ist die schweizerische Haltung nicht widerspruchsfrei. Zwar                  8

**Translation of page 1143, No. 7 of the commentary on Article 109 IPL, written by Dr. Frank Vischer, in: Commentary to the Federal Act on International Private Law (IPL) of 18 December 1987, Zurich Commentary on IPL, published by Schulthess 2004**

The jurisdiction of the place of domicile for lawsuits concerning violations *[remark of the translator: of intellectual property rights]* is that the Swiss judge at the place of domicile of the Defendant may rule on all claims, independently on whether they concern violations of Swiss or foreign intellectual property rights and on whether the violations took place in Switzerland or abroad. (…) The jurisdiction at the place of domicile makes it possible in particular to concentrate lawsuits regarding violations *[remark of the translator: of intellectual property rights]* in one place: instead of having to conduct a lawsuit in each country in which the corresponding intellectual property right was violated, all lawsuits can be concentrated at the place of domicile of the Defendant. (…)

CANCELLERIA
TRIBUNALE D'APPELLO

1 1 LUG. 2005

Lugano, 11 luglio 2005 GB/rp

Lodevole
Tribunale d'Appello
palazzo di giustizia
6901 Lugano

A MANO IN CH A

**raccomandata a mano**

## PETIZIONE

che presenta la società
**Via Marketing & Promotion SA**, Porza

(rappresentata dall'Avv. Giovanna Bonafede, Studio legale Item & Associati, Via Peri 9a, 6901 Lugano e dall'Avv. Marco A. Rizzi, Schaufelberger & Van Hoboken, Seestrasse 17, 8702 Zurigo-Zollikon)

contro le società

**Elsevier B.V.**, Amsterdam, Paesi Bassi;
**Blackwell Publishing Ltd.**, Oxford, Regno Unito;
**Springer Science+Business Media GmbH & Co. KG**, Berlino, Germania;
**British Medical Journal Publishing Group Ltd.**, Londra, Regno Unito;
**Adis International Ltd**, Kingston on Thames, Regno Unito;
**Birkhäuser Verlag AG**, Basilea;
**Blackwell Verlag**, Berlino, Germania;
**Blackwell Munksgaard**, Frederiksberg, Danimarca

(tutte rappresentate da Avv. Dr. Peter Mosimann, Wenger Plattner, Aeschenvorstadt 55, 4010 Basilea)

*** ** ***

- 2 -

## I. IN ORDINE

**1.**

Attraverso la presente petizione l'attrice chiede venga accertata la liceità di alcuni dei servizi da essa offerti con riferimento all'art. 19 cpv. 1 e 2 LDA, alla LCSl, nonché con riferimento alla normativa sul diritto d'autore e sulla concorrenza sleale vigente in alcuni Paesi e la infondatezza di alcuna pretesa al risarcimento del danno in capo alle convenute.



La presente azione viene inoltrata davanti a Codesto Lodevole Tribunale di Appello competente ratione materiae in virtù del combinato disposto degli artt. 64 LDA, 12 LCSl, 22 lett. b) cpv. 2 nn. 2 e 3 LOG, 418e e 71 CPCTi.

prove: documenti

**2.**

La competenza territoriale di Codesta Lodevole Corte è data in applicazione all'art. 5 n. 3 della Convenzione concernente la competenza giurisdizionale e l'esecuzione delle decisioni in materia civile e commerciale sottoscritta a Lugano il 16 settembre 1988 ("CL").



La materia del contendere rientra, infatti, nell'ambito di applicazione della Convenzione di Lugano. Le convenute, aventi sede in Stati contraenti la Convenzione di Lugano, possono essere citate in un altro Stato contraente. In particolare, in materia di delitti e quasi-delitti, davanti al giudice del luogo in cui l'evento dannoso è avvenuto (art. 5 n. 3 CL).

prove: documenti

**2.1**

L'attrice, che svolge le sue attività a Porza, promuove con la presente petizione le azioni di accertamento meglio evidenziate supra ad 1.

./.

- 3 -

La nozione di delitti o quasi-delitti contenuta nell'art. 5 n. 3 della Convenzione di Lugano com-
prende tutte quelle pretese che derivano da una responsabilità non contrattuale, come nel caso di
violazioni del diritto d'autore e di violazione delle norme sulla concorrenza sleale.

L'evento dannoso, se esistente, sarebbe avvenuto a Porza, sede della qui attrice e luogo in cui essa
esercita la propria impresa (Doc. A).

<u>prove:</u> documenti



**2.2**

Viene inoltre promossa con la presente petizione un'azione di accertamento negativo avente ad og-
getto l'accertamento dell'assenza di violazioni da parte dell'attrice del diritto d'autore di alcuni Sta-
ti nonché di ogni responsabilità dell'attrice per un danno da atto illecito di cui le convenute chiedo-
no il risarcimento.

Anche tale tipo di azione va inoltrata, ai sensi dell'art. 5 n. 3 CL, nel luogo dove il diritto controver-
so andrebbe giudicato qualora si trattasse di un'azione condannatoria, e comunque, trattandosi di
delitti e/o quasi-delitti, nel luogo in cui l'evento dannoso si è verificato, ovvero sia Porza

<u>prove:</u> documenti



**3.**

L'interesse giuridico all'accertamento è dato ove l'incertezza relativa ad un rapporto giuridico tra le
parti può essere eliminata mediante accertamento giudiziario e ove il perdurare di tale incertezza è
inaccettabile per la parte attrice (STF 123 III 51).

L'interesse legittimo dell'attrice alle azioni di accertamento è dato sulla base delle considerazioni
che saranno più ampiamente svolte infra sub par. 5 e 6.

<u>prove:</u> documenti

./.

- 4 -

**4.**

Le convenute vengono citate in litisconsorzio facoltativo, sulla base del combinato disposto degli artt. 42 CPCTi e 7 LForo.

<u>prove</u>: documenti

## II. IN FATTO E IN DIRITTO

**1.**

La società Via Marketing & Promotion SA, qui attrice, è attiva dal 1985 nel settore dei servizi di ricerca di documentazione scientifica, con particolare riferimento al settore medico (Doc. A). I servizi dell'attrice sono contraddistinti dal marchio registrato "ActaMed".

Tra i servizi offerti dall'attrice rientra la fornitura, sia in forma cartacea che in forma elettronica, di copie di articoli, pubblicati su riviste, specializzate nel campo medico, delle qui convenute, ad utenti in Svizzera ed all'estero, dietro loro specifica richiesta. Tale fornitura viene convenzionalmente definito quale "copy service".

