# UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLACKWELL PUBLISHING, INC., ) <br> ELSEVIER, INC., ) <br> MASSACHUSETTS MEDICAL SOCIETY, ) <br> and ) <br> WILEY-LISS, INC., ) <br> ) <br>     Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> ) <br> VIA MARKETING & PROMOTION, S.A. ) <br> d/b/a ACTAMED SERVICES and ) <br> ROBERT TH. GMELIG MEYLING, ) <br> ) <br>     Defendants. ) | Civil Action No.: <br> 1:05-CV-10697 WGY |

## AFFIDAVIT OF ERNST HEFTI

I, Ernst Hefti, of Zurich, Switzerland, hereby declare:

1.    I am CEO of Pro Litteris, of Zurich, Switzerland.  I have held that position since 1982.

2.    Pro Litteris is a "collecting society" operating under the laws of Switzerland.  It has been approved to collect, on behalf of copyright owners, remuneration due to copyright owners for certain uses of literary and visual works. Under Swiss law, certain uses of copyrighted works are allowed without the consent of the copyright owner.  However, the user has to pay a remuneration to the author for the use of the work.  Among such uses is the right of personal use.

3.    Personal use of copyrighted material is governed by Article 19 of the Swiss Federal Law on Copyright and Neighboring Rights, which reads as follows:

1

Private use
Article 19.-
1. Published works may be used for private purposes. Private use shall mean:
a.    any use of a work in the personal sphere or within a circle of persons closely connected to each other, such as relations or friends;
b.    any use of a work by a teacher for teaching in class;
c.    the reproduction of copies of a work in enterprises, public administrations, institutes, commissions and similar bodies for internal information or documentation.
2. Persons entitled to make copies of a work for use for private purposes may also have them manufactured by other persons; libraries that make copying apparatus available to their users shall also be deemed other persons within the meaning of this paragraph.
3. The following shall not be permissible outside the private circle:
a.    the complete or extensive reproduction of copies obtainable commercially;
b.    the reproduction of works of fine art;
c.    the reproduction of graphic representations of musical works;
d.    the recording of the delivery, performance or presentation of a work on phonograms, videograms or data carriers.
4. This Article shall not apply to computer programs.

(Source: Unofficial translation by the International Bureau of the World Intellectual Property Organization, Geneva, Switzerland.)

4.      The right to such remuneration is established by Article 20 of the law ,

which reads in pertinent part as follows:

Remuneration for private use
Article 20.-
***
2. Any person who reproduces works in any manner for private use under Article 19.1.b or c, or as another person under Article 19.2, shall be required to pay remuneration to the author.
***
4. Claims for remuneration may only be asserted by approved collecting societies.

(Source: Unofficial translation by the International Bureau of the World Intellectual Property Organization, Geneva, Switzerland.)

5.      Thus, a Swiss company that makes permissible reproduction of

copyrighted materials for its internal use, or a company such as ActaMed that supplies

permissible reproductions to such a company, has to pay for those copies, and the

payment must be made to an approved collecting society. ProLitteris is such a society.

6.    ProLitteris negotiates and agrees upon tariffs with the main user's associations in Switzerland. These tariffs or common tariffs ("Tarif"/"Gemeinsamer Tarif") have to be approved by the Swiss arbitration commission for the exploitation of copyrights and related property rights ("Eidgenössische Schiedskommission für die Verwertung von Urheberrechten und verwandten Schutzrechten") and published in the Swiss Official Gazette ("Schweizerisches Handelsamtsblatt"). The Applicable Tariff is the Common Tariff 8/VI in force since January 1, 2002. The Joint Tariff 8 determines the fees for the reproduction under Article 19 of the Copyright Act and the portion that applies to copy services such as ActaMed is Common Tariff 8/VI, which requires payment of 0.035 Swiss francs (CHF 0.035) for each copy of a given page, with the proviso that the copy service must pay on only 70% of the total number of page-copies it creates, rather than 100%. Common Tariff 8/VI does not require detailed reporting of the copies made; those who deal with ProLitteris report aggregate numbers of copies made during a reporting period and pay the aggregate fee.

7.    The relationship between ProLitteris and ActaMed is governed by both the legal license according to Article 19 and 20 of the Swiss Federal Law on Copyright and the Common Tariff 8. With particular users, ProLitteris usually concludes a Reprography Agreement ruling the rights and obligations of the user. Thus, in 1996 ProLitteris entered into a Reprography Agreement with ActaMed. The Reprography Agreement in use at that time did not expressly restrict the delivery of documents to the delivery within the borders of Switzerland, based on the belief that ProLitteris had the authority to license such use. From an international viewpoint, it became apparent that the legal situation became more and more unclear. ProLitteris, therefore, asked Magda Streuli-Youssef, copyright counsel to render a legal opinion on that issue. In June of

3

2000 ProLitteris received the requested legal opinion from copyright counsel, Magda Streuli-Youssef, concerning the scope of the license available under Articles 19 and 20. Ms. Streuli-Youssef stated that ProLitteris had no authority under Articles 19 and 20 of the Law to authorize the delivery of documents outside Switzerland. (See her memorandum of 13 June 2000, and an English translation of said memorandum, attached hereto as Exhibit A.)

8.    Upon receipt of Ms. Streuli-Youssef's opinion, ProLitteris promptly sent a letter to all document delivery services with which it had outstanding reprography agreements, advising them that such agreements would have to be replaced with new ones, effective 1 January 2001. This letter, dated 23 June 2000, with a proposed replacement agreement, was sent to ActaMed. (See copies, with English translations, attached as Exhibit B.)

