## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
MASSACHUSETTS MEDICAL SOCIETY and
WILEY-LISS, INC.,

     Plaintiffs,

v.

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES and
ROBERT TH. GMELIG MEYLING,

     Defendants.

Civil Action No.:
1:05-cv-10697 WGY

## MOTION OF DEFENDANTS ACTAMED AND ROBERT MEYLING FOR LEAVE TO FILE A SECOND DECLARATION OF ROBERT TH. GMELIG MEYLING

Defendants Via Marketing & Promotion, S.A. d/b/a ActaMed Services ("ActaMed") and Robert Th. Gmelig Meyling ("Meyling"), pursuant to Local Rule 7.1(B)(3), respectfully move for leave to file a second declaration of Robert Th. Gmelig Meyling in support of their Motion to Dismiss Plaintiffs' Complaint against them under the doctrine of *Forum Non Conveniens* and for failure to state a claim and lack of subject matter jurisdiction dated June 14, 2005, ("Defendants' Motion").  The second declaration is attached as Exhibit A.  The second declaration responds directly to issues raised in Plaintiffs' Sur-Reply to Defendants' Motion; issues which are complex and are of great

significance to Defendants.  Furthermore, a second declaration will complete the record and assist the Court in reaching a fair resolution of the issues raised by Defendants' Motion.

Pursuant to Local Rule 7.1, although counsel for Defendants has conferred with counsel for Plaintiffs in an attempt to resolve in good faith the issues presented by this motion, counsel have yet to be able to resolve this motion.

WHEREFORE, Via Marketing & Promotion, S.A. d/b/a ActaMed Services and Robert Th. Gmelig Meyling, respectfully request that the Court grant their Motion for Leave to File a Second Declaration of Robert Th. Gmelig Meyling in Support of their Motions to Dismiss Plaintiffs' Complaint against them under the doctrine of *forum non conveniens* and for failure to state a claim and lack of subject matter jurisdiction. [1]

---

[1] This Motion and the Declarations in support of it shall not constitute an unconditional appearance, and are made without waiver of any of ActaMed's or Mr. Meyling's rights. In particular, the Defendants reserve the right to object to the Court's jurisdiction and to the enforceability of the Court's judgment in Switzerland pursuant to Article 111 Section 1 of the Swiss Federal Act on International Private Law of December 18, 1987, as amended.

Respectfully submitted,

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES and
ROBERT TH. GMELIG MEYLING,

By their attorneys,


Dated: September 14, 2005

_/s/ John J. Cotter _____
John J. Cotter, Esq., BBO# 554524
David J. Byer, Esq. BBO# 544411
KIRKPATRICK & LOCKHART NICHOLSON
GRAHAM LLP
75 State Street
Boston, MA 02109-1808
617.261.3100
617.261.3175 (fax)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 14, 2005, I caused a copy of the foregoing document to be served by electronic filing and by hand upon the following:

William S. Strong, Esq.
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114

_/s/ John J. Cotter _____
John J. Cotter

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
MASSACHUSETTS MEDICAL SOCIETY and
WILEY-LISS, INC.,

      Plaintiffs,

v.

VIA MARKETING & PROMOTION, S.A.
d/b/a ACTAMED SERVICES and
ROBERT TH. GMELIG MEYLING,

      Defendants.

Civil Action No.:
1:05-cv-10697 WGY

## SECOND DECLARATION OF ROBERT TH. GMELIG MEYLING

I, Robert Th. Gmelig Meyling, declare:

1. My qualifications are summarized accurately in paragraphs 1 through 3 of the Declaration of Robert Th. Gmelig Meyling, dated June 14, 2005, and I incorporate by reference the entirety of those paragraphs in this Declaration. This declaration and the motions it supports shall not constitute an unconditional appearance of any Defendant, and are made without waiver of any of Defendants' rights, including but not limited to their rights to challenge this Court's jurisdiction in this Court or any other court or judicial or administrative authority. Defendants specifically reserve their right to challenge the Court's jurisdiction and the enforceability of the

Court's judgment in Switzerland pursuant to Article 111 Section 1 of the Swiss Federal Act on International Private Law of December 18, 1987. I understand that according to this provision, Swiss authorities do not recognize and enforce a foreign court's judgment in matters concerning intellectual property rights, if such foreign judgment was rendered against a defendant with domicile in Switzerland. Defendants explicitly declare that they will make use of any and all rights and remedies available to object to the Court's jurisdiction and to the enforceability of the Court's jurisdiction in Switzerland, where Defendants are domiciled. See Declaration of Marco Rizzi at ¶ 8 and Exhibits 7 and 8.

2. I make this declaration in connection with and in support of (1) ActaMed's and Robert Th. Gmelig Meyling's Motion to Dismiss for *forum non conveniens*, failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction; and (2) Robert Th. Gmelig Meyling's Motion to Dismiss Plaintiff's Complaint Against Him for Lack of Personal Jurisdiction. I have read the Declarations of Mr. Mosimann, ProLitteris' Swiss attorney, and Mr. Hefti, CEO of ProLitteris, filed with the Plaintiffs' Sur-Reply. I have personal knowledge, and if called as a witness would testify competently, about the following facts.

3.    On June 14, 1989 Via Marketing & Promotion SA entered into a First Reprography Agreement ("First Reprography Agreement") with ProLitteris.  See true and accurate copy attached as Exhibit 1.

4.    On October 5 / November 11, 1996 Via Marketing SA entered into a Second Reprography Agreement ("Second Reprography Agreement") with ProLitteris.  See true and accurate copy, with a true and accurate English translation, attached as Exhibit 2. The Second Reprography Agreement, which replaced the First Reprography Agreement, was retroactively effective as from January 1, 1995.

5.    On or about June 24, 2000, ActaMed received ProLitteris' letter dated June 23, 2000, in which ProLitteris wrote that the Second Reprography Agreement would have to be replaced with a new agreement, effective January 1, 2001, and proposed a replacement agreement.  See Hefti Affidavit ¶ 8, and Hefti Exhibit B.  Following discussions between Via Marketing & Promotion SA and ProLitteris, ProLitteris ultimately agreed to extend the Second Reprography Agreement until December 31, 2002. See true and accurate copy of letter dated August 9, 2001, with a true and accurate English translation, attached as Exhibit 3. Thus, the replacement agreement (see Hefti Declaration Exhibit

B) was not signed, while, to my understanding, the Second
Reprography Agreement (Exhibit 2) remained in force.

6.    In a letter dated December 19, 2002, ProLitteris wrote
to Via Marketing & Promotion SA stating that it was not
necessary to have a reprography agreement in place anymore since
the Gemeinsamer Tarif 8 [Common Tarif 8] was in force.  See true
and accurate copy of December 19, 2005 letter, with a true and
accurate English translation, attached as Exhibit 4.

7.    It is my belief and I understand the belief of
ProLitteris that the Second Reprography Agreement was based on
ProLitteris having the authority to license the delivery abroad
of copies made in Switzerland.  See Hefti Declaration, ¶ 7.

8.    Clause 7 of the Second Reprography Agreement appears
directed to an obligation of ProLitteris to protect and hold
ActaMed harmless from claims of third parties in connection with
copies made by ActaMed within the scope of the Second
Reprography Agreement.  See true and accurate copy of the Second
Reprography Agreement, with a true and accurate English
translation mentioning indemnification, attached as Exhibit 2.

9.    In the past, whenever publishers or rightsholders
raised issues with ActaMed in connection with its activity, the
matter was routinely referred to ProLitteris, which then usually

answered by rebutting such claims.  Exhibits 24 to 28 to the Second Rizzi Declaration, dated July 29, 2005, show an exemplary occasion in which ProLitteris intervened.

