UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLACKWELL PUBLISHING, INC.,<br>ELSEVIER, INC.,<br>MASSACHUSETTS MEDICAL SOCIETY,<br>and<br>WILEY-LISS, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>VIA MARKETING & PROMOTION, S.A.<br>d/b/a ACTAMED SERVICES and<br>ROBERT TH. GMELIG MEYLING,<br><br>    Defendants. | Civil Action No.:<br>1:05-CV-10697 WGY |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs Blackwell Publishing, Inc. ("Blackwell"), Elsevier, Inc. ("Elsevier"), Massachusetts Medical Society ("MMS"), and Wiley-Liss, Inc. ("Wiley") submit this memorandum in support of their Motion for Partial Summary Judgment against defendants VIA ActaMed Marketing & Promotion, S.A. ("ActaMed") and Robert Th. Gmelig Meyling ("Meyling"). Plaintiffs' motion seeks summary judgment as to defendants' unauthorized distribution and importation into the United States of plaintiffs' copyrighted materials, as described in Counts I through VIII of plaintiffs' Complaint.

### STATEMENT OF UNDISPUTED FACTS

The facts set forth below are either admitted in defendants' answer to the Complaint filed in this action (the "Answer"), or established by one of the following:

- Affidavit of Holger Gehring (the "Gehring Affidavit"), submitted herewith;

- Affidavit of Roy Kaufman (the "Kaufman Affidavit"), submitted herewith;

- Affidavit of Amy C. Mainelli (the "Mainelli Affidavit"), submitted herewith;

- Affidavit of Mark Seeley (the "Seeley Affidavit"), submitted herewith,

- Affidavit of Joseph Appel ("Appel Affidavit"), filed on July 19, 2005 in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss;

- Affidavit of Ernst Hefti ("Hefti Affidavit"), filed on September 1, 2005 in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss;

- Affidavit of William Jennings ("Jennings Affidavit"), filed on July 19, 2005 in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss;

- Declaration of Robert Th. Gmelig Meyling ("Meyling Decl."), filed on June 14, 2005 in support of Defendants' Motion to Dismiss; and

- Second Declaration of Robert Th. Gmelig Meyling ("Second Meyling Decl."), filed on September 14, 2005 in support of Defendants' Motion to Dismiss.

1. Each work identified on Exhibit A to the Complaint has been registered by its respective plaintiff owner with the United States Copyright Office. *See* Exhibits A through D to the Mainelli Affidavit; Appel Affidavit, ¶ 5; Kaufman Affidavit, ¶ 5; Seeley Affidavit, ¶ 5. (The journals identified on Schedule A to the Complaint above are sometimes collectively referred to hereafter as "Plaintiffs' Journals.")

2. Income from scholarly journals such as those that plaintiffs publish is generally derived from subscription revenues and licensing of reproduction rights. As their titles suggest, many of them are addressed to quite specialized audiences of

researchers and academics in particular fields of physics, chemistry, medicine, and so forth. Kaufman Affidavit, ¶ 7; Seeley Affidavit, ¶ 7.

   3. This income must cover substantial costs, including but not limited to copyediting and proofreading, typesetting, layout, printing, binding, distribution, and promotion, and various kinds of support for the editors (who are independent scholars, not employees of the publishers). Kaufman Affidavit, ¶ 6; Seeley Affidavit, ¶ 6.

   4. Loss of licensing income thus has a direct impact on the financial viability of these journals – and thus, indirectly, on the creation of new works, on scholarly endeavor, and on scientific progress. Kaufman Affidavit, ¶ 12; Seeley Affidavit, ¶ 12.

   5. Defendant ActaMed operates a "document delivery service." Answer, ¶ 22. Such services provide, on demand, copies of individual articles from journals.

   6. At the time of the infringements complained of in this action, ActaMed's Internet website, located at www.actamed.ch, described various services offered by ActaMed. Answer, ¶ 23. Generally, a registered customer was able to order copies of any individual article from the journals included in ActaMed's "Online Library". *See* Exhibits B through D to the Complaint.

   7. At the time of the infringements complained of in this action, Defendant Meyling was the President and General Director of the corporate defendant VIA Marketing & Promotion, S.A., d/b/a ActaMed. Meyling Decl., ¶¶ 1, 6; Gehring Affidavit, ¶ 4.