Generalmente tale servizio viene richiesto da case farmaceutiche che commissionano la forniture di diverse copie cartacee di uno stesso articolo e da singoli utenti, già abbonati ad altri servizi Acta-Med, che ordinano la copia singola, sia su supporto cartaceo che in forma elettronica, di un articolo selezionato da una bibliografia allestita dall'attrice.

Per lo svolgimento delle attività suddescritte, nonché per l'allestimento di proprie pubblicazioni (bibliografie, recensioni, ecc.), l'attrice detiene una banca dati, sia sotto forma cartacea che elettronica, nella quale sono raccolti gli articoli apparsi sulle varie pubblicazioni mediche.

Ai fini dell'azione di accertamento qui promossa, si chiede che vengano analizzati il servizio detto di copy service e la detenzione della banca dati.

<u>prove:</u> documenti, testimoni, sopralluogo, edizione da ProLitteris di tutta la documentazione concernente l'attrice, richiamo incarto n. 2004.9689/AL/AL presso il Ministero Pubblico di Lugano

./.

- 5 -

**2.**

Tutte le convenute sono società attive nel campo dell'editoria, specializzate nella pubblicazione di riviste mediche (Plico Docc. B).

prove: documenti, testimoni, sopralluogo, edizione da ProLitteris di tutta la documentazione concernente l'attrice, richiamo incarto n. 2004.9689/AL/AL presso il Ministero Pubblico di Lugano

**3.**

Sin dalla sua costituzione, l'attrice ha impostato la propria attività in modo tale da evitare ogni atto di violazione di diritti di autore e, in particolare, della Legge sul Diritto d'Autore e della LCSl.

Ed infatti, dal 1986 ha sempre sottoscritto contratti con ProLitteris, società di gestione ai sensi della LDA, per la corresponsione delle indennità di riproduzione (Plico Docc. C).

ProLitteris, ha sempre garantito alla qui attrice che la sua attività di "copy service" rientrava nell'ambito applicativo dell'art. 19 LDA (Plico Docc. D).

Tali affermazioni erano confermate anche dalla DUN Federation des Utilisateurs de Droits d'Auteurs et Voisins (Doc. E), associazione che raccoglie gli utilizzatori di diritti d'autore e similari.
Nelle proprie dichiarazioni DUN ha inoltre espressamente confortato la qui attrice circa la legittimità della spedizione di copie di opere all'estero, così come circa la legittimità della detenzione di una banca dati.

Sulla base delle proprie attestazioni, Prolitteris ha sempre incassato dalla qui attrice cospicui importi versati a titolo di indennità di riproduzione, e ciò anche per gli invii di copie all'estero.

Prolitteris era a piena conoscenza di quale fosse l'attività dell'attrice, quale la mole di riproduzioni di opere effettuate, quale la destinazione degli invii di tali riproduzioni, sia sotto forma cartacea che elettronica.

./.

- 6 -

Fino all'autunno 2004, in ottemperanza ai disposti del contratto in essere con la qui attrice, ProLitteris è sempre intervenuta in favore dell'attrice, al fine di affermare, anche nei confronti delle società editrici, la liceità delle attività dell'attrice (Plico Docc. D).

prove: documenti, testimoni, sopralluogo, edizione da ProLitteris di tutta la documentazione concernente l'attrice, richiamo incarto n. 2004.9689/AL/AL presso il Ministero Pubblico di Lugano

**4.**
Nei primi mesi di quest'anno, le convenute ed altre società editrici di importanti riviste mediche hanno imputato alla qui attrice una serie di violazioni del loro diritto di autore ed atti lesivi delle norme in materia di concorrenza sleale (Docc. F e G).

**4.1**
In particolare, le qui convenute ritengono che l'invio di riproduzioni di opere coperte dal diritto di autore, quali gli articoli delle riviste edite dalle convenute, soggiaccia al diritto dello Stato in cui l'utente ha il proprio domicilio.
Ne deriverebbe che la legge svizzera non sarebbe applicabile laddove la copia dell'articolo venisse inviata, sia in forma cartacea che in forma elettronica, al di fuori del territorio svizzero.

**4.2**
Le convenute affermano inoltre che, anche qualora risultasse applicabile il diritto svizzero, l'art. 19 cpv. 1 lett. c. LDA non consente l'invio di copie di opere in forma elettronica.

**4.3**
Le convenute reputano, ancora, che il servizio di fornitura di diverse copie di riproduzioni di opere ("multiple copying service") alle società farmaceutiche non possa comunque rientrare nell'ambito applicativo dell'art. 19 cpv. 1 lett. c. LDA.

**4.4**
Le qui convenute rendono inoltre responsabile l'attrice di atti di concorrenza sleale in violazione dell'art. 5 lett. c. LCSl, in quanto renderebbe disponibili articoli pubblicati sulle riviste delle

./.

- 7 -

convenute ad un prezzo inferiore: gli utenti evitano così, a mente delle convenute, di sottoscrivere gli abbonamenti alle riviste edite dalle convenute.

<u>prove</u>: documenti, testimoni, sopralluogo, edizione da Prolitteris di tutta la documentazione concernente l'attrice, richiamo incarto n. 2004.9689/AL/AL presso il Ministero Pubblico di Lugano


**5.**

Sulla base di tali argomentazioni, le convenute hanno richiesto all'attrice di cessare la propria attività di "copy service"; di cessare dall'offrire in forma elettronica copie di articoli editi sulle riviste delle convenute; di cessare dal raccogliere e conservare opere coperte dal loro diritto di autore in una banca dati, procedendo alla distruzione delle copie finora raccolte in detta banca dati.

Esse hanno chiesto inoltre il versamento di un importo pari ad almeno il 20% della cifra di affari dell'attrice prodotta dal 2002 al 2004, a titolo di risarcimento del danno.

Le qui convenute, lamentando le suddette violazioni della LDA e LCSl, hanno presentato al Ministero Pubblico di Lugano un esposto che ha sortito un provvedimento di perquisizione e sequestro nei locali della società attrice (Plico Docc. H).
Il sostituto procuratore incaricato delle indagini non ha a tutt'oggi formalizzato altri atti istruttori.

Sulla scorta della pretesa da risarcimento del danno le qui convenute hanno provveduto a far spiccare una serie di precetti esecutivi nei confronti dell'attrice (Plico Docc. I), per somme ingenti (e volutamente esagerate), seppur limitandosi ad indicarle come meramente parziali e provvisorie, suscettibili quindi di subire un aumento.

Le convenute hanno minacciato e minacciano l'esperimento di ulteriori azioni giudiziarie volte alla condanna della qui attrice a cessare le sue attività ed a riparare il danno derivante dalle presunte violazioni di legge.

<u>prove</u>: documenti, testimoni, sopralluogo, edizione da ProLitteris di tutta la documentazione concernente l'attrice, richiamo incarto n. 2004.9689/AL/AL presso il Ministero Pubblico di Lugano

./.