9.    ActaMed's existing reprography agreement remained in force until December 31, 2002. However, it was not renewed past that date. Since 1 January 2003 ActaMed has had no reprography agreement in effect with ProLitteris.

10.    So far, the question whether the legal license of Article 19 and 20 of the Law allows the delivery of copies outside of Switzerland was not decided by a Swiss Court.


SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ACCORDING TO THE LAWS OF SWITZERLAND

_31. 8. 2005_
Date

_Vull_
Ernst Hefti

4

<u>Official Certification</u>

Seen for authentication of the reverse side signature, affixed in our presence by

<u>Ernst HEFTI,</u> born 28 November 1947, Swiss citizen of Mitlödi GL and Hätzingen GL, according to his information residing at Heuelstrasse 32, CH-8032 Zürich, who has identified himself by passport.

CH-8050 Zurich, 31 August 2005

B No. 6892
Fee: CHF 20.--

NOTARIAT OERLIKON-ZUERICH

K. Schori, Deputy Notary

# Hess · Streuli · Wiget

### Rechtsanwälte

Dr. iur. Niklaus Wiget
Dr. iur. Magda Streuli-Youssef
Dr. iur. Markus Hess
Dr. oec. publ. Ivo P. Baumgartner*
Dr. iur. Daniel Alder
Dr. iur. Brigitte Tanner
Lic. iur. Peter Schatz LL.M.

\* dipl. Steuerexperte (nicht Rechtsanwalt)

ProLitteris
Frau Franziska Eberhard
Universitätstrasse 96
Postfach
8033 Zürich

Zürich, 13. Juni 2000
MS/kp

**Exposé zur Frage der Wirkung der Reprographieerlaubnis gemäss Art. 19 und 20 URG in geographischer Hinsicht**

Sehr geehrte Frau Eberhard

Ich nehme Bezug auf unsere Besprechung vom 13. April 2000 und fasse hiermit das Ergebnis meiner Abklärungen zur Wirkung der Reprographieerlaubnis der ProLitteris gemäss Art. 19 und 20 URG wie folgt zusammen.

## A.    Einleitende Bemerkungen

1.    Die gesetzliche Grundlage: Art. 19 und 20 URG

Der Einfachheit halber gebe ich zum besseren Verständnis nachfolgend den Wortlaut von Art. 19 Abs. 2 und von Art. 20 Abs. 2 und 4 URG wieder.

Art. 19 Abs. 2 URG lautet wie folgt:

> "Wer zum Eigengebrauch berechtigt ist, darf die dazu erforderlichen Werkexemplare auch durch Dritte herstellen lassen; als Dritte im Sinne dieses Absatzes gelten auch Bibliotheken, die ihren Benützern Kopiergeräte zur Verfügung stellen".

Art. 20 Abs. 2 URG hat folgenden Wortlaut:

"Wer zum Eigengebrauch nach Art. 19 Absatz 1 Buchstabe b oder Buchstabe c oder wer als Drittperson nach Artikel 19 Absatz 2 Werke auf irgendwelche Art vervielfältigt, schuldet dem Urheber oder der Urheberin hiefür eine Vergütung".

Art. 20 Abs. 4 URG hat folgenden Wortlaut:

"Die Vergütungsansprüche können nur von zugelassenen Verwertungsgesellschaften geltend gemacht werden".

### B. Allgemeines

### 1. Das System der gesetzlichen Lizenz

Die Reprographierechte haben ihre Grundlage in Art. 19 URG. Art. 19 URG sieht eine gesetzliche Lizenz vor. Im System der gesetzlichen Lizenz ist das Kopieren von geschützten Werken erlaubt, aber vergütungspflichtig (Art. 20 Abs. 2 URG). Die Vergütungsansprüche können nur von zugelassenen Verwertungsgesellschaften geltend gemacht werden. Für die Einziehung der "Reprogaphierechte" in der Schweiz ist die Verwertungsgesellschaft ProLitteris zuständig.

### 2. Anwendbarkeit bzw. räumlicher Geltungsbereich des URG

Das schweizerische URG (Bundesgesetz über das Urheberrecht und verwandte Schutzrechte vom 9. Oktober 1992) gilt ausschliesslich für den Schutz von Werken auf schweizerischem Hoheitsgebiet. Dies ergibt sich aus dem Territorialitätsprinzip (Katzenberger, in: Schricker, Urheberrecht, 2. Aufl. München 1999, Rdn. 120 ff vor §§ 120 ff.; Cherpillod, in SIWR II/1, Basel 1995, S. 37; ZR 97 (1998) Nr. 112, S. 293 ff. = sic! 1999, S. 138 ff.). Das Territorialitätsprinzip schränkt den Geltungsbereich eines Schutzrechtes auf das

3

jeweilige Land ein. Daran ändert der Vorbehalt völkerrechtlicher Verträge in Art. 1 Abs. 2 URG m.E. nichts. Weder RBÜ, WUA noch TRIPS enthalten anderslautende Bestimmungen.