10.  Even after January 1, 2003, ProLitteris intervened as described above.  On one such occasion, in July 2003, Mrs. Franziska Eberhard, Vice Director of ProLitteris, corresponded by e-mail with Mr. Paul Dijkstra.  See true and accurate copies of this e-mail exchange attached as Exhibit 5.

11.  In a letter dated October 17, 2003, DUN (the Swiss association of copyright users) confirmed in writing that Via Marketing & Promotion is allowed to distribute copies abroad. See a true and accurate copy of this letter attached as Exhibit 6.

12.  Contrary to Mr. Mosimann's claim in paragraph 7 of his Affidavit, ActaMed has not delivered into the United States anywhere near the 200,000 copies he claims.  In fact, in the United States between January 1, 2002 and September 13, 2005, only 3,635 pages were delivered into the United States.  This figure includes deliveries to NewJen Corp. and copies of articles that are not taken from journals of the Plaintiffs. Exhibit 7 is a true and accurate copy of a printout from ActaMed's reporting system, showing in detail the pages delivered into the United States from 2002 to the present.  I

believe that any pre-2002 deliveries into the United States are at most comparable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 14th day of September, 2005.

Robert Th. Gmelig Meyling

**Exhibit 1**

**PRO LITTERIS**

Vertrag Nr. ........

R E P R O G R A P H I E - V E R T R A G

zwischen

der **Via Marketing & Promotions SA,**
vertreten durch Herrn R.Th.G. Meyling,
**Lugano**

– nachstehend Via **Marketing & Promotions SA** ge-
nannt

und

der **PRO LITTERIS,**
Schweizerische Urheberrechtsgesellschaft für lite-
rarische, dramatische und bildende Kunst,
Universitätstrasse 96, 8033 Zürich

– nachstehend **PRO LITTERIS** genannt

Vertragszweck    1    Durch diesen Vertrag erteilt die PRO LITTERIS der
Via Marketing & Promotions SA die Bewilligung,
mittels der in ihrem Besitze stehenden Kopierge-
räte Kopien von urheberrechtlich geschützten Wer-
ken oder Teilen davon herzustellen und zu ver-
breiten (sog. Kopier-Erlaubnis).

Der Umfang dieser Erlaubnis geht aus den Ziffern 5
und 6 dieses Vertrages hervor.

2    Die Via Marketing & Promotions SA ihrerseits ver-
pflichtet sich, eine bestimmte Entschädigung für
die Kopier-Erlaubnis zu bezahlen und die übrigen,
nachstehend aufgeführten Bedingungen dieses Ver-
trages zu erfüllen.

Begriffe    3    Unter "Kopien" im Sinne dieses Vertrages werden
alle schwarz-weissen und farbigen Kopien auf Pa-
pier, Kunststoff oder anderen ähnlichen Produkten
verstanden, die mit Hilfe von Geräten hergestellt
werden, welche im Besitze der Via Marketing & Pro-
motions SA stehen.

PROLITTERIS

2

4    Zu den "geschützten Werken" im Sinne dieses Tarifes werden alle durch die Bestimmungen des Bundesgesetzes betreffend das Urheberrecht an Werken der Literatur und Kunst von 1922/55 – nachfolgend Urheberrechtsgesetz genannt - geschützten Werke gezählt.

Eine Ausnahme bilden diejenigen Werke, deren Urheberrechte bei der Via Marketing & Promotions SA selber oder beim Empfänger der hergestellten Kopien liegen.

Umfang der Erlaubnis  5    Die Kopier-Erlaubnis, welche die PRO LITTERIS durch den vorliegenden Vertrag erteilt, bezieht sich auf die Herstellung und das Verbreiten von Kopien geschützter Werke auf Kopier-Geräten, die im Besitze der Via Marketing & Promotions SA stehen.

6    Von der Erlaubnis ausgenommen sind:

a) das Herstellen und Verbreiten von Kopien ganzer Buch- und Notenausgaben, sowie ganzer Zeitungen und Zeitschriften;

b) das Herstellen und Verbreiten von Kopien von Musiknoten ausländischer Musikverlage;

c) das In-Vertrieb-Setzen (handelsgewerblicher Verkauf) von Kopien gemäss den Bestimmungen des Schweizerischen Obligationenrechtes über den Verlagsvertrag.

Für diese Verwendungen ist eine ausdrückliche Bewilligung der betreffenden Rechte-Inhaber notwendig.

Gewährleistung  7    Die Kopier-Erlaubnis der PRO LITTERIS bezieht sich sowohl auf die geschützten Werke der von ihr vertretenen Urheber und Verleger wie auch im Sinne einer Geschäftsführung ohne Auftrag auf die geschützten Werke aller in- und ausländischen Urheber und Verleger, welche ihre Reprographie-Rechte aus Unkenntnis über die Kopiertätigkeit der Via Marketing & Promotions SA nicht selber wahrnehmen können.

**PROLITTERIS**

3

8    Die PRO LITTERIS stellt die Via Marketing & Promotions SA von allen Ansprüchen frei, die von Urhebern und Verlegern geschützter Werke im Rahmen der Kopier-Erlaubnis an sie gestellt werden könnten.

Von dieser Gewährleistung ausgenommen sind die Ansprüche von Urhebern und Verlegern, die mit der Via Marketing & Promotions SA spezielle Abmachungen getroffen haben.

**Höhe der Entschädigung**  9    Für die von der PRO LITTERIS gewährte Kopier-Erlaubnis entrichtet die Via Marketing & Promotions SA eine Entschädigung von:

- 6 Rappen für jede schwarz/weisse oder einfarbige Kopie einer geschützten Vorlage

- 40 Rappen für jede mehrfarbige Kopie einer geschützten Vorlage (Format A 4, einseitig bedruckt).

**Abrechnung**  10    Die Via Marketing & Promotions SA verpflichtet sich, im Januar eines jeden Jahres der PRO LITTERIS (erstmals im Januar 1990 für die Abrechnungsperiode seit Vertragsabschluss) die Anzahl der Kopien von geschützten Vorlagen zu melden, die im vergangenen Jahre und im Rahmen der in den Ziffern 5 und 6 umschriebenen Kopier-Erlaubnis auf ihren Kopiergeräten hergestellt worden sind.

11    Bei berechtigten Zweifeln über die Richtigkeit der Angaben gemäss Ziffer 10 ist die PRO LITTERIS berechtigt, die Meldungen durch die Kontrollstelle der Via Marketing & Promotions SA überprüfen zu lassen.

**Rechnungsstellung**  12    Die jährlich zu entrichtende Entschädigung berechnet sich aufgrund der nach Ziffer 10 ermittelten Anzahl der Kopien geschützter Vorlagen pro Jahr, multipliziert mit dem Seitenpreis von 6 Rp. bzw. 40 Rp. pro Seite.

**PRO LITTERIS**

4

|  | 13 | Die PRO LITTERIS stellt der Via Marketing & Promotions SA im Februar jeden Jahres (erstmals im Februar 1990 für die Abrechnungsperiode seit Vertragsabschluss) Rechnung für das vergangene Jahr. |

Verteilungsunterlagen 14 — Die Via Marketing & Promotions SA wird der PRO LITTERIS für die Verteilung der Entschädigungen jedes Jahr eine Liste aller von ihr als Vorlagen benutzten Zeitungen, Zeitschriften und sonstigen Publikationen senden.