   8. At the time of the infringements complained of in this action, Meyling was also a stockholder in ActaMed. Meyling Decl., ¶ 1.

9. By June 23, 2000 at the latest, Meyling received a letter from ProLitteris, the Swiss copyright "collecting society"[1], indicating that the delivery of copies from Switzerland to foreign countries could not be covered or regulated by Swiss Law, but only by the law of the place where the addressee of the delivery of copies was located. Therefore, ProLitteris was not in the position to grant licenses for deliveries to foreign countries. This letter enclosed an opinion from ProLitteris' legal counsel. *See* Exhibit C to the Gehring Affidavit.

10. Meyling also received repeated protests from plaintiff Massachusetts Medical Society regarding the unauthorized delivery of its works. *See* Exhibits A and B to the Appel Affidavit.

11. When plaintiffs discovered that ActaMed was continuing to deliver copyrighted materials into the United States, and doing so without obtaining permission from the owners of copyright in such materials, they asked an independent party – Newjen Corporation, of Billerica, Massachusetts ("Newjen") - to document the existence of such activity by ordering from ActaMed copies of articles from Plaintiffs' Journals. *See* Jennings Affidavit, ¶¶ 1, 2.

12. Over a period of several days in January through March 2005, Newjen, at plaintiffs' request, placed orders to ActaMed for various articles from Plaintiffs' Journals via ActaMed's website. Jennings Affidavit, ¶ 2.

---

[1] *See* Hefti Affidavit, ¶ 2, describing ProLitteris as a "collecting society" operating under the laws of Switzerland, approved to collect, on behalf of copyright owners, remuneration due to copyright owners for certain uses of literary and visual works.

4

13. After receiving Newjen's orders, ActaMed made and delivered to Newjen, in PDF format via e-mail, a copy of each article requested by Newjen. Jennings Affidavit, ¶¶ 2, 5. ActaMed admits that it received and filled orders from Newjen. Answer, ¶ 28.

14. In addition, Newjen placed an order for 300 reprints of an article entitled "Preimplantation diagnosis for sonic hedgehog mutation causing familial holoprosencephaly," from the *New England Journal of Medicine*, Volume 348, Issue 15, to be shipped into the United States and delivered to Newjen's business address in Massachusetts. Jennings Affidavit, ¶¶ 4, 6.

15. In response to Newjen's order, ActaMed reproduced and delivered to Newjen, via UPS, 300 copies of the requested article from the *New England Journal of Medicine* without requesting or receiving permission from the Massachusetts Medical Society. Jennings Affidavit at ¶ 4, 6. Appel Affidavit, ¶ 9. ActaMed admits that 300 copies of the article were shipped to Newjen. Answer, ¶ 31.

16. Such deliveries were never authorized by plaintiffs. Appel Affidavit, ¶¶ 9, 10; Kaufman Affidavit, ¶¶ 10, 11; Seeley Affidavit, ¶¶ 10, 11.

17. Such deliveries were not authorized by any license from ProLitteris. Exhibits A and B to the Hefti Affidavit, Exhibits B and C to the Gehring Affidavit.

## ARGUMENT

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); and *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 2 (1st Cir. 1996).

To prevail on a claim of copyright infringement under U.S. law, plaintiff must show (1) ownership of a valid copyright and (2) unauthorized use of the protected work by the alleged infringer. *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 605 (1st Cir. 1988). In the present case there is no genuine dispute of material fact as to either of these prerequisites; ActaMed has admitted it received and fulfilled orders for Newjen and delivered reprints to Newjen in Massachusetts. Partial summary judgment as to copyright infringement under U.S. law should therefore be granted as a matter of law.

### I. DEFENDANTS' IMPORTATION AND DISTRIBUTION OF PLAINTIFFS' JOURNALS CONSTITUTE COPYRIGHT INFRINGEMENT.

The owner of a copyright has, among other exclusive rights, the exclusive right to distribute copies of its copyrighted material. 17 U.S.C. §106 (3). One who violates this exclusive right is an infringer of the copyright. 17 U.S.C. § 501(a).