- 8 -

**6.**

La società qui attrice ha un interesse legittimo ed immediato a che venga accertata l'esistenza o meno di alcuna violazione della LDA e/o della LCSl da lei commessa nell'esercizio della sua attività, come sostenuto dalle convenute.

**6.1**

La parte attrice necessita un accertamento immediato della liceità della propria attività, poiché qualora dovesse risultare che i servizi sinora offerti violano in qualsiasi modo prescrizioni di legge, e conseguentemente la fondatezza della pretesa da risarcimento del danno avanzata dalle convenute, l'attrice si troverebbe costretta ad interrompere gran parte delle sue attività e ad affrontare un probabile fallimento.

**6.2**

La pressione e le minacce operate dalle convenute, anche nei confronti dei clienti della qui attrice, hanno già comportato una massiccia riduzione della cifra di affari dell'attrice.

L'attrice, al fine di preservare la sua ottima reputazione, ha, di fatto, smesso di offrire servizi che possano integrare violazioni di legge.

Ne è derivato un notevole nocumento economico per l'attrice, che per quasi vent'anni é stata punto di riferimento per i servizi di aggiornamento professionale richiesti sia dal mondo medico che farmaceutico.
L'attrice, infatti, è in grado di approntare bibliografie complete, comprendenti tutte le pubblicazioni esistenti su un determinato tema di interesse medico.

Le difficoltà in cui oggi versa l'attrice, le hanno imposto di preavvisare la disdetta del rapporto di lavoro per la maggior parte dei suoi quaranta dipendenti.

**6.3**

Le convenute hanno già da tempo appalesato (Docc. F e G) la loro volontà di iniziare azioni giudiziarie nei confronti dell'attrice per vederla condannata per le violazioni che avrebbe perpetrato.

./.

- 9 -

L'incertezza giuridica generata dalla situazione attuale, impone quindi un solerte procedimento di accertamento della legittimità delle attività svolte dall'attrice.

Da qui la necessità di introdurre le presenti azioni di accertamento affinché Codesto Lodevole Tribunale si pronunci sulla esistenza o meno tra i servizi resi dall'attrice di violazioni della LDA e/o della LCSl ed abbia ad accertare che l'attrice non abbia violato alcuna norma del diritto britannico, del olandese, belga, germanico, italiano, francese, austriaco, danese e spagnolo.

prove: documenti, testimoni, sopralluogo, edizione da Prolitteris di tutta la documentazione concernente l'attrice, richiamo incarto n. 2004.9689/AL/AL presso il Ministero Pubblico di Lugano

Per tutto quanto sopra esposto, visti gli articoli 5 CL, 61 LDA, 12 LCSl, 418e CPCTi, 42 CPCTi e 7 Lforo, nonché ogni altra norma applicabile, si chiede venga

## GIUDICATO:

1.    La petizione è integralmente accolta.

Di conseguenza è accertato che:

1.1 L'attrice è autorizzata, quale terzo secondo i disposti dell'art. 19 cpv. 1 e 2 LDA, ad inviare, sia sotto forma cartacea che elettronica, riproduzioni di articoli apparsi sulle pubblicazioni edite dalle convenute , ad utenti in Svizzera , nella misura in cui vengano corrisposte a ProLitteris le indennità stabilite dalla LDA e dalle tariffe emesse da ProLitteris sulla base della LDA;

1.2. L'attrice è autorizzata, quale terzo secondo i disposti dell'art. 19 cpv. 1 e 2 LDA, ad inviare, sotto forma cartacea, riproduzioni di articoli apparsi sulle pubblicazioni edite dalle convenute, ad utenti all'estero, nella misura in cui vengano corrisposte a ProLitteris le indennità stabilite dalla LDA e dalle tariffe emesse da ProLitteris sulla base della LDA;

./.

**1.3.** L'attrice è autorizzata, quale terzo secondo i disposti dell'art. 19 cpv. 1 e 2 LDA, ad inviare, sotto forma elettronica, riproduzioni di articoli apparsi sulle pubblicazioni edite dalle convenute, ad utenti all'estero, nella misura in cui vengano corrisposte a ProLitteris le indennità stabilite dalla LDA e dalle tariffe emesse da ProLitteris sulla base della LDA;

**1.4** L'attrice è autorizzata, quale terzo secondo i disposti dell'art. 19 cpv. 1 e 2 LDA, a fornire più riproduzioni di uno stesso articolo apparso sulle pubblicazioni edite dalle convenute, ad utenti in Svizzera ;

**1.5** L'attrice è autorizzata, quale terzo secondo i disposti dell'art. 19 cpv. 1 e 2 LDA, a fornire più riproduzioni di uno stesso articolo apparso sulle pubblicazioni edite dalle convenute, ad utenti all'estero;

**1.6** L'attrice è autorizzata a detenere e ad integrare una banca dati nella quale siano conservati anche articoli apparsi sulle pubblicazioni edite dalle convenute;

**1.7** L'attrice, nell'esercizio delle sue attività, non ha posto in essere alcuna violazione della Legge sulla Concorrenza Sleale;

**1.8** L'attrice, attraverso l'invio di riproduzioni di articoli apparsi sulle pubblicazioni edite dalle convenute al di fuori del territorio svizzero, non ha violato il diritto britannico, olandese, belga, germanico, italiano, francese, austriaco, danese e spagnolo.

**1.9** Di conseguenza, nulla è dovuto dall'attrice alle convenute a titolo di risarcimento per violazione del diritto d'autore e della normativa sulla concorrenza sleale svizzere nonché per violazione del diritto d'autore diritto britannico, olandese, belga, germanico, italiano, francese, austriaco, danese e spagnolo.

**2.** Protestate tasse, spese e ripetibili.

Con ogni ossequio

Avv. Marco A. Rizzi

Avv. dott. Giovanna Bonafede

./.