Die Tätigkeit der ProLitteris, welche im verwertungsgesellschaftspflichtigen Bereich ihre Grundlage unmittelbar im URG hat, bezieht sich nur auf Rechte in der Schweiz und umfasst ausschliesslich Rechtseinräumungen für die Schweiz. Infolgedessen ist die Wirkung einer "Reprographieerlaubnis" auf das Gebiet der Schweiz beschränkt. Die ProLitteris kann einem Dokumentationsdienst nur eine Lizenz zur Herstellung von Kopien in der Schweiz und nur für die Weitergabe der Kopien an Kunden in der Schweiz (= Nutzer) erteilen. Die aufgrund der Kopiererlaubnis der ProLitteris hergestellten Kopien dürfen nur in der Schweiz angeboten und vertrieben werden. Das Anbieten, Verbreiten und Versenden ins Ausland (auch über Internet) ist von der Kopiererlaubnis der ProLitteris nicht gedeckt. Für die Anknüpfung an das schweizerische Recht ist daher entscheidend, dass die Vervielfältigung und die Nutzung des Werkes in der Schweiz erfolgen.

Daraus folgt, dass die Kopiererlaubnis der ProLitteris die Nutzung von in der Schweiz hergestellten Kopien im Ausland nicht mitumfasst. Man kann dies etwa wie folgt kurz zusammenfassen: Fotokopien für die Nutzung in der Schweiz sind bei der ProLitteris zu lizenzieren, dagegen kann man Fotokopien für die Nutzung im Ausland nicht bei der ProLitteris lizenzieren.

In diesem Zusammenhang ist darauf hinzuweisen, dass die Gegenseitigkeitsverträge mit ausländischen Schwestergesellschaften nicht mehr Rechte verleihen als die Rechte, die auf dem Gebiet der Schweiz gelten.

3.    Die Bedeutung von Art. 19 und 20 URG

Mit der Umschreibung "Wer zum Eigengebrauch befugt ist" von Art. 20 Abs. 2 URG ist gemeint, "wer zum Eigengebrauch nach schweizerischem Recht befugt ist". Die Tatsache, dass die Vergütungspflicht von Art. 20 Abs. 2 URG ausdrücklich an die durch Art. 19 URG eingeräumte Befugnis zum Kopieren

4

anknüpft, ist ein weiterer Hinweis dafür, dass mit der Befugnis die gesetzliche Lizenz in Art. 19 URG gemeint ist, welche ihre Wirkung nur für die Schweiz entfalten kann. Wer zum Eigengebrauch befugt ist, bestimmt sich daher nach schweizerischem Recht.

Auch hier greift wieder das Territorialitätsprinzip, aus welchem folgt, dass der Schutz aus dem URG für das Gebiet der Schweiz gilt und geographisch auf die Schweiz beschränkt ist. Entfaltet das schweizerische URG seine Wirkungen nur auf dem Territorium der Schweiz, heisst dies, dass die vom Gesetz in Art. 19 URG verliehene Befugnis und damit auch die Reprographieerlaubnis nur Wirkungen für die Schweiz haben kann. Dies bedeutet, dass nur Nutzer mit Sitz und Tätigkeit in der Schweiz sich auf den Eigengebrauch von Art. 19 URG berufen können. Als Dritte im Sinne von Art. 19 Abs. 2 URG gelten nur Dokumentationsdienste mit Sitz und Tätigkeit in der Schweiz.

Ausdruck des Territorialitätsprinzips ist auch die Bestimmung von Art. 20 Abs. 4 URG. Diese sieht vor, dass die nach Art. 20 Abs. 2 URG geschuldeten Vergütungsansprüche nur von zugelassenen Verwertungsgesellschaften geltend gemacht werden können. Als Verwertungsgesellschaften sind gestützt auf Art. 42 Abs. 1 lit. a URG nur Gesellschaften zugelassen, die nach schweizerischem Recht gegründet wurden, ihren Sitz in der Schweiz haben und ihre Geschäfte von der Schweiz aus führen. Nach Barrelet/Egloff (Das neue Urheberrecht, Bern 1994, N 3 zu Art. 42 URG) wird mit Art. 42 Abs. 1 lit. a URG der Grundsatz der Territorialität verankert, "welcher die Kollektivverwertung von Urheberrechten in der ganzen Welt dominiert".

Schliesslich geht auch aus der Bewilligung des Eidgenössischen Institutes für Geistiges Eigentum vom 26. Mai 1998 hervor (Vgl. SHAB Nr. 103 vom 2. Juni 1998), dass sich die an die ProLitteris erteilte Befugnis auf die Einziehung der Ansprüche aus Art. 13, 20 und 22 URG und damit auf die Einziehung von Ansprüchen nach schweizerischem Recht bezieht.

4. **Angebote über Internet**

Das Führen einer Liste von Werken, auch auf einer WebSite, stellt keine urheberrechtlich relevante Nutzung, d.h. keine Vervielfältigung dar, solange die Werke selbst am Bildschirm nicht wahrnehmbar gemacht werden. Insoweit ist dieser Vorgang unbedenklich.

Allerdings muss ich einen Vorbehalt anbringen. Dieser bezieht sich auf Angebote, Kopien ins Ausland zu verschicken.

Auch wenn das Einspeisen einer Liste von Werken auf einer WebSite in der Schweiz oder von der Schweiz aus erfolgt, ist ein solches Angebot auf einer WebSite unter Umständen auch als Angebot ins Ausland zu qualifizieren, weil es über das World Wide Web überall aufgerufen werden kann.