Geheimhaltungspflicht 15 — Die PRO LITTERIS behandelt alle von der Via Marketing & Promotions SA erhaltenen Angaben streng vertraulich.

Vertragsdauer 16 — Dieser Vertrag tritt am 1. Januar 1989 in Kraft und gilt für unbestimmte Zeit.

Kündigung 17 — Dieser Vertrag kann von beiden Seiten auf jedes Jahresende gekündigt werden. Die Kündigungsfrist beträgt 6 Monate.

Gerichtsstand 18 — Für Klagen der Via Marketing & Promotions SA gegen die PRO LITTERIS aus diesem Vertrag sind die Gerichte im Kanton Zürich zuständig.

Für Klagen der PRO LITTERIS gegen die Via Marketing & Promotions SA sind die Gerichte im Kanton Tessin zuständig.

Nebenabreden 19 — Mündliche Nebenabreden zu diesem Vertrag sind nichtig.

Zürich , den 14.6.89          Lugano, den 14-6-1989

PRO LITTERIS

Via Marketing & Promotions SA

## Photokopieren und Urheberrecht

Nach den neuesten Erhebungen der Schweizerischen Gesellschaft für praktische Sozialforschung werden in der Schweiz jährlich über sieben Milliarden Photokopien hergestellt: in Industrie-Firmen, Bibliotheken, Schulen, Universitäten, Verwaltungen, Wartesälen, Warenhäusern, Copy-Shops, Arztpraxen, Postämtern usw.
Kaum jemand stellt sich vor, was wäre, wenn keine Photokopien mehr angefertigt werden dürften, denn kaum jemand fragt sich ernsthaft, ob eigentlich das Kopieren von Büchern, Zeitschriften, Zeitungen, Musiknoten und ähnlichem, ob also das Vervielfältigen von urheberrechtlich geschützten Vorlagen erlaubt sei. Diese Unbekümmertheit ist zum Teil verständlich und entschuldbar, kann doch die Frage, ob Photokopieren ohne besondere Erlaubnis der berechtigten Rechtsinhaber nach geltendem schweizerischem Recht erlaubt oder verboten sei, nicht immer mit einem klaren Ja oder Nein beantwortet werden.

## Rechtliche Situation

Grundsätzlich darf alles, was urheberrechtlich nicht oder nicht mehr geschützt ist, ohne Bedenken photokopiert werden. Dazu gehören in erster Linie alle Werke, deren Urheber länger als 50 Jahre tot sind. Im weiteren können alle Vorlagen, welch die von der Rechtslehre und Rechtsprechung an ein Werk im Sinne des Urheberrechtsgesetzes gestellten Voraussetzungen nicht erfüllen - beispielsweise normale Geschäftskorrespondenz, Statistiken, Presseagentur-Meldungen, Gesetzestexte, Verordnungen, amtliche Erlasse, Gerichtsentscheide, Steuererklärungen, Krankheitsgeschichten etc. - ebenfalls ohne irgendwelche Erlaubnis kopiert werden.

Alle urheberrechtlich geschützten Werke hingegen dürfen aufgrund des geltenden schweizerischen Urheberrechtsgesetzes und laut Bundesgericht im Prinzip nur mit Erlaubnis des Urhebers oder seines Rechtsnachfolgers vervielfältigt werden. Dieser Grundsatz gilt jedoch nicht bei der sogenannten Wiedergabe für den privaten und eigenen Gebrauch. Nach Art. 22 des Urheberrechtsgesetzes ist das Photokopieren urheberrechtlich geschützter Werke ohne Bewilligung des Urhebers erlaubt, vorausgesetzt, die Kopie wird ausschliesslich zu privatem und eigenem Gebrauch und ohne Gewinnzweck angefertigt. Diese

Bedingungen müssen kumulativ erfüllt werden. Wer also beispielsweise für seinen eigenen und privaten Gebrauch Artikel aus ausgeliehenen Büchern photokopiert, erspart sich damit die Kosten für die Anschaffung der Vorlagen, handelt deshalb mit Gewinnzweck und wäre deshalb verpflichtet, vorher die Erlaubnis der Berechtigten einzuholen. Die normale Auswertung eines Buches oder einer Zeitschrift darf durch das Photokopieren für den Privatgebrauch nicht beeinträchtigt oder gar verhindert werden.

Nun wird es in der Praxis auch dem korrektesten Kopierer kaum gelingen, vor dem Ablichten urheberrechtlich geschützter Vorlagen die Einwilligung der Urheber oder Verleger einzuholen, insbesondere dann, wenn es sich um geschütztes Material ausländischer Urheber handelt.
Auf der anderen Seite befinden sich die Urheber und Verleger ihrerseits in ebenso unbequemer Lage, weil sie machtlos zusehen müssen, wie ihre Erzeugnisse millionenfach kopiert werden - Erzeugnisse, die sie mit erheblichem geistigem und materiellem Aufwand geschaffen, gedruckt und verbreitet haben. Wertloses und qualitativ minderwertiges Material wird selbstredend selten kopiert.


## Kollektive Wahrnehmung

Die Lösung des Problems, einerseits den Herstellern von Photokopien zu ermöglichen, aus der Illegalität herauszutreten, und andererseits den Berechtigten zu helfen, das ihnen durch Bundesgesetz verbriefte Urheberrecht durchzusetzen, wurde in der kollektiven Wahrnehmung gefunden.
In der Schweiz hat sich die Pro Litteris - 1974 von Schriftstellern und Verlegern gegründet - dem Bereich des Photokopierens angenommen und wird heute von allen namhaften schweizerischen Urheber- und Verleger-Verbänden unterstützt und von zahlreichen ausländischen Schwestergesellschaften bevollmächtigt, die Rechte ihrer Mitglieder in der Schweiz zu vertreten.
Die Pro Litteris bietet allen Besitzern von Photokopiergeräten eine generelle Erlaubnis für das Kopieren geschützter Werke an und stellt sie zugleich frei von allfälligen Ansprüchen Dritter. Als Gegenleistung entrichten die Vertragspartner eine bestimmte jährliche Entschädigung, welche nach Abzug eines Spesensatzes von ca. 15 - 18 Prozent an die berechtigten Urheber und Verleger im In- und Ausland verteilt wird. Diese jährliche Vergütung wird für aufgrund folgender drei Faktoren individuell berechnet: 1. Gesamtmenge der angefertigten Kopien, 2. prozentualer Anteil der urheberrechtlich geschützten kopierten Vorlagen im Verhältnis zur Gesamtmenge und 3. die Entschädigung pro A4-Seite einer Photokopie.

3

Die prozentualen Anteile der kopierten und geschützten Vorlagen sind je nach Branche unterschiedlich hoch. In den Schulen, Bibliotheken und Universitäten sind sie begreiflicherweise am höchsten (18 - 32 %), im Verwaltungsbereich am geringsten (1,1 - 4 %).
Die Entschädigung für eine A4-Seite einer Photokopie beträgt 6 Rappen. Dieser Betrag liegt im internationalen Vergleich in der unteren Hälfte.
Werden die drei erwähnten Faktoren miteinander multipliziert, ergibt sich die jährliche Vergütung, die ein Gerätebesitzer für das Photokopieren von urheberrechtlich geschütztem Material zu bezahlen hat. Eine Firma beispielsweise, die jährlich 2 Millionen Photokopien, davon 3 Prozent urheberrechtlich geschütztes Material, herstellt, hat 3'600 Franken zu entrichten, auf die Gesamtmenge bezogen entspricht dies einer Entschädigung von 0,18 Rappen pro Kopie. Einer Gemeinde, die 700'000 Kopien mit einem geschützten Anteil von 2 Prozent anfertigt, werden im Jahr 840 Franken verrechnet, was - wiederum auf die Gesamtmenge bezogen - einer Entschädigung von 0,12 Rappen entspricht.