The distribution right not only applies within the borders of the United States, but prevents the unauthorized importation of copies across the borders of the United States. 17 U.S.C. § 602(a). This is so even if the imported copies were lawfully made under the laws of a foreign country. H.R.Rep. No. 1476, 94th Cong., 2d Sess. 169 (1976); *Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.*, 832 F.Supp. 1378, 1385 (C.D. Cal. 1993); *Quality King Distributors, Inc. v. L'anza Research International, Inc.*, 523 U.S. 135, 148, 118 S.Ct. 1125, 1132 (1998).[2]

---

[2] Plaintiffs do not in any sense concede that the copies shipped or transmitted into the United States by defendants were lawfully made under the laws of Switzerland. It is simply unnecessary here to address that issue.

There is no dispute that Plaintiffs own valid copyrights in the four works identified in Exhibit A and in Counts I through VIII of plaintiffs' Complaint. *See* Appel Affidavit, ¶ 5; Kaufman Affidavit, ¶ 5; Seeley Affidavit, ¶ 5; Exhibits A through D to the Mainelli Affidavit.[3]

In addition, there is no genuine dispute of material fact as to importation and distribution. Plaintiffs have identified five specific instances of infringement, consisting of unauthorized delivery of copies of their copyrighted publications from ActaMed in Switzerland to Newjen Corporation in Fitchburg, Massachusetts, including four deliveries over the Internet and one delivery of 300 paper reprints via United Parcel Service.[4]

Such deliveries were not authorized by plaintiffs. As a matter of law, these unauthorized deliveries violated (i) plaintiffs' exclusive right of distribution under 17 U.S.C. §106(3), and (ii) plaintiffs' right to control the importation of copies under 17 U.S.C. §602.

---

[3] Pursuant to 17 U.S.C. §410, a Certificate of Registration is prima facie evidence of copyrightability and of the accuracy of facts in the Certificate if work is registered within 5 years after first publication.

[4] Defendants' claim that such deliveries were somehow authorized by ProLitteris, pursuant to Swiss Law, is clearly without merit. ProLitteris had expressly advised Defendants that delivery of copies from Switzerland to foreign countries could not be covered or regulated by Swiss Law, but only by the law of the place where the addressee of the delivery of copies is placed. Exhibit C to the Gehring Affidavit. (This was no more than black letter law. Each nation's copyright laws are exclusive within its boundaries, and do not extend beyond those boundaries. *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1090 (9th Cir. 1994). Any defense based on an agreement with ProLitteris is therefore unfounded with respect to the importation and distribution at issue, which occurred well after 2000. In addition, Defendants' agreement with ProLitteris was no longer even in effect at the time of the infringements at issue. Hefti Affidavit, ¶ 9. *See also* Exhibit B to the Gehring Affidavit.

## II. MEYLING IS VICARIOUSLY LIABLE FOR THE INFRINGEMENT, AND SUBJECT TO THE JURISDICTION OF THIS COURT.

A corporate officer such as Meyling is vicariously liable for an infringement if he has the "right and ability to supervise the infringing activity" carried out by a corporation and also has "a direct financial interest in such activities." *Gershwin Publishing Corporation v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2nd Cir. 1971); *Polygram Intern. Pub., Inc. v. Nevada/TIG, Inc.*, 855 F.Supp. 1314 (D. Mass. 1994). He is jointly and severally liable with the party having direct liability (which, in this case, is ActaMed). *See, e.g., Pedrosillo Music, Inc. v. Radio Musical, Inc.*, 815 F.Supp. 511, 515 (D.P.R. 1993).

More specifically, a corporate officer may be held vicariously liable under the Copyright Act when: (1) the officer personally participated in the actual infringement, or (2) the officer derived financial benefit from the infringing activities as either a major shareholder in the corporation, or through some other means such as receiving a percentage of the revenues from the activity giving rise to the infringement; or (3) the officer used the corporation as an instrument to carry out a deliberate infringement of copyright; or (4) the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement; or (5) on the basis of some combination of the above criteria. *Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Assoc., Inc.*, 423 F.Supp. 341, 344 (D.Mass.1976)(internal citations omitted), *aff'd,* 554 F.2d 1213 (1st Cir.1977).