- 11 -

Si allegano e si producono:

| | |
|---|---|
| Doc. A: | estratto RC Via Marketing & Promotion SA |
| Doc. B: | plico contenente estratti internet società convenute |
| Doc. C: | plico contenente contratto con ProLitteris, proroga validità del contratto, lettera 19.12.2002 |
| Doc. D: | plico corrispondenza con ProLitteris |
| Doc. E: | dichiarazione DUN 17.10.2003 |
| Doc. F: | lettera 18.2.2005 Dr. Mosimann |
| Doc. G: | lettera 29.5.2005 Dr. Mosimann |
| Doc. H: | ordine di perquisizione e sequestro MP di Lugano 11.4.2005 |
| Doc. I: | plico precetti esecutivi fatti spiccare dalle convenute nei confronti dell'attrice |

procura a disposizione

CANCELLERIA
TRIBUNALE DI APPELLO

1 3 LUG. 2005

Lugano, 12 luglio 2005 GB/rp

Esibito No. _____

Lodevole
Tribunale d'Appello
palazzo di giustizia
6901 Lugano

raccomandata

## PETIZIONE

che presenta la società
**Via Marketing & Promotion SA,** Porza

(rappresentata dall'Avv. Giovanna Bonafede, Studio legale Item & Associati, Via Peri 9a, 6901 Lugano e dall'Avv. Marco A. Rizzi, Schaufelberger & Van Hoboken, Seestrasse 17, 8702 Zurigo-Zollikon)

contro la società

**Elsevier Properties SA,** Neuchatel

(rappresentata da Avv. Dr. Peter Mosimann, Wenger Plattner, Aeschenvorstadt 55, 4010 Basilea)

*** ** ***

- 2 -

## I. IN ORDINE

**1.**

Attraverso la presente petizione l'attrice chiede venga accertata la liceità di alcuni dei servizi da essa offerti con riferimento all'art. 19 cpv. 1 e 2 LDA, alla LCSl, nonché con riferimento alla normativa sul diritto d'autore e sulla concorrenza sleale vigente in alcuni Paesi e la infondatezza di alcuna pretesa al risarcimento del danno in capo alla convenuta.

La presente azione viene inoltrata davanti a Codesto Lodevole Tribunale di Appello competente ratione materiae in virtù del combinato disposto degli artt. 64 LDA, 12 LCSl, 22 lett. b) cpv. 2 nn. 2 e 3 LOG, 418e e 71 CPCTi.

prove: documenti

**2.**

La competenza territoriale di Codesta Lodevole Corte è data in applicazione all'art. 3 della Legge Federale sul Foro in materia civile.

prove: documenti

**2.1**

L'attrice, che svolge le sue attività a Porza, promuove con la presente petizione le azioni di accertamento meglio evidenziate supra ad 1.

Viene inoltre promossa con la presente petizione un'azione di accertamento negativo avente ad oggetto l'accertamento dell'assenza di violazioni da parte dell'attrice del diritto d'autore di alcuni Stati nonché di ogni responsabilità dell'attrice per un danno da atto illecito di cui la convenuta chiede il risarcimento

prove: documenti

./.

- 3 -

**3.**

L'interesse giuridico all'accertamento è dato ove l'incertezza relativa ad un rapporto giuridico tra le parti può essere eliminata mediante accertamento giudiziario e ove il perdurare di tale incertezza è inaccettabile per la parte attrice (STF 123 III 51).

L'interesse legittimo dell'attrice alle azioni di accertamento è dato sulla base delle considerazioni che saranno più ampiamente svolte infra sub par. 5 e 6.

prove: documenti

**4.**

La presente causa è correlata ad altra con identico oggetto inoltrata dalla qui attrice nei confronti di **Elsevier B.V.**, Amsterdam, Paesi Bassi; **Blackwell Publishing Ltd.**, Oxford, Regno Unito; **Springer Science+Business Media GmbH & Co. KG**, Berlino, Germania; **British Medical Journal Publishing Group Ltd.**, Londra, Regno Unito; **Adis International Ltd**, Kingston on Thames, Regno Unito; **Birkhäuser Verlag AG**, Basilea, **Blackwell Verlag**, Berlino, Germania; **Blackwell Munksgaard**, Frederiksberg, Danimarca, in data 11 luglio 2005.

La qui convenuta non è stata chiamata in litisconsorzio con le altre società editrice soltanto perché essa ha fatto spiccare un precetto esecutivo nei confronti dell'attrice, da cui deriva in parte l'interesse giuridico alla presente azione, notificato nella giornata di oggi (Doc. L).

Per tale motivo si chiede la congiunzione della presente azione con quella introdotta nei confronti delle suddette altre parti convenute con petizione del giorno 11 giugno 2005.

## II. IN FATTO E IN DIRITTO

**1.**

La società Via Marketing & Promotion SA, qui attrice, è attiva dal 1985 nel settore dei servizi di ricerca di documentazione scientifica, con particolare riferimento al settore medico (Doc. A). I servizi dell'attrice sono contraddistinti dal marchio registrato "ActaMed".

Tra i servizi offerti dall'attrice rientra la fornitura, sia in forma cartacea che in forma elettronica, di copie di articoli, pubblicati su riviste, specializzate nel campo medico, delle qui convenute, ad utenti in Svizzera ed all'estero, dietro loro specifica richiesta. Tale fornitura viene convenzionalmente definito quale "copy service".

- 4 -

Generalmente tale servizio viene richiesto da case farmaceutiche che commissionano la forniture di diverse copie cartacee di uno stesso articolo e da singoli utenti, già abbonati ad altri servizi Acta-Med, che ordinano la copia singola, sia su supporto cartaceo che in forma elettronica, di un articolo selezionato da una bibliografia allestita dall'attrice.

Per lo svolgimento delle attività suddescritte, nonché per l'allestimento di proprie pubblicazioni (bibliografie, recensioni, ecc.), l'attrice detiene una banca dati, sia sotto forma cartacea che elettronica, nella quale sono raccolti gli articoli apparsi sulle varie pubblicazioni mediche.

Ai fini dell'azione di accertamento qui promossa, si chiede che vengano analizzati il servizio detto di copy service e la detenzione della banca dati.

prove: documenti, testimoni, sopralluogo, edizione da ProLitteris di tutta la documentazione concernente l'attrice, richiamo incarto n. 2004.9689/AL/AL presso il Ministero Pubblico di Lugano

**2.**

La convenuta è una società attiva nel campo dell'editoria, specializzata nella pubblicazione di riviste mediche (Plico Docc. B).

prove: documenti, testimoni, sopralluogo, edizione da ProLitteris di tutta la documentazione concernente l'attrice, richiamo incarto n. 2004.9689/AL/AL presso il Ministero Pubblico di Lugano

**3.**

Sin dalla sua costituzione, l'attrice ha impostato la propria attività in modo tale da evitare ogni atto di violazione di diritti di autore e, in particolare, della Legge sul Diritto d'Autore e della LCSI.

Ed infatti, dal 1986 ha sempre sottoscritto contratti con ProLitteris, società di gestione ai sensi della LDA, per la corresponsione delle indennità di riproduzione (Plico Docc. C).

ProLitteris ha sempre garantito alla qui attrice che la sua attività di "copy service" rientrava nell'ambito applicativo dell'art. 19 LDA (Plico Docc. D).