Als Umstände, die bei der Bestimmung der geographischen Reichweite eines Angebotes zu würdigen sind, sind etwa zu nennen:

Verwendungszweck oder Natur des Angebotes: bei einem Angebot für ein schnellverderbliches Produkt oder für einen Lebensmittel-Hauslieferdienst kann man eher auf eine lokale Verbreitung schliessen. Beim Angebot eines Dokumentationsdienstes kann nicht per se auf eine bloss nationale Verbreitung geschlossen werden. Es ist daher Sache des Anbieters, durch technische Vorkehren sicherzustellen, dass Bestellungen aus dem Ausland (d.h. Bestellungen, bei welchen die rechtlich relevante Nutzung im Ausland erfolgen soll) nicht ausgeführt werden.

die Internet-Adresse des Anbieters: eine Top Level Domain ".ch" kann (im Gegensatz etwa zu einer Top Level Domain ".com") ein Hinweis für die Ausrichtung auf den schweizerischen Markt sein;

die Währung, in welche die Preise angegeben werden. Werden die Preise nur in CHF angegeben, kann dies ein Anhaltspunkt für eine bloss lokale (nationale) Verbreitung eines Angebotes sein.

6

**C.    Beurteilung von grenzüberschreitenden Rechtsverletzungen**

Bei Katzenberger (Kommentar Schricker, Rdn. 136 vor §§ 120 ff) habe ich einen Hinweis gefunden, der praktisch auf unsere Fragestellung zutrifft. Katzenberger führt aus, dass aus der Selbständigkeit des Vervielfältigungsrechts folgt, dass eine Verletzung dieses Rechts auch dann angenommen werden kann, wenn die im Inland vorgenommene Vervielfältigung eines geschützten Werkes in der Absicht geschieht, die Vervielfältigungsstücke ins Ausland zu exportieren und erst dort zu verbreiten, d.h. wenn der Nutzer im Ausland ist.

Gerne hoffe ich, Ihnen mit diesen Ausführungen gedient zu haben. Sollten Sie Fragen haben, stehe ich Ihnen zur Verfügung.

Mit freundlichen Grüssen

Dr. Magda Streuli-Youssef

Hess – Streuli – Wiget
Attorneys

Dr. jur. Niklaus Wiget
Dr. jur. Magda Streuli-Youssef
Dr. jur. Markus Hess
Dr. oec. publ. Ivo P. Baumgartner*
Dr. jur. Daniel Alder                    ProLitteris
Dr. jur. Brigitte Tanner                 Mrs. Franziska Eberhard
Lic. jur. Peter Schatz LL.M.             Universitätstrasse 96
\* graduated tax expert (not an attorney)   Postfach
                                         8033 Zürich


Zürich June 13, 2000
MS/kp

Synopsis to answer the question of the effect of the reprography permissions in
accordance with article 19 and 20 URG with respect to geography


Dear Mrs. Eberhard,

I refer to our meeting dated April 13, 2000 and summarize in the following the results of
my investigation regarding the effect of the reprography permission of ProLitteris in
accordance with article 19 and 20 URG.

A. Introductory remarks

1. The legal base: Article 19 and 20 URG

The following is a copy of the article 19 paragraph 2 and article 20 paragraph 2 and 4
URG in its original wording to clarify the situation.

Article 19 paragraph 2 URG states:

"Work copies can also be produced by a third party for those who have the legal right to
copies for their own use. A third party can be a library, which makes copiers available to
their users."

Article 20 paragraph 2 URG states:

"Those, who copy works in any way for their own use in accordance with article 19 paragraph 1 letter b or letter c or those who, as a third party, copy works in accordance with article 19 paragraph 2 owe the originator a compensation."

Article 20 paragraph 4 URG states:

"The compensation claims can only be claimed by accredited utilization associations."

B. General

1. The system of legal licence

The reprography laws have their basis in article 19 URG. Article 19 URG requires a legal licence. The system of legal licence permits the copying of copyrighted works, but there is a duty for compensation (article 20 paragraph 2 URG). The compensation claims can only be claimed by accredited utilization associations. The utilization association ProLitteris is responsible for collecting the "reprography rights".

2. Applicability or regional scope of the URG

The Swiss URG (Federal Law about the copyright and associated protection rights dated October 9, 1992) is valid only for the protection of works for the sovereign territory of Switzerland. This is a result of the territorial principle (Katzenberger, in: Schricker, Copyright, 2nd issue Munich 1999, Rdn. 120 ff before §§ 120 ff; Cherpillod, in SIWR II/1, Basel 1995, page 37; ZR 97 (1998) No. 112, page 293 ff. = sic! 1999, page 138 ff.).

The territorial principle limits the scope of a protection right to the particular country. The reservation of international law in article 1 paragraph 2 URG does in my opinion not change this. Neither RBÜ, WUA nor TRIPS have different regulations.

The activities of ProLitteris, which have their basis in the URG for the community utilization duty area, are based only on rights in Switzerland and cover only legal concessions for Switzerland. This means that the effect of a reprography permission is solely limited to the territory of Switzerland. ProLitteris can licence a documentation service only for the production of copies in Switzerland and only for distribution of the copies to customers in Switzerland (= users). The copies produced on the basis of the copying permission by ProLitteris can only be offered and distributed in Switzerland. Offering, distributing and sending the copies abroad (also through the Internet) is not covered by the copying permission of ProLitteris. It is decisive for the connection to the Swiss law, that the copying and the use of the work is done in Switzerland.