## Die Verteilung der Entschädigungen

Die von der Pro Litteris eingenommenen Entschädigungen werden nach einem differenzierten Verteilungssystem an die Urheber und Verleger verteilt, entweder direkt an die Mitglieder in der Schweiz oder indirekt über die ausländischen Schwestergesellschaften.
Da es nicht möglich ist, das Kopierverhalten in der Schweiz genau zu erfassen, wird vom sog. Werkverzeichnis eines jeden Urhebers ausgegangen: Je grösser und umfangreicher das Oeuvre eines Urhebers oder Verlegers ist, umso höher sind auch seine Entschädigungen. Dieses Prinzip wird durch Berücksichtigung weiterer Kriterien wie Auflagenhöhe, Umfang, Ladenpreis, Abonnementspreis usw. verfeinert.
Zusätzlich werden Meldungen über das tatsächlich kopierte Material von bestimmten Gerätebesitzern für die Verteilung beigezogen.


Wenn auch die Urheber durch die kollektive Wahrnehmung ihrer Rechte im Bereiche der unkontrollierbaren Massennutzungen selbst bei überdurchschnittlich hohen Ansätzen niemals zu den der Verwendung ihrer Werke entsprechenden Vergütungen kommen, so kann gerade im Gebiet des Photokopierens durch ein faires Zusammenspiel zwischen Nutzern und Urheberrechts-Gesellschaften auf der Basis privatrechtlicher Verträge vermögensrechtlicher und immaterieller Schaden gemildert und damit das besonders in letzter Zeit stark angeschlagene Vertrauen der Urheber in die praktische Durchsetzbarkeit ihrer Rechte wieder etwas gefestigt werden.

**Exhibit 2**

Reprographie-Vertrag


zwischen


**Via Marketing & Promotion SA**, Via Ponte Tresa 7-7A,
6924 Sorengo, vertreten durch Herrn R.Th.G. Meyling

- nachstehend "Via Marketing & Promotion SA" genannt


und


**ProLitteris**, Universitätstrasse 96, 8006 Zürich, vertreten
durch Herrn Dr. E. Hefti

- nachstehend "ProLitteris" genannt



**1    Vertragszweck**

Durch diesen Vertrag erteilt die ProLitteris der Via
Marketing & Promotion SA die Bewilligung, mittels der in
ihrem Besitze stehenden Vervielfältigungsgeräte (Photo-
kopierapparate, Telefaxgeräte, Laserdrucker etc.) Kopien
von urheberrechtlich geschützten Werken herzustellen und
zu verbreiten.

Die Via Marketing & Promotion SA ihrerseits verpflichtet
sich, Vergütungen nach den im geltenden Gemeinsamen Ta-
rif 8/VI enthaltenen Bestimmungen zu entrichten.


**2    Umfang der Erlaubnis**

Die durch diesen Vertrag gewährte Erlaubnis der ProLit-
teris bezieht sich auf folgende Verwendungen:

- auf das gesetzlich erlaubte Vervielfältigen geschütz-
  ter und veröffentlichter Werke innerhalb des Eigenge-
  brauches gemäss Art. 19 URG;

- 2 -

- auf das Vervielfältigen geschützter und veröffentlichter Werke der bildenden Kunst innerhalb des Eigengebrauches gemäss Art. 19 Abs. 1 lit. b und c und Art. 19 Abs. 2 URG;

- auf das Vervielfältigen und das unentgeltliche Inverkehrbringen geschützter und veröffentlichter Werke ausserhalb des Eigengebrauches gemäss Art. 10 Abs. 2 lit. a und b URG; (miteingeschlossen ist dabei auch das Vervielfältigen und unentgeltliche Inverkehrbringen von veröffentlichten und geschützten Werken der bildenden Kunst);

- auf das Vervielfältigen von Zeitungs- und Zeitschriften-Artikeln und auf das entgeltliche Inverkehrbringen dieser Kopien gemäss Art. 10 Abs. 2 lit. a und b URG;

**3    Ausgeschlossene Verwendungen**

Der vorliegende Vertrag bezieht sich nicht auf das Aufnehmen geschützter und veröffentlichter Werke auf Datenträger und auf das Wahrnehmbarmachen dieser Werke mittels Bildschirm innerhalb des Eigengebrauches gemäss Art. 10 Abs. 2 lit. a und c URG. Erlaubt ist hingegen das Einscannen von Werken zum Zwecke der Herstellung von Photokopien.

Für alle durch diesen Vertrag nicht erlaubten Verwendungen ist die ausdrückliche Erlaubnis der betreffenden Rechtsinhaber und Rechtsinhaberinnen erforderlich. Dies gilt insbesondere für

- das vollständige oder weitgehend vollständige Vervielfältigen im Handel erhältlicher Werkexemplare und

- für das Verändern oder Bearbeiten der zu vervielfältigenden Werke.

**4    Vergütungen**

Die jährlichen Vergütungen, welche die Via Marketing & Promotion SA für die Verwendungen gemäss Ziffer 2 zu bezahlen hat, errechnen sich anhand

- der Entschädigung von 3,5 Rappen pro Kopie,
- des Branchenkoeffizienten von 70 % und
- der von der Via Marketing & Promotion SA im betreffenden Jahr angefertigten Gesamtkopiemenge.

- 3 -

**5    Meldungen**

Die Via Marketing & Promotion SA ist verpflichtet, der ProLitteris bis jeweils Ende Januar eines jeden Jahres die Gesamtkopiemenge zu melden.

Werden die von der ProLitteris erbetenen Angaben auch nach einer schriftlichen Mahnung innert Nachfrist nicht eingereicht, kann die ProLitteris die Angaben schätzen und gestützt auf diese Schätzungen entsprechend Rechnung stellen.

**6    Abrechnung**

Die ProLitteris stellt der Via Marketing & Promotion SA gestützt auf deren Meldung Rechnung für das laufende Jahr.

Die Rechnungen der ProLitteris sind innert 30 Tagen zahlbar. Für fällige Vergütungen hat die ProLitteris einmal schriftlich zu mahnen.

**7    Freistellung**

Die Via Marketing & Promotion SA wird mit der Zahlung der Vergütungen von Forderungen Dritter im Rahmen der durch diesen Vertrag abgedeckten Vervielfältigungen freigestellt. Die Via Marketing & Promotion SA verpflichtet sich, allfällige Anspruchsteller direkt an die ProLitteris zu verweisen und sich einer Vereinbarung mit diesen zu enthalten.

**8    Gemeinsamer Tarif 8 / VI**

Die Bestimmungen des Gemeinsamen Tarifes 8/VI bilden einen integrierenden Bestandteil dieses Vertrages.

**9    Gültigkeitsdauer**

Dieser Vertrag tritt rückwirkend ab 1. Januar 1995 in Kraft. Er kann von jeder Vertragspartei auf Ende eines Jahres mit dreimonatiger Kündigungsfrist gekündigt werden.

- 4 -

**10   Gerichtsstand**

Für Klagen der Via Marketing & Promotion SA gegen die
ProLitteris aus diesem Vertrag sind die Gerichte in
Zürich zuständig.

Für Klagen der ProLitteris gegen die Via Marketing &
Promotion SA aus diesem Vertrag sind die Gerichte im
Kanton Tessin anzurufen.

Zürich, ....18.11.96....        Sorengo, .5.10.96...........