In the case at bar, the facts show that a particular corporate officer – Meyling – met several of the above criteria. Specifically, Meyling:

- derived financial benefit from ActaMed's infringing activities because he was the President and General Director and a shareholder in the corporation at the time of the infringement;

- used the corporation as an instrument to carry out a deliberate infringement of copyright, as he personally received a letter from ProLitteris advising him that his company's activity was unlawful and deliberately chose to operate ActaMed as before, delivering copies of Plaintiffs' Journals abroad including those at issue; and

- was the dominant influence in the corporation, determining the policies which resulted in the infringement. Meyling had an opportunity to change ActaMed's policies regarding copyright permissions upon receiving the letter from ProLitteris advising him that his company's current activity was unlawful. Rather than revising ActaMed's policies, Meyling chose to ignore the fact that its practices were noncompliant with copyright law and continued to infringe.

Thus, there can be no doubt that under U.S. law, a person in Meyling's position is vicariously liable for the infringements committed by ActaMed. It remains only to establish that Meyling is subject to the jurisdiction of this Court.

Meyling filed a motion to dismiss on June 14, 2005 claiming this Court lacked personal jurisdiction over him. In a hearing on September 14, 2005, the Court asserted jurisdiction over Meyling on a provisional basis but declined to issue a final ruling as to whether it had personal jurisdiction over him, pending further briefing on the point. The Court indicated that if plaintiffs could prove Meyling's degree of knowledge, control and level of involvement in the copyright infringement at issue, as alleged in the Complaint, such would constitute a sufficient basis for personal jurisdiction. Plaintiffs submit that

the Court should now make a finding of personal jurisdiction over Meyling and grant partial summary judgment as to his liability for the infringements at issue pursuant to U.S. law.

Plaintiffs will not repeat the arguments made in their Opposition to Meyling's Motion to Dismiss. Suffice it to say that the tort of copyright infringement was committed multiple times within Massachusetts by ActaMed and that Meyling was a vicarious and contributory infringer with respect to such infringements. The facts that form the basis of Meyling's liability are also the facts that support this Court's personal jurisdiction over him. *See Blue Ribbon Pet Products, Inc. v. Rolf C. Hagen (USA) Corp.*, 66 F. Supp. 2d 454, 460 (E.D.N.Y. 1999); *Stewart v. Adidas A.G.*, 1997 WL 218431, *6 (S.D.N.Y. 1997); *Walker v. University Books, Inc.*, 382 F. Supp. 126 (N.D.Cal.1974). On the basis of these facts, Meyling is subject to jurisdiction under the Massachusetts "Long-Arm Statute," M.G.L.c.223A, because he is responsible for "tortious injury by an act or omission in this commonwealth," M.G.L.c.223A §3(c) – namely, the acts of unauthorized importation into and delivery within Massachusetts.

Plaintiffs have obtained additional evidence irrefutably proving that Meyling was the mastermind behind ActaMed's noncompliant operations.[5] First, the Swiss commercial register confirms that on all relevant dates Meyling was the President and

---

[5] Plaintiffs were unable to obtain discovery pursuant to U.S. law, as Defendants refused to adhere to the Federal Rules of Civil Procedure. Discovery pursuant to the Hague Convention would not allow plaintiffs to obtain the type of discovery customary in U.S. proceedings and plaintiffs determined that to conduct discovery in compliance with the Hague Convention would be too time consuming, and not cost-efficient, given the limited information they would be able to obtain. Discovery was further impeded by the withdrawal of defendants' U.S. counsel and defendants' refusal to name successor counsel. However, plaintiffs were able to obtain additional evidence regarding Meyling's

General Director of ActaMed.  Gehring Affidavit, ¶ 4. The Swiss Code of Obligation, Article 716a determines the non-transferable duties of the board of directors.  Article 716a No. 5 determines that the board of directors has the duty of ultimate supervision, in particular in view of compliance with the law.  Article 754 No. 1 then determines the liability of members of the board of directors vis-à-vis the company's obligees for damages caused by a violation of these duties. Exhibit A II to the Gehring Affidavit. Meyling, as the General Director of ActaMed, had a non-transferable duty of ultimate supervision over ActaMed at the time of the infringement pursuant to Article 716a. Therefore, Meyling had ultimate supervision and control over ActaMed's activities, including its compliance with copyright laws in Switzerland and abroad.