- 5 -

Tali affermazioni erano confermate anche dalla DUN Federation des Utilisateurs de Droits d'Auteurs et Voisins (Doc. E), associazione che raccoglie gli utilizzatori di diritti d'autore e similari.

Nelle proprie dichiarazioni DUN ha inoltre espressamente confortato la qui attrice circa la legittimità della spedizione di copie di opere all'estero, così come circa la legittimità della detenzione di una banca dati.

Sulla base delle proprie attestazioni, Prolitteris ha sempre incassato dalla qui attrice cospicui importi versati a titolo di indennità di riproduzione, e ciò anche per gli invii di copie all'estero.
Prolitteris era a piena conoscenza di quale fosse l'attività dell'attrice, quale la mole di riproduzioni di opere effettuate, quale la destinazione degli invii di tali riproduzioni, sia sotto forma cartacea che elettronica.

Fino all'autunno 2004, in ottemperanza ai disposti del contratto in essere con la qui attrice, ProLitteris è sempre intervenuta in favore dell'attrice, al fine di affermare, anche nei confronti delle società editrici, la liceità delle attività dell'attrice (Plico Docc. D).

prove: documenti, testimoni, sopralluogo, edizione da ProLitteris di tutta la documentazione concernente l'attrice, richiamo incarto n. 2004.9689/AL/AL presso il Ministero Pubblico di Lugano

**4.**

Nei primi mesi di quest'anno, la convenuta ed altre società editrici di importanti riviste mediche hanno imputato alla qui attrice una serie di violazioni del loro diritto di autore ed atti lesivi delle norme in materia di concorrenza sleale (Docc. F e G).

**4.1**

In particolare, la qui convenuta ritiene che l'invio di riproduzioni di opere coperte dal diritto di autore, quali gli articoli delle riviste edite dalla convenuta, soggiaccia al diritto dello Stato in cui l'utente ha il proprio domicilio.
Ne deriverebbe che la legge svizzera non sarebbe applicabile laddove la copia dell'articolo venisse inviata, sia in forma cartacea che in forma elettronica, al di fuori del territorio svizzero.

./.

- 6 -

### 4.2

La convenuta afferma inoltre che, anche qualora risultasse applicabile il diritto svizzero, l'art. 19 cpv. 1 lett. c. LDA non consente l'invio di copie di opere in forma elettronica.

### 4.3

Le convenute reputano, ancora, che il servizio di fornitura di diverse copie di riproduzioni di opere ("multiple copying service") alle società farmaceutiche non possa comunque rientrare nell'ambito applicativo dell'art. 19 cpv. 1 lett. c. LDA.

### 4.4

La qui convenuta rende inoltre responsabile l'attrice di atti di concorrenza sleale in violazione dell'art. 5 lett. c. LCSl, in quanto renderebbe disponibili articoli pubblicati sulle riviste della convenuta ad un prezzo inferiore: gli utenti evitano così, a mente delle convenute, di sottoscrivere gli abbonamenti alle riviste edite dalle convenute.

prove: documenti, testimoni, sopralluogo, edizione da Prolitteris di tutta la documentazione concernente l'attrice, richiamo incarto n. 2004.9689/AL/AL presso il Ministero Pubblico di Lugano

### 5.

Sulla base di tali argomentazioni, la convenuta ha richiesto all'attrice di cessare la propria attività di "copy service"; di cessare dall'offrire in forma elettronica copie di articoli editi sulle riviste delle convenute; di cessare dal raccogliere e conservare opere coperte dal loro diritto di autore in una banca dati, procedendo alla distruzione delle copie finora raccolte in detta banca dati.

Essa ha chiesto inoltre il versamento di un importo pari ad almeno il 20% della cifra di affari dell'attrice prodotta dal 2002 al 2004, a titolo di risarcimento del danno.

La qui convenuta, lamentando le suddette violazioni della LDA e LCSl, ha presentato al Ministero Pubblico di Lugano un esposto che ha sortito un provvedimento di perquisizione e sequestro nei locali della società attrice (Plico Docc. H).
Il sostituto procuratore incaricato delle indagini non ha a tutt'oggi formalizzato altri atti istruttori.

/.

- 7 -

Sulla scorta della pretesa da risarcimento del danno la qui convenuta ha provveduto a far spiccare un precetto esecutivo nei confronti dell'attrice (Doc. 1.), per una somma ingente (e volutamente esagerate), seppur limitandosi ad indicarla come meramente parziale e provvisoria, suscettibile quindi di subire un aumento.

La convenuta ha minacciato e minaccia l'esperimento di ulteriori azioni giudiziarie volte alla condanna della qui attrice a cessare le sue attività ed a riparare il danno derivante dalle presunte violazioni di legge.

prove: documenti, testimoni, sopralluogo, edizione da ProLitteris di tutta la documentazione concernente l'attrice, richiamo incarto n. 2004.9689/AL/AL presso il Ministero Pubblico di Lugano

**6.**

La società qui attrice ha un interesse legittimo ed immediato a che venga accertata l'esistenza o meno di alcuna violazione della LDA e/o della LCSl da lei commessa nell'esercizio della sua attività, come sostenuto dalla convenuta.

**6.1**

La parte attrice necessita un accertamento immediato della liceità della propria attività, poiché qualora dovesse risultare che i servizi sinora offerti violano in qualsiasi modo prescrizioni di legge, e conseguentemente la fondatezza della pretesa da risarcimento del danno avanzata dalla convenuta, l'attrice si troverebbe costretta ad interrompere gran parte delle sue attività e ad affrontare un probabile fallimento.

**6.2**

La pressione e le minacce operate dalla convenuta, anche nei confronti dei clienti della qui attrice, hanno già comportato una massiccia riduzione della cifra di affari dell'attrice.

L'attrice, al fine di preservare la sua ottima reputazione, ha, di fatto, smesso di offrire servizi che possano integrare violazioni di legge.

Ne è derivato un notevole nocumento economico per l'attrice, che per quasi vent'anni è stata punto

./.

- 8 -

di riferimento per i servizi di aggiornamento professionale richiesti sia dal mondo medico che farmaceutico.

L'attrice, infatti, è in grado di approntare bibliografie complete, comprendenti tutte le pubblicazioni esistenti su un determinato tema di interesse medico.

Le difficoltà in cui oggi versa l'attrice, le hanno imposto di preavvisare la disdetta del rapporto di lavoro per la maggior parte dei suoi quaranta dipendenti.

### 6.3

La convenuta ha già da tempo appalesato (Docc. F e G) la loro volontà di iniziare azioni giudiziarie nei confronti dell'attrice per vederla condannata per le violazioni che avrebbe perpetrato.

L'incertezza giuridica generata dalla situazione attuale, impone quindi un solerte procedimento di accertamento della legittimità delle attività svolte dall'attrice.