This means that the copying permission of ProLitteris does not cover those copies that are produced in Switzerland and used abroad. This can be summarized as follows: copies for the use in Switzerland have to be licensed by ProLitteris, while copies for use abroad cannot be licensed by ProLitteris.

It should be noted in this context that reciprocity agreements, which have been established with subsidiaries abroad, do not permit more rights than those that are valid on Swiss territory.

3. The importance of article 19 and 20 URG

The phrase "those who have the legal right to copies for their own use" of article 20 paragraph 2 URG means "those who have the legal right to copies for their own use according to Swiss law". The fact, that the compensation duty of article 20 paragraph 2

URG, is explicitly connected to the permission to copy in article 19 URG is another indicator, that the permission means the legal licence in article 19 URG, which is only valid in Switzerland. Those, who have the right to copy for their own use are therefore defined by the Swiss law.

The territorial principle is also valid here, and it follows, that the protection based on URG is valid for the territory of Switzerland and is limited geographically to Switzerland. The effect of the Swiss URG is only deployed for the territory of Switzerland, which means that the permission given by the law in article 19 URG, and therefore also the reprography permission, is only valid for Switzerland. This means also, that only users with a residence and an occupation in Switzerland can invoke the personal use of article 19 URG. Third  parties in terms of article 19 paragraph 2 URG are only documentation services with headquarter and activity in Switzerland.

An expression of the territorial principle is also the regulation of article 20 paragraph 4 URG. It requires that the compensation claims in accordance with article 20 paragraph 2 URG can only be claimed by accredited utilization associations. Accredited utilization associations in accordance with article 42 paragraphs 1 lit. a URG, which were founded in accordance with Swiss law, are associations which have their headquarter in Switzerland and are executing their business from Switzerland. The principle of territory "which dominates the collective use of copyrights globally" is anchored with article 2 paragraph 1 lit. a URG according to Barrelet/Egloff (das neue Urheberrecht [The new copyright law], Bern 1994, N 3 to article 42 URG).

This is finally also part of the permission given by the Eidgenössiches Institut für Geistiges Eigentum [Federal Institute for Intellectual Property] dated May 26, 1998 (see SHAB No. 103 dated June 2, 1998), which refers to the permission of ProLitteris to collect the claims in accordance with article 13, 20 and 22 URG and therefore the collection of claims in accordance with Swiss law.

4. Proposal through the Internet

A list of works on a web site is not a copyrighted use, which means it is not a copy, as long as the works themselves are not shown on the screen. The operation is insofar unobjectionable.

I must, however, voice a reservation. This is in regards to the offer to send copies abroad.

Even if a list of works on a web site has been uploaded in Switzerland or from Switzerland, such an offer on a web site can under certain circumstances qualify as an offer to a foreign country, because it can be called up everywhere in the world on the world wide web.

Circumstance, which have to be considered for the determination of the geographical reach of an offer, include:

the intended use or nature of the offer: an offer for a fast deteriorating product or for a food delivery service is more often than not a local business. The offer of a documentation service is not necessarily a purely national business. It is therefore the responsibility of the supplier to ensure, that orders from abroad (which means orders, for which the legally relevant use is abroad) are not fulfilled;

the internet address of the supplier: a Top Level Domain of ".ch" (contrary to the Top Level Domain of ".com") can be an indicator for a focus on the swiss market only;

The currency which is used for pricing. It can be an indication for only a local (national) coverage of an offer, if the prices are only shown in Swiss Franks.

C. Assessment of cross-border legal violations

I found an indication at Katzenberger (Kommentar [commentary] Schricker. Rdn. 136 before §§ 120 ff), which basically refers to our question. Katzenberger explains that the autonomy of the copying law means, that a violation of this law can also be assumed, if the copying of protected works are done nationally with the intention to export the copied pieces abroad and to distribute them there, which means if the user is abroad.

I hope that my explanations help. I am available if you have questions.

Best Regards.

[signature illegible]

Dr. Magda Streuli-Youssef

Translator note: URG = Urheberrechtsgesetz = copyright law

# ◢ ProLitteris
### DIREKTION

An alle Dokumentationslieferdienste

Kündigung / Neuer Vertrag zwischen Dokumentationslieferdienst und ProLitteris

23
06
200

Sehr geehrte Damen und Herren

Nachdem Dokumentationslieferdienste mit Sitz in der Schweiz immer häufiger auch Kopien ins Ausland versenden, erlauben wir uns, Ihnen ein Kurzgutachten über die juristische Situation zuzusenden. Daraus ersehen Sie, dass das Versenden von Kopien von der Schweiz aus ins Ausland nicht durch das Schweizer Gesetz geregelt und erlaubt ist, dass es vielmehr auf das Recht ankommt, das im Adressland gilt. Solche Kopien können nicht durch die ProLitteris lizenziert werden. Auch die Gegenseitigkeitsverträge, welche die ProLitteris mit Schwestergesellschaften im Ausland abgeschlossen hat, erlauben für das Gebiet der Schweiz nur das, was nach Schweizer Gesetz gilt.

Wir sehen uns aufgrund dieser rechtlichen Situation gezwungen, hiermit die bisherigen Verträge auf den 31.12.2000 zu kündigen. Als Beilage senden wir Ihnen einen neuen Vertrag im Doppel, der den erwähnten Umständen Rechnung trägt und ab 1.1.2001 gelten wird. Gegenüber dem bisherigen Vertrag sind insbesondere folgende Abschnitte ergänzt worden:

Ziffer 2:

> Die Erlaubnis bezieht sich nur auf das Anbieten, Herstellen und Verbreiten der Kopien auf dem Gebiet der Schweiz an die gemäss Art. 19 Abs. 1 und 2 URG Berechtigten.