.................................        ....................................
ProLitteris                              Via Marketing & Promotion SA

# REPROGRAPHY AGREEMENT

between

**Via Marketing & Promotion SA**, Via Ponte Tresa 7-7° 6924 Sorengo, acting through Mr. R.
Th. Gmelig Meyling
- in the following called "Via Marketing & Promotion SA"

and

**ProLitteris,** Universitätsstrasse 96, 8006 Zürich, acting through Dr. E. Hefti
- in the following called "ProLitteris"

## 1      Purpose of the Agreement

With this agreement ProLitteris licences to Via Marketing & Promotion SA the right to copy
and to distribute copyrighted works using their copying equipment (photo copiers, fax equip-
ment, laser printers etc.).

Via Marketing & Promotion SA undertakes to pay remunerations in accordance with the valid
Gemeinsamen Tarif 8/VI [Common Tariff 8/VI].

## 2      Scope of the licence

The licence given by ProLitteris with this agreement covers the following use:

-    legally permissible copying of copyrighted and published works within the limits of own
     use in accordance with article 19 URG;

-    copying of copyrighted and published fine arts works within the limits of own use in ac-
     cordance with article 19 URG paragraph 1 lit. b and c and article 19, 2 URG;

-    copying and free distribution of copyrighted and published works outside of own use in
     accordance with article 10 URG paragraph 2 lit. a and b URG; (included are also copy-
     ing and free distribution of published and copyrighted fine arts works);

-    copying of newspaper and magazine articles and the free distribution of these copies in
     accordance with article 10 paragraph 2 lit. a and b URG.

## 3      Excluded applications

This agreement does not relate to the recording of protected and published work on data carrier and to making perceptible such works by screen within the own use in accordance with article 10 paragraph 2 lit. a and c URG. Scanning of works for the purpose of making photocopies is, however, allowed.

An explicit approval of the copyright holder is required for all applications that are not licenced by this agreement. This is especially true for

-      complete copies or almost complete copies of works that are available for sale and

-      changing or reworking of the copied works.

## 4      Remunerations

The annual payments that have to be paid by Via Marketing & Promotion SA for the use in accordance with clause 2 are calculated as follows:

-      payment of 3.5 Rappen per copy

-      an industry coefficient of 70% and

-      the total number of copies made by the Via Marketing & Promotion SA in the corresponding year.

## 5      Reporting

Via Marketing & Promotion SA must report to ProLitteris the total number of copies for the previous year by the end of January.

If the information requested by ProLitteris is not provided within an additional deadline set with a written reminder, ProLitteris can estimate the numbers and can issue an invoice based on the estimate.

## 6      Invoicing

ProLitteris invoices Via Marketing & Promotion SA for the current year based on information provided by them.

The invoices of ProLitteris must be paid within 30 day. ProLitteris must send one reminder for invoices due.

**7      Indemnity**

With the payment of the remunerations Via Marketing & Promotion SA is indemnified from claims of third parties for copies made within the scope of this agreement. Via Marketing & Promotion SA undertakes to refer all claimants directly to ProLitteris and to refrain from entering into agreements with them.

**8      Gemeinsamer Tarif 8/VI [Common Tariff 8/VI]**

The regulations of the Gemeinsamer Tarif 8/VI [Common Tariff 8/VI] are an integral part of this agreement.

**9      Validity period**

This agreement becomes effective with retroactive effect as of January 1, 1995. It can be terminated by either contractual party with a three months notice to the end of a year.

**10     Venue**

The courts of Zurich have jurisdiction for complaints of Via Marketing & Promotion SA against ProLitteris.

Complaints of ProLitteris against Via Marketing & Promotion SA out of this agreement have to be brought before the courts of the Canton of Ticino.


Zurich, date18.11.1996                        Sorengo, 5.10.1996



_____        _____

ProLitteris                                   Via Marketing & Promotion SA




Translator note: URG = Urheberrechtsgesetz = copyright law

**Exhibit 3**

# ▰ProLitteris

### DIREKTION

Via Marketing & Promotion SA
Herr R. Th. G. Meyling
Via Ponte Tresa 7-7A
6924 Sorengo



**Vertragsverlängerung**

Sehr geehrter Herr Meyling

Hiermit erklären wir uns einverstanden, den Vertrag vom 18.11./5.10.1996 betreffend
Regelung der Photokopier-Entschädigung bis am 31. Dezember 2002 zu verlängern.

Freundliche Grüsse
ProLitteris

Franziska Eberhard
Vizedirektorin

Universitätstrasse 94–96
Postfach, 8033 Zürich
Tel (01) 368 15 15
Fax (01) 368 15 68
www.prolitteris.ch
mail@prolitteris.ch

Schweizerische
Urheberrechtsgesellschaft
für Literatur
und bildende Kunst

**ProLitteris**

Via Marketing & Promotion SA
Mr. R. Th. G. Meyling
Via Ponte Treas 7-7A
6924 Sorengo

**9**

**8**

**01**

**Extension of contract**

Dear Mr. Meyling

We hereby agree to extend the validity of the contract dated 18.11./5.10.1996 regarding regulation of photocopy remunerations until 31. December 2002.

Sincerely yours,
ProLitteris

Franziska Eberhard
Vice Director

**Exhibit 4**



**▶ProLitteris**

D I R E K T I O N

**RICEVUTO**

**2 0 DIC. 2002**

| PGM | CGM | MGM | BG | LS | DF |
|-----|-----|-----|----|----|----|

Via Marketing and Promotions AG
Herr Robert Gmelig Meyling
Via Ponte Tresa 7-7A
6924 Sorengo

**An alle Presseausschnittdienste bzw. Dokumentationslieferdienste**

1S
12
02

Sehr geehrter Herr Gmelig

Gemäss GT 8 VI Ziffer 6.3.24 rechnet Ihr Unternehmen als Presseausschnittdienst bzw. Dokumentationslieferdienst der ProLitteris jährlich die hergestellten Photokopien und elektronischen Kopien ab. Der Gemeinsame Tarif 8 ist für die Gerichte verbindlich. Es war daher nicht nötig, dass ab 1. Januar 2002 zusätzlich zum neuen Gemeinsamen Tarif 8 VI eine vertragliche Regelung zwischen Ihrem Presseausschnittdienst bzw. Dokumentationslieferdienst und der ProLitteris getroffen wurde. Die Nutzer werden mit der Zahlung der Vergütung von Forderungen Dritter im Rahmen der durch diesen Tarif abgedeckten Vervielfältigungen freigestellt (GT 8 VI Ziffer 10). Wir bitten Sie, allfällige Anspruchsteller direkt an uns zu verweisen.

Im Zusammenhang mit der Verteilung der von Presseausschnittdiensten bzw. Dokumentationslieferdiensten eingenommenen Entschädigungen möchten wir in Zukunft eine separate Abrechnung an die Rechtsinhaber durchführen. Wir bitten Sie, uns in diesem Zusammenhang eine elektronische Liste (wenn möglich Excel) der Zeitungen/Zeitschriften, woraus Ihr Betrieb Artikel kopiert zu senden und uns pro Zeitung/Zeitschrift anzugeben, wie viele Kopien daraus total hergestellt worden sind (Artikel X mal Anzahl versandte Kopien + Artikel Y mal Anzahl versandte Kopien usw.). In Zukunft möchten wir auch das Verhältnis zwischen Papierkopien und elektronischen Vervielfältigungen genauer wissen. Wir bitten Sie, uns die Angaben bis Ende Januar 2003 bekannt zu geben. Bitte teilen Sie uns mit, falls es Ihnen nicht möglich ist, die erwähnten Angaben in dieser Art zu melden. Für allfällige Fragen stehen wir Ihnen gerne zur Verfügung.