In addition to being ultimately responsible, Meyling was personally responsible for ActaMed's policies, including its shipment of Plaintiffs' Journals abroad without permission.  Meyling personally received a letter from ProLitteris on June 23, 2000, indicating that the delivery of copies from Switzerland to foreign countries could not be covered or regulated by Swiss Law, but only by the law of the place where the addressee of the delivery of copies is placed.  ProLitteris stated that it was not in the position to grant licenses for deliveries to foreign countries.  Exhibit C to the Gehring Affidavit. Meyling personally responded to this letter by e-mail on August 24, 2000, acknowledging that in view of the letter of ProLitteris of June 23, 2000 the biggest part of his business would be illegal, that the majority of copies constitute copies produced by ActaMed and distributed from Switzerland abroad.  Exhibit D to the Gehring Affidavit. Despite Meyling's acknowledgement that such activity would be illegal, defendants continued to

---

degree of knowledge and control from a companion suit currently pending against

deliver copies of Plaintiffs' Journals outside Switzerland, including those deliveries at issue.[6]

There is no question that Meyling had control over ActaMed's operations, knew his business was operating in an infringing manner and chose to ignore the repeated warnings that such conduct was noncompliant with copyright law abroad, including U.S. law. Meyling's degree of knowledge, control and level of involvement in the copyright infringement at issue is therefore a sufficient basis for the Court to exercise personal jurisdiction over Meyling.

### III. DAMAGES

Plaintiffs seek statutory damages for copyright infringement under 17 U.S.C. §504(c) in light of the willfulness of defendants and the deterrent and punitive purposes of the statute. Defendants' actions were undertaken in full awareness that their conduct was in violation of the copyright laws of the U.S. Defendants' infringement of plaintiffs' copyrights was therefore willful, as that term is understood in copyright jurisprudence. *See N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2nd Cir. 1992); *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F.Supp. 1522, 1543-44 (S.D.N.Y. 1991). An infringement is "willful" if the defendant had "knowledge that its actions constitute an infringement." *Fitzgerald Publishing Co. v. Baylor Publishing Co.*, 807 F.2d 1110, 1115 (2nd Cir.1986). This knowledge may be "actual or constructive." *Id.*

---

defendants in Switzerland. *See* Gehring Affidavit, ¶¶ 2, 3.

[6] For a period of time, Meyling and ActaMed acted under color of a license from ProLitteris that could have been interpreted as sanctioning deliveries outside Switzerland. As noted above, however, that contract expired long before the infringements complained of here. Note that Meyling also personally received protests from plaintiff Massachusetts Medical Society regarding the unauthorized delivery of its works. *See* Exhibits A and B to the Appel Affidavit.

Reckless disregard of the copyright holder's rights (rather than actual knowledge of infringement) also suffices to warrant an award of enhanced statutory damages. *See Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1020 (7th Cir.) ("willful" infringement where the infringer has acted in reckless disregard of the copyright owner's rights), *cert. denied,* 502 U.S. 861, 112 S.Ct. 181 (1991).

Absent discovery plaintiffs are unable to quantify their aggregate actual damages. According to the Second Meyling Decl., ¶ 12 and Exhibit 7, ActaMed imported 3,635 pages of copies into the United States between January 2002 and September 2005. It is reasonable to infer that a good portion of these were copies of materials belonging to plaintiffs, given that plaintiffs are large publishers of the types of medical journals delivered by ActaMed. Kaufman Affidavit, ¶ 9; Seeley Affidavit, ¶ 9. Damages should take into account the total number of infringements that likely occurred, regardless of the fact that plaintiffs were only able to document those in the Complaint. *See, e.g., Broadcast Music, Inc. v. Fox Amusement Co.*, 551 F.Supp. 104, 109 (N.D.Ill. 1982)(amount of statutory damages was influenced by total number of infringements that defendant probably committed, even those that were not the subject of the action). Plaintiffs therefore seek statutory damages of $50,000 per work infringed. Such amount is substantially less than the maximum ($150,000) permitted in cases of willful infringement. *See* 17 U.S.C. §504(c)(2). In addition, where there is a pattern of infringement, as there is here, enhanced statutory damages are justified to deter future infringement. *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 514 (7th Cir. 1994). *See, e.g., Basic Books, Inc. v. Kinko's Graphics Corp.,*758 F.Supp. 1522 (S.D.N.Y. 1991)(court awarded a total of $510,000 in statutory damages for twelve

infringements to deter future infringement and to deter defendants from repeating the conduct at issue where all of the instances of copying were conducted with the same motive and intent.) [7]