Da qui la necessità di introdurre le presenti azioni di accertamento affinché Codesto Lodevole Tribunale si pronunci sulla esistenza o meno tra i servizi resi dall'attrice di violazioni della LDA e/o della LCSl ed abbia ad accertare che l'attrice non abbia violato alcuna norma del diritto britannico, del olandese, belga, germanico, italiano, francese, austriaco, danese e spagnolo.

prove: documenti, testimoni, sopralluogo, edizione da Prolitteris di tutta la documentazione concernente l'attrice, richiamo incarto n. 2004.9689/AL/AL presso il Ministero Pubblico di Lugano

Per tutto quanto sopra esposto, visti gli articoli 5 CL, 61 LDA, 12 LCSl, 418e CPCTi, 42 CPCTi e 7 Lforo, nonché ogni altra norma applicabile, si chiede venga

- 9 -

## GIUDICATO:

### I. IN ORDINE:

1. L'istanza è accolta.

   Di conseguenza é ordinata la congiunzione della presente causa con quella introdotta con petizione 11.7.2005 nei confronti di **Elsevier B.V.**, Amsterdam, Paesi Bassi; **Blackwell Publishing Ltd.**, Oxford, Regno Unito; **Springer Science+Business Media GmbH & Co. KG**, Berlino, Germania; **British Medical Journal Publishing Group Ltd.**, Londra, Regno Unito; **Adis International Ltd**, Kingston on Thames, Regno Unito; **Birkhäuser Verlag AG**, Basilea; **Blackwell Verlag**, Berlino, Germania; **Blackwell Munksgaard**, Frederiksberg, Danimarca.

2. Tasse e spese, come di rito.

### II. NEL MERITO:

1. La petizione è integralmente accolta.

   Di conseguenza è accertato che:

   1.1 L'attrice è autorizzata, quale terzo secondo i disposti dell'art. 19 cpv. 1 e 2 LDA, ad inviare, sia sotto forma cartacea che elettronica, riproduzioni di articoli apparsi sulle pubblicazioni edite dalle convenute, ad utenti in Svizzera, nella misura in cui vengano corrisposte a ProLitteris le indennità stabilite dalla LDA e dalle tariffe emesse da ProLitteris sulla base della LDA;

   1.2. L'attrice è autorizzata, quale terzo secondo i disposti dell'art. 19 cpv. 1 e 2 LDA, ad inviare, sotto forma cartacea, riproduzioni di articoli apparsi sulle pubblicazioni edite dalle convenute, ad utenti all'estero, nella misura in cui vengano corrisposte a ProLitteris le indennità stabilite dalla LDA e dalle tariffe emesse da ProLitteris sulla base della LDA;

   1.3. L'attrice è autorizzata, quale terzo secondo i disposti dell'art. 19 cpv. 1 e 2 LDA, ad inviare, sotto forma elettronica, riproduzioni di articoli apparsi sulle pubblicazioni edite dalle convenute, ad utenti all'estero, nella misura in cui vengano corrisposte a ProLitteris le indennità stabilite dalla LDA e dalle tariffe emesse da ProLitteris sulla base della LDA;

/.

- 10 -

1.4 L'attrice è autorizzata, quale terzo secondo i disposti dell'art. 19 cpv. 1 e 2 LDA, a fornire più riproduzioni di uno stesso articolo apparso sulle pubblicazioni edite dalle convenute, ad utenti in Svizzera ;

1.5 L'attrice è autorizzata, quale terzo secondo i disposti dell'art. 19 cpv. 1 e 2 LDA, a fornire più riproduzioni di uno stesso articolo apparso sulle pubblicazioni edite dalle convenute, ad utenti all'estero;

1.6 L'attrice è autorizzata a detenere ed ad integrare una banca dati nella quale siano conservati anche articoli apparsi sulle pubblicazioni edite dalle convenute;

1.7 L'attrice, nell'esercizio delle sue attività, non ha posto in essere alcuna violazione della Legge sulla Concorrenza Sleale;

1.8 L'attrice, attraverso l'invio di riproduzioni di articoli apparsi sulle pubblicazioni edite dalle convenute al di fuori del territorio svizzero, non ha violato il diritto britannico, olandese, belga, germanico, italiano, francese, austriaco, danese e spagnolo.

1.9 Di conseguenza, nulla è dovuto dall'attrice alle convenute a titolo di risarcimento per violazione del diritto d'autore e della normativa sulla concorrenza sleale svizzere nonché per violazione del diritto d'autore diritto britannico, olandese, belga, germanico, italiano, francese, austriaco, danese e spagnolo.

2.      Protestate tasse, spese e ripetibili.


Con ogni ossequio


Avv. Marco A. Rizzi                                    Avv. dott. Giovanna Bonafede


Si richiamano tutti i documenti allegati alla petizione introdotta il giorno 11 luglio 2005 nei confronti di Elsevier B.V., Amsterdam, Paesi Bassi; Blackwell Publishing Ltd., Oxford, Regno Unito; Springer Science+Business Media GmbH & Co. KG, Berlino, Germania; British Medical Journal Publishing Group Ltd., Londra, Regno Unito; Adis International Ltd, Kingston on Thames, Regno Unito; Birkhäuser Verlag AG, Basilea; Blackwell Verlag, Berlino, Germania; Blackwell Munksgaard, Frederiksberg, Danimarca

Si allega:
Doc L:      precetto esecutivo n. 1111586

DH:   item & Associati          N. FAX:   + 0041919237973          15-07-05  09:48   P.06

**Raccomandata**

ti

Palazzo di giustizia
Via Pretorio 16
6901 Lugano

telefono   001/815 51 11
fax        091/815 54 78

Repubblica e Cantone
Ticino

**Seconda Camera civile
Tribunale d'appello
6901 Lugano**

**Termine per risposta**

CANCELLERIA
TRIBUNALE DI APPELLO

1 4 LUG. 2005

**INTIMAZIONE**

Signora
avv. Giovanna Bonafede Squillaci
Via Peri 9a
Casella postale 2712
6901 Lugano

Incarto n.                    Lugano
10.2005.18                    14 luglio 2005/fb

---

# Il giudice delegato della seconda Camera civile del Tribunale d'appello

vista la petizione acclusa.

in applicazione dell'art. 168 CPC

**ordina**

alla parte convenuta è assegnato un termine di **trenta** giorni per insinuare alla Seconda Camera civile del Tribunale d'appello la sua **risposta**.