Ziffer 3:

> Das Anbieten, Herstellen, Verbreiten von elektronische/digitalen Vervielfältigungen über Internet oder mittels anderen elektronischen oder digitalen Mitteln (online- und offline Nutzungen),
> - innerhalb der Schweiz,
> - von der Schweiz aus ins Ausland,
> - im Ausland
> ist von der vorliegenden Erlaubnis nicht umfasst.
> Für alle durch diesen Vertrag oder durch den künftigen Gemeinsamen Tarif 9 nicht erlaubten Verwendungen ist die ausdrückliche Erlaubnis der betreffenden Rechtsinhaber und Rechtsinhaberinnen erforderlich.

Universitätstrasse 94–96
Postfach, 8033 Zürich
Tel (01) 368 15 15
Fax (01) 368 15 68
www.prolitteris.ch
mail@prolitteris.ch

Schweizerische
Urheberrechtsgesellschaft
für Literatur

- 1 -

**ProLitteris**

Ziffer 7:

> Jedes Anbieten, Herstellen, Verbreiten von Kopien von der Schweiz aus ins Ausland und im Ausland
> ist von der Freistellung nicht mitumfasst.

**Ziffer 10:** Neu gilt als Gerichtsstand in jedem Fall Zürich.

Aufgrund der geschilderten Rechtslage klärt die ProLitteris zur Zeit ab, ob mit anderen
ausländischen Schwestergesellschaften eine Vereinbarung getroffen werden kann,
wonach wir diese Rechte unter Beachtung der ausländischen Gesetzgebung künftig
allenfalls trotzdem vertreten können.

Der vorliegende Vertrag regelt das Herstellen und Versenden von Papierkopien (vgl.
Ziffer 1 des Vertrages). Das Versenden von elektronischen/digitalen Kopien (z.B. über
E-mail) wird im Gemeinsamen Tarif 9 geregelt werden. Infratest führt zur Zeit eine
Erhebung zu dieser neuen Form der Nutzung durch. Anschliessend wird die ProLitteris
mit den massgebenden Nutzerverbänden der Schweiz einen Tarif aushandeln. Wir
werden Sie über diesen Tarif informieren, sobald er rechtskräftig ist.

Soweit Sie mit unserem neuen Vertragsvorschlag einverstanden sind, bitten wir Sie,
beide Exemplare unterschrieben an uns zurückzusenden. Sie erhalten anschliessend ein
von uns gegengezeichnetes Vertragsexemplar.

Wir hoffen, Ihnen mit diesen Angaben gedient zu haben.

Für allfällige Fragen stehen wir Ihnen gerne zur Verfügung.

Freundliche Grüsse
ProLitteris

Franziska Eberhard
Vizedirektorin

**Reprographie-Vertrag**

zwischen

Via Marketing & Promotion SA, Via Privata, Sommaruga 21F, 6900 Lugano

- nachstehend „Dokumentationslieferdienst" genannt

und

ProLitteris, Schweizerische Urheberrechtsgesellschaft für Literatur und bildende Kunst, Universitätstrasse 96, 8006 Zürich,

- nachstehend „ProLitteris" genannt

1   Vertragszweck

Durch diesen Vertrag erteilt die ProLitteris dem Dokumentationslieferdienst die Bewilligung, mittels der in seinem Besitze stehenden Vervielfältigungsgeräte (Photokopierapparate, Telefaxgeräte, Laserdrucker etc.) Kopien von urheberrechtlich geschützten Werken herzustellen und zu verbreiten.

Die Via Marketing & Promotion SA als Dokumentationslieferdienst im Sinne von Ziffer 6.3.25 des Gemeinsamen Tarifs 8/ VI verpflichtet sich, Vergütungen nach den im geltenden Gemeinsamen Tarif 8/VI enthaltenen Bestimmungen zu entrichten.

## 2   Umfang der Erlaubnis

Die durch diesen Vertrag gewährte Erlaubnis der ProLitteris bezieht sich auf folgende Verwendungen:

- auf das gesetzlich erlaubte Vervielfältigen geschützter und veröffentlichter Werke innerhalb des Eigengebrauches gemäss Art. 19 URG;

- auf das Vervielfältigen geschützter und veröffentlichter Werke der bildenden Kunst innerhalb des Eigengebrauches gemäss Art. 19 Abs. 1 lit. b) und c) und Art. 19 Abs. 2 URG;

- auf das Vervielfältigen graphischer Aufzeichnungen von Werken der Musik (Musiknoten) innerhalb des Eigengebrauches gemäss Art. 19 Abs. 1 lit. b) und c) und Art. 19 Abs. 2 URG;

- auf das Vervielfältigen und das unentgeltliche Inverkehrbringen geschützter und veröffentlichter Werke ausserhalb des Eigengebrauches gemäss Art. 10 Abs. 2 lit. a) und b) URG; (miteingeschlossen ist dabei auch das Vervielfältigen und unentgeltliche Inverkehrbringen von veröffentlichten und geschützten Werken der bildenden Kunst);

- auf das Vervielfältigen von Zeitungs- und Zeitschriftenartikeln und auf das entgeltliche Inverkehrbringen dieser Kopien gemäss Art. 10 Abs. 2 lit. a) und b) URG.