Freundliche Grüsse
ProLitteris

Franziska Eberhard
Vizedirektorin

Postfach, 8033 Zürich
Tel +41 (043) 300 66 15
Fax +41 (043) 300 66 68
www.prolitteris.ch
mail@prolitteris.ch

Schweizerische
Urheberrechtsgesellschaft
für Literatur
und bildende Kunst

**ProLitteris**

Via Marketing & Promotion SA
Mr. R. Th. G. Meyling
Via Ponte Treas 7-7A
6924 Sorengo

19
___
12
___
02

**To all press excerpt services resp. document delivery services**

Dear Mr. Gmelig

Pursuant to Common Tariff 8 VI item 6.3.24 your enterprise pays as a press excerpt service, respectively document delivery service, to ProLitteris on a yearly basis for the photocopies and electronical copies made. Common Tariff 8 is binding upon the courts. Accordingly, as from January 1, 2002 it was not necessary to have in place a contractual agreement between your press excerpt service, respectively document delivery service and ProLitteris in addition to the new Common Tariff 8 VI. With the payment of the remunerations, users are indemnified from claims of third parties within the limit of the reproductions covered by the tariff (Common Tariff 8 VI item 10). We ask you to direct any claimants directly to us.

In connection with the distribution of the remunerations perceived from press excerpt services resp. document delivery services, in future we would like to settle accounts separately with the rights holders. In this context, we kindly ask you to send us an electronic list (if possible excel) of the newspapers / journals from which your firm copies articles and to indicate how many copies per newspaper / journal have been made (article X per number of delivered copies + article Y per number of delivered copies etc.). In future, we would also like to know exactly the ratio of paper copies versus electronic reproductions. We kindly ask you to make available the data to us until the end of January 2003. Please let us know if it is not possible for you to report in this way the aforementioned indications. We remain at your disposal for any questions you might have.

Sincerely yours,
ProLitteris

Franziska Eberhard
Vice Director

**Exhibit 5**

**Robert Gmelig Meyling**

| | |
|---|---|
| **Da:** | Franziska Eberhard [eberhard@prolitteris.ch] |
| **'nviato:** | giovedì 24 luglio 2003 11.09 |
| **.:** | r. meyling@actamed. ch |
| **Oggetto:** | WG: reprints Nederlands Tijdschrift voor Geneeskunde |

-----Ursprüngliche Nachricht-----
Von: Franziska Eberhard [mailto:eberhard@prolitteris.ch]
Gesendet: Donnerstag, 24. Juli 2003 10:56
An: Dijkstra, Paul
Betreff: AW: reprints Nederlands Tijdschrift voor Geneeskunde


Dear Mr. Dijkstra
I hope you enjoy your vacations. I suggest you call me when you are back and
we can discuss this matter more in debth.
My phone number: +41 43 300 66 15.
Kind regards
ProLitteris
Franziska Eberhard

-----Ursprüngliche Nachricht-----
Von: Dijkstra, Paul [mailto:P.Dijkstra@bsl.nl]
Gesendet: Donnerstag, 17. Juli 2003 14:52
An: 'Franziska Eberhard'
Betreff: RE: reprints Nederlands Tijdschrift voor Geneeskunde


Dear Franziska Eberhard,

I am very disappointed by your answer. I thought that a
copyright-organisation would stand up for authors instead of taking the
position of a commercial activity that claims to respect copyrights, but in
fact tries to evade the copyright claims of authors and publishers.

I know that there is a difference in the technical process of making
photocopies and reprints, but one cannot believe that this is what the
legislator meant. I think the legislator meant to make a difference between
a limited number of coies versus large amounts of copies. Do'nt you agree?

Furthermore, I still believe that a scientific article of one or more
authors is copyright protected in itself.

I am on holiday at the moment. I will look into our legal possibilities in
August. I really expected to find you at our side.

Best regards,

Paul Dijkstra

-----Oorspronkelijk bericht-----
Van: Franziska Eberhard [mailto:eberhard@prolitteris.ch]
Verzonden: donderdag 17 juli 2003 13:09
Aan: Dijkstra, Paul
Onderwerp: AW: reprints Nederlands Tijdschrift voor Geneeskunde


Dear Mr. Dijkstra
Swiss law and the tariff 8 do not limit the number of copies that a user can
produce. Reprints are produced on a different machine (presses) than

photocopies. A complete work means that the whole book or the whole journal has been copied. This is not allowed under the statutory licence. Concerning information on the distribution: ProLitteris has started in December 2002 to collect information on copies produced by document delivery services in Switzerland and will deliver this information together with a separat istribution for the first time this autumn. ProLitteris has a reciprocal agreement with Stichting Reprorecht and will advice them to distribute according to the data delivered from us. We distribute not only to this copyright society. Concerning Adis we distribute to the CLL in New Zealand, since they are members of this copyright society. Every publisher will receive through the copyright society in the respective country a sheet which gives information on the works that have been copied in Switzerland. This overview is ready this autumn.
Kind regards
Franziska Eberhard

——Ursprüngliche Nachricht——
Von: Dijkstra, Paul [mailto:P.Dijkstra@bsl.nl]
Gesendet: Dienstag, 1. Juli 2003 22:37
An: 'Franziska Eberhard'
Betreff: RE: reprints Nederlands Tijdschrift voor Geneeskunde



Dear Franziska Eberhard,

thank you for you e-mail. Please help me to understand the situation.

I do understand that it is allowed by Swiss Law to make photocopies from copyright protected works, and that ProLitterris is entitled to collect reprographic remunerations. We have a similar situation in The Netherlands. Your reference to GT 8 VI item 6.3.24 for the tariff to be aplied in this case, means that you see Actamed as a document delivery service. I could understand that when Actamed delivers one or several photocopies to various clients. But in this case Actamed delivers to 1 client (a pharmaceutical industry) several hundreds to one thousand copies. This industry disseminates the copies to their clients. Is this the way a normal document delivery service acts? Furthermore, how do you make a difference between a photocopy and a reprint? Is there a substantive difference between the production of 1,000 photocopies for 1 client or the production of 1,000 reprints for 1 client?



Then there is another problem. Each article in a scientific journal is copyright protected in itself. It is not the issue of a volume in which it is published that is the copyright protected work, but it is the article itself. Actamed reproduces therefore a complete work. I understand that GT 8 /I item 5.5 states that you always need the permission of the copyright holder when you reproduce a copyright protected work completely.

My next question is how I get information about the copyright protected works Actamed has reproduced. In our country we have a similar institution as ProLitteris and they provide the copyright owners with an overview of the works for which they have collected remunerations. Could you give me an overview of the reproductions made by Actamed of journals of Bohn Stafleu Van Loghum, ADIS, and other Wolters Kluwer companies? Do we receive money from your organisation?

The case is that Actamed receives in The Netherlands an order from a pharmaceutical industry for p.e. 1,000 reprints of a scientific article. The reprints (photocopies) are delivered in The Netherlands to that pharmaceutical industry. These reprints (photocopies) are send to 1,000 physicians. The authors of the work, nor the journal know about this, let alone they have given permission for it. Is ProLitteris meant for these cases?

look forward to your reply.