Plaintiffs also seek their costs and attorneys' fees as provided by 17 U.S.C. §505. In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) the Supreme Court clarified the standard to be used in awarding attorneys' fees to either prevailing party in a copyright infringement suit. Factors to consider include "frivolousness, motivations, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at n. 19, citing *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (1986).

The First Circuit has accorded substantial weight to the objective reasonableness factor. *See Lotus Development Corp. v. Borland International, Inc.*, 140 F.3d 70, 74 (1st Cir. 1998); *Matthews v. Freedman,* 157 F.3d 25, 29 (1st Cir. 1998). Although discretionary, the award of attorney's fees is "the rule rather than the exception and should be awarded routinely." *Steven Greenberg Photography v. Matt Garrett's of Brockton, Inc.*, 816 F.Supp. 46, 49 (D.Mass.1992)(internal citations omitted)(prevailing plaintiff awarded attorneys' fees).

In this case, plaintiffs' claims are clearly non-frivolous, objectively reasonable and properly motivated to protect their respective copyrights. The defendants have taken

---

[7] Plaintiffs may recover damages even where the infringements at issue were the result of orders placed by plaintiffs' agent, as here. *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1348-49(8th Cir. 1994)(court awarded statutory damages based on orders placed by investigator agent of plaintiffs). *See also Ryan v. CARL Corp.*, 23 F.Supp.2d 1146, 1149 (N.D.Cal. 1998)(plaintiffs did not authorize reproduction and therefore had standing to recover for injury where their investigator requested the reproduction of the copyrighted photos at issue).

an objectively unreasonable position, arguing that their behavior was authorized under Swiss law despite clear precedent to the contrary, and despite receiving a legal opinion directly to the contrary from Swiss counsel for ProLitteris. An award of attorneys' fees in therefore eminently warranted. *See Invessys, Inc. v. McGraw-Hill Companies, Ltd.*, 369 F.3d 16 (1st Cir. 2004) (affirming award of attorneys' fees where losing party's position was objectively unreasonable.)

### Conclusion

Defendants have imported and distributed articles from Plaintiffs' Journals without authorization, and sold them for a profit, without paying copyright fees. Defendants have no valid defense for this conduct. Their actions have been taken in willful disregard of plaintiffs' rights under U.S. copyright law, and plaintiffs are accordingly entitled to aggravated statutory damages.

As for injunctive relief, it goes almost with saying that Meyling and his company should be enjoined from any further such conduct. *See Picker International Corp. v. Imaging Equipment Services, Inc.*, 931 F.Supp. 18, 45 (D.Mass. 1995).

In consideration of all the foregoing, plaintiffs' request for partial summary judgment should be entered at the earliest possible date.

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
MASSACHUSETTS MEDICAL
SOCIETY,
and
WILEY-LISS, INC Plaintiffs,

By their attorneys,

|  |  |
|---|---|
|  | /s/ William S. Strong |
|  | /s/ Amy C. Mainelli |
| Dated: February 9, 2006 | William S. Strong, Esq., BBO #483520 |
|  | Amy C. Mainelli, Esq., BBO #657201 |
|  | KOTIN, CRABTREE & STRONG, LLP |
|  | One Bowdoin Square |
|  | Boston, MA 02114 |
|  | (617) 227-7031 |
|  | (617) 367-2988 (fax) |

## CERTIFICATE OF SERVICE

I, Amy C. Mainelli, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by first class mail to the defendants in this action and those indicated as non registered participants on February 9, 2006.

/s/ Amy C. Mainelli
Amy C. Mainelli

WSS/Elsevier/ActaMed/ memo re summary judgment