**Per la Seconda Camera civile**
Il giudice delegato:
dott. Spartaco Chiesa

30875030

| Palazzo di giustizia<br>Via Pretorio 16<br>6901 Lugano | Repubblica e Cantone<br>Ticino |
|---|---|
| telefono 091/815 51 11<br>fax 091/815 54 76 | |

**Seconda Camera civile**
**Tribunale d'appello**
**6901 Lugano**

**Termine per risposta**

Signora
avv. Giovanna Bonafede Squillaci
Via Peri 9a
Casella postale 2712
6901 Lugano

CANCELLERIA
TRIBUNALE DI APPELLO

1 4 LUG. 2005

**INTIMAZIONE**

Incarto n.
10.2005.19

Lugano
14 luglio 2005/fb

---

# La seconda Camera civile del Tribunale d'appello

vista la petizione acclusa,

in applicazione dell'art. 168 CPC

**ordina**

alla parte convenuta è assegnato un termine di **trenta** giorni per insinuare alla Seconda Camera civile del Tribunale d'appello la sua **risposta**.

Per la Seconda Camera civile
Il giudice delegato:
dott. Spartaco Chiesa

# Tentative English Translation
# of the Order of July 14, 2005

**By Registered Mail**

---

|  | Republic and Canton of Ticino |
|--|-------------------------------|
|  | **Second Civil Chamber of Civil Court of Appeal 6901 Lugano** |

---

**Deadline for Respondent**

Mrs
Giovanna Bonafede Squillaci
Via Peri 9a
P.O. Box 2712
6901 Lugano

(Stamp:  Clerk's Office
Court of Appeal
14 July 2005
Notification)

| File No. | Lugano |
|----------|--------|
| 10.2005.18 | 14 July 2005/fb |

---

**The Deputy Judge of the Second Civil Chamber of the Court of Appeal**

having seen the enclosed petition,

in application of Art. 168 CPC *[remark of the translator: this is the abbreviation for the cantonal Ticino Code on Civil Procedure]*

**Orders**

Claimant is hereby assigned a deadline of **thirty** days for filing to the Second Civil Chamber of the Court of Appeal its **Response**.

                                        **For the Second Civil Chamber**
                                        the Deputy Judge :
                                        Dott. Spartaco Chiesa

# Tentative English Translation
# of the Order of July 14, 2005

**By Registered Mail**

|  | Republic and Canton of Ticino |
|---|---|
|  | **Second Civil Chamber of Civil Court of Appeal 6901 Lugano** |
| **Deadline for Respondent** | Mrs Giovanna Bonafede Squillaci Via Peri 9a P.O. Box 2712 6901 Lugano |
| (Stamp: Clerk's Office Court of Appeal 14 July 2005 Notification) |  |
|  | File No. 10.2005.19 — Lugano 14 July 2005/fb |

**The Second Civil Chamber of the Court of Appeal**

having seen the enclosed petition,

in application of Art. 168 CPC *[remark of the translator: this is the abbreviation for the cantonal Ticino Code on Civil Procedure]*

**Orders**

Claimant is hereby assigned a deadline of **thirty** days for filing to the Second Civil Chamber of the Court of Appeal its **Response**.

**For the Second Civil Chamber**
the Deputy Judge :
Dott. Spartaco Chiesa

From: "Franziska Eberhard" <franziska.eberhard@bluewin.ch>
To: "Robert Th. Gmelig Meyling" <r.meyling@actamed.ch>
Subject: Fw: Acta Med
Date: Sun, 1 Jul 2001 14:33:06 +0200
X-Mailer: Microsoft Outlook Express 4.72.3110.5

-----Ursprüngliche Nachricht-----
**Von:** Franziska Eberhard <franziska.eberhard@bluewin.ch>
**An:** mfischer@palmerdodge.com <mfischer@palmerdodge.com>
**Datum:** Sonntag, 1. Juli 2001 14:30
**Betreff:** Acta Med

The New England Journal of Medecine

Dear Mr. Fischer
ProLitteris is the Swiss copyright Society for literature and visual art. According to Swiss copyright law article 19 and 20 ProLitteris is collecting and distributing reprographic remunerations for all the copies produced in Switzerland within the frame of article 19, 20. According to article 19 companies are allowed to produce photocopies for their internal information and documentation and they are allowed to ask a third party to produce these copies for them. Acta Med is such a third party. According to our common tariff 8 VI Acta Med is paying Fr. 0.035 per copyright protected copy to ProLitteris. ProLitteris acts under a statutory licence. The remunerations which have to be paid to ProLitteris rely on the same tariff for all users who are producing copies.
Concerning the distribution of the collected remunerations the users have to announce the number of copies to ProLitteris but it is not titlespecific. The distribution to the rightsholders happens once a year, for foreign countries we pay to the copyright societies and not directly to the rightsholders. Concerning USA we pay to CCC.
According to our knowledge and law no copyright is infringed.
Kind regards
ProLitteris
Franziska Eberhard



# ProLitteris

DIREKTION

ThomannFischer
RA Dr. F. H. Thomann
Postfach 632
4010 Basel

**Massachusetts Medical Society**

Sehr geehrter Herr Dr. Thomann

Die ProLitteris ist die schweizerische Urheberrechtsgesellschaft für Literatur und bildende Kunst und nimmt als solche die Rechte ihrer Mitglieder wahr. Die ProLitteris zieht unter anderem gestützt auf den Gemeinsamen Tarif 8 VI (vgl. Beilage) Reprographie-Entschädigungen bei Dokumentationslieferdiensten, auch bei ActaMed, ein. Darunter fallen neben Papierkopien auch Vervielfältigungen, die mittels E-mail versendet werden (vgl. GT 8 VI Ziffer 6.3.24). Die eingenommenen Urheberrechtsentschädigungen werden einmal jährlich an die Autoren und Rechteinhaber verteilt. In Bezug auf die USA senden wir die Entschädigungen an die CCC (Copyright Clearance Center, 222 Rosewood Drive, Danvers, Massachusetts 01923). Gemäss GT 8 müssen uns die Dokumentationsdienste angeben, wie viele Kopien sie insgesamt pro Jahr erstellen und auf 70% der Kopien eine Urheberrechtsabgabe von Fr. 0.035 abrechnen. Weitere Angaben, wie von Ihnen im Schreiben vom 20. Februar 2002 aufgeführt, werden nicht verlangt. Gemäss Angaben von ActaMed kommt es faktisch kaum je vor, dass Vervielfältigungen nach USA versendet werden. Die ActaMed rechnet jedes Jahr die hergestellten Vervielfältigungen mit uns ab. Eine Verletzung der Urheberrechte der Rechtsinhaber ist uns nicht bekannt.

In Bezug auf Reprints werden die Rechte nicht über die ProLitteris, sondern direkt bei den Rechtsinhabern eingeholt. Soweit ActaMed Reprints hergestellt hat, wurden diese Rechte unseres Wissens in der Vergangenheit immer korrekt im voraus geregelt.