Die Erlaubnis bezieht sich nur auf das Anbieten, Herstellen und Verbreiten von Kopien auf dem Gebiet der Schweiz an die gemäss Art. 19 Abs. 1 und 2 URG Berechtigten.

## 3 Ausgeschlossene Verwendungen

Das Anbieten, Herstellen, Verbreiten von elektronische/digitalen Vervielfältigungen über Internet oder mittels anderer elektronischen oder digitalen Mitteln (online- und offline Nutzungen),
- innerhalb der Schweiz,
- von der Schweiz aus ins Ausland,
- im Ausland

ist von der vorliegenden Erlaubnis nicht umfasst.

Für alle durch diesen Vertrag oder durch den künftigen Gemeinsamen Tarif 9 nicht erlaubten Verwendungen ist die ausdrückliche Erlaubnis der betreffenden Rechtsinhaber und Rechtsinhaberinnen erforderlich. Dies gilt insbesondere für

- das vollständige oder weitgehend vollständige Vervielfältigen im Handel erhältlicher Werkexemplare und

- für das Verändern oder Bearbeiten der zu vervielfältigenden Werke.

## 4 Vergütungen

Die jährlichen Vergütungen, welche der Dokumentationslieferdienst für die Verwendungen gemäss Ziffer 2 zu bezahlen hat, errechnen sich anhand

- der Entschädigungen von 3, 5 Rappen pro Kopie,
- des Branchenkoeffizienten von 70 % und
- der vom Dokumentationslieferdienst im betreffenden Jahr angefertigten Gesamtkopiemenge.

## 5 Meldungen

Der Dokumentationslieferdienst ist verpflichtet, der ProLitteris bis jeweils Ende Januar eines jeden Jahres die Gesamtkopiemenge zu melden.

Werden die von der ProLitteris erbetenen Angaben auch nach einer schriftlichen Mahnung innert Nachfrist nicht eingereicht, kann die ProLitteris die Angaben schätzen, und gestützt auf diese Schätzungen, entsprechend Rechnung stellen.

6   **Abrechnung**

Die ProLitteris stellt dem Dokumentationslieferdienst gestützt auf dessen Meldung Rechnung für das laufende Jahr.

Die Rechnungen der ProLitteris sind innert 30 Tagen zahlbar. Für fällige Vergütungen hat die ProLitteris einmal schriftlich zu mahnen.

7   **Freistellung**

Der Dokumentationslieferdienst wird mit der Zahlung der Vergütungen von Forderungen Dritter im Rahmen der durch diesen Vertrag abgedeckten Vervielfältigungen für das Gebiet der Schweiz freigestellt.

Jedes Anbieten, Herstellen, Verbreiten von Kopien von der Schweiz aus ins Ausland oder im Ausland ist von der Freistellung nicht mitumfasst.

Der Dokumentationslieferdienst verpflichtet sich, allfällige Anspruchsteller direkt an die ProLitteris zu verweisen und sich einer Vereinbarung mit diesen zu enthalten.

8   **Gemeinsamer Tarif 8/VI**

Die Bestimmungen des Gemeinsamen Tarifs 8/VI bilden einen integrierenden Bestandteil dieses Vertrages.

9   **Gültigkeitsdauer**

Dieser Vertrag tritt ab 1.1.2001 in Kraft. Er kann von jeder Vertragspartei auf Ende eines Jahres mit dreimonatiger Kündigungsfrist gekündigt werden.

10   Gerichtsstand

Für Klagen des Dokumentationslieferdienstes gegen die ProLitteris aus diesem Vertrag sind die Gerichte in Zürich zuständig.

Für Klagen der ProLitteris gegen den Dokumentationslieferdienst aus diesem Vertrag sind ebenfalls die Gerichte in Zürich anzurufen.

Zürich, den ...............................         ................... ,den .......................

...........................................         ..............................................
ProLitteris                                          Via Marketing & Promotion SA

Juni 2000/lh

- 5 -

ProLitteris
Management

To all Documentation Supply Services

Cancellation / new agreement between Documentation Supply Service and ProLitteris

Dear Sir and Madam,

We are sending you an expert report about the legal situation, because Documentation Supply Services, headquartered in Switzerland, are sending more and more copies abroad. The expert report states that the sending of copies from Switzerland to countries abroad is not regulated and permitted by Swiss law, and that it more importantly depends on the law of the receiving country. Even reciprocity agreements, which have been established between ProLitteris and its subsidiaries abroad, permit for the Swiss territory only that, what is allowed according to Swiss law.

This legal situation forces us to cancel all existing agreements effective 12/31/2000. Attached is a new agreement (two copies) which takes the mentioned circumstances into consideration and it will be effective as of 1/1/2001. The following parts have been supplemented as compared to the existing agreement:

Item 2:

| The licence covers offering, production and distribution of copies in the territory of Switzerland to beneficiaries in accordance with article 19 paragraph 1 and 2 URG. |
|---|

Item 3:

| Offering, production and distribution of electronic/digital copies on the Internet or through other electronic or digital media (online or offline usage) <br> - within Switzerland, <br> - from Switzerland into foreign countries, <br> - in foreign countries <br> are not included in the present licence. <br> An explicit approval of the copyright holder is required for all applications that are not licenced by this contract or by the future Gemeinsamen Tarif 9 [Common Tariff 9]. |
|---|

Universitätstrasse 94-96
Postfach, 8033 Zürich
Tel (01) 368 15 15
Fax (01) 368 15 68
www.prolitteris.ch
mail@prolitteris.ch

Swiss copyright association for literature

Item 7:

> Offerings, production and distribution of copies from Switzerland into a foreign country and in the foreign are not covered by the release.