2

Sincerely yours,

Paul Dijkstra
Bohn Stafleu Van Loghum


> ——Oorspronkelijk bericht——
> Van:  Franziska Eberhard [SMTP:eberhard@prolitteris.ch]
> Verzonden:     dinsdag 1 juli 2003 14:54
> Aan:   P.Dijkstra@bsl.nl
> CC:    r. meyling@actamed. ch
> Onderwerp:     WG: reprints Nederlands Tijdschrift voor Geneeskunde
>
> Dear Mr. Dijkstra
> I'm writing you concerning copies produced in Switzerland. ProLitteris is
> the Swiss Copyright Society active in the field of text and visual art. We
> collect reprographic remunerations from schools, the industrial sector,
> the
> government, libraries and also document delivery services. Please see our
> webpage: www.prolitteris.ch where you also find the relevant tariff for
> this
> case (GT 8 VI item 6.3.24). Our law distinguishes between reprints and
> photocopies. ProLitteris collects remunerations within the frame of
> article
>  · 19 and 20 of our copyright law, which states a statutory licence for
> reproductions out of copyrights protected works. Article 19, 20 do not
> apply
> concerning reprints. Switzerland has signed the Berne Convention. The
> three
> step test you mention applies to Switzerland.
> Kind regards
> ProLitteris
> Franziska Eberhard
>
> ——Messaggio originale——
> Da: Dijkstra, Paul [mailto:P.Dijkstra@bsl.nl]
> Inviato: martedì 24 giugno 2003 13.02
> A: 'Robert Gmelig Meyling'
> Oggetto: RE: reprints Nederlands Tijdschrift voor Geneeskunde
>
>
> Dear Mr. Gmelig Meyling,
>
> I took some time to look into this matter and I discussed it with experts
> of
> the Dutch Publishers Association.
>
> I do not question the fact that it is allowed according to Swiss Copyright
> Law to make photocopies of copyright protected works. Obviously, the
> question is whether there is a substantive difference between photocopies
> and reprints in the case at issue. I do'nt believe there is. I know there
> is
> a difference in the technical production process, but there is no
> substantive difference. Therefore I cannot accept your explanation.
> Furthermore, Switzerland is a member of the Bern Convention since December
> 5, 1887. The primary goal of this Convention is to protect copyrights
> internationally.
>
> This Convention says: 'The protection of this Convention shall apply to:
> authors who are nationals of one of the countries of the Union, for their
> works, whether published or not.' This means that every author is
> protected
> by the Convention. Article 9 of the Convention says:
> 1: Authors of literary and artistic works protected by this Convention

3

> shall
> have the exclusive right of authorizing the reproduction of these works,
> in
> any manner or form.
> 2: It shall be a matter for legislation in the countries of the Union to
  permit the reproduction of such works in certain special cases, provided
> that such reproduction does not conflict with a normal exploitation of the
> work and does not unreasonably prejudice the legitimate interests of the
> author (italics PD)
>
> This means that even though Swiss Copyright Law allowes the production of
> photocopies of copyright protected works, this is limited by the rule that
> it does not conflict with normal exploitation (which your activities do)
> and
> it may not harm the interests of the authors. The production of
> photocopies
> (as you call them) of articles of our journals is in fact damaging the
> interests of the copyright holders.
>
> We consider further legal action.
>
> Sincerely,
>
> P.M.W. Dijkstra
>


>
>
>
>
> ----Oorspronkelijk bericht----
> Van: Robert Gmelig Meyling [ mailto:r.meyling@actamed.ch
> <mailto:r.meyling@actamed.ch> ]
> Verzonden: vrijdag 25 april 2003 10:39
> Aan: Dijkstra, Paul
> CC: Franziska Eberhard
> Onderwerp: R: reprints Nederlands Tijdschrift voor Geneeskunde
>
>
>
> Dear Mr. Dijkstra,
>
> In answer to your e-mail, I would like to explain to you the
> copyrightsituation regarding our ActaMed activities.
> According to the Swiss Copyright Law and the officially approved
> regulations
> with the authorized Swiss Copyright Society for Literature and Art, our
> company is allowed to produce photocopies of copyright protected works.
> Obviously we are obliged to pay for each photocopy we produce a copyright
> fee, which we pass to this Swiss Copyright Society for worldwide
> distribution to publishers and other rightholders.
> However we are not allowed to produce reprints without authorisation of
> the
> copyrightholder. In these cases we directly contact the
> publisher/copyrightholder ( such as Elsevier, Kluwer, LWW, Adis etc.) for
> permission and pay than directly to the copyrightholder.
>
> Sure that this clarifies the situation regarding your publication
> Nederlands
> Tijdschrift voor Geneeskunde.
> In case you need more information please do not hesitate to contact me
> again.
> In the meantime I remain,
>
> Sincerely Yours,

4

**Exhibit 6**

**DUN**

DACHVERBAND DER URHEBER- UND NACHBARRECHTSNUTZER
FEDERATION DES UTILISATEURS DE DROITS D'AUTEUR ET VOISINS

RICEVUTO

2 0 OTT. 2003

| RGM | | | | | | |
| MGM | CGM | L. | UT | YK | FIN | MKTG |

## Swiss Legal situation concerning national and international document delivery

The articles 19 and 20 of the Swiss Copyright Law define a statutory license to produce copies of copyright protected work for documentation and information without prior permission of the publisher or copyrightholder.

For each copy produced - in hardcopy or electronically - a copyright fee has to be paid, according the General Tariffs GT 8 and GT 9, to the Swiss Copyright Society ProLitteris, which distributes these remunerations to authors and publishers and to foreign Copyright Societies for local distribution.

According to these Tariffs it is allowed to store these copies in a retrieval system (database), to produce copies, also for third parties, and to distribute these copies to others for free in Switzerland and abroad.

Switzerland has also signed "the Berne Convention" of December 5th, 1987, which regulates the protection of Copyrights internationally.

VIA Marketing & Promotion SA, Lugano, Switzerland with its ActaMed Services respects the above mentioned Laws , Tariffs and the Berne Convention and pays for each copy produced, in hardcopy or electronically, the amount due to the Swiss Copyright Society ProLitteris, and is therefore allowed to store in a database and to produce (multiple) copies of copyright protected work, electronically or in hardcopy, also for third parties, and to (let) distribute these copies in Switzerland and abroad.

Berne, 17th October 2003

Dr. iur. Claudia Bolla-Vincenz
Director

DUN
Kramgasse 5
Postfach 515
3000 Bern 8

Geschäftsführerin:
Dr. Claudia
Bolla-Vincenz
Kramgasse 5
3000 Bern 8
Tel. 031 328 27 25
Fax 031 328 27 35
www.dun.ch
E-Mail info@dun.ch

Präsident:
Dr. Peter Mosimann
Aeschenvorstadt 55
Postfach 659
4010 Basel
Tel. 061 279 70 00
Fax 061 279 70 01

**Exhibit 7**

United States - 01.01.2005 - 13.09.2005

**Date: 13.09.2005**

Date range: 01.01.2005 - 31.12.2005

**Articles and pages delivered by publisher, journal: %, publisher: %, country: united states**

| Publisher | Physical | Electronic | Total articles delivered | Pages delivered physically | Pages delivered electronically | Total pages delivered |
|---|---|---|---|---|---|---|
| Blackwell Science | 0 | 1 | 1 | 0 | 4 | 4 |
| Blackwell Scientific Publications, | 0 | 1 | 1 | 0 | 11 | 11 |
| Excerpta Medica | 0 | 1 | 1 | 0 | 5 | 5 |
| Massachusetts Medical Society, | 300 | 1 | 301 | 1800 | 6 | 1806 |
| Wiley-Liss, | 0 | 1 | 1 | 0 | 7 | 7 |
| | | | | | | |
| **Grand Totals** | **300** | **5** | **305** | **1800** | **33** | **1833** |
| **5** | | | | | | |