Universitätstrasse 94–96
Postfach, 8033 Zürich
Tel (01) 368 15 15
Fax (01) 368 15 68
www.prolitteris.ch
mail@prolitteris.ch

Schweizerische
Urheberrechtsgesellschaft
für Literatur
und bildende Kunst

**ProLitteris**

Wie bereits telephonisch erwähnt, ist eine Arbeitsgruppe der IFRRO zur Zeit dabei, unter Berücksichtigung der verschiedenen nationalen Gesetze und Interessen, zusammen mit Autoren und Rechtsinhabern eine weltweite Regelung des Versandes von länderübergreifenden Photokopien zu treffen. Neben verschiedenen europäischen Ländern gehören auch Repräsentaten der CCC aus USA und ein Repräsentant der International Association of Scientific, Technical and Medical Publishers (STM) zu dieser Arbeitsgruppe. Es soll zu diesem Thema diesen Frühling (möglicherweise im April in Asterdam) ein Treffen zwischen Vertretern dieser Arbeitsgruppe und STM stattfinden. Angesichts dieser Umstände erscheint es uns sinnvoll, dass Ihre Klienten ihre Interessen in diesem viel breiteren Kontext über die betreffenden Repräsentanten geltend machen. Wir hoffen, Ihnen mit diesen Angaben gedient zu haben. Gerne erwarten wir Ihren Bericht.

Freundliche Grüsse
ProLitteris

**Franziska Eberhard**
**Vizedirektorin**

# Tentative English Translation
# of the Letter of ProLitteris to Dr. Thomann dated 3/11/02

ThomannFischer
Dr. F. H. Thomann, Esq.
P.O. Box 632
4010 Basle

**Massachusetts Medical Society**

Dear Mr. Thomann

ProLitteris is the Swiss Copyright Society for literature and visual art, and as such it protects the rights of its members. Among others, based on the Common Tariff 8 VI (see enclosure) ProLitteris collects reprography remunerations from document delivery services, and also from ActaMed. Besides paper copies this concerns also copies that are sent by way of e-mail (see CT 8 VI number 6.3.24). The copyright remunerations so collected are delivered once a year to authors and rights holders. With regard to the USA, we send the remunerations to the CCC (Copyright Clearance Center, 222 Rosewood Drive, Danvers, Massachusetts 01923). According to CT 8 document delivery services have to indicate to us how many copies they make in the aggregate per year and have to pay a copyright fee of CHF 0,035 on 70% of the copies made. No further indications, such as those mentioned in your letter of February 20, 2002, are requested. According to the indications of ActaMed, in practice it rarely occurs that copies are sent to the USA. ActaMed settles account with us on a yearly basis of the reproductions made. We do not have knowledge of a violation of copyrights of rights holders.

As far as reprints are concerned, the rights are not obtained through ProLitteris, but directly from the rights holders. As far as ActaMed made reprints, to our knowledge such rights have always been settled in advance correctly.

As already mentioned on the telephone, a working group within IFRRO is currently preparing, together with authors and rights holders, and taking into account the different national laws and interests, a worldwide regulation of the distribution of photocopies from one country to another. Besides different European countries, also representatives of the CCC from the USA and a representative of the International Association of Scientific, Technical and Medical Publishers (STM) belong to this working group. A meeting on this topic among representatives of this working group and STM should take place in spring (possibly in April in Amsterdam).

In view of these circumstances, it seems to make sense to us that your clients assert their interests in this much broader context through the corresponding representatives. We hope that the above is of any help to you. We are looking forward to your comments.

Sincerely yours
ProLitteris

Franziska Eberhard
Vice-Director

## Robert Gmelig Meyling

**Da:** Franziska Eberhard [franziska.eberhard@bluewin.ch]

**Inviato:** lunedì 25 marzo 2002 10.59

**A:** Dr. Thomann Felix H.

**Cc:** Robert Gmelig Meyling

**Oggetto:** Re: Massachusetts Medical Society/ActaMed

Sehr geehrter Herr Kollege
Ich nehme Bezug auf unser Telephongespräch von letzter Woche. Ich habe Ihnen mitgeteilt, dass die
ProLitteris sich mit Ihrem Vorschlag nicht einverstanden erklären kann, nachdem wir aktiv in der
internationalen Arbeitsgruppe eine Lösung für Kopien erarbeiten, die über die Landesgrenzen versendet
werden. Inzwischen habe ich mit Herrn Mailing telephoniert, er schliesst sich unserer Meinung an und wies
auch auf die technischen Probleme hin, die mit Ihrem Vorschlag verbunden wären.
Freundliche Grüsse
ProLitteris
Franziska Eberhard

——— Original Message ———
**From:** Dr. Thomann Felix H.
**To:** Franziska Eberhard (E-Mail)
**Sent:** Friday, March 15, 2002 12:05 PM
**Subject:** Massachusetts Medical Society/ActaMed

Sehr geehrte Frau Kollegin

meine Mandantin fragt mich an, ob die ActaMed nicht bereit wäre, auf das Angebot von Artikeln aus der
betreffenden Zeitschrift zu verzichten (die bisherige Nachfrage ist gemäss Ihrem kürzlichen Schreiben ja
praktisch zu vernachlässigen)?

In Erwartung Ihres Berichts grüsse ich Sie freundlich und kollegial

Felix H. Thomann

25/03/2002

# Tentative English Translation
## of the e-mail exchange between Dr. Thomann and Ms Eberhard dated March 15, and March 25, 2005

**From:**   Franziska Eberhard [franziska.eberhard@bluewin.ch]

**Sent:**   Monday, March 25, 2002 10.59

**To:**   Dr. Thomann Felix H.

**Cc:**   Robert Gmelig Meyling

**Subject:**   Re: Massachusetts Medical Society/ActaMed

Dear Colleague

I refer to our telephone conversation of last week. I have told you that ProLitteris can not agree with your proposal, since in the international working group we are actively elaborating a solution for copies that are sent beyond the national border. Meanwhile I telephoned Mr. Mailing, he subscribes to our view and also indicated technical problems that would be connected to your proposal.

Sincerely yours
ProLitteris
Franziska Eberhard

-- Original Message --
**From:**   Dr. Thomann Felix H.
**To:** Franziska Eberhard (E-Mail)
**Sent:** Friday, March 15, 2002 12:05 PM
**Subject:** Massachusetts Medical Society/ActaMed

Dear Colleague

My client asks me whether ActaMed would be willing to renounce to offer articles from the journal concerned (according to your recent letter, so far the demand is practically neglect-able)?

Awaiting your reply, I remain with best regards

Felix H. Thomann