Item 10: Jurisdiction is always Zürich.

ProLitteris is currently clarifying, based on the legal situation described, whether an agreement can be established with other foreign subsidiaries, which would allow us to represent these rights in accordance with the foreign law.

The present agreement regulated the production and distribution of paper copies (see item 1 of the agreement). The sending of electronic/digital copies (e.g. by Email) will be covered by the Gemeinsamen Tarif 9 [Common Tariff 9]. Infratest is currently executing a survey regarding this new usage type. ProLitteris will subsequently negotiate a new tariff with the proper user associations in Switzerland. We will inform you about this new tariff once it is legally binding.

Please send both copies signed back to us, if you agree with our new agreement proposal. You will receives one signed copy back from us.

We hope that the information helped you.

We are always available to answer your questions.

Best Regards,
ProLitteris

[signature illegible]

Franziska Eberhard
Vize Director

Translator note: URG = Urheberrechtsgesetz = copyright law

Reprography Agreement

between

Via Marketing & Promotion SA, Via Privata, Sommaruga 21F, 6900 Lugano

- in the following called "Documentation Supply Service"

and

ProLitteris, Schweizerische Urheberrechtsgesellschaft für Literatur und bildende Kunst, Universitätstrasse 96, 8006 Zürich,

- in the following called "ProLitteris"

## 1 Agreement

ProLitteris licences with this agreement to the Documentation Supply Service the right to copy copyrighted works using their copying equipment (photo copiers, fax equipment, laser printers).

Via Marketing & Promotion SA, Documentation Supply Service, agrees in accordance with Ziffer 6.3.25 des Gemeinsamen Tarifs 8/VI [item 6.3.25 of the Common Tariff 8/VI] to pay compensations in accordance with the valid Gemeinsamen Tarif 8/VI [Common Tariff 8/VI].

2. Scope of the licence

The licence given by ProLitteris covers the following applications:

- legally permissible copying of copyrighted and published works for their own use in accordance with article 19 URG;

- copying of copyrighted and published fine arts works for their own use in accordance with article 19 URG paragraph 1 lit. b) and c) and article 19, 2 URG;

- copying of graphical recording of music works (music notes) for their own use in accordance with article 19 URG paragraph 1 lit. b) and c) and article 19, 2 URG;

- copying and free distribution of copyrighted and published works outside their own use in accordance with article 10 URG paragraph 2 lit. a) and b) URG; (included are also copying and free distribution of published and copyrighted fine arts works);

- copying of newspaper and magazine articles and the free distribution of these copies in accordance with article 10 paragraph 2 lit. a) and b) URG.

The licence covers offering, production and distribution of copies in the territory of Switzerland to beneficiaries in accordance with article 19 paragraph 1 and 2 URG.

3. Excluded applications

Offering, production and distribution of electronic/digital copies on the Internet or through other electronic or digital media (online or offline usage)

- within Switzerland,
- from Switzerland into foreign countries,
- in foreign countries

are not included in the present licence.

An explicit approval of the copyright holder is required for all applications that are not licenced by this contract or by the future Gemeinsamen Tarif 9 [Common Tariff 9]. This is especially true for

- complete copies or almost complete copies of works that are available for sales and

- changing or reworking of the copied works.

4 Payments

The annual payments that have to be paid by the Documentation Supply Service for the use in accordance with item 2 are calculated as follows:

- payment of 3.5 Rappen per copy
- an industry coefficient of 70% and
- the to number of copies made by the Documentation Supply Service for the affected year.

5 Report

The Documentation Supply Service must report the total number of copies to ProLitteris by the end of January for the previous year.

ProLitteris can estimate the numbers and can establish an invoice based on the estimate, if the information requested by ProLitteris is not provided after a written request and additional time.

6 Invoicing

ProLitteris invoices the Documentation Supply Service for the current year based on information provided by them.

The ProLitteris invoices must be paid within 30 days. ProLitteris must send one reminder for invoices due.


7 Release

The Documentation Supply Service is released form payments based on claims by third parties for copies made as part of this agreement for the territory of Switzerland.

Offerings, production and distribution of copies from Switzerland to a foreign country are not covered by the release.

The Documentation Supply Service agrees to refer all claimants directly to ProLitteris and refrain from an agreements with them.


8 Gemeinsamer Tarif 8/VI [Common Tariff 8/VI]

The regulations of the Gemeinsamer Tarif 8/VI [Common Tariff 8/VI] are an integral part of this agreement.


9 Validity period

This agreement becomes effective on 1/1/2001. It can be cancelled by either contract party with a three months notice to the end of the year.

## 10 Jurisdiction

The courts in Zürich have jurisdiction for complaints by the Documentation Supply Service against ProLitteris.

The courts in Zürich also have jurisdiction for complaints ProLitteris against the Documentation Supply Service.

Zürich, date………………………..        ……………………….., date…………………..

………………………………………..        …………………………………………………….
ProLitteris                                              Via Marketing & Promotion SA

Translator note: URG = Urheberrechtsgesetz = copyright law