VIA Marketing & Promotion SA | 1.3 Rev 78 | Copyright information | Legal statement | info@actamed.ch

13.09.2005

United States

**Date: 13.09.2005**

Date range: 01.01.2004 - 31.12.2004

**Articles and pages delivered by publisher, journal: %, publisher: %, country: United States**

| Publisher | Physical | Electronic | Total articles delivered | Pages delivered physically | Pages delivered electronically | Total pages delivered |
|---|---|---|---|---|---|---|
| American Medical Assn. | 0 | 1 | 1 | 0 | 1 | 1 |
| American Medical Association | 0 | 2 | 2 | 0 | 7 | 7 |
| American Medical Association, | 0 | 2 | 2 | 0 | 14 | 14 |
| Blackwell | 50 | 0 | 50 | 400 | 0 | 400 |
| | | | | | | |
| **Grand Totals** | | | | | | |
| **4** | **50** | **5** | **55** | **400** | **22** | **422** |

VTA Marketing & Promotion SA | L3 Rev 78 | Copyright information | Legal statement | info@actamed.ch

**https://www.actamed.ch/aoladmin/report.print.do**

13/09/2005

United States

| Service Type | Theme Status | Theme |
|---|---|---|
| -none- | In production | -none- |
| Country | Customer | Contract Theme |
| -none- | -none- | -none- |

**Date: 13.09.2005**

Date range: 01.01.2003 - 31.12.2003

**Articles and pages delivered by publisher, journal: %, publisher: %, country: united states**

0 items found Result Page:: 1

No matches

Home

Customers and Contracts

Orders

Themes

Users

Emails Sent

Articles and Journals

Drug Names and Therapeutic Areas

Customer Contact Report

Service Types

External System

Article Activity Reports

Finance Activity Reports

Interesting Articles

Agents

Logout

https://www.actamed.ch/aoladmin/report.print.do

United States

**Date: 13.09.2005**

Date range: 01.01.2002 - 31.12.2002

**Articles and pages delivered by publisher, journal: %, publisher: %, country: united states**

| Publisher | Physical | Electronic | Total articles delivered | Pages delivered physically | Pages delivered electronically | Total pages delivered |
|---|---|---|---|---|---|---|
| ADIS Press | 0 | 1 | 1 | 0 | 10 | 10 |
| Acta Medica Belgica | 0 | 1 | 1 | 0 | 4 | 4 |
| American Medical Association | 0 | 2 | 2 | 0 | 6 | 6 |
| American Society for Pharmacology and Experimental Therapeutics | 1 | 1 | 2 | 36 | 36 | 72 |
| American Society for Reproductive Medicine | 0 | 1 | 1 | 0 | 6 | 6 |
| American Society of Clinical Oncology | 0 | 1 | 1 | 0 | 10 | 10 |
| Begell House | 0 | 3 | 3 | 0 | 63 | 63 |
| Blackwell Science | 0 | 3 | 3 | 0 | 24 | 24 |
| Blackwell Scientific Publications | 0 | 2 | 2 | 0 | 16 | 16 |
| Butterworth-Heinemann In Association With The Biological Engineering Society | 1 | 4 | 5 | 9 | 48 | 57 |
| C. Slack | 0 | 1 | 1 | 0 | 4 | 4 |
| Canadian Medical Association | 0 | 1 | 1 | 0 | 4 | 4 |
| Churchill Livingstone | 0 | 3 | 3 | 0 | 20 | 20 |
| Churchill Livingstone | 0 | 1 | 1 | 0 | 4 | 4 |
| Current Biology | 1 | 5 | 6 | 5 | 30 | 35 |
| Decker Periodicals | 0 | 2 | 2 | 0 | 8 | 8 |
| Elsevier | 0 | 3 | 3 | 0 | 6 | 6 |
| Elsevier Science | 0 | 6 | 6 | 0 | 38 | 38 |
| Elsevier Science Publishers | 1 | 7 | 8 | 12 | 102 | 114 |
| Elsevier/North-Holland Biomedical Press | 0 | 3 | 3 | 0 | 34 | 34 |
| Excerpta Medica | 0 | 8 | 8 | 0 | 47 | 47 |
| Franklin H Martin Memorial Foundation | 0 | 2 | 2 | 0 | 12 | 12 |

13/09/2005

United States

| Publisher | | | | | |
|---|---|---|---|---|---|
| Future Pub. Co | 0 | 1 | 1 | 0 | 6 | 6 |
| Humana Press | 0 | 1 | 1 | 0 | 7 | 7 |
| Institute Of Physics | 1 | 0 | 0 | 16 | 0 | 16 |
| Karger | 0 | 3 | 3 | 0 | 10 | 10 |
| Lippincott Williams and Wilkins | 0 | 1 | 1 | 0 | 30 | 30 |
| Lippincott Williams and Wilkins | 0 | 26 | 26 | 0 | 104 | 104 |
| Marcel Dekker | 0 | 2 | 2 | 0 | 18 | 18 |
| Mary Ann Liebert | 0 | 1 | 1 | 0 | 4 | 4 |
| Mosby | 0 | 2 | 2 | 0 | 16 | 16 |
| Mosby Year Book | 0 | 3 | 3 | 0 | 24 | 24 |
| Nature Publishing Group | 0 | 2 | 2 | 0 | 18 | 18 |
| Oxford University Press | 0 | 1 | 1 | 0 | 4 | 4 |
| Pda (Parenteral Drug Association) | 0 | 1 | 1 | 0 | 8 | 8 |
| Pulsus Group [for the] Canadian Society for Clinical Pharmacology | 0 | 1 | 1 | 0 | 2 | 2 |
| Royal Society Of Chemistry | 0 | 1 | 1 | 0 | 5 | 5 |
| Sage Publications | 0 | 1 | 1 | 0 | 44 | 44 |
| Scandinavian University Press | 0 | 1 | 1 | 0 | 6 | 6 |
| Science Printers And Publishers | 0 | 8 | 8 | 0 | 48 | 48 |
| Slack | 0 | 2 | 2 | 0 | 8 | 8 |
| Southeastern Surgical Congress | 0 | 10 | 10 | 0 | 60 | 60 |
| Southern Medical Association | 0 | 1 | 1 | 0 | 4 | 4 |
| Springer International | 0 | 1 | 1 | 0 | 4 | 4 |
| Springer Verlag | 0 | 3 | 3 | 0 | 16 | 16 |
| Taylor And Francis | 0 | 1 | 1 | 0 | 8 | 8 |
| Taylor and Francis Health Sciences | 0 | 1 | 1 | 0 | 12 | 12 |
| The Association | 0 | 1 | 1 | 0 | 4 | 4 |
| Thieme Medical Publishers | 0 | 1 | 1 | 0 | 10 | 10 |
| University of Tokyo Press | 0 | 1 | 1 | 0 | 6 | 6 |
| W B Saunders | 1 | 8 | 9 | 16 | 100 | 116 |
| Waverly Press | 3 | 0 | 3 | 36 | 0 | 36 |

13/09/2005

United States

| | | | | | | |
|---|---|---|---|---|---|---|
| Wiley | 0 | 9 | 9 | 0 | 112 | 112 |
| Wiley Interscience | 0 | 1 | 1 | 0 | 14 | 14 |
| Wright | 0 | 1 | 1 | 0 | 6 | 6 |
| **Grand Totals** | **9** | **158** | **167** | **130** | **1250** | **1380** |
| **55** | | | | | | |

https://www.actamed.ch/aoladmin/report.